**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
Benjamin A. Mishkin (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone:  (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
bamishkin@debevoise.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone:  (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| UNIROYAL HOLDING, INC., *et al.*,[1] | Case No. 26-18668 (MBK) |
| Debtors. | |
| | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM
### AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
### (A) CONTINUE TO USE THEIR CASH MANAGEMENT ACCOUNTS
### AND MAINTAIN EXISTING BUSINESS FORMS AND (B) HONOR CERTAIN
### RELATED PREPETITION OBLIGATIONS AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

respectfully state as follows in support of this motion:

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

**Relief Requested**

1.        The Debtors seek entry of interim and final orders, substantially in the forms

attached as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**") (a) authorizing

the Debtors to (i) continue to use their cash and cash equivalent accounts and maintain existing

business forms and (ii) honor certain related prepetition obligations, and (b) granting related relief.

**Jurisdiction and Venue**

2.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334

and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered

July 23, 1984, and amended June 6, 2025 (Bumb, C.J.). This is a core proceeding pursuant to

28 U.S.C. § 157(b), and the Debtors consent to the entry of a final order by the Court in connection

with this motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

3.        Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The bases for the relief requested in this motion are sections 105(a), 345, 363, 1107,

and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"),

rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "**Local

Rules**"), and the *General Order Governing Chapter 11 Complex Case Procedures*, dated

August 1, 2024, and amended December 2, 2025.

**Background**

5.        Earlier today (the "**Petition Date**"), each Debtor filed a voluntary petition for relief

under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing

their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code. Concurrently with this motion, the Debtors have filed a motion requesting that these chapter 11 cases be jointly administered and consolidated for procedural purposes. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no statutory committees have been appointed or designated.

6.      The Debtors hold and manage the assets and liabilities of Uniroyal, Inc.'s (f/k/a U.S. Rubber Company) legacy, non-operating businesses following its reorganization in 1985. Prior to 1985, Uniroyal, Inc. was a large and complex organization. In 1985, Uniroyal, Inc. was reorganized to responsibly address its legacy liabilities and retirement obligations. Since that time, these assets and liabilities have been managed by a team of five employees that has stayed constant for decades working to make sure the Debtors fulfilled their obligations to these constituencies. As of the Petition Date, the Debtors had over 35,000 asbestos-related claims pending against them, were responsible for providing retiree benefits to approximately 140 persons, and had no funded debt obligations.[2] Now, the remaining legacy employees are nearing retirement. Due to their long tenures, each employee possesses comprehensive institutional knowledge of the Debtors' operations, assets and liabilities, including management of tort litigation. The Debtors have prepared for and commenced these chapter 11 cases to provide for the satisfaction of the Debtors' remaining liabilities following the retirement of their employees, all in a way that will provide a fair and equitable distribution of all available assets among retirees and both current and future asbestos claimants.

---

[2]    Additional information regarding the Debtors, the events leading up to the Petition Date, and the facts and circumstances supporting the relief requested in this motion is set forth in the *Declaration of Robert V. D'Angelo, Jr., President & General Counsel of Uniroyal Holding, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), which is filed contemporaneously with this motion and incorporated by reference.

7.  On July 31, 2026, the Debtors entered into a restructuring support agreement (the "**RSA**") with, among others, an ad hoc group of law firms whose clients have asserted asbestos personal injury claims against the Debtors (the "**Ad Hoc Group**"). The RSA contemplates a global resolution of asbestos personal injury claims and full satisfaction of all allowed non-asbestos claims against the Debtors pursuant to a consensual chapter 11 plan (the "**Plan**"). The Plan provides for, among other things, (a) satisfaction of all non-PI/WD Claims against the Debtors in full; (b) the establishment of a settlement trust to assume, administer, and resolve PI/WD Claims; and (c) the dissolution of the Debtors.

8.  In accordance with the RSA, on the Petition Date, the Debtors have filed the Plan and a related disclosure statement.

**The Debtors' Cash and Cash Equivalent Accounts**

**I.  Overview**

9.  In the ordinary course of business, the Debtors maintain three demand deposit accounts at Webster Bank, N.A. ("**Webster Bank**") (collectively, the "**Cash Accounts**"). The Cash Accounts consist of: (a) a checking account which Uniroyal Holding, Inc. ("**Uniroyal**") uses for operations (the "**Uniroyal Operating Account**"); (b) a payroll account Uniroyal uses for Employee compensation (the "**Payroll Account**"); and (c) a checking account which Great Hill Corporation ("**Great Hill**") uses for expenses such as corporate filing fees (the "**Great Hill Operating Account**" and, together with the Uniroyal Operating Account, the "**Operating Accounts**"). Each Cash Account is insured by the Federal Deposit Insurance Corporation ("**FDIC**"). Webster Bank is a depository institution listed on the U.S. Trustee Authorized Depository Institution list for Region 3 (each such institution an "**Authorized Depository Institution**"). A list of the Cash Accounts is attached as **Exhibit 1** to **Exhibit A**.

10.    Uniroyal also maintains three other accounts to hold, and earn a prudent return on, assets not needed for day-to-day operations and to segregate funds previously owed in connection with severance arrangements. One of these accounts is maintained at The Vanguard Group, Inc. ("**Vanguard**") and two are maintained at Bank of America N.A. ("**Bank of America**") (the "**Cash Equivalent Accounts**", and collectively with the Cash Accounts, the "**Cash Management Accounts**"). The Cash Equivalent Account at Vanguard is a brokerage account holding solely shares in a money market fund (the "**Brokerage Account**"). The Cash Equivalent Accounts at Bank of America consist of two money market fund accounts used solely in connection with legacy employment agreements (each a "**Legacy Account**") and each of which consists of funds invested in Federated Hermes Government Obligations Money Market Fund. A list of the Cash Equivalent Accounts is attached as **Exhibit 2** to **Exhibit A**.

11.    The Debtors generally record transfers and disbursements as they are made. The Debtors have systems in place for cash monitoring, forecasting, and reporting, which enable the Debtors to maintain control over their accounts.

12.    Any disruption to the Cash Management Accounts would have an unnecessary adverse effect on the Debtors' operations, to the detriment of their estates and stakeholders. Accordingly, to minimize the disruption caused by these chapter 11 cases, the Debtors request authority to continue using their existing Cash Management Accounts during the pendency of these chapter 11 cases, subject to the terms described in this motion.

## II.    Summary of the Cash Accounts

### A.    Operating Accounts

13.    The Operating Accounts are the Debtors' primary accounts for day-to-day operational expenses, such as vendor payments and other ongoing expenditures. The Operating Accounts are also used to reimburse Employees for expenses they incur on behalf of the Debtors.

14. As of the Petition Date, the balance maintained in the Uniroyal Operating Account was approximately $320,000, with historical month-end balances over the past six months ranging from $149,435.44 to $638,068.57.

15. As of the Petition Date, the balance maintained in the Great Hill Operating Account was approximately $6,500. There have been no changes in month-end balances over the past six months in the Great Hill Operating Account.

**B.      Payroll Account**

16. The Payroll Account is used exclusively for processing payroll. Uniroyal ensures that funds are regularly transferred into the Payroll Account to ensure timely disbursements to Employees via their payroll processor, Automatic Data Processing, Inc. The Payroll Account is funded shortly before the payroll is processed with sufficient amounts to meet salary and wage obligations, minimizing excess balances. As of the Petition Date, the balance in the Payroll Account was approximately $500.

**III.    Cash Accounts and Fees**

17. The Debtors primarily make payments from the Cash Accounts to third parties via ACH, check, direct debit, or wire transfer. Webster Bank processes these payments in the ordinary course of business, debiting the Cash Accounts accordingly. In connection with these payments and the general maintenance of the Cash Accounts, Webster Bank charges, and the Debtors pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs and expenses (collectively, the "**Cash Account Fees**"). On a monthly basis, the Debtors typically incur approximately $160 in Cash Account Fees in connection with the Cash Accounts, which are paid at the beginning of the month following the month they are incurred. As of the Petition Date, the Debtors have accrued approximately $200 in Cash Account Fees.

### IV.  Summary of the Cash Equivalent Accounts

#### A.  Brokerage Account

18.  The Brokerage Account is used to fund the Debtors' operating expenses and collect interest. As of the Petition Date, the balance in the Brokerage Account was approximately $35,000,000. The Brokerage Account is SIPC-insured up to the amount of $500,000. The Debtors are able to withdraw up to $100,000,000 per day from the Brokerage Account. The Debtors understand from Vanguard that it would take one to two business days to transfer the funds out of the Brokerage Account into an Operating Account. The Brokerage Account is invested in the Vanguard Federal Money Market Fund, which consists of approximately 30% U.S. Treasury debt, 38% U.S. government agency debt, and 32% repurchase agreements collateralized by U.S. Treasury debt. Vanguard does not charge the Debtors any account or management fees in connection with the Brokerage Account.

#### B.  Legacy Accounts

19.  The Legacy Accounts were used exclusively for processing severance payments to former employees. The Debtors do not anticipate any claims being filed by the Employees for severance; each Employee waived any claim to severance prior to the Petition Date. As of the Petition Date, the combined balance of the Legacy Accounts was approximately $1,000,000. The Legacy Accounts are FDIC-insured for $250,000 each. The Legacy Accounts are invested in the Federated Hermes Government Obligations Money Market Fund, which consists of approximately 26.5% U.S. Treasury debt, 22.2% U.S. government agency debt, 28% U.S. Treasury repurchase agreements, and 23.2% U.S. government agency repurchase agreements. The Debtors pay approximately $312.50 in fees per account per quarter.

## V.  Existing Checks and Business Forms

20.  In the ordinary course of business, the Debtors use pre-printed correspondence business forms, including letterhead and checks. The Debtors keep a large quantity of the appropriate business forms on hand at their offices, which the Debtors intend to continue to use during the chapter 11 case. The Debtors have prepared communications materials to be distributed to the parties with whom they interact, which will, among other things, inform those parties of the commencement of the chapter 11 case. The Debtors believe that, in light of the limited number of parties that it interacts with on a regular basis, these materials will provide adequate notice of the Debtors' status as debtors in possession. Nevertheless, once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks.

## VI.  Intercompany Payments

21.  As discussed above, in the ordinary course of business Great Hill keeps only a de minimis amount of cash on hand. In addition, Uniroyal is generally responsible for the management of Great Hill. As noted in the First Day Declaration, Great Hill is the beneficiary of the Intercompany Note. As of the Petition Date, the unpaid balance on the Intercompany Note, consisting of principal and accrued interest, was $2,483,730.11. Great Hill also owes Uniroyal approximately $596,000 on account of accrued annual management service fees and any payments Uniroyal makes on behalf of Great Hill.

### Basis for Relief Requested

## I.  Continued Use of the Cash Management Accounts Is Warranted Under Sections 363(c) and 105(a) of the Bankruptcy Code

22.  Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C.

8

§ 363(c)(1). This provision is intended to provide debtors with the flexibility to manage day-to-day operations without undue interference from creditors or the court. As noted by the Third Circuit, "[s]ection 363 is designed to strike a balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Courts have similarly recognized that routine transactions related to cash management systems are within the scope of section 363(c) of the Bankruptcy Code. *See Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc.)*, 325 B.R. 138, 145 (Bankr. D. Del. 2005); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007). Supplementing these provisions, section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105; *see In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (utilizing section 105(a) of the Bankruptcy Code to support an order authorizing the payment of prepetition obligations to employees).

23.     Here, the Debtors seek to use the funds in the Cash Management Accounts primarily in the ordinary course of business, namely to pay the Employees and Contractors, pursuant to relief sought in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay and Honor Certain Prepetition Wages, Benefits, and Other Obligations and (B) Continue to Pay and Honor Workforce Obligations and (II) Granting Related Relief*, to pay retained restructuring professionals and to pay ordinary course intercompany obligations that may arise during these chapter 11 cases. In light of Great Hill's limited cash on hand, Uniroyal also seeks authorization to pay any applicable U.S. Trustee fees on behalf of Great Hill. Using the funds for these purposes will enable the Debtors to fulfill their fiduciary duties

under section 1107(a) of the Bankruptcy Code to maximize the value of the estate for the benefit of all stakeholders. An inability to use the funds in the Cash Management Accounts will disrupt the Debtors' business with no offsetting benefit to the Debtors' creditors. Similar authorization to use estate funds in the ordinary course of business is consistent with relief granted in other cases in this district. *E.g.*, *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Feb. 2, 2026) [ECF No. 95]; *In re CCA Construction, Inc.*, No. 24-22548 (CMG) (Bankr. D.N.J. Dec. 23, 2024) [ECF No. 28].

**II.    Section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines Are Satisfied or Cause Exists to Waive Their Requirements**

24.    Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and provides that, for a "deposit or investment" that is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States," the estate must obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety or the entity with which the money is deposited or invested must deposit U.S. government securities as collateral, "unless the court for cause orders otherwise." 11 U.S.C. § 345(b).

25.    Supplementing these statutory requirements, the *Operating Guidelines for Chapter 11 Cases* (the "**U.S. Trustee Guidelines**") generally require that a chapter 11 debtor, among other things, (a) close all existing bank accounts and open new debtor-in-possession accounts, (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, and (c) maintain a separate debtor-in-possession account for cash collateral. These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against a debtor's inadvertent payment of prepetition claims. The U.S. Trustee Guidelines further provide that Debtors should maintain funds

10

only in Authorized Depository Institutions. Courts in this District have recognized that strict enforcement of the U.S. Trustee Guidelines does not always serve the purposes of chapter 11 and have waived such requirements in lieu of alternative procedures, such as the ones proposed in this motion. *See, e.g.*, *In re Bowflex, Inc.,* No. 24-12364 (ABA) (Bankr. D.N.J. Mar. 28, 2024); *In re WeWork, Inc*., No. 23-19865 (JKS) (Bankr. D.N.J. Feb. 6, 2024); *In re LTL Management, LLC*, No. 23-12825 (MBK) (Bankr. D.N.J. Apr. 13, 2023).

26.     With respect to the Cash Accounts, the requirements of both section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines regarding Authorized Depository Institutions are satisfied. The Operating Accounts and the Payroll Account are held in FDIC-insured accounts at Authorized Depository Institutions. The Payroll Account and Great Hill Operating Account balances are under the statutory FDIC insurance limit. The Uniroyal Operating Account, while above the limit, is held at Webster Bank, an Authorized Depository Institution.[3]

27.     With respect to the Legacy Accounts and the Brokerage Account, cause exists to suspend the requirements of section 345(b) of the Bankruptcy Code. Liquidating these accounts and transferring them to a 345(b)-compliant account would impose unnecessary costs on the Debtors. For the Legacy Accounts, the Accounts are held at an Authorized Depository Institution, Bank of America, and are invested in extremely safe assets. As noted, the Legacy Accounts are invested in the Federated Hermes Government Obligations Money Market Fund, which holds only U.S. Treasury debt, U.S. government agency debt, or repurchase agreements collateralized by each. While the Brokerage Account is held at Vanguard, which is not an Authorized Depository

---

[3]   To the extent the Debtors make any material changes to the Cash Accounts, they will provide the U.S. Trustee and any statutory creditors' committee appointed in these cases with advance notice of not less than three business days. In addition, the Debtors shall give notice to the U.S. Trustee within five days after opening any new bank or investment account or closing any existing bank or investment account.

Institution, the Account is similarly invested in extremely safe assets, namely the Vanguard Federal Money Market Fund, which holds only U.S. Treasury debt, U.S. government agency debt, or repurchase agreements collateralized by U.S. Treasury debt. There is thus little risk to the Debtors' estates or stakeholders from the Debtors' continued maintenance of the Legacy Accounts or the Brokerage Account as they are currently constituted, in addition to meaningful cost savings earned from avoiding transferring these funds.

### III.   Continued Use of the Debtors' Business Forms Is Warranted Under Sections 363(c) and 105(a) of the Bankruptcy Code

28.     The Debtors also submit that maintaining their existing business forms is warranted as it will minimize disruption to the Debtors' business. The Debtors issue manual checks from time to time and use business forms in their ordinary operations. Strict compliance with the U.S. Trustee Guidelines would increase the Debtors' expenses and risk unnecessarily confusing their beneficiaries. Accordingly, the Debtors believe it is appropriate to continue to use all business forms as they were in existence prior to the Petition Date. Further, in light of the expense and delay attendant to ordering entirely new business forms, the Debtors believe it is appropriate to use their business forms without any reference to the Debtors' current status as debtors in possession. By preserving business continuity, reducing cost, and avoiding likely disruption and delay to the Debtors' disbursements, the relief requested in this motion will benefit all parties in interest.

### IV.   Cause Exists to Authorize Financial Institutions to Honor and Process Checks and Transfers

29.     Due to the commencement of these chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtors' checks, wire transfers, direct deposit transfers, and electronic fund transfers in respect of the obligations sought to be paid by this motion may be dishonored or rejected by financial institutions. Under the Debtors' cash management and accounting processes, the Debtors can readily identify checks or transfers relating to an authorized

payment. Accordingly, the Debtors believe that prepetition checks and transfers other than those relating to authorized payments will not be honored inadvertently. The Debtors submit that any financial institution should be authorized to rely on the representations of the Debtors with respect to whether any check drawn or transfer request issued by the Debtors before the Petition Date should be honored pursuant to this motion, and this Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Debtors Have Satisfied Bankruptcy Rule 6003

30.     Bankruptcy Rule 6003 empowers a court to issue an order granting a motion to use property of the estate within the first 21 days of a case if the relief is "necessary to avoid immediate and irreparable harm." Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.

31.     As set forth in this motion, the Debtors believe a smooth and orderly transition into chapter 11 is critical to preserving and maximizing the value of the Debtors' estates and that any delay in granting the relief could disrupt the Debtors' operations and cause irreparable harm to the Debtors, to the detriment of all stakeholders. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 with respect to the relief requested.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

32.     To successfully implement the foregoing, the Debtors request that the Court enter an order providing that notice of the relief requested in this motion satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). As described above, the relief requested by the

Debtors is needed immediately for the Debtors' business operations to continue without interruption and to preserve value for the Debtors' estates for the benefit of all stakeholders.

## Reservation of Rights

33.     Nothing in this motion or any action taken by the Debtors pursuant to relief granted in relation to this motion is intended to be or should be construed as: (a) an admission as to the amount, basis, or validity of any particular claim against a Debtor; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission relating to any lien, security interest, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any of the Debtors' rights under the Bankruptcy Code or other applicable law. The Debtors expressly reserve all of their rights with respect to the foregoing matters.

## Notice

34.     The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**"); (b) the entities listed on the PI/WD Counsel List; (c) counsel to the Ad Hoc Group; (d) the Internal Revenue Service; (e) the Office of the United States Attorney for the District of New Jersey; (f) Webster Bank; (g) Bank of America; (h) Vanguard; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

**No Prior Request**

35. No prior request for the relief sought in this motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim Order and Final Order, substantially in the forms attached as **Exhibit A** and **Exhibit B**, granting the relief requested in this motion and (b) grant such other and further relief as is just and proper.

Dated: July 31, 2026

By: /s/ *Morris S. Bauer*

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone:  (973) 424-2000
Email:  msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
Benjamin A. Mishkin (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone:  (212) 909-6000
Email:  nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
bamishkin@debevoise.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

16