**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., e*t al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Joint Administration Requested) |

**DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN**
**<u>OF UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION</u>**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**DISCLAIMER**

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE DEBTORS' PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION. THE INFORMATION INCLUDED IN THIS DISCLOSURE

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

STATEMENT IS PROVIDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS ATTACHED TO, OR INCORPORATED BY REFERENCE IN, THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR THE OTHER DOCUMENTS INCORPORATED IN THE DISCLOSURE STATEMENT BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS SHALL GOVERN FOR ALL PURPOSES.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THE DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, UNLESS SPECIFICALLY INDICATED OTHERWISE. THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAVE BEEN MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT ASSUME AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH IN THE DISCLOSURE STATEMENT SINCE THE DATE OF THIS DISCLOSURE STATEMENT. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THIS DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE CASTING A BALLOT. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ANY ENTITIES DESIRING ANY SUCH ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

NO REPRESENTATIONS CONCERNING THE DEBTORS HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS ATTACHED TO THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN WHICH ARE OTHER THAN AS SET FORTH, OR INCONSISTENT WITH, THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE DOCUMENTS ATTACHED TO THE DISCLOSURE STATEMENT, AND THE PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM.

WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATION OR OTHER ACTIONS, THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE.

PLEASE REFER TO SECTION 6 AND SECTION 7 OF THIS DISCLOSURE STATEMENT FOR A DISCUSSION OF CERTAIN RISK FACTORS AND U.S. FEDERAL TAX CONSEQUENCES THAT SHOULD BE CONSIDERED WHEN VOTING ON THE PLAN.

**TABLE OF CONTENTS**

SECTION 1. EXECUTIVE SUMMARY ..... 1

1.1. Overview of this Disclosure Statement ..... 1
1.2. Overview of the Plan and Distributions under the Plan ..... 1
1.3. Confirmation of the Plan ..... 3
1.4. Voting on the Plan ..... 4
1.5. Opting Out of the Releases in the Plan ..... 6

SECTION 2. QUESTIONS AND ANSWERS ABOUT THE DISCLOSURE STATEMENT AND PLAN ..... 7

2.1. Why are the Debtors sending me this Disclosure Statement? ..... 7
2.2. Am I entitled to vote on the Plan? What will I receive from the Debtors if the Plan is consummated? ..... 7
2.3. How will the Plan be implemented? ..... 7
2.4. What will I receive from the Debtors if the Plan is consummated? ..... 8
2.5. What happens to my recovery if the Plan is not confirmed or does not go effective? ..... 10
2.6. If the Plan provides that I get a distribution, do I get it upon Confirmation or when the Plan becomes effective, and what is meant by “Confirmation,” “Effective Date,” and “Consummation”? ..... 11
2.7. Is there potential litigation related to the Plan? ..... 11
2.8. Will the final amount of Allowed General Unsecured Claims affect the recovery of Holders of Allowed Claims entitled to vote under the Plan? ..... 11
2.9. Will there be releases and exculpations granted to parties in interest as part of the Plan? ..... 11
2.10. What is the deadline to vote on the Plan? ..... 12
2.11. How do I vote for or against the Plan? ..... 12
2.12. What is the deadline to opt out of the releases included in the Plan? ..... 13
2.13. How do I opt out of the releases included in the Plan? ..... 13
2.14. When is the Confirmation Hearing set to occur? ..... 14
2.15. What is the purpose of the Confirmation Hearing? ..... 14
2.16. Do the Debtors recommend voting in favor of the Plan? ..... 15

SECTION 3. BACKGROUND ABOUT THE DEBTORS AND THE CHAPTER 11 CASES ..... 15

3.1. Overview of the Debtors, Their History, and Their Corporate Structures ..... 15
3.2. Events During the Chapter 11 Cases ..... 25

SECTION 4. SUMMARY OF THE PLAN ..... 27

4.1. Unclassified Claims ..... 27
4.2. Classification in General ..... 29
4.3. Treatment of Claims and Interests ..... 30
4.4. Means for Implementation ..... 30
4.5. Treatment of Executory Contracts and Unexpired Leases ..... 37
4.6. Plan Provisions Governing Distributions ..... 39
4.7. Procedures for Resolving Unliquidated and Disputed Claims ..... 42

4.8. Conditions Precedent to the Effective Date ..... 44
4.9. Releases ..... 45
4.10. Retention of Jurisdiction ..... 55
4.11. Modification, Revocation, or Withdrawal of the Plan ..... 57
4.12. Miscellaneous Provisions ..... 58

SECTION 5. Voting on the Plan ..... 61

5.1. Overview ..... 61
5.2. Holders of Claims Entitled to Vote on the Plan ..... 61
5.3. Voting Record Date ..... 62
5.4. Voting on the Plan ..... 62
5.5. Opting Out of the Releases in the Plan ..... 63
5.6. The Confirmation Hearing ..... 64
5.7. Deadline to Object to Confirmation ..... 64
5.8. General Confirmation Requirements ..... 64
5.9. Best Interests of Creditors/Liquidation Analysis ..... 66
5.10. Feasibility ..... 66
5.11. Acceptance by Impaired Classes ..... 66
5.12. Confirmation Without Acceptance of All Impaired Classes ..... 67

SECTION 6. Risk Factors ..... 68

6.1. General Business and Financial Risk Factors ..... 69
6.2. Certain Bankruptcy Considerations ..... 69
6.3. Disclosure Statement Disclaimer ..... 70

SECTION 7. Certain U.S. Federal Income Tax Consequences of the Plan ..... 71

7.1. Introduction ..... 71
7.2. U.S. Federal Income Tax Treatment of the Trust ..... 72
7.3. Certain U.S. Federal Income Tax Consequences of the Plan to Holders of PI/WD Claims ..... 73
7.4. Information Reporting and Backup Withholding ..... 73

SECTION 8. Recommendation ..... 75

**EXHIBITS**

EXHIBIT A Plan

EXHIBIT B Solicitation and Voting Procedures Order

EXHIBIT C Liquidation Analysis

THE DEBTORS ADOPT AND INCORPORATE EACH EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.

# SECTION 1.
# EXECUTIVE SUMMARY

## 1.1. Overview of this Disclosure Statement

Uniroyal Holding, Inc. and Great Hill Corporation (each, a "**Debtor**" and collectively, the "**Debtors**") submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code to Holders of Claims against and Interests in the Debtors in connection with the solicitation of acceptances with respect to the Debtors' proposed chapter 11 plan (the "**Plan**"). A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference. This Disclosure Statement describes certain aspects of the Plan, including the treatment of Holders of Claims and Interests, the developments leading up to and during the Chapter 11 Cases, and other related matters. Capitalized terms used but not otherwise defined in this Disclosure Statement have the meaning given to those terms in the Plan.

Before soliciting acceptances of a chapter 11 plan, section 1125 of the Bankruptcy Code requires a debtor to prepare, and obtain approval of, a disclosure statement that contains information of a kind, and in sufficient detail, to permit a hypothetical reasonable claimholder to make an informed judgment regarding acceptance of the plan. On [●] [●], 2026, the Bankruptcy Court entered an order (a) approving this Disclosure Statement, (b) approving, among other things, the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan and certain vote tabulation procedures, as well as permitting Holders of Claims and Interests to opt out of certain releases granted under the Plan, (c) establishing the deadline for filing objections to the Plan, and (d) scheduling the Confirmation Hearing (including the exhibits thereto, the "**Solicitation and Voting Procedures Order**," Docket No [●]). The Solicitation and Voting Procedures Order is attached hereto as **Exhibit B**. **The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee of the accuracy or completeness of the information contained herein or an endorsement by the Bankruptcy Court of the merits of the Plan**.

**FOR THE REASONS SET FORTH HEREIN, THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES FOR HOLDERS OF CLAIMS AGAINST THE DEBTORS AND A LARGER RECOVERY FOR SUCH HOLDERS THAN THEY WOULD OTHERWISE RECEIVE OR RETAIN IN A LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. ACCORDINGLY, THE DEBTORS STRONGLY RECOMMEND THAT HOLDERS OF CLAIMS IN THE CLASS ENTITLED TO VOTE CAST THEIR VOTE TO ACCEPT THE PLAN.**

## 1.2. Overview of the Plan and Distributions under the Plan

The treatment of Claims and Interests under the Plan, along with voting rights and estimated recoveries for each Class, is summarized in the table below:

| Class | Claim or Interest Description | Summary of Treatment | Entitled to Vote | Estimated Midpoint Amount of Asserted Claims[2] | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Secured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Secured Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; (2) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (3) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $0.00 | 100% |
| 2 | Other Priority Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $45,000 | 100% |
| 3 | General Unsecured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of each such Allowed General Unsecured Claim, each Holder thereof will receive: (1) payment in full in Cash from the Debtors if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $1,000 | 100% |

| Class | Claim or Interest Description | Summary of Treatment | Entitled to Vote | Estimated Midpoint Amount of Asserted Claims[2] | Estimated Recovery |
|---|---|---|---|---|---|
| 4 | PI/WD Claims | On the Effective Date, all PI/WD Claims shall automatically and, without further act, deed, or order of the Bankruptcy Court, be assumed by the Trust. Subject to the Trust Agreement, each Holder of an Allowed PI/WD Claim shall be entitled to receive distributions in accordance with the Trust Distribution Procedures. Holders of Allowed PI/WD Claims against the Debtors shall not receive any payment from the Trust unless and until such Claims are resolved in accordance with the Trust Distribution Procedures. The terms, provisions and procedures set forth in the Trust Distribution Procedures shall establish the method by which PI/WD Claims shall be submitted, processed, liquidated, reserved for, and, if applicable, paid. | Entitled to Vote | N/A | N/A |
| 5 | Intercompany Claims | On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any Plan Distribution on account of such Claims. | Not Entitled to Vote (Deemed to Reject) | $3.07 million | 0% |
| 6 | Interests | On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Interests shall not receive any Plan Distribution on account of such Interests. | Not Entitled to Vote (Deemed to Reject) | N/A | 0% |

### 1.3. Confirmation of the Plan

The Confirmation Hearing is scheduled to be held before the Honorable Michael B. Kaplan

---

[2] The amounts reflected herein represent a fair estimate of the aggregate asserted amounts of Claims based on the Debtors' books and records, and do not necessarily reflect contingent, unliquidated or disputed Claims that may be asserted in proofs of claim or a total of Claims ultimately Allowed in the Chapter 11 Cases. The Debtors have not completed their Claims reconciliation process. Certain Claims included in these totals may be contingent, unliquidated, disputed, or intercompany, and may ultimately be Allowed in amounts materially different from those shown, or not Allowed at all. These amounts are presented for illustrative purposes only to reflect the face amounts asserted for solicitation and voting purposes. The Debtors reserve all rights to object to any claim and to amend these amounts based on further review of proofs of Claim, the Debtors' books and records, and other known liabilities.

at [●] [**a.m./p.m.**] **prevailing Eastern Time on October 20, 2026** at the Bankruptcy Court, located at 402 East State Street, Trenton, New Jersey. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made before or at the Confirmation Hearing or any adjournment thereof. Confirmation and effectiveness of the Plan are subject to certain material conditions precedent contained in section 8 of the Plan and described herein. There is no assurance that the Plan will be confirmed, or if confirmed, that the conditions required to be satisfied will be satisfied or otherwise waived.

The deadline to object to confirmation of the Plan is **October 13, 2026 at 4:00 p.m. prevailing Eastern Time** (the "**Plan Objection Deadline**"). All objections to the Plan must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in interest in accordance with the Solicitation and Voting Procedures Order so that they are received on or before the Plan Objection Deadline.

### 1.4. Voting on the Plan

Under the Bankruptcy Code, not all Holders of Claims against or Interests in the Debtors are entitled to vote on the Plan. Under the Plan, Holders of Administrative Claims and Priority Tax Claims have not been classified for purposes of voting or receiving distributions, in accordance with section 1123(a)(1) of the Bankruptcy Code, and, therefore, are not entitled to vote on the Plan.

Other Priority Claims are not Impaired under the Plan, and, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Debtors are not soliciting votes from these creditors.

General Unsecured Claims are not Impaired under the Plan, and, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Debtors are not soliciting votes from these creditors.

PI/WD Claims are Impaired under the Plan and Holders of such Claims will receive a distribution under the Plan subject to the Trust Agreement as further explained herein. Therefore, such creditors are entitled to vote to accept or reject the Plan in accordance with section 1126(a) of the Bankruptcy Code. The Debtors are soliciting votes from these creditors to the extent that such creditors' Claims have not been disallowed and are not subject to a pending objection. If the Claims are subject to a pending objection, the Solicitation and Voting Procedures Order provides for a procedure that Holders of such Claims must follow in order for their votes to be counted. As explained below in section 5.2, in accordance with the procedures delineated in the Solicitation and Voting Procedures Order, Holders of PI/WD Claims who are represented by Known[3] counsel will be solicited via their counsel, unless requested otherwise by such counsel, in which case such Holders of PI/WD Claims will be solicited directly. Unrepresented Claimants (as defined in the Solicitation and Voting Procedures Order) will be solicited directly in accordance with the

---

[3] "**Known**" means, (i) with respect to counsel to Holders of PI/WD Claims, such counsel as are listed on the Debtors' as-filed Schedules or counsel regarding whom the Debtors hereafter are provided timely notice on or prior to the Voting Record Date sufficient to provide the Debtors with knowledge of the representation of a Holder of a PI/WD Claim as such or (ii) with respect to PI/WD Claims, any such claims regarding which the Debtors have received notice in a timely manner on or prior to the Voting Record Date sufficient to provide the Debtors with knowledge of such asserted PI/WD Claim.

Solicitation and Voting Procedures Order.

Intercompany Claims are Impaired under the Plan. On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any Plan Distribution on account of such Claims. Holders of Intercompany Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

Interests of the Debtors are Impaired under the Plan. On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Interests shall not receive any Plan Distribution on account of such Interests. Holders of Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

The deadline to vote on the Plan is **October 13, 2026 at 4:00 p.m. prevailing Eastern Time** (the "**Voting Deadline**"). In order to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered (either by using the return envelope provided, by first-class mail, overnight delivery or personal delivery, or by electronic, online transmission, as applicable) in accordance with the Solicitation and Voting Procedures Order so that they are **actually received** on or before the Voting Deadline by Omni Agent Solutions, Inc., the Debtors' balloting agent, (the "**Balloting Agent**") by the following methods:

| **DELIVERY OF BALLOTS** |
| --- |
| Ballots must be actually received by the Balloting Agent by the Voting Deadline of 4:00 p.m. prevailing Eastern Time on October 13, 2026 at the following addresses:<br><br>**If by First-Class Mail, Overnight Courier or Overnight Mail (Individual Ballot Only):**<br><br>Uniroyal Holding, Inc. and Great Hill Corporation, Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>**If by Online Submission:**<br><br>Go to the case website (https://omniagentsolutions.com/Uniroyal), click on the "Balloting" tab, select either "Submit Individual Ballot" or "Submit Law Firm Master Ballot", as applicable, and follow the instructions to submit your Ballot.<br><br>If you have any questions on the procedure for voting on the Plan, please contact the Balloting Agent by calling (888) 741-5787 (US & Canada toll free) or (747) 400-0068 (International) or emailing UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc." in the subject line. |

Any Ballot received after the Voting Deadline or otherwise not in compliance with the Solicitation and Voting Procedures Order will not be counted unless ordered by the Bankruptcy Court. The Balloting Agent will accept Master Ballots and related client list exhibits, if properly completed, **only** through the Law Firm Master Ballot Portal (each as defined in the Solicitation and Voting Procedures Order) accessible on the Balloting Agent's case website at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab, selecting "Submit Firm Master Ballot", and following the instructions; *provided*, however, that the Balloting Agent will accept Master Ballots or exhibits submitted other than through the Law Firm Master Ballot Portal where the submitting party has received prior permission in writing from the Debtors to do so. The Balloting Agent shall have the discretion to, but shall not be obligated to, contact voters to cure any defects in the Ballots.

### 1.5. Opting Out of the Releases in the Plan

The deadline to opt out of the releases included in section 9 of the Plan is the Voting Deadline. For Holders of Claims in Class 4, the election with respect to the releases must be properly executed and included with the appropriate submitted Ballot. For Holders of Claims in the Classes 1, 2, 3, and 6 (collectively, the "**Release Opt-Out Classes**"), the Opt-Out Form (as defined in the Solicitation and Voting Procedures Order) must be properly executed, completed, and delivered (either by using the return envelope provided, by first-class mail, overnight delivery or personal delivery or via electronic, online transmission) in accordance with the Solicitation and Voting Procedures Order so that it is **<u>actually received</u>** on or before the Voting Deadline by the Balloting Agent by the following methods.

| DELIVERY OF OPT-OUT FORMS |
|---|
| Opt-Out Forms must be actually received by the Balloting Agent by the Voting Deadline of 4:00 p.m. prevailing Eastern Time on October 13, 2026 at the following addresses:<br><br>**<u>If by First-Class Mail, Overnight Courier or Overnight Mail:</u>**<br><br>Uniroyal Holding, Inc. and Great Hill Corporation, Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>**<u>If by Online Submission:</u>**<br><br>Go to the case website (https://omniagentsolutions.com/Uniroyal), click on the "Balloting" tab, select "Electronic Opt-Out", and follow the instructions to submit your Opt-Out Form.<br><br>If you have any questions on the procedure for opting out of the releases in the Plan, please contact the Balloting Agent by calling (888) 741-5787 (US & Canada toll free) or (747) 400-0068 (International) or emailing UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc." in the subject line. |

Any election with respect to the releases included in section 9 of the Plan contained in an

Opt-Out Form received after the Voting Deadline or otherwise not in compliance with the Solicitation and Voting Procedures Order will not be deemed effective unless ordered by the Bankruptcy Court. The Balloting Agent shall have the discretion to, but shall not be obligated to, contact voters to cure any defects in the Opt-Out Forms.

## SECTION 2.
## QUESTIONS AND ANSWERS ABOUT THE DISCLOSURE STATEMENT AND PLAN

### 2.1. Why are the Debtors sending me this Disclosure Statement?

The Debtors are seeking to obtain Bankruptcy Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. The Bankruptcy Court approved this Disclosure Statement under section 1125 of the Bankruptcy Code on [●], 2026. This Disclosure Statement is being submitted to the Debtors' stakeholders in accordance with these Bankruptcy Code requirements and the Solicitation and Voting Procedures Order. A copy of the Solicitation and Voting Procedures Order is attached hereto as Exhibit B.

### 2.2. Am I entitled to vote on the Plan? What will I receive from the Debtors if the Plan is consummated?

Your ability to vote and the distribution and consideration that you will receive under the Plan, if any, depend on what kind of Claim or Interest you hold. As described in section 4 of this Disclosure Statement, entitled "Summary of the Plan," section 3 of the Plan creates categories of Holders of Claims and Interests, each of which is referred to as a "Class." A summary of the Classes of Claims and Interests and a description of each Class's voting status are set forth in the Executive Summary of this Disclosure Statement.

You should refer to this entire Disclosure Statement, the Plan, and the Plan Supplement for a complete description of the classification and treatment of each Class of Claims and Interests. For more information about the treatment of Claims and Interests, see "Summary of the Plan," which begins on page 27.

### 2.3. How will the Plan be implemented?

On or before the Effective Date, the Holders of all Allowed Claims except for PI/WD Claims (and except to the extent that a Holder of such a Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder) will receive: (a) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, as applicable, or (c) other treatment rendering such Claim unimpaired. To the extent such Claims are satisfied with Cash, these Claims will be paid for with the Cash or cash equivalents held by the Debtors as of the Effective Date or the Disputed Claims Reserve, as applicable.

With respect to PI/WD Claims, the Trust Assets will be transferred to the Trust, and the Trust will succeed to all of the rights, privileges, and powers of the Debtors. The Trust will

thereafter implement the Trust Distribution Procedures in accordance with the terms of the Trust Agreement. On the Effective Date, following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes.

On or after the Effective Date, the Trustee will have the authority to administer, amend, supplement, or modify the applicable Trust Distribution Procedures in accordance with the terms of the Plan and the Trust Documents, subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents. The Trust Distribution Procedures shall be binding on all Holders of PI/WD Claims. Allowed Claims under the Trust Distribution Procedures will be solely enforceable against the Trust. The Allowed amount of any PI/WD Claim will be the amount determined pursuant to the Plan and the Trust Distribution Procedures. Allowed PI/WD Claims under the Trust Distribution Procedures will be legally enforceable against the Trust. The amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Agreement, as determined or as actually paid by the Trust are not, as such, the equivalent of any Holder's Allowed Claim amount. The Allowance of Claims under the Trust Agreement, including the Trust Distribution Procedures, will not determine, and will not be used to determine, in any respect the liability of a non-Debtor Party for any Claim or Cause of Action.

## 2.4. What will I receive from the Debtors if the Plan is consummated?

The following chart provides a summary of the anticipated recovery to Holders of Claims and Interests under the Plan. Any estimates of Claims and Interests in this Disclosure Statement may vary from the final amounts asserted and Allowed by the Bankruptcy Court. Your ability to receive distributions under the Plan depends upon the ability of the Debtors to obtain Confirmation and meet the conditions necessary to consummate the Plan. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, will receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter and subject in all respects to the Trust Agreement. The Debtors further reserve the right to modify the Plan consistent with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**For a complete description of the Debtors' classification and treatment of claims, reference should be made to the entire Plan. The table is intended for illustrative purposes only and is not a substitute for a review of the Plan and Disclosure Statement in their entirety.**

| Class | Claim or Interest Description | Summary of Treatment | Entitled to Vote | Estimated Midpoint Amount of Asserted Claims[4] | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Secured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Secured Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; (2) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (3) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $0.00 | 100% |
| 2 | Other Priority Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $40,000 | 100% |
| 3 | General Unsecured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of each such Allowed General Unsecured Claim, each Holder thereof will receive: (1) payment in full in Cash from the Debtors if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $1,000 | 100% |

| | | | | | |
|---|---|---|---|---|---|
| 4 | PI/WD Claims | On the Effective Date, all PI/WD Claims shall automatically and, without further act, deed, or order of the Bankruptcy Court, be assumed by the Trust. Subject to the Trust Agreement, each Holder of an Allowed PI/WD Claim shall be entitled to receive distributions in accordance with the Trust Distribution Procedures. Holders of Allowed PI/WD Claims against the Debtors shall not receive any payment from the Trust unless and until such Claims are resolved in accordance with the Trust Distribution Procedures. The terms, provisions and procedures set forth in the Trust Distribution Procedures shall establish the method by which PI/WD Claims shall be submitted, processed, liquidated, reserved for, and, if applicable, paid. | Entitled to Vote | N/A | N/A |
| 5 | Intercompany Claims | On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any Plan Distribution on account of such Claims. | Not Entitled to Vote (Deemed to Reject) | $3.07 million | 0% |
| 6 | Interests | On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Interests shall not receive any Plan Distribution on account of such Interests. | Not Entitled to Vote (Deemed to Reject) | N/A | 0% |

### 2.5. What happens to my recovery if the Plan is not confirmed or does not go effective?

In the event that the Plan is not confirmed or does not become effective, there is no assurance that the Debtors will be able to pay non-PI/WD Claims or other Claims as provided for under the Plan or to transfer the Trust Assets to the Trust and thereby implement the terms of the Trust Agreement. In this scenario, it is unclear what Holders of Claims and Interests, including PI/WD Claims, would be able to recover. It is possible that an alternative plan of reorganization may provide Holders of PI/WD Claims or of other Claims with less than they would receive if the Plan were confirmed and went effective. Moreover, non-confirmation of the Plan may result in an

---

[4] The amounts reflected herein represent a fair estimate of the aggregate asserted amounts of Claims based on the Debtors' books and records, and do not necessarily reflect contingent, unliquidated or disputed Claims that may be asserted in proofs of claim or a total of Claims ultimately Allowed in the Chapter 11 Cases. The Debtors have not completed their Claims reconciliation process. Certain Claims included in these totals may be contingent, unliquidated, disputed, or intercompany, and may ultimately be Allowed in amounts materially different from those shown, or not Allowed at all. These amounts are presented for illustrative purposes only to reflect the face amounts asserted for solicitation and voting purposes. The Debtors reserve all rights to object to any claim and to amend these amounts based on further review of proofs of Claim, the Debtors' books and records, and other known liabilities.

extended chapter 11 process. For a more detailed description of the consequences of this, see "General Confirmation Requirements," beginning on page 64 and the Liquidation Analysis attached as Exhibit C to this Disclosure Statement.

**2.6. If the Plan provides that I get a distribution, do I get it upon Confirmation or when the Plan becomes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation"?**

"Confirmation" refers to approval of the Plan by the Bankruptcy Court. Confirmation does not guarantee that you will receive the distribution indicated under the Plan. After Confirmation, there are certain conditions that need to be satisfied or waived so that the Plan can be consummated and become effective, as further described in "General Confirmation Requirements," which begins on page 64. References to the "Effective Date" in the Plan and Disclosure Statement mean the date that all of these conditions have been satisfied or waived and the Plan has been fully consummated. Distributions will only be made on the Effective Date, as described in section 6 of the Plan (and for Claims that are not yet allowed or not yet due and payable as of the Effective Date, distributions will be further delayed). PI/WD Claims will thereafter receive distributions in accordance with the Trust Distribution Procedures.

**2.7. Is there potential litigation related to the Plan?**

At this time, the Debtors do not anticipate any litigation related to the Plan. However, there may be litigation to determine whether the Bankruptcy Code requirements have been met. Confirmation challenges may be brought by individual creditors even if their class votes to accept the Plan or if they are not entitled to vote on the Plan. For a more detailed discussion, see "Risk Factors — Certain Bankruptcy Considerations," beginning on page 68.

**2.8. Will the final amount of Allowed General Unsecured Claims affect the recovery of Holders of Allowed Claims entitled to vote under the Plan?**

With respect to Holders of Allowed Claims entitled to vote under the Plan, namely Holders of PI/WD Claims, the final amount of Allowed General Unsecured Claims may affect the value of the Trust Assets, which may in turn affect the recovery of Holders of PI/WD Claims. If the final amount of Allowed General Secured Claims is such that the value of the Trust Assets is less than the Minimum Trust Recovery, the Plan cannot become effective unless this condition is waived as permitted under the terms of the Plan. In this scenario, it is unclear what Holders of PI/WD Claims would be able to recover.

Even if the value of the Trust Assets is greater than the Minimum Trust Recovery, the final amount of Trust Assets is still subject to, among other factors, the amount of Allowed General Unsecured Claims. If the value of Allowed General Unsecured Claims is greater, the value of the Trust Assets will, all else equal, be lower. Importantly, Holders of PI/WD Claims will only be paid pursuant to the Trust Distribution Procedures.

**2.9. Will there be releases and exculpations granted to parties in interest as part of the Plan?**

Yes. The releases and exculpations to be provided under the Plan are described in

"Summary of the Plan — Releases", which begins on page 45.

**2.10. What is the deadline to vote on the Plan?**

Ballots on the Plan must be actually received by the Balloting Agent on or before **October 13, 2026 at 4:00 p.m. prevailing Eastern Time**.

**2.11. How do I vote for or against the Plan?**

Detailed instructions regarding how to vote on the Plan are included on the Ballots distributed to Holders of Claims, or their counsel, as applicable, that are entitled to vote on the Plan. For your vote to be counted, your Ballot must be properly completed, executed, and delivered so that your Ballot including your vote is actually received by the Balloting Agent on or before the Voting Deadline, i.e., October 13, 2026, at 4:00 p.m., prevailing Eastern Time. For further information regarding voting, see the section herein entitled "Voting on the Plan" which begins on page 61 as well as the voting and tabulation procedures included in the Solicitation and Voting Procedures Order, which is attached as Exhibit B.

The Debtors, with the approval of the Bankruptcy Court, have engaged the Balloting Agent. The Balloting Agent will process and tabulate Ballots for all voting Classes.

| **DELIVERY OF BALLOTS** |
| --- |
| Ballots must be **actually received** by the Balloting Agent by the Voting Deadline of 4:00 p.m. prevailing Eastern Time on **October 13, 2026** at the following addresses:<br><br>**If by First Class Mail, Overnight Courier or Overnight Mail (Individual Ballots Only):**<br><br>Uniroyal Holding, Inc. and Great Hill Corporation, Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>**If by Online Submission:**<br><br>Go to the case website (https://omniagentsolutions.com/Uniroyal), click on the "Balloting" tab, select either "Submit Individual Ballot" or "Submit Law Firm Master Ballot", as applicable, and follow the instructions to submit your Ballot.<br><br>If you have any questions on the procedure for voting on the Plan, please contact the Balloting Agent by calling (888) 741-5787 (US & Canada toll free) or (747) 400-0068 (International) or emailing UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc." in the subject line. |

Any Ballot received after the Voting Deadline or otherwise not in compliance with the Solicitation and Voting Procedures Order will not be counted unless ordered by the Bankruptcy Court. The Balloting Agent will accept Master Ballots and related client list exhibits, if properly completed, **only** through the Law Firm Master Ballot Portal accessible on the Balloting Agent's case website at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab, selecting "Submit Firm Master Ballot", and following the instructions; *provided*, however, that the Balloting Agent will accept Master Ballots or exhibits submitted other than through the Law Firm Master Ballot Portal where the submitting party has received prior permission in writing from the Debtors to do so. The Balloting Agent shall have the discretion to, but shall not be obligated to, contact voters to cure any defects in the Ballots.

**2.12. What is the deadline to opt out of the releases included in the Plan?**

Elections with respect to the releases included in the Plan, made via a Master Ballot, Individual Ballot, or Opt-Out Form, must be actually received by the Balloting Agent on or before **October 13, 2026 at 4:00 p.m. prevailing Eastern Time**

**2.13. How do I opt out of the releases included in the Plan?**

For Holders of Claims in the Voting Class (as defined in section 5.2 herein), detailed instructions on how to opt out of the releases contained in the Plan are contained on the Ballots distributed to Holders of such Claims, or their counsel, as applicable, that are entitled to vote on the Plan. To be considered effective, the election with respect to the releases contained in the Plan must be completed in accordance with the instructions on the applicable Ballot and the completed Ballot must be actually received by the Balloting Agent on or before October 13, 2026 at 4:00 p.m. prevailing Eastern Time.

For Holders of Claims in the Opt-Out Classes, detailed instructions on how to opt out of the releases contained in the Plan are contained on the Opt-Out Forms distributed to Holders of such Claims. For your opt-out to be effective, your Opt-Out Form must be properly completed, executed, and delivered as directed, so that your Opt-Out Form is actually received by the Balloting Agent on or before the Voting Deadline, i.e., October 13, 2026, at 4:00 p.m., prevailing Eastern Time. For further information regarding opting out of the releases contained in the Plan, see the section herein entitled "Voting on the Plan" which begins on page 61, as well as the voting and tabulation procedures included in the Solicitation and Voting Procedures Order, which is attached as Exhibit B.

| DELIVERY OF OPT-OUT FORMS |
|---|
| Opt-Out Forms must be **actually received** by the Balloting Agent by the Voting Deadline of 4:00 p.m. prevailing Eastern Time on October 13, 2026 at the following addresses:<br>**If by First Class Mail, Overnight Courier or Overnight Mail:**<br><br>Uniroyal Holding, Inc. and Great Hill Corporation, Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>**If by Online Submission:**<br><br>Go to the case website (https://omniagentsolutions.com/Uniroyal), click on the "Balloting" tab, select "Electronic Opt-Out", and follow the instructions to submit your Opt-Out Form.<br><br>If you have any questions on the procedure for opting out of the releases in the Plan, please contact the Balloting Agent by calling (888) 741-5787 (US & Canada toll free) or (747) 400-0068 (International) or emailing UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc." in the subject line. |

### 2.14. When is the Confirmation Hearing set to occur?

The Bankruptcy Court has scheduled the Confirmation Hearing for October 20, 2026 to take place at [●] [a.m./p.m.] (prevailing Eastern Time) before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of New Jersey, located at 402 East State Street, Trenton, New Jersey. **The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.**

### 2.15. What is the purpose of the Confirmation Hearing?

The consummation of a plan of reorganization is the principal objective of a chapter 11 case. The confirmation of a plan of reorganization by a bankruptcy court binds a debtor, any person acquiring property under the plan of reorganization, any creditor or interest holder of a debtor and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan of reorganization discharges a debtor from any debt that arose before the effective date of a plan and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation and be heard at the Confirmation Hearing.

### 2.16. Do the Debtors recommend voting in favor of the Plan?

Yes. It is the Debtors' opinion and belief that the Plan provides for a larger distribution to the Debtors' creditors than would result from any other available alternative. The Debtors believe the Plan is in the best interests of all Holders of Claims and Interests. Any other alternative, including a delayed confirmation and extended chapter 11 process or a liquidation under chapter 7 of the Bankruptcy Code, would realize lesser value than the value to be afforded under the Plan. Thus, the Debtors recommend that Holders of Claims and Interests who are entitled to vote on the Plan vote to accept it.

## SECTION 3.
## BACKGROUND ABOUT THE DEBTORS AND THE CHAPTER 11 CASES

### 3.1. Overview of the Debtors, Their History, and Their Corporate Structures

Uniroyal Holding, Inc. ("**Uniroyal**") was incorporated as a wholly-owned subsidiary of Uniroyal, Inc. ("**Inc**") in 1985 as part of the acquisition and subsequent reorganization of Inc. Uniroyal's principal objectives for the last 41 years have been to provide post-employment welfare benefits, the most significant of which are medical and life insurance benefits, to certain retirees of discontinued businesses of Inc and retirees of Uniroyal (the "**Retiree Benefits Program**"), and to manage various types of litigation. The most significant litigation in terms of cost involves claims against Uniroyal that are attributable to, arise from, are based upon, relate to, or result from an alleged personal injury tort or wrongful death claim related to asbestos asserted under any legal theory, and any derivative claim arising therefrom. Uniroyal has not had any operating businesses since its formation. In order to satisfy its obligations, Uniroyal manages a portfolio of financial assets which has consisted principally of cash and marketable securities. Over the last 30 years, that portfolio has earned an average rate of return annually of nearly 7%, which is particularly impressive given that Uniroyal has a constant and continuing obligation to fund benefits, litigation and operating expenses and must, therefore, invest conservatively.

Uniroyal has always kept its expenses to the bare minimum. It has operated out of the same leased office and storage space in a converted warehouse in Naugatuck, Connecticut for 35 years. Uniroyal currently has a total of only five employees—three full-time and two part-time. The tenure of those employees with Inc and Uniroyal ranges from 20 to over 55 years. All are past normal retirement age, ranging in age from 69 to 73. They have spent most, if not all, of their careers at Uniroyal and possess knowledge of the company that is essential to conducting its business and would be impractical, or perhaps even impossible, to replace.

In the early 1990s, three developments occurred almost simultaneously that threatened Uniroyal's continued viability. First, annual retiree medical and drug costs escalated dramatically. Second, Uniroyal's role in asbestos litigation as a minor defendant changed as asbestos plaintiff lawyers expected Uniroyal to take the place of larger and now bankrupt defendants and pay the same amount that such other defendants had been paying. Third, Uniroyal's settlement with its first-layer insurance carriers, which had largely funded its asbestos litigation costs, was running out. The escalating costs of benefits and tort litigation were challenging for Uniroyal, especially since Uniroyal had no operating businesses and could not pass on these increased costs by traditional methods such as developing new products or raising prices to customers. Operating

costs were already minimal. Rather, Uniroyal had only its investment portfolio (which, as described above, could only be invested conservatively) and the possibility of recovery from upper layer excess insurers of Inc. As described in detail below, Uniroyal management successfully dealt with each of these three threats making periodic adjustments to manage its obligations, leading to the current structure and mix of assets and liabilities to be resolved through these Chapter 11 Cases.

### 3.1.1. History of the Debtors

Inc, which was a public company, was organized in New Jersey in 1892 as the "United States Rubber Company." Its original business model was to consolidate the fragmented rubber-footwear industry by centralizing purchasing and selling and cross-plant product allocation, and realizing economies of scale. In 1896, it was listed as one of the original 12 companies on the Dow Jones Industrial Average, trading under the ticker "R".

Inc expanded rapidly through a combination of acquisitions, organic growth, and development and application of new technologies, eventually becoming a business conglomerate that included general rubber, tire, chemical, industrial-products, and synthetic-rubber enterprises. Inc also achieved backward integration into the rubber raw material supply chain by establishing rubber plantations in Sumatra and present-day Malaysia, eventually becoming one of the world's largest natural rubber producers.

In the First World War, Inc was a key supplier of essential war supplies. It retooled to support the war effort, and by the end of the war, it had produced vast quantities of gas masks, rubber boots, and solid and pneumatic tires. Reporting indicates that it contributed about one-third of the 4.5 million pneumatic tires produced in the United States during that period.

In the Second World War, Uniroyal played an even more vital strategic role. It was a critical producer of key wartime materials, converting its existing production facilities into munitions and ordnance supplies in support of the war effort. In addition to these activities, in order to address and compensate for the United States' loss of access to significant portions of the world's natural rubber supply and increased wartime demand for rubber materials, Inc was a key participant in a consortium of rubber companies that worked directly with the United States government to develop and produce a general-purpose synthetic rubber. Also, at this time, Uniroyal developed, at the request of the U.S. Navy, a patented lightweight asbestos-containing cloth. That cloth, along with rubber, was classified by the government U.S. War Production Board as a "critical" war material. Prior to its use, pipes on ships had been insulated with cotton-duck fabric, which acted like a wick in the event of a shipboard fire. Fires were a constant threat on war ships as they threatened to engulf vessels that had limited means of fire suppression. Lightweight cloth was especially important since its use allowed for more armament. During World War II, Inc received many U.S. Government ("E") awards for excellence in production for outstanding contributions to the war effort.

Starting in the 1960s, Inc rebranded from "United States Rubber" to "Uniroyal" to reflect the expansion of its enterprises to include chemicals, plastics, and industrial products and create a unified corporate identity. Like many other old and storied U.S. companies, Inc faced an increasingly difficult business environment in this period—increased foreign competition, challenging economic conditions, labor unrest, and aging plants requiring substantial investments.

However, under new management, Inc began to turn the corner and return to profitability. Uniroyal closed or sold unprofitable businesses, slashed costs, developed new products and refocused on core businesses.

As a result of that nascent turnaround, Inc entered the 1980s as an attractive acquisition target due to its diversified portfolio of businesses and potential for growth. In early 1985, following a hotly contested hostile takeover attempt by a corporate raider who, it was feared, would destroy the company and renege on obligations to retirees and employees, Inc became privately rather than publicly owned. The private owners consisted of three groups—its management team, Clayton & Dubilier Private Equity Fund Ltd. Partnership, an investment fund, and a collection of various other private investors.

Subsequent to the transaction described above, Inc reorganized as a holding company to increase its flexibility in financing and in operations, as well as to facilitate the disposition of its businesses, if that became advisable, and decrease costs in connection therewith. To effectuate this goal, Inc engaged in a series of transfers of domestic and foreign assets and liabilities to six newly-created and wholly-owned subsidiaries. These transfers resulted in the reorganization of its corporate structure along operational lines (the "**1985 Restructuring**"). That structure was as follows:



**UNIROYAL STRUCTURE CHART AS OF THE PETITION DATE**




Each of Inc's subsidiaries formed in connection with the 1985 Restructuring received the assets and, subject to its right to make claims against Inc's insurance, assumed the liabilities associated with the relevant predecessor operating division. Each also indemnified Inc for those assumed liabilities. After the reorganization, Uniroyal was the holder of equity interests in the newly formed Uniroyal Tire Company, Inc. ("**Tire**"). Tire received Inc's domestic and foreign tire, tire cord, and synthetic rubber operations. At the time of the reorganization, Tire was Inc's largest and highest-revenue business line. Uniroyal also assumed responsibility for the liabilities of certain then-discontinued business lines and products of Inc, including the former consumer products, footwear, belting, hose, and asbestos textile operations of Inc.

In August 1986, Tire formed a joint venture with the B.F. Goodrich Company ("**Goodrich**"). Tire and Goodrich each assigned their tire company assets and liabilities to a new partnership, the Uniroyal-Goodrich Tire Company ("**UGTC**"), which operated the combined businesses under new management. In return for its contribution of the tire business, Tire received net cash proceeds and a 50% interest in the tire partnership. Uniroyal became an indirect, passive investor in UGTC.

As set forth in the preceding structure charts, the other subsidiaries formed as part of the 1985 Restructuring were subsequently sold or dissolved, and, in December 1986, Inc and its parent, CDU Holding, Inc were each dissolved in accordance with applicable state law and a liquidating trust formed to administer the liquidation of assets.

In May 1990, Tire sold its partnership interest in UGTC to *Compagnie Générale des Établissements Michelin*. Tire was liquidated and distributed the net proceeds to Uniroyal and, subsequently, allowed its corporate registration to lapse in 2007. The Debtors have not had any interest in an operating business since that time.

In October 1997, the liquidating trust formed to liquidate Inc's assets terminated. In connection with the termination of that trust, Uniroyal agreed to assume certain of the remaining liabilities of the trust in exchange for cash, insurance, and tangible and intangible assets of the trust. In order to mitigate the risk of assuming unforeseen liabilities, Uniroyal formed Great Hill to assume all unknown liabilities of the Inc liquidating trust in exchange for cash consideration. Subsequently, to maximize returns on assets, Great Hill loaned that cash to Uniroyal as evidenced

by an interest-bearing intercompany promissory note executed by Uniroyal on July 20, 1998 (the "**Intercompany Note**").

In January of 2004, Uniroyal contributed funds to a stand-alone entity, Naugatuck Partners, LLP, a Delaware limited liability partnership ("**Naugatuck**") as a form of private insurance to provide a third layer of defense for its then current and future directors and officers against claims in the event that Uniroyal does not indemnify them and Uniroyal's directors and officers insurance policy does not provide a defense. Uniroyal funded Naugatuck $3.25 million at its formation. Uniroyal benefitted from, and continues to benefit from, this arrangement because it provides and provided inducement to directors and officers to serve and continue to serve Uniroyal and its affiliates free from undue concern that they will not be so protected.

*a. Management of Retiree Benefit Plan Obligations*

The first major challenge addressed in the 1990s was the growing costs associated with the Retiree Benefits Program. When Uniroyal assumed the obligations under the Retiree Benefits Program in 1985, those benefits—essentially full coverage for medical, drug, and life insurance benefits—were typical for the period. Uniroyal's retirees fell into two groups—union and salary. These benefits were important to retirees, especially since their pensions, which had no cost-of-living increases, averaged only $200 per month.

There were more than 10,000 beneficiaries receiving benefits under the Retiree Benefits Program when Uniroyal first assumed liability for the Retiree Benefits Program.

Beginning in the late 1980s and continuing through the 1990s, the cost of medical and drug benefits skyrocketed. As with asbestos costs, Uniroyal management realized that these increased costs would quickly become unsustainable. However, Uniroyal was not easily able to reduce the level of benefits since they were arguably locked in by a 1970s union contract for wage retirees and by a federal court class action settlement entitled *Tourangeau v. Uniroyal, Inc.* for salary retirees. Annual costs exceeded $15 million dollars per year.

Uniroyal management commenced negotiations with both groups of retirees with the goal of reducing the benefits to be more in line with then-market benefit levels. Uniroyal retirees recognized the serious threat to Uniroyal's continued viability that would be posed by the increasing cost of benefits and PI/WD Claims, and they agreed to substantial reductions in benefits and increased financial contributions by them. In return for the retirees' agreement to reduce their level of benefits, Uniroyal established four voluntary employee beneficiary associations (the "**VEBAs**") to fund the benefits. By law, the assets of those VEBAs could only be used for payment of retiree welfare benefits and their assets could never revert to Uniroyal. The VEBAs provided needed assurance to the retirees that in the event of Uniroyal's demise, they would continue to receive benefits, funded from the assets available under the VEBAs.

Over the next several decades, as the overall benefits environment in the United States evolved, Uniroyal continued to make further reductions in retiree benefits and retirees continued to pay more toward the cost of those benefits. This was always done with the agreement of both groups of retirees. For example, when HMO providers became widely available in the 1990s, retirees agreed to make an HMO their principal medical program substituting for more expensive

traditional insurance. Similarly, when Part D drug coverage became available under Medicare in 2006, retirees agreed to drop their previous drug coverage under the Retiree Benefits Program, which also resulted in substantial savings. For approximately the last 25 years, retiree contributions and the annual deductibles have continued to increase on a regular schedule. Their per-person deductible has increased from $0 to $2,000 per year. In return for the retirees' agreements over time to modify and reduce their benefits, Uniroyal has also made additional contributions to their VEBAs. The consensual modifications to the Retiree Benefits Program have resulted in retiree responsibility for a major portion of the cost of their present benefits. This reduction in retiree benefits is comparable to the reduction in payments made to PI/WD Claimants over the years as set forth in greater detail below.

As of the Petition Date, the number of retirees has declined to 140. The retirees' average age is now 92. Over the years, Uniroyal has been managing the Retiree Benefits Program. As Uniroyal's remaining employees are now well past typical retirement age and wish to retire themselves, a new provider must be found to administer and take responsibility for the retirement program that will continue to provide for retiree benefits.

Over the years from time to time, Uniroyal investigated the possibility of having a third party take over the benefit obligations. With the assistance of its professional advisors including Mercer Health & Benefits LLC ("**Mercer**"), Uniroyal has now identified a party to administer and pay benefits to retirees as described in section III of the *Declaration of Robert V. D'Angelo, Jr. in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, which is available on the public docket in the Bankruptcy Court. As described below, Uniroyal has made arrangements with AAA creditworthy insurers to assume payment of benefits to these beneficiaries. The funding for that assumption will be made from dedicated trust funds (the remaining VEBA assets) and will not diminish Uniroyal's assets available to satisfy PI/WD Claimants and other creditors.

*b. PI/WD Claims*

The second major challenge addressed in the 1990s was an avalanche of PI/WD Claims that could not have been reasonably anticipated at the time of Uniroyal's formation. In the 1980s when Uniroyal was formed, Inc faced a relatively small number of PI/WD Claims related to its production and sale of asbestos textile products, including fire-resistant asbestos fabric installed on U.S. Navy vessels toward the end of World War II. The business line had been discontinued in early 1976. Uniroyal was one of six original asbestos textile manufacturers, and the smallest measured by product produced and sold. PI/WD liabilities associated with asbestos textiles were expressly assumed by Uniroyal pursuant to that certain Restated Assumption of Liabilities and Indemnification Agreement dated October 27, 1985 (the "**Restated Assumption**") as part of the 1985 Restructuring.

At the time of Inc's dissolution in 1986, there were approximately 2,800 PI/WD Claims pending against it. Inc had collectively litigated or settled more than 2,400 PI/WD Claims at an aggregate total cost of $6.7 million. At this time, Uniroyal was considered a minor defendant in the asbestos litigation.

In connection with the dissolution of CDU Holding, Inc. and Inc, the boards of directors of each of the foregoing carefully considered whether Uniroyal had sufficient assets to satisfy its

outstanding liabilities. Their consideration included (a) detailed analysis and projections of current and future liabilities, including liability exposure to PI/WD Claims; (b) analysis of Uniroyal's available insurance coverage; (c) the commission of a third-party expert's analysis of Uniroyal's going concern value; and (d) consideration of such expert's report finding that Uniroyal was adequately capitalized to handle all known and anticipated liabilities (including PI/WD Claims).

Beginning in the early 1990s, which was nearly a decade after Inc's dissolution, the total number of PI/WD Claims asserted against Uniroyal as well as the cost to settle such claims began to increase dramatically. From a total of approximately 2,800 PI/WD Claims pending against Uniroyal in 1986, general filings of cases escalated from 18,975 in 1993 to 36,673 in 1995, to 48,197 in 2001 and to a high-water mark of 70,107 new filings in 2002. This increase was largely due to the exit of the historical front-line defendants as they filed for bankruptcy. Eventually, over 100 defendants filed for bankruptcy due to asbestos claims. Those include large companies such as Johns-Manville, Raybestos-Manhattan, Amatrex, GAF, W.R. Grace, and many others. In fact, Uniroyal may be the last, or one of the last, asbestos product manufacturers to file for bankruptcy.

For the last 40 years, Uniroyal has successfully settled or defended claims against it and managed its liabilities, but the sheer number of asserted litigation claims is massive and will quickly become unmanageable upon retirement of the current Uniroyal employee team that has actively directed and coordinated this effort. Since Uniroyal's formation more than 40 years ago, 516,656 PI/WD Claims have been filed against it. Uniroyal has resolved and made payments of just under $500 million for 216,994 of those cases. 264,232 of those claims were dismissed without payment, leaving a total of just over 35,000 pending cases. Uniroyal has paid an additional amount of $160 million in defense costs.

A key example of Uniroyal's active management of its asbestos liability is what it calls the "**GIC Plan**", an innovative arrangement developed in response to the threat posed by the avalanche of new cases in the mid-1990s as other defendants filed for chapter 11. The plan was essentially a credit enhancement device pursuant to which Uniroyal would deposit funds in a trust fund for each asbestos plaintiff law firm. Those funds were intended to be protected in the event Uniroyal was forced to file bankruptcy. The quid pro quo for establishment of those trust funds was a significant reduction in settlement value and removal of Uniroyal from active asbestos litigation. To fund the trust, Uniroyal originally purchased guaranteed investment contracts from extremely credit-worthy issuers, typically "AAA", and later used assigned receivables from its insurance settlements to fund the trusts.

The vast majority of asbestos plaintiffs' law firms agreed to this GIC Plan after a representative of Uniroyal's management team personally met with each such law firm and shared details of Uniroyal's financial situation and its goals to continue to provide benefits for retirees, albeit at sharply reduced but affordable levels. As a result, Uniroyal was able to reduce its asbestos settlement costs by over 90% and virtually eliminate all of its legal defense costs for asbestos, which went from a high of $15 million annually to less than $500,000 annually. These defense cost savings benefited PI/WD Claimants by maximizing value available to honor legitimate claims.

*c. Insurance Litigation*

The third major challenge addressed in the 1990s was the depletion of available insurance

proceeds. Under the Restated Assumption, Uniroyal's assumption of liabilities from Inc was subject to Uniroyal's right to whatever coverage was available under Inc's comprehensive general liability insurance policies. Those included liabilities for PI/WD Claims. As first layer coverage was running out in the early 1990s, Uniroyal commenced a lawsuit in New Jersey against all of its more than 30 upper-layer insurance companies. That litigation, *Uniroyal, Inc. v. American Reinsurance Co., et al.*, lasted for nearly a dozen years and involved complex issues that included policy triggers, allocation, annual limits, defense cost availability, and deductible application. Following receipt of a series of favorable rulings at the trial court, Uniroyal entered into settlement agreements with most of the defendant insurance carriers pursuant to which Uniroyal eventually received nearly $400 million in payments. Uniroyal used these payments, together with over $181 million of Uniroyal's other funds, exclusively to fund the settlement and defense of PI/WD Claims through the Petition Date. This amount was in addition to the nearly $100 million received from first-layer excess insurers as a result of litigation commenced in the mid-1980s by Inc.

The non-settling insurance carriers appealed the trial court's decisions. The appellate court reversed virtually all of the trial court's rulings in favor of Uniroyal. The effect of the appellate court's rulings, particularly the ruling on per-occurrence deductibles, which the court determined should apply to each and every asbestos claim without a cap or "stop-loss", meant that Uniroyal would have received no insurance proceeds had it not reached the settlements that it did.

*d. Corporate Governance*

Since resolving the major challenges of the 1990s, Uniroyal's dedicated staff has continued to provide retirement benefits and satisfy PI/WD Claims in accordance with the applicable agreements and policies, successfully disposed of non-PI/WD tort and environmental claims without any material verdicts, and otherwise maximized the value Uniroyal's limited assets for the benefit of all stakeholders at the time of their ultimate distribution.

The Uniroyal board of directors currently consists of three members: Alfred F. Ingulli, and Robert V. D'Angelo, Jr., and William H. Henrich, who is a restructuring professional who was elected on April 11, 2025, to serve as an independent and disinterested director. The board of directors of Great Hill Corporation ("**Great Hill**") currently consists of Anthony A. Valentino, Jr., and Robert V. D'Angelo, Jr.

Uniroyal has five employees as described above. Great Hill has no employees. A list of Uniroyal's and Great Hill's officers is included below.

| Uniroyal Officers | |
|---|---|
| Position | Name |
| President, General Counsel, and Secretary | Robert V. D'Angelo, Jr. |
| Vice President and Manager, Legal Administration, and Assistant Secretary | Joanne Ciriello |
| Vice President and Treasurer | Anthony A. Valentino, Jr. |

| Great Hill Officers | |
|---|---|
| Position | Name |
| President and Treasurer | Anthony A. Valentino, Jr. |
| Vice President and Secretary | Robert V. D’Angelo, Jr. |
| Assistant Secretary | Joanne Ciriello |

*e. Capital Structure*

The Debtors have no third-party funded debt. Great Hill is the beneficiary of the Intercompany Note, which is described above in section 3.1.1. The Intercompany Note has an interest rate of the one-year Treasury bill plus .75 and a maturity date of July 20, 2003, which was subsequently extended to July 20, 2013, and extended again to July 20, 2028. As of the Petition Date, the unpaid balance on the Intercompany Note, consisting of principal and accrued interest, was $2,471,496.77.

In the ordinary course of business, the Debtors incur various fixed, liquidated, and undisputed payment obligations (the “**Ordinary Course Claims**”) to various entities that provide goods and services to facilitate the Debtors’ business operations. As of the Petition Date, the Debtors estimate that the aggregate amount of Ordinary Course Claims outstanding was approximately $1,000.

Uniroyal is the direct corporate parent of Great Hill. Approximately 32.5% of the fully diluted stock of Uniroyal is held by the Clayton & Dubilier Private Equity Fund Ltd. Partnership. The remainder is disparately held, with no other party holding more than 5.0% of the fully diluted stock. Uniroyal has never issued a dividend or distribution to its shareholders.

**3.1.2. Circumstances Leading to the Chapter 11 Cases**

For the reasons detailed above, the Debtors engaged Alvarez & Marsal, financial advisor to the Debtors (“**A&M**”), and Debevoise & Plimpton LLP, counsel to the Debtors, (collectively with A&M and the Debtors’ other advisors, the “**Advisors**”) to consider the terms of a final disposition of their assets, resolution of their liabilities, and cessation of their activities.

Beginning in August 2025, the Debtors have engaged with several law firms representing a significant number of PI/WD Claims. Those law firms subsequently formed an *ad hoc grou*p (the “**Ad Hoc Group**”) and retained Brown Rudnick LLP, as legal advisor, and Province LLC, as financial advisor.

The Debtors cooperated with the Ad Hoc Group’s extensive diligence process, including funding the work of its professionals and providing access to the Debtors’ management team and professionals and thousands of pages of documentation dating back to and before the 1985 Restructuring. The Debtors and the Ad Hoc Group engaged in good-faith negotiations. After months of discussions, the Debtors and the Ad Hoc Group agreed on the key terms of the Plan and executed that certain Restructuring Support Agreement (the “**RSA**”) on July 31, 2026.

In parallel with this process, the Debtors engaged in an extensive search to identify a third party willing to assume administration of the Debtors’ Retiree Benefits Program that were fully

funded as described above in section 3.1.1. Despite the best efforts of the Debtors and their professionals, the Debtors were unable to identify a third party willing to continue to administer the Debtors' Retiree Benefit Obligations in a cost-effective manner that would provide retirees continuity of medical benefits for life in the current format.

Accordingly, the Debtors engaged Mercer to help identify potential modifications that could be made to Uniroyal's Retiree Benefits Program that would provide an avenue for the beneficiaries thereof to receive the promised life insurance benefits and to continue to receive meaningful financial support to obtain similar medical and drug benefits during their lifetimes and release Uniroyal from its obligations.

The Debtors, Mercer, and Debevoise engaged in extensive analysis of Uniroyal's retiree population, market data, available coverage options, and the restrictions and requirements applicable to the VEBAs. Following this analysis, the Debtors, in consultation with their Advisors, determined that the structure most likely to achieve these goals was the purchase of an annuity to fund stipends that beneficiaries could use to purchase insurance coverage through an exchange administered by an exchange services provider. The exchange services provider would also advise beneficiaries regarding the selection of plans based on their health needs, available funding, and current medical providers. The Debtors originally anticipated that replacement life insurance coverage would be incorporated into this overall arrangement.

Mercer then conducted a thorough market process to identify interested providers. Mercer obtained six bids in connection with this process: one bid to provide replacement life insurance coverage, one bid to provide an annuity, and four bids to provide exchange services. The terms of the bids required the Debtors to make a preliminary determination by July 31, 2026, as to which bids to pursue in order to ensure sufficient time for implementation. Any modification of the Retiree Benefits Program remains subject to review and approval by the Bankruptcy Court.

In parallel with this process, in order to obtain feedback from the beneficiaries of the Retiree Benefits Program, the Debtors considered various options for counsel for retirees and ultimately facilitated introductions between beneficiaries of the Retiree Benefits Program and Porzio, Bromberg & Newman, P.C. ("**Porzio**"). Certain beneficiaries of the Retiree Benefits Program have formed an ad hoc group of beneficiaries (the "**Retiree Ad Hoc Group**") and engaged Porzio to represent them.

The Debtors have consulted with Porzio regarding the terms of the bids, including by providing Porzio with access to supporting documents and the opportunity to discuss the bids with Mercer and the Debtors' management team. Following those discussions, the Debtors, in consultation with Porzio, selected three bids to pursue: the bid to provide replacement life insurance coverage, the bid to provide an annuity, and one bid to provide exchange services from a provider offering integration with the provider bidding on the annuity. The Debtors believe that, taken together, the arrangements contemplated by the selected bids will provide most if not all beneficiaries of the Retiree Benefits Program with the same or better benefits than they currently receive under the Retiree Benefits Program.

The Debtors continue to coordinate with the selected providers and engage with Porzio and the Retiree Ad Hoc Group regarding the terms of the proposed modification. In order to ensure

that the interests of beneficiaries are fully considered in these chapter 11 cases, the Debtors will request that the Bankruptcy Court order the appointment of an official committee of retirees.

## 3.2. Events During the Chapter 11 Cases

### 3.2.1. *First Day Motions*

On July 31, 2026 (the "**Petition Date**"), the Debtors filed these Chapter 11 Cases. Contemporaneously herewith, the Debtors filed motions with the Bankruptcy Court seeking relief designed to, among other things, enable a smooth transition into chapter 11. Specifically, the Debtors sought orders authorizing them, on an interim basis, to continue to access their prepetition bank accounts [Docket No. [●]] and to continue to pay and honor prepetition wages and benefits [Docket No. [●]].

The Debtors also sought to implement the Plan expeditiously in keeping with the RSA. To that end, also on the Petition Date the Debtors filed the proposed Plan and this Disclosure Statement and a motion for entry of an order (a) approving this Disclosure Statement, (b) approving, among other things, the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan and certain vote tabulation procedures, as well as permitting Holders of Claims and Interests to opt out of certain releases granted under the Plan, (c) establishing the deadline for filing objections to the Plan, and (d) scheduling the Confirmation Hearing [Docket No. [●]].

All motions and orders for relief entered in these Chapter 11 Cases, can be viewed free of charge upon written or other request to the Balloting Agent by: (a) emailing the Balloting Agent at UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal" in the subject line; (b) visiting the Debtors' restructuring website https://omniagentsolutions.com/Uniroyal; or (c) calling the Balloting Agent at (888) 741-5787 (toll free from US / Canada) or (747) 400-0068 (International). You may also obtain copies of any pleadings filed with the Bankruptcy Court for a fee via the Bankruptcy Court's website at https://www.njb.uscourts.gov.

The Debtors propose the following schedule with respect to solicitation and confirmation of the Plan.

| EVENT | DATE | DESCRIPTION |
|---|---|---|
| Disclosure Statement Objection Deadline | September 3, 2026, at 4:00 p.m. prevailing Eastern Time | Date by which objections to approval of the Disclosure Statement must be filed with the Court. |
| Disclosure Statement Objection Reply Deadline | September 7, 2026 | Date by which replies to objections to approval of the Disclosure Statement must be filed with the Court (the "**Disclosure Statement Objection Reply Deadline**"). |
| Voting Record Date | September 7, 2026 | Date to determine which Holders of Claims are entitled to vote on the Plan (the "**Voting Record Date**"). |

| EVENT | DATE | DESCRIPTION |
|---|---|---|
| General Bar Date | September 8, 2026 at 5:00 p.m. prevailing Eastern Time | Date by which all entities[5] must file proofs of claim for prepetition claims (other than PI/WD Claims, claims held by a governmental unit,[6] Supplemental Claims, or Rejection Claims including secured claims, unsecured priority claims, unsecured non-priority claims, and claims arising under section 503(b)(9)), so that such proofs of claim are actually received by Omni Agent Solutions, Inc., in its capacity as claims and noticing agent ("**General Bar Date**"). |
| Disclosure Statement Hearing | September 10, 2026, at [●] prevailing Eastern Time | Hearing on approval of the Disclosure Statement and this Motion (the "**Disclosure Statement Hearing**"). |
| Solicitation Deadline | Two business days following entry of the Solicitation and Voting Procedures Order (or as soon as reasonably practicable thereafter) | Date by which the Debtors will distribute Solicitation Packages (as defined in the Solicitation and Voting Procedures Order) to Holders of Claims in the Voting Class and Non-Voting Notices (as defined in the Solicitation and Voting Procedures Order) to Holders of Claims and Interests in the Release Opt-Out Classes (the "**Solicitation Deadline**"). |
| Publication Deadline | Two business days following entry of the Solicitation and Voting Procedures Order (or as soon as reasonably practicable thereafter) | Date by which the Debtors will cause the Publication Notice (as defined in the Solicitation and Voting Procedures Order) to be published (the "**Publication Deadline**"). |
| Deadline to File Plan Supplement | October 6, 2026 | Date by which the Debtors will file the Plan Supplement. |

[5] As used herein, the term "entity" has the meaning given to it in section 101(15) of the Bankruptcy Code and includes, among other things, a "person" as such term is defined in section 101(41) of the Bankruptcy Code

[6] As used herein, the term "governmental unit" has the meaning given to it in section 101(27) of the Bankruptcy Code

| EVENT | DATE | DESCRIPTION |
|---|---|---|
| Voting Deadline | October 13, 2026, at 4:00 p.m. prevailing Eastern Time | Date by which all Ballots and Opt-Out Forms must be actually received by the Balloting Agent. |
| Plan Objection Deadline | October 13, 2026, at 4:00 p.m. prevailing Eastern Time | Date by which objections to confirmation of the Plan must be filed with the Court. |
| Plan Objection Reply Deadline | October 16, 2026 | Date by which the Debtors must file their brief in support of confirmation of the Plan and reply to any objections (the "**Plan Objection Reply Deadline**"). |
| Deadline to File Certification of Balloting | October 17, 2026 | Date by which the report tabulating the voting on the Plan shall be filed with the Court. |
| Confirmation Hearing | October 20, 2026 at [●]. prevailing Eastern Time | Date of hearing for confirmation of the Plan (the "**Confirmation Hearing**"). |
| Government Bar Date | January 27, 2027 at 5:00 p.m. prevailing Eastern Time | Date by which any governmental unit must file a proof of claim for a prepetition claim, including governmental units with claims against the Debtors for unpaid taxes, whether such claims arise from prepetition tax years or periods or prepetition transactions to which the Debtors were a party ("**Government Bar Date**") |

## SECTION 4.
## SUMMARY OF THE PLAN

THE FOLLOWING IS A SUMMARY OF SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN. CREDITORS ARE URGED TO READ THE PLAN IN ITS ENTIRETY.

### 4.1. Unclassified Claims

The Plan provides that, in accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims are not classified for purposes of voting or receiving distributions. Rather, the Plan treats all such Claims separately as unclassified Claims as set forth in section 2 of the Plan, and the Holders thereof are not entitled to vote on the Plan.

#### 4.1.1. Administrative Claims and Priority Tax Claims

The Plan provides that, except for (a) Professional Fee Claims, (b) Claims for U.S. Trustee Fees, or (c) Governmental Claims that are subject to section 503(b)(1)(D) of the Bankruptcy Code, all Holders of Administrative Claims must File with the Balloting Agent and serve on the Plan Administrator requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to be actually received on or before the Administrative Claim Bar Date.

The Plan further provides that, to the extent not already paid as of the Effective Date and unless otherwise agreed to by the Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim, each Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim will receive payment in full, as soon as practicable after (a) the Effective Date but in no event later than 30 days after the Administrative Claim Bar Date, or (b) the date such Administrative Claim or Priority Tax Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, to be paid in Cash or pursuant to such other treatment as may be agreed upon by the Holder of such Claim and the Debtors or the Plan Administrator, as applicable.

In addition, under the Plan any Person or Entity who is required to timely file an Administrative Claim or Priority Tax Claim but fails to do so will not be treated as a Holder with respect to such Claim for Plan Distribution purposes in these Chapter 11 Cases. The notice of the Effective Date of the Plan that will be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) will set forth the Administrative Claim Bar Date and will constitute notice of such Administrative Claim Bar Date.

#### 4.1.2. Professional Fee Claims

The Plan provides that all requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served within 30 days after the Effective Date. The Bankruptcy Court will determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

The Professional Fee Escrow Account will be maintained in trust solely for the Professionals and for no other Entities until all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests will encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account. Funds held in the Professional Fee Escrow Account will not be considered property of the Debtors or their Estates.

Allowed Professional Fee Claims will be paid from the Professional Fee Escrow Account or Cash, as applicable, as and when such Claims are Allowed or otherwise approved for payment by entry of an order of the Bankruptcy Court. When all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account will promptly be transferred to the Trust.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

#### 4.1.3. U.S. Trustee Fees

The Plan provides that on the Effective Date, the Debtors will pay all U.S. Trustee Fees that are due and owing as of the Effective Date. Nothing in the Plan will release the Debtors or the Plan Administrator from their obligation to pay all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by the Bankruptcy Court closing, dismissing or converting the Chapter 11 Cases. The U.S. Trustee will not be treated as providing any release under the Plan regarding the U.S. Trustee Fees. The U.S. Trustee will not be required to file any Proof of Claim or any request for administrative expense for U.S. Trustee Fees. The Debtors will file all monthly operating reports due prior to the Effective Date when they become due. After the Effective Date, the Plan Administrator will file with the Bankruptcy Court all quarterly post-confirmation reports when they become due.

### 4.2. Classification in General

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, a Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution; *provided*, *however*, that a Claim is placed in a particular Class for the purpose of receiving distributions only to the extent that such Claim is Allowed. Voting rights of Claims have been determined by a separate order of the Bankruptcy Court, the Solicitation and Voting Procedures Order, approving solicitation and voting procedures in relation to the Plan.

#### 4.2.1. Classification of Claims and Interests

The following table indicates the Classes of Claims against and Interests in the Debtors and specifies which Classes are: (a) Impaired or Unimpaired by the Plan and (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to accept or reject the Plan. The classification of Claims and Interests indicated below applies separately to each of the Debtors.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | PI/WD Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

#### 4.2.2. Elimination of Vacant Classes

The Plan provides that any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing will be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

#### 4.2.3. Deemed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class will be deemed to have accepted the Plan.

#### 4.2.4. Reservation of Rights Regarding Claims and Interests

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors', the Plan Administrator's, or the Trust's respective rights and defenses with respect to any Claim or Interest, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

#### 4.2.5. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

Because certain Classes are deemed to have rejected the Plan, the Debtors seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Classes and any other Impaired Classes that vote to reject the Plan. Subject to section 11 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

### 4.3. Treatment of Claims and Interests

The treatment of, voting status of, and expected recovery for, Claims and Interests under the Plan is summarized above in "Executive Summary – Overview of the Plan and Distributions under the Plan", beginning at page 1.

### 4.4. Means for Implementation

#### 4.4.1. Restructuring Transactions

The Plan provides that on the Effective Date, the Plan Administrator and Trustee will enter into any transaction and take any reasonable actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the

terms of the Plan and having other terms for which the applicable Entities agree, (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law, and (d) all other actions that the Plan Administrator and Trustee determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan or the Plan Supplement.

#### 4.4.2. Minimum Trust Recovery

On the Effective Date, the Plan provides that the Debtors will (a) contribute $31.5 million in Cash to the Trust and (b) transfer to the Trust the Debtors' rights and obligations under the Specified Settlement and any postpetition proceeds thereof. Future proceeds from Trust Assets will in no way reduce the Minimum Trust Recovery. The Minimum Trust Recovery will not be reduced, offset, or diminished by the payment of, *inter alia*, Administrative Claims, including Professional Fee Claims.

#### 4.4.3. Sources of Consideration for Plan Distributions

The Plan provides that, subject to the provisions of the Plan concerning the Professional Fee Escrow and the Disputed Claims Reserve, the Debtors, Plan Administrator, or the Trustee (as applicable), will fund Plan Distributions with (a) Cash on hand and (b) Trust Assets.

#### 4.4.4. Trustee

The Plan provides the following with respect to the Trustee:

4.4.4.1. **Powers and Duties of the Trustee.** The Trust will be governed by the Trustee. The powers and duties of the Trustee will include those powers, duties and responsibilities vested in the Trustee pursuant to the terms of the Trust Agreement.

4.4.4.2. **Trust Advisory Committee.** On the Effective Date and pursuant to the Trust Agreement, the Trust Advisory Committee (as defined in the Trust Agreement) will be established. The Trust Advisory Committee will have [●] members selected by the Committee in consultation with the Debtors, whose identities will be set forth in the Plan Supplement. The Trust Advisory Committee will serve in a fiduciary capacity in the administration of the Trust and will have such rights and powers relating to the supervision of the Trust as set forth in Trust Agreement, which rights and powers will include consent and consultation rights over (a) any amendments to the Trust Distribution Procedures and the Trust Agreement, (b) any changes for the forms of acceptance and release under the Trust Distribution Procedures, (c) the prosecution or settlement of Trust Causes of Action, and (d) any loan or financing obtained by the Trust. The Confirmation Order will constitute an order of the Bankruptcy Court appointing the initial members of the Trust Advisory Committee.

### 4.4.5. Trust

The Plan provides the following with respect to the Trust:

**4.4.5.1.** **Establishment of Trust.** On or before the Effective Date, the Trust Agreement will be executed, and all other necessary steps will be taken to create the Trust. On the Effective Date, the Trust will be automatically appointed as a representative of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code for the purposes set forth in the Trust Agreement. From and after the Effective Date, the Trust will succeed to all rights, privileges, and powers of the Debtors and their Estates with respect to the applicable Trust Assets. The Trust will automatically be substituted and will replace the Debtors and their Estates in all Causes of Action, whether or not such Causes of Action are pending in filed litigation.

**4.4.5.2.** **Purposes of Trust.** The purpose of the Trust will be to (a) hold, manage, protect and monetize the Trust Assets and (b) administer, process and satisfy all PI/WD Claims, which for the avoidance of doubt will be submitted exclusively to the Trust and satisfied by the Trust in accordance with the terms, provisions and procedures of the Trust Distribution Procedures. The Trust will have the exclusive power and authority to, among other things, in accordance with the Trust Documents (i) hold, manage, protect and monetize Trust Assets, (ii) commence, prosecute, transfer, settle, compromise, withdraw, or abandon all Retained Causes of Action and Insurance Rights, and (iii) perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Trust and carry out the provisions of this Plan relating to the Trust. The Trust shall be administered and implemented by the Trustee, subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents.

**4.4.5.3.** **Vesting of Trust Assets.** As of the Effective Date, the Trust Assets will vest in the Trust free and clear of all Liens, Claims, encumbrances, charges or other interests to the extent permitted by section 1141 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the transfer of the Trust Assets to the Trust will not diminish, and will fully preserve, any rights and defenses the Debtors would have if such assets had been retained by the Debtors. The Trust and the Trustee, as applicable, through their authorized agents or representatives, will retain and may exclusively enforce the Trust Causes of Action vested, transferred, or assigned to such entity on behalf of the Trust. The Trust or the Trustee, as applicable, will have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Trust Causes of Action and to decline to do any of the

foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, *provided*, *however*, that the exercise of such right, authority, and discretion by the Trustee will be subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents.

4.4.5.4. **Insurance Rights Transfer.** On the Effective Date, the Debtors will transfer to the Trust all their rights in connection with (a) the Insurance Rights, (b) the Insurance Proceeds, and (c) all other rights, claims, benefits, or Causes of Action they have with respect to the Insurance Policies (but not the policies themselves).

4.4.5.5. **Certain Tax Matters of Trust.** The Trust will be intended to qualify, and will be reported, as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under section 468B of the Internal Revenue Code for U.S. federal income tax purposes and will be treated consistently for state and local purposes, to the extent applicable. The Trustee and all holders of beneficial interests in the Trust will report consistently with the foregoing. The Trustee will be the "administrator" of the Trust as such term is used in Treasury Regulation Section 1.468B-2(k)(3) and will be responsible for filing all tax returns of the Trust. The Trust will be responsible for the payment, out of the assets of the Trust, of any taxes imposed on the Trust or the Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Trust Agreement. The Trustee may request an expedited determination of taxes on the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust.

4.4.5.6. **Privileged Information of Trust.** On the Effective Date, any attorney-client privilege, work-product privilege, common-interest communications protection or privilege granted by joint defense, common interest, or other privilege or immunity of the Debtors relating, in whole or in part, to the PI/WD Claims or the Trust Assets will be irrevocably transferred to and vested in the Trust. The Trust will have the same rights as the Debtors in Privileged Information relating to the PI/WD Claims and the Trust Assets. Prior to or on the Effective Date, the Debtors will cause the Data Transfer to occur.

4.4.5.7. **Trust Distribution Procedures.** On the Effective Date, the Trust will implement the Trust Distribution Procedures in accordance with the terms of the Trust Agreement. On or after the Effective Date, the Trustee will have the authority to administer, amend, supplement, or modify the applicable Trust Distribution Procedures in accordance with the terms of the Plan and the Trust Documents, and subject to the consent and consultation rights of the Trust Advisory Committee as provided in the

Trust Documents. The Trust Distribution Procedures will be binding on all Holders of PI/WD Claims. Allowed Claims under the Trust Distribution Procedures will be solely enforceable against the Trust. The Allowed amount of any PI/WD Claim will be the amount determined pursuant to the Plan and the Trust Distribution Procedures. Allowed PI/WD Claims under the Trust Distribution Procedures will be legally enforceable against the Trust. The amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Agreement, as determined or as actually paid by the Trust are not, as such, the equivalent of any Holder's Allowed Claim amount. The Allowance of Claims under the Trust Agreement, including the Trust Distribution Procedures, will not determine, and will not be used to determine, in any respect the liability of any Released Party for any Claim or Cause of Action.

4.4.5.8. **Institution and Maintenance of Legal and Other Proceedings.** As of the Effective Date, the Trust will be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including the Retained Causes of Action in accordance with the Trust Documents. Without limiting the foregoing, on and after the Effective Date, the Trust will be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the Debtors' name to the extent deemed necessary or appropriate by the Trust. Furthermore, without limiting the foregoing, the Trust will be empowered to maintain, administer, preserve, or pursue Insurance Rights.

4.4.5.9. **Preservation of Retained Causes of Action.** On the Effective Date, the Retained Causes of Action will vest in the Trust in accordance with the Trust Documents free and clear of all Claims, Liens, encumbrances, and other interests. On and after the Effective Date, the Trustee shall have discretion to pursue and dispose of the Retained Causes of Action. No Person or Entity may rely on the absence of a specific reference in the Plan or Disclosure Statement as to any Cause of Action as any indication that the Debtors, and on and after the Effective Date, the Trustee, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, will apply to such Causes of Action upon, after, or as a consequence of the Confirmation. Prior to the Effective Date, the Debtor and, on and after the Effective Date, the Trustee, will retain and will have, through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent

or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person or Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Trustee will not pursue any and all available Causes of Action. Unless and until any such Causes of Action against any Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or assigned, or settled under this Plan or a Final Order, the Trustee expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, will apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

**4.4.5.10.** **Trust Discovery.** The Trust is authorized pursuant to Bankruptcy Rule 2004 or other applicable discovery rules to seek discovery necessary to satisfy its obligations under the Plan and the Trust Documents. The Trust will take whatever steps are necessary to enforce such discovery obligations pursuant to Bankruptcy Rules 2004 and 9016, Rule 45 of the Federal Rules of Civil Procedure, other applicable court resolution processes, bankruptcy law, and non-bankruptcy law. Nothing herein will abridge or affect the rights of the Trust or the Trustee to take discovery in any proceeding or litigation brought by the Trust or the Trustee.

**4.4.5.11.** **Litigation Fees.** The Trust will pay any Released Party that is called as a witness, deponent, consultant, expert, or otherwise in any litigation that is related to a Debtor (including discovery): (a) a reasonable and customary per diem payment for a lawyer of commensurate experience and (b) reimbursement of out-of-pocket legal fees for a lawyer of such Released Party's choosing.

**4.4.5.12.** **Indemnification.** The Trust will indemnify each of the Debtors' current and former directors and officers against any asbestos-related claim asserted against them, not to exceed $2 million of total indemnification payments in the aggregate.

**4.4.6. Corporate Action**

The Plan provides that, on the Effective Date and following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors will be dissolved for all purposes. The Plan Administrator will submit with the appropriate governmental agencies a copy of the Confirmation Order, which will suffice for purposes of obtaining a Certificate of Dissolution from the New Jersey Secretary of State and the Delaware Secretary of State.

Without limiting the foregoing, the Plan provides that, on the Effective Date and following

satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors will have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors will be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Plan Administrator and the Trustee, as applicable, will be authorized to act on behalf of the Estates, provided that the Plan Administrator and the Trustee will have no duties other than as expressly set forth in the Trust Agreement, the Plan, or the Confirmation Order.

The Plan further provides that, on and after the Effective Date, the Plan Administrator will act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents will be deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sole director, or governing body of the Debtors will be deemed to have resigned, solely in their capacities as such, and the Plan Administrator will be appointed as the sole manager, sole director, and sole officer of the Debtors, and will succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator will be the sole representative of, and will act for, the Debtors. The foregoing will not limit the authority of the Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement or other agreement entered into on or after the Effective Date. Following the Effective Date, the Plan Administrator will be given full power of attorney and have the authority to execute or endorse documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation, including but not limited to, the filing of final tax returns and the dissolution of the Debtors.

**4.4.7. Cancellation of Existing Securities and Agreements**

The Plan provides that, except as otherwise set forth in the Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, will be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder will be deemed fully satisfied, released, and discharged and, as applicable, will be deemed to have been surrendered to the Plan Administrator. The Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

**4.4.8. Effectuating Documents and Further Transactions**

The Plan provides that, upon entry of the Confirmation Order, the Debtors, the Plan Administrator, and the Trustee (as applicable) will be authorized to execute, deliver, File, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtors, the Plan Administrator, the Trustee, all Holders of Claims receiving Plan Distributions, and all other parties

in interest will prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

#### 4.4.9. Additional Documents

The Plan provides that, on or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator (as applicable), the Trustee, all Holders of Claims or Interests receiving Plan Distributions, and all other parties in interest, will prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

#### 4.4.10. Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, the Plan provides that any transfers of property pursuant to the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents must forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Trust Assets to the Trust.

#### 4.4.11. Authority to Act

The Plan provides that, prior to, on, or after the Effective Date, all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors will be deemed to have occurred and will be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### 4.5. Treatment of Executory Contracts and Unexpired Leases

#### 4.5.1. General Treatment

The Plan provides that, on the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected in accordance with sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

The Plan further provides that assumption of any Executory Contract or Unexpired Lease pursuant to a Bankruptcy Court order, and payment of any Cure amounts relating thereto, will, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in

the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

#### 4.5.2. Rejection Damages Claims

The Plan provides that, if the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim will be forever barred and will not be enforceable against the Debtors, the Estates, the Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within 30 days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease must have been evidenced by a Proof of Claim Filed by the applicable bar date or will be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order will be classified as General Unsecured Claims and will, if Allowed, be treated in accordance with section 3.3 of the Plan.

#### 4.5.3. Reservation of Rights

The Plan provides that neither the exclusion or inclusion of any contract or lease in the Schedules or in any Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator (as applicable) may elect within 30 calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan by filing a notice of such election on the docket of these Chapter 11 Cases.

#### 4.5.4. Preexisting Obligations to Debtors Under Executory Contracts or Unexpired Leases

The Plan provides that rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise will not constitute a termination of preexisting obligations owed to the Debtors, the Trustee, or Plan Administrator (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Plan provides that the Debtors, the Trustee, and the Plan Administrator (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

#### 4.5.5. Insurance Policies

The Plan provides that, notwithstanding anything to the contrary therein, each of the Insurance Policies and any agreements, documents, or instruments relating thereto issued to or

entered into by the Debtors prior to the Petition Date will not be considered Executory Contracts and will neither be assumed nor rejected by the Debtors; *provided*, *however*, that to the extent any such Insurance Policy is determined by Final order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and assign the same to the Trust. The Plan further provides that, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Insurance Policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy will be indefeasible.

#### 4.5.6. D&O Policies

Under the terms of the Plan, each D&O Policy to which the Debtors are a party as of the Effective Date will be deemed an Executory Contract and will be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. Coverage for defense and indemnity under the D&O Policies will remain available to all individuals within the definition of "Insured" in the applicable D&O Policy. In addition, after the Effective Date, the Plan provides that all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date will be entitled to the full benefits of the D&O Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the relevant D&O Policy.

#### 4.5.7. Non-Occurrence of Effective Date

The Plan provides that, if the Effective Date does not occur, the Bankruptcy Court will retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

#### 4.5.8. Employee Compensation and Benefits

The Plan further provides that, except to the extent previously ordered by the Bankruptcy Court in these Chapter 11 Cases, all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and will be treated as, Executory Contracts under the Plan and, on the Effective Date, will be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

### 4.6. Plan Provisions Governing Distributions

The Plan provides the following with respect to distributions thereunder:

#### 4.6.1. Distributions to Holders of PI/WD Claims

All PI/WD Claims will be administered by the Trust pursuant to and in accordance with the Plan and the Trust Distribution Procedures.

#### 4.6.2. Distribution Record Date

On the Distribution Record Date, the claims register will be closed and any party responsible for making Plan Distributions will instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

#### 4.6.3. Disbursing Agent

Except as otherwise provided in the Plan, all Plan Distributions will be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent will not be required to give any bond or surety or other security for the performance of its duties.

The Disbursing Agent may (a) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan; (b) make all Plan Distributions contemplated hereby; and (c) perform such other duties as may be required of the Disbursing Agent pursuant to the Plan.

#### 4.6.4. Compliance with Tax Requirements

In connection with the Plan and all distributions hereunder, the Plan Administrator will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under the Plan will be subject to any such withholding and reporting requirements. The Plan Administrator will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, requiring a Holder of a Claim or Interest to submit appropriate tax and withholding certifications. Notwithstanding any other provision of the Plan: (a) each Holder of an Allowed Claim that is to receive a distribution under the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (b) no Plan Distributions will be required to be made to or on behalf of such Holder pursuant to the Plan if, after 90 days from the date of transmission of a written request to the Holder of an Allowed Claim, the Plan Administrator does not receive a valid, completed IRS form from such Holder of an Allowed Claim.

#### 4.6.5. Date of Distributions

Plan Distributions made after the Effective Date to Holders of Allowed Claims will be deemed to have been made on the Effective Date and no interest will accrue or be payable with respect to such Claims or any Plan Distribution related thereto. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but will be deemed to have been

completed as of the required date.

**4.6.6. Delivery of Distributions**

Subject to applicable Bankruptcy Rules, all Plan Distributions will be made by the Disbursing Agent, who will transmit such Plan Distributions to the applicable Holders of Allowed Claims or their designees.

If any Plan Distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within 90 calendar days after the mailing of such Plan Distribution, the Plan Administrator or Trustee, as applicable, will be authorized to cancel such Plan Distribution and file with the Bankruptcy Court the name and last known address of the Holder of undeliverable Plan Distribution or uncashed Plan Distribution, as applicable. If, after the passage of 30 calendar days after such Filing, the payment or Plan Distribution on the Allowed Claim still cannot be made, then (a) the Holder of such Claim will cease to be entitled to the undeliverable Plan Distribution or uncashed Plan Distribution, which will be transferred to the Trust; and (b) the Allowed Claim of such Holder will be deemed disallowed and expunged for purposes of further Plan Distributions.

**4.6.7. Manner of Payment**

Except as specifically provided in the Plan, at the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

**4.6.8. Foreign Currency Exchange Rate**

As of the Effective Date, any Claim asserted in currency other than U.S. dollars will be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

**4.6.9. Setoffs and Recoupments**

The applicable Disbursing Agent may, but will not be required to, apply, set off against or recoup against any Allowed Claim and the Plan Distributions on account of such Allowed Claim (before any Plan Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors, the Estates, or the Trust may have against the Holder of such Allowed Claim without the need for Bankruptcy Court approval; *provided*, that (a) no less than 14 calendar days notice is provided to the applicable Holder of the Claim prior to setoff or recoupment or such Holder consents, and (b) neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors, the Plan Administrator, or the Trust of any such claim the Debtors, their Estates, or the Trust may have against the Holder of such Claim.

**4.6.10. Minimum Distributions**

No payment of Cash in an amount of less than $100.00 will be required to be made on

account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan. If the Cash available for the final Plan Distribution is less than the cost to distribute such funds, such funds will be transferred to the Trust.

**4.6.11. Allocation of Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Plan Distribution includes both principal and accrued but unpaid prepetition interest, such Plan Distribution will be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

**4.6.12. Distributions Free and Clear**

Except as otherwise provided in the Plan, any Plan Distribution will be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

**4.7. Procedures for Resolving Unliquidated and Disputed Claims**

The Plan provides the following with respect to resolution of unliquidated and disputed Claims:

**4.7.1. Allowance of Claims**

After the Effective Date, the Plan Administrator will have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

**4.7.2. Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator will have the authority to: (a) File, withdraw, or litigate to judgment, objections to Claims or Interests; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**4.7.3. Estimation of Claims**

The Debtors or the Plan Administrator (as applicable) may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or

disallowed from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, will be deemed to be estimated at $0 unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Plan Distributions), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any Plan Distribution on account of such Claim.

**4.7.4. Adjustment to Claims Without Objection**

Any Claim that has been paid or satisfied or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Plan Administrator (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.

**4.7.5. Time to File Objections to Claims**

Except as otherwise provided herein, any objections to Claims must be Filed on or before the applicable deadline to file such objection (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator).

**4.7.6. Disputed Claims Reserve**

The Debtors will prepare a reasonable and good faith estimate, which shall be reasonably acceptable to the Committee, of the projected amount necessary to satisfy Disputed Claims no later than five Business Days prior to the anticipated Effective Date. This estimate will not be considered or deemed an admission or limitation with respect to the amount of any Disputed Claim, and the Holder of any such Disputed Claims will not be bound to any extent by such estimate.

Upon the Effective Date, the Plan Administrator will establish and maintain the Disputed Claims Reserve, which will hold the amount consistent with the estimate made in accordance with section 7.6 of the Plan. Upon the satisfaction or resolution of all Disputed Claims, the Plan Administrator will transfer any amounts remaining in the Disputed Claims Reserve to the Trust.

**4.7.7. No Distributions Pending Allowance**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no Plan Distribution will be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

**4.7.8. Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a Plan Distribution will be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent will provide to the Holder of such Claim the Plan Distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such

Claim. No interest will accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final Plan Distribution is made on account of such Claim.

**4.8. Conditions Precedent to the Effective Date**

The Plan provides that the occurrence of the Effective Date is subject to each of the following conditions precedent:

1. The Bankruptcy Court must have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Plan and Confirmation Order must be in form and substance reasonably acceptable to each of the Debtors and the Committee.

3. The Confirmation Order must have been entered and be in full force and effect.

4. There must have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the material transactions contemplated by the Plan from being consummated.

5. The Professional Fee Escrow must have been fully funded pursuant to the terms of the Plan.

6. All actions, documents and agreements necessary to implement the Plan must have been effected, executed, or tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements must have been satisfied or waived pursuant to the terms thereof (or be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7. The Data Transfer must have occurred.

8. The Plan Administrator must have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

9. The Trustee must have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

10. The Debtors must have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement the Plan and any transaction contemplated hereby that are required by law, regulation, or order.

11. The Trust must have received the Trust Assets, including but not limited to, the Minimum Trust Recovery.

12. The Debtors must be reasonably satisfied with the Release Opt-Outs exercised including that each Party electing to exercise a Release Opt-Out is doing so in a manner consistent with any obligations it owes under the terms of the RSA.

**Waiver of Conditions:** Unless otherwise specifically provided for in the Plan, the Plan provides that the conditions set forth in section 8.1 of the Plan may be waived in whole or in part with the consent of each of the Debtors and the Ad Hoc Group without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### 4.9. Releases

#### 4.9.1. Releases by the Debtors

The Plan provides the following language with respect to releases that will be granted by the Debtors, which every Holder of a Claim or Interest should review in full:

**PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AS OF THE EFFECTIVE DATE, THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II)THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE**

**FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.1 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS SECTION 9.1 BY THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS SECTION 9.1 IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (6) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (7) A BAR TO THE DEBTORS OR THEIR ESTATES, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

**4.9.2. Releases by Holders of Claims and Interests**

The Plan provides the following language with respect to releases that will be granted by Holders of Claims and Interests, which every Holder of a Claim or Interest should review in full:

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE**

**DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO**

**THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**4.9.3. Exculpation and Limitation of Liability**

The Plan provides the following language with respect to exculpation and limitation of liability, which every Holder of a Claim or Interest should review in full:

**AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS EXCULPATED FROM, ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, OR ANY OTHER PARTY IN INTEREST, FOR (1) ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THESE CHAPTER 11 CASES FROM THE PETITION DATE TO THE EFFECTIVE DATE; (2) THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DISCLOSURE STATEMENT OR THE PLAN; (3) THE FILING OF THESE CHAPTER 11 CASES; (4) THE PURSUIT OF CONFIRMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY PERSON OR ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY EXCULPATED PARTY ON THE PLAN, THE CONFIRMATION ORDER, THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER AGREEMENT (WHETHER OR NOT SUCH ISSUANCE OR DISTRIBUTION OCCURS FOLLOWING THE EFFECTIVE DATE); (6) NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING; AND (7) THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED HEREUNDER. THE EXCULPATED PARTIES SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH IN CONNECTION WITH THE ABOVE AND ENTITLED TO THE PROTECTION OF SECTION 1125(E) OF THE BANKRUPTCY CODE. EACH EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR**

**DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.**

**4.9.4. Injunction**

The Plan provides the following injunctive language, which every Holder of a Claim or Interest should review in full:

> **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO THE PLAN; (3) ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN; OR (4) ARE OTHERWISE SATISFIED, STAYED, RELEASED, OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO, ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES, INCLUDING BEING PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE PLAN ADMINISTRATOR, THE TRUST, THE RELEASED PARTIES, OR EXCULPATED PARTIES (AS APPLICABLE): (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH**

**RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING ANY OTHER INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.**

**UPON THE BANKRUPTCY COURT'S ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, OR PRINCIPALS, SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THIS PLAN BY THE DEBTORS, THE PLAN ADMINISTRATOR, THE TRUST, AND THEIR RESPECTIVE AFFILIATES, EMPLOYEES, ADVISORS, OFFICERS AND DIRECTORS, OR AGENTS.**

**NO PARTY MAY COMMENCE, CONTINUE, AMEND, OR OTHERWISE PURSUE, JOIN IN, OR OTHERWISE SUPPORT ANY OTHER PARTY OR ENTITY COMMENCING, CONTINUING, AMENDING, OR PURSUING, A CAUSE OF ACTION OF ANY KIND AGAINST THE DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES THAT RELATES TO, OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, A CAUSE OF ACTION SUBJECT TO SECTION 9.1, SECTION 9.2, OR SECTION 9.3 HEREIN WITHOUT FIRST (1) REQUESTING A DETERMINATION FROM THE BANKRUPTCY COURT, AFTER NOTICE AND A HEARING, THAT SUCH CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM AGAINST SUCH DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY AND IS NOT A CLAIM THAT THE DEBTORS RELEASED UNDER THIS PLAN, WHICH REQUEST MUST ATTACH THE COMPLAINT OR PETITION PROPOSED TO BE FILED BY THE REQUESTING PARTY AND (2) OBTAINING FROM THE BANKRUPTCY COURT SPECIFIC AUTHORIZATION FOR SUCH PARTY TO BRING SUCH CAUSE OF ACTION AGAINST ANY SUCH DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY. TO THE EXTENT THAT ANY PARTY THAT OBTAINS SUCH DETERMINATION AND AUTHORIZATION AND SUBSEQUENTLY WISHES TO AMEND THE AUTHORIZED COMPLAINT OR PETITION TO ADD ANY CAUSES OF ACTION NOT**

**EXPLICITLY INCLUDED IN THE AUTHORIZED COMPLAINT OR PETITION, SUCH PARTY MUST OBTAIN AUTHORIZATION FROM THE BANKRUPTCY COURT BEFORE FILING ANY SUCH AMENDMENT IN THE COURT WHERE SUCH COMPLAINT OR PETITION IS PENDING. THE BANKRUPTCY COURT WILL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CAUSE OF ACTION CONSTITUTES A DIRECT OR DERIVATIVE CLAIM, IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE, WILL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CAUSE OF ACTION.**

**4.9.5. Insurance Entity Injunction**

The Plan provides the following injunctive language with respect to insurance, which every Holder of a Claim or Interest should review in full:

**ALL PERSONS THAT HAVE HELD OR ASSERTED, THAT HOLD OR ASSERT, OR THAT MAY IN THE FUTURE HOLD OR ASSERT ANY CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY BASED UPON, ATTRIBUTABLE TO, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH ANY INSURANCE POLICY, WHENEVER AND WHEREVER ARISING OR ASSERTED, WHETHER IN THE UNITED STATES OF AMERICA OR ANYWHERE ELSE IN THE WORLD, WHETHER SOUNDING IN TORT, CONTRACT, WARRANTY, STATUTE OR ANY OTHER THEORY OF LAW, EQUITY OR ADMIRALTY, SHALL BE STAYED, RESTRAINED, AND ENJOINED FROM TAKING ANY ACTION FOR THE PURPOSE OF DIRECTLY OR INDIRECTLY COLLECTING, RECOVERING, OR RECEIVING PAYMENTS, SATISFACTION, OR RECOVERY WITH RESPECT TO ANY SUCH CAUSE OF ACTION, INCLUDING:**

**(1) COMMENCING, CONDUCTING, OR CONTINUING, IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND (INCLUDING A JUDICIAL, ARBITRATION, ADMINISTRATIVE, OR OTHER PROCEEDING) IN ANY FORUM WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION (INCLUDING, FOR THE AVOIDANCE OF DOUBT, DIRECTLY PURSUING ANY SUIT, ACTION OR OTHER PROCEEDING WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY);**

**(2) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING, BY ANY MEANS OR IN ANY**

**MANNER, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT AWARD, DECREE, OR OTHER ORDER AGAINST ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION;**

**(3) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE AGAINST ANY INSURANCE COMPANY, OR THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION; AND**

**(4) EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF SUBROGATION, INDEMNITY, OR CONTRIBUTION OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION OF ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION;**

***PROVIDED*, *HOWEVER*, THAT (A) THIS INJUNCTION SHALL NOT IMPAIR IN ANY WAY ANY ACTIONS BROUGHT BY THE TRUST AGAINST ANY INSURANCE COMPANY, (B) THE TRUST SHALL HAVE THE AUTHORITY AT ANY TIME TO TERMINATE, OR REDUCE OR LIMIT THE SCOPE OF, THE INJUNCTION WITH RESPECT TO ANY INSURANCE COMPANY, IN ACCORDANCE WITH THE TRUST DOCUMENTS, UPON EXPRESS WRITTEN NOTICE TO SUCH INSURANCE COMPANY, AND (C) THIS INJUNCTION IS NOT ISSUED FOR THE BENEFIT OF ANY INSURANCE COMPANY, AND NO INSURANCE COMPANY IS A THIRD-PARTY BENEFICIARY OF THIS INJUNCTION.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, THIS INJUNCTION SHALL NOT ENJOIN:**

**(1) THE RIGHTS OF ANY INSURED PARTY UNDER ANY COVERAGE OF ANY D&O POLICY;**

**(2) THE RIGHTS OF ANY SUCCESSOR IN INTEREST TO (1) UNIROYAL PROPERTIES, INC., (2) UNIROYAL TIRE COMPANY, INC., (3) UNIROYAL PLASTICS COMPANY, INC., (4) UNIROYAL POWER TRANSMISSION, INC., OR (5) UNIROYAL CHEMICAL COMPANY, INC. UNDER ANY COVERAGE OF ANY INSURANCE POLICY THAT WAS THE SUBJECT OF LITIGATION IN *UNIROYAL, INC. V. AMERICAN REINSURANCE CO., ET. AL.*;**

**(3) THE RIGHTS OF ANY PERSON TO THE TREATMENT ACCORDED**

**THEM UNDER THIS PLAN, AS APPLICABLE, INCLUDING THE RIGHTS OF HOLDERS OF PI/WD CLAIMS TO ASSERT SUCH CLAIMS, AS APPLICABLE, IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES;**

(4) **THE RIGHTS OF THE TRUST TO PROSECUTE ANY ACTION BASED ON OR ARISING FROM INSURANCE POLICIES;**

(5) **THE RIGHTS OF THE TRUST TO ASSERT ANY CAUSE OF ACTION, DEBT, OBLIGATION, OR LIABILITY FOR PAYMENT AGAINST ANY INSURANCE COMPANY BASED ON OR ARISING FROM THE INSURANCE POLICIES;**

(6) **THE RIGHTS OF ANY INSURANCE COMPANY TO ASSERT ANY CAUSE OF ACTION, DEBT, OBLIGATION, OR LIABILITY FOR PAYMENT AGAINST ANY OTHER INSURANCE COMPANY; OR**

(7) **THE CAUSE OF ACTION FOR REINSURANCE UNDER REINSURANCE CONTRACTS OR CAUSE OF ACTION UNDER RETROCESSIONAL CONTRACTS AMONG AN INSURANCE COMPANY AND ANY ANOTHER INSURANCE COMPANY.**

### 4.9.6. Insurance Provision

The Plan provides the following language with respect to insurance, which every Holder of a Claim or Interest should review in full:

> Nothing in this Plan, the Trust Documents, the Confirmation Order, any finding of fact or conclusion of law with respect to the Confirmation of this Plan, any order or opinion entered on appeal from the Confirmation Order, or any valuation of Claims (either individually or in the aggregate) in the Chapter 11 Cases shall, with respect to any Insurance Company (1) constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, other determination establishing the coverage obligation of any such Insurance Company for any Claim, or (2) limit the right of any such Insurance Company to assert any Insurance Coverage Defense; *provided*, *however*, that with, respect to (1) and (2), (a) the transfer of rights to the Trust pursuant to the Insurance Rights Transfer shall be valid and enforceable, and (b) the discharge or release of any party from any Claims or Causes of Action under this Plan shall not affect the liability of any such Insurance Company. The establishment of any claim in litigation against the Trust in its capacity as the Debtors' representative shall be deemed the establishment of a claim against the Debtor for the purpose of triggering any available Insurance Policy. Neither this Plan nor the Trust Documents shall in any way reduce, limit, discharge or release any Insurance Company.

### 4.9.7. Compromise and Settlement of PI/WD Claims

The Plan provides the following language with respect to the compromise and settlement

of PI/WD Claims, which every Holder of a Claim or Interest should review in full:

> The treatment provided for PI/WD Claims under the Plan and the Trust Documents incorporate and reflect a proposed settlement framework of such Claims against the Debtors.

#### 4.9.8. Claim Over

The Plan provides the following language with respect to claims by Non-Released Parties against Released Parties, which every Holder of a Claim or Interest should review in full:

> It is the intent of the Released Parties that: (1) the contributions made by the Debtor to the Trust should be the sole payments the Debtors and the Debtor Related Parties shall make to address the PI/WD Claims; (2) a claim by the Holder of a PI/WD Claim against any Non-Released Party should not result in any additional payment by any Released Party; and (3) the compromise and settlement effectuated through the Plan meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state or federal law or doctrine that reduces or discharges a released party's liability to any other parties. The Plan and Confirmation Order will specify that the Plan is a good faith settlement that bars any Cause of Action by a Non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that Non-Released Party and paid or awarded to any Holder of a PI/WD Claim by way of settlement, judgment, or otherwise on any claim that would be released were such Non-Released Party a Released Party (a "**Claim Over**") to the extent that a good-faith settlement (or released thereunder) has such an effect under applicable law. Nothing herein prevents the Trust or a Releasing Party from pursing litigation against a Non-Released Party and collecting the full amount of any judgment.

#### 4.9.9. Setoff and Subrogation

The Plan provides the following language with respect to setoff and subrogation of Claims held by Holders of Claims or Interests against a Debtor or the trust, which every Holder of a Claim or Interest should review in full:

> In no event shall any Holder of a Claim or Interest be entitled to set off or subrogate any Claim that such Holder has against a Debtor or the Trust against any Cause of Action of a Debtor, or the Trust, as applicable, unless such Holder Filed a motion before the Confirmation Date requesting the right to perform such setoff or subrogation or indicated in an Allowed Proof of Claim Filed before the Confirmation Date that such Holders asserts, has or intends to preserve, such right of setoff, or subrogation

#### 4.9.10. No Discharge

The Plan provides that, because the Debtors are liquidating, confirmation of the Plan does not discharge the Debtors pursuant to section 1141 of the Bankruptcy Code.

**4.9.11. Release of Liens**

The Plan provides that, except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Plan Distributions, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates will be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests will revert to the Debtors and their successors and assigns.

The Plan further provides that, if any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) must take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Plan Administrator will be entitled to make any such filings or recordings on such Holder's behalf.

**4.10. Retention of Jurisdiction**

**4.10.1. Retention of Jurisdiction**

The Plan provides that, notwithstanding confirmation of the Plan or occurrence of the Effective Date, and except as otherwise provided by applicable law, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1. To hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and any disputes over Cure amounts resulting therefrom;

2. To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on, or commenced after, entry of the Confirmation Order;

3. To ensure that Plan Distributions to Holders of Allowed Claims are accomplished as provided in the Plan and the Confirmation Order;

4. To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Claim;

5. To enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated;

6. To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

7. To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any

inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

8. To hear and determine all Professional Fee Claims;

9. To resolve disputes concerning any reserves with respect to any Disputed Claim or the administration thereof;

10. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing, or related to, any of the foregoing;

11. To take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release, exculpation, or injunction provisions set forth in the Plan, or to maintain the integrity of the Plan following the occurrence of the Effective Date;

12. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order;

13. To hear and determine any other matters related to these Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

14. To resolve any disputes concerning whether a Person had sufficient notice of these Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with these Chapter 11 Cases, any bar date established in these Chapter 11 Cases, or any deadline for responding or objecting to a Cure amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

15. To recover all assets of the Debtors and property of their Estates, wherever located;

16. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

17. To enter a Final Decree closing the Chapter 11 Cases.

**4.10.2. Terms of Injunctions or Stays**

The Plan provides that, except as otherwise provided in the Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under the Plan (a) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (b) all other injunctions and stays

arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that these Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### 4.11. Modification, Revocation, or Withdrawal of the Plan

#### 4.11.1. Modification of the Plan

The Plan provides that, subject to the limitations contained in the Plan, in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Debtors may (a) amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code or (b) after the entry of the Confirmation Order, institute proceedings in the Bankruptcy Court, to amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

#### 4.11.2. Other Amendments

The Plan provides that the Debtors may make appropriate non-material, technical adjustments and modifications to the Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

#### 4.11.3. Effect of Confirmation on Modifications

The Plan provides that entry of the Confirmation Order will mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

#### 4.11.4. Revocation or Withdrawal of Plan

Under the Plan, the Debtors reserve the right to revoke and withdraw the Plan at any time prior to the Confirmation Date in the exercise of their fiduciary duties or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date. If the Debtors revoke or withdraw the Plan, (a) nothing contained in the Plan will be deemed to constitute a waiver or release of any claims by or against a Debtor or to prejudice in any manner the rights of a Debtor or any Entity in any further proceeding involving a Debtor and (b) the result will be the same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur.

### 4.12. Miscellaneous Provisions

#### 4.12.1. Debtors' Operation from Confirmation Hearing Through Effective Date

The Plan provides that, during the period from the Confirmation Hearing through and until the Effective Date, the Debtors will continue to operate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

#### 4.12.2. Immediate Binding Effect

The Plan provides that, notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement will be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Plan Administrator, the Trust, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

#### 4.12.3. Substantial Consummation

The Plan provides that on the Effective Date, the Plan will be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

#### 4.12.4. Reservation of Rights

The Plan provides that it will have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement will be or should be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

#### 4.12.5. Successors and Assigns

The Plan provides that the rights, benefits, and obligations of any Entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

#### 4.12.6. Preservation of Books and Records

The Plan provides that on the Effective Date the Debtors will provide the Plan Administrator and the Trustee with timely access to all of the books and records of the Debtors in the Debtors' possession as of the Petition Date and the Effective Date. The Debtors will also instruct any third parties, or professionals possessing such books and records (including computer generated or computer maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Plan Administrator or Trustee, and each such party will be directed not to dispose of or destroy any such books and records until such time as

authorized in writing by the Plan Administrator and Trustee or further order of the Bankruptcy Court.

**4.12.7. Notices**

The Plan provides that, in order for all notices, requests, and demands to or upon the Debtors or the Plan Administrator, as the case may be, to be effective, such notices, requests and demands must be in writing (including by electronic mail) and, unless otherwise expressly provided herein, will be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| Uniroyal Holding, Inc.<br>70 Great Hill Road<br>Naugatuck, CT 06770<br>Attention: Robert V. D'Angelo, Jr., President and General Counsel<br>Email: rdangelo@unihold.net | Debevoise & Plimpton LLP<br>66 Hudson Boulevard<br>New York, NY 10001<br>Attention: Samuel A. Newman<br>Michael C. Godbe<br>Email: snewman@debevoise.com<br>mcgodbe@debevoise.com<br><br>-and-<br><br>Duane Morris LLP<br>200 Campus Drive, Suite 300<br>Florham Park, NJ 07932-1007<br>Attention: Morris S. Bauer<br>Email: msbauer@duanemorris.com |
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

**4.12.8. Entire Agreement**

The Plan provides that, on the Effective Date the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which will have become merged and integrated into the Plan.

**4.12.9. Nonseverability of Plan Provision Upon Confirmation**

The Plan provides that, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will not have the power to alter and interpret such term or provision to make it valid or enforceable; *provided*, that at the request of the Debtors, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (c) nonseverable and mutually dependent.

**4.12.10. Governing Law**

The Plan provides that, unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, will govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**4.12.11. Dissolution of the Committee**

The Plan provides that, on the Effective Date, the Committee will dissolve. Upon the dissolution of the Committee, the Committee and its respective Professionals will cease to have any duty, obligation, or role arising from, or related to, these Chapter 11 Cases and will be released and discharged from all rights and duties from, or related to, these Chapter 11 Cases. Notwithstanding the foregoing, the Committee may, at its option and without taking any action or seeking or receiving any approval, continue to serve and function after the Effective Date for the purposes of participating in any (a) appeal of any order entered in these Chapter 11 Cases, including the Confirmation Order, (b) applications for compensation or expense reimbursements of Professionals and any hearing thereon, or (c) adversary proceeding pending on the Effective Date to which the Committee was a participant. To the extent that the Committee determines to continue to serve and function after the Effective Date pursuant to the preceding sentence, it will dissolve upon the completion of its participation in the matters described in clause (a) through (c), as applicable. Effective as of the dissolution of the Committee, the Trust will succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Committee and will enjoy the work product protections that were applicable or available to the Committee before its dissolution.

#### 4.12.12. Closing of the Chapter 11 Cases

The Plan provides that, after the full administration of these Chapter 11 Cases, the Plan Administrator will promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

## SECTION 5.
## Voting on the Plan

### 5.1. Overview

The Bankruptcy Court entered the Solicitation and Voting Procedures Order on [●], 2026. This order approved, among other things, (a) the dates, procedures and forms applicable to the process of soliciting votes on and providing notice of the Plan and (b) certain vote tabulation procedures. The order also established the deadline for filing objections to the Plan and scheduling the Confirmation Hearing. A copy of the Solicitation and Voting Procedures Order is attached hereto as **Exhibit B**. The Solicitation and Voting Procedures Order is incorporated herein by reference and should be read in conjunction with this Disclosure Statement and in formulating a decision to vote to accept or reject the Plan.

**THIS DISCUSSION OF THE SOLICITATION AND VOTING PROCESS IS ONLY A SUMMARY. PLEASE REFER TO THE SOLICITATION AND VOTING PROCEDURES ORDER ATTACHED HERETO FOR A MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.**

### 5.2. Holders of Claims Entitled to Vote on the Plan

Under the provisions of the Bankruptcy Code, not all holders of claims against a debtor are entitled to vote on a chapter 11 plan. As discussed above, the Debtors are soliciting votes to accept or reject the Plan only from Holders of Class 4, PI/WD Claims (the "**Voting Class**").

PI/WD Claims are Impaired under the Plan and Holders of such Claims will receive a distribution under the Plan, pursuant to the Trust Agreement. Therefore, PI/WD Claimants are entitled to vote to accept or reject the Plan in accordance with section 1126(a) of the Bankruptcy Code. PI/WD Claimants who are represented by Known counsel will be solicited via their counsel, unless requested otherwise by such counsel, in which case such PI/WD Claimants will be solicited directly. Unrepresented Claimants will be solicited directly in accordance with the Solicitation and Voting Procedures Order. Counsel voting on behalf of multiple clients will receive a Master Ballot. Counsel voting on behalf of one client will receive an Individual Ballot. PI/WD Claimants being solicited directly will receive Individual Ballots. The Debtors are **not** soliciting votes from Holders of Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims Secured Claims, Other Priority Claims, or General Unsecured Claims because Claims in those unclassified categories or Classes are not Impaired under the Plan and thus are presumed to accept the Plan under section 1126(f) of the Bankruptcy Code. The Debtors are also **not** soliciting votes from Holders of Intercompany Claims or Interests because those Classes are not receiving a distribution under the

Plan and thus are deemed to reject the Plan.

Holders of Claims and Interests in the Release Opt-Out Classes and in Class 5 will not be provided with a Ballot because such Holders are either Unimpaired and presumed to accept the Plan under section 1126(f) of the Bankruptcy Code or receive no distribution under the Plan and thus are deemed to reject the Plan. All Holders of Claims and Interests in the Release Opt-Out Classes will receive Non-Voting Notices which include an Opt-Out Form, as described in more detail in the Solicitation and Voting Procedures Order. The table included in "Executive Summary – Overview of the Plan and Distributions under the Plan", beginning at page 1, provides a summary of the status and voting rights of each unclassified group or Class (and, therefore, of each Holder of an Allowed Claim within such Class) under the Plan.

All Holders of Claims and Interests in the Voting Class and the Release Opt-Out Classes will have the right to opt out of the releases granted by Holders of Claims and Interests pursuant to section 9.2 of the Plan. Holders of Claims in the Voting Class voting using an Individual Ballot may opt out of such releases by checking the applicable box on their Individual Ballot and returning it before the Voting Deadline according to the requirements for such return. Counsel voting on behalf of clients via a Master Ballot may opt out of such releases on behalf of their clients by checking the applicable box on the exhibit to the Master Ballot for each client and returning it before the Voting Deadline according to the requirements for such return. Holders of Claims and Interests in the Release Opt-Out Classes may opt out of such releases by checking the applicable box on the Opt-Out Form and returning it before the Voting Deadline according to the requirements for such return. The Solicitation and Voting Procedures Order sets forth the specific requirements for voting and opting out of releases, and should be reviewed in its entirety by all Holders of Claims and Interests.

### 5.3. Voting Record Date

**The Voting Record Date is September 7, 2026**. The Voting Record Date is the date as of which it will be determined which Holders of Claims and Interests in the Voting Class are entitled to vote to accept or reject the Plan and whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee can vote as the Holder of a Claim

### 5.4. Voting on the Plan

**The Voting Deadline is 4:00 p.m. prevailing Eastern Time on October 13, 2026**. In order to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered (either by using the return envelope provided, by first-class mail, overnight courier or personal delivery or via electronic, online transmission, as applicable) so that they are actually received on or before the Voting Deadline by the Balloting Agent at the following addresses.

| DELIVERY OF BALLOTS |
|---|
| Ballots must be actually received by the Balloting Agent by the Voting Deadline of 4:00 p.m. prevailing Eastern Time on October 13, 2026 at the following addresses:<br><br>**<u>If by First Class Mail, Overnight Courier or Overnight Mail (Individual Ballots Only):</u>**<br><br>Uniroyal Holding, Inc. and Great Hill Corporation, Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>**<u>If by Online Submission:</u>**<br><br>Go to the case website (https://omniagentsolutions.com/Uniroyal), click on the "Balloting" tab, select either "Submit Individual Ballot" or "Submit Law Firm Master Ballot", as applicable, and follow the instructions to submit your Ballot. |
| If you have any questions on the procedure for voting on the Plan, please contact the Balloting Agent by calling (888) 741-5787 (US & Canada toll free) or (747) 400-0068 (International) or emailing UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc." in the subject line. |

Any Ballot received after the Voting Deadline or otherwise not in compliance with the Solicitation and Voting Procedures Order will not be counted unless ordered by the Bankruptcy Court. The Balloting Agent will accept Master Ballots and related client list exhibits, if properly completed, **only** through the Law Firm Master Ballot Portal accessible on the Balloting Agent's case website at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab, selecting "Submit Firm Master Ballot", and following the instructions; *provided*, however, that the Balloting Agent will accept Master Ballots or exhibits submitted other than through the Law Firm Master Ballot Portal where the submitting party has received prior permission in writing from the Debtors to do so. The Balloting Agent shall have the discretion to, but shall not be obligated to, contact voters to cure any defects in the Ballots.

### 5.5. Opting Out of the Releases in the Plan

**<u>The deadline to opt out of the releases contained in section 9 of the Plan is the Voting Deadline</u>**. For Holders of Claims in Class 4, the election with respect to the releases must be properly executed and included with the appropriate submitted Ballot. For Holders of Claims in the Release Opt-Out Classes, the Opt-Out Form must be properly executed, completed and delivered (either by using the return envelope provided, by first-class mail, overnight delivery or personal delivery or via electronic, online transmission) in accordance with section 5.4 of this Disclosure Statement so that they are **<u>actually received</u>** on or before the Voting Deadline by the Balloting Agent at the addresses listed on the previous page.

| DELIVERY OF OPT-OUT FORMS |
|---|
| Opt-Out Forms must be **actually** **received** by the Balloting Agent by the Voting Deadline of 4:00 p.m. prevailing Eastern Time on October 13, 2026 at the following addresses:<br><br>**If by First Class Mail, Overnight Courier or Overnight Mail:**<br><br>Uniroyal Holding, Inc. and Great Hill Corporation, Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>**If by Online Submission:**<br><br>Go to the case website (https://omniagentsolutions.com/Uniroyal), click on the "Balloting" tab, select "Electronic Opt-Out", and follow the instructions to submit your Opt-Out Form.<br><br>If you have any questions on the procedure for opting out of the releases in the Plan, please contact the Balloting Agent by calling (888) 741-5787 (US & Canada toll free) or (747) 400-0068 (International) or emailing UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc." in the subject line. |

### 5.6. The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing to consider confirmation of a chapter 11 plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan.

The Confirmation Hearing is scheduled for **October 20, 2026 at [•] [a/p.m.] (prevailing Eastern Time)** before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of New Jersey, located at 402 East State Street, Trenton, New Jersey. **The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.**

### 5.7. Deadline to Object to Confirmation

Objections to confirmation of the Plan must be filed and served on or before **4:00 p.m. (prevailing Eastern Time) on October 13, 2026** in accordance with the notice of the Confirmation Hearing that accompanies this Disclosure Statement. **Unless objections to confirmation of the Plan are timely served and filed, they may not be considered by the Bankruptcy Court.**

### 5.8. General Confirmation Requirements

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code, which include, among other things, whether:

**5.8.1.** The Plan complies with the applicable provisions of the Bankruptcy Code.

**5.8.2.** The Debtors, as the Plan proponents, have complied with the applicable provisions of the Bankruptcy Code.

**5.8.3.** The Plan has been proposed in good faith and not by any means forbidden by law.

**5.8.4.** Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

**5.8.5.** The Plan has been accepted by each Impaired Class of Claims or, if rejected by an Impaired Class, the Plan "does not discriminate unfairly" and is "fair and equitable" as to such rejecting Class.

**5.8.6.** Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that:

**5.8.6.1.** with respect to a Claim of a kind specified in sections 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the Plan, the Holder of such Claim will receive on account of such Claim cash equal to the Allowed amount of such Claim;

**5.8.6.2.** with respect to a Class of Claims of a kind specified in sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each Holder of a Claim of such Class will receive (a) if such Class has accepted the Plan, deferred Cash payments of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; or (b) if such Class has not accepted the Plan, cash on the Effective Date of the Plan equal to the Allowed amount of such Claim;

**5.8.6.3.** with respect to a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the Holder of such Claim will receive on account of such claim regular installment payments in Cash, over a period not exceeding five years after the date of the order for relief under sections 301, 302, or 303 of the Bankruptcy Code, of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim.

**5.8.7.** At least one Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

**5.8.8.** All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date.

The Debtors believe that the Plan satisfies or will satisfy all of these requirements to the extent they are applicable.

### 5.9. Best Interests of Creditors/Liquidation Analysis

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor liquidated on that date under chapter 7 of the Bankruptcy Code. To make these findings, a bankruptcy court must: (a) estimate the cash liquidation proceeds that a chapter 7 trustee would generate if the debtor's chapter 11 case were converted to chapter 7 cases and the assets of the debtor's estate were liquidated; (b) determine the liquidation distribution that each non-accepting holder of a claim or an interest would receive from such liquidation proceeds under the priority scheme dictated in chapter 7; and (c) compare the holder's liquidation distribution to the distribution under the plan that the holder would receive if the plan were confirmed and consummated.

To satisfy the requirements of section 1129(a)(7) of the Bankruptcy Code, the Debtors, together with the Advisors, prepared the liquidation analysis attached as **Exhibit C** to this Disclosure Statement (the "**Liquidation Analysis**"). Based upon on the Liquidation Analysis, the Debtors believe that Holders of Claims will receive equal or greater value as of the Effective Date than such Holders would receive in a hypothetical chapter 7 liquidation and that the Plan therefore satisfies the "best interests" test set forth in section 1129(a)(7) of the Bankruptcy Code.

### 5.10. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a chapter 11 plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtors, or any successor to the debtors (unless such liquidation or reorganization is proposed in the plan). For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet its obligations under the Plan. The Debtors anticipate having sufficient cash on hand to make all required payments under the Plan on the Effective Date, and the Trust anticipates having sufficient Trust Assets to satisfy all Plan obligations arising after the Effective Date pursuant to the Trust Agreement. Accordingly, the Debtors believe that the Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

### 5.11. Acceptance by Impaired Classes

A Class that is not Impaired under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to the Class is not required. A Class is "Impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the interest entitles the holder of the Claim or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim.

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the non-insider holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims that are voted were, in fact, voted to accept the Plan.

Under the Plan, Class 1 (Secured Claims), Class 2 (Other Priority Claims), and Class 3 (General Unsecured Claims) are each Unimpaired and, therefore, are each conclusively presumed to have accepted the Plan.

## 5.12. Confirmation Without Acceptance of All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all Impaired classes have not accepted the plan, *provided* that the plan has been accepted by at least one Impaired Class of Claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an Impaired Class rejection or deemed rejection of a plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the plan.

### 5.12.1. No Unfair Discrimination

This test applies to Classes of Claims or Interests that are of equal priority and are receiving different treatment under a proposed plan. The test does not require that the treatment be the same or equivalent, but that the treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of Classes of Claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. Under certain circumstances, a proposed plan could treat two Classes of unsecured creditors differently without unfairly discriminating against either class.

### 5.12.2. Fair and Equitable Test

This test applies to Classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no Class of Claims receive more than 100% of the amount of the allowed claims in such Class. As to the dissenting Class, this test sets different standards depending upon the type of claims or interests in such Class:

#### 5.12.2.1. Secured Claims

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the holders of such Secured Claims retain the Liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the Liens is retained by the Debtors or transferred to another Entity under the Plan; and (b) each holder of a Secured Claim in the Class receives deferred cash payments totaling at least the Allowed amount of such Claim with a value, as of the Plan Effective Date, at least equivalent to the value of the secured claimant's interest in the Debtors' property subject to the Liens.

#### 5.12.2.2. Unsecured Claims

The condition that a plan be "fair and equitable" to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the Plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Plan Effective Date, equal to the Allowed amount of such Claim; or (b) the Holder of any Claim or any Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or junior Interest, subject to certain exceptions.

#### 5.12.2.3. Interests

The condition that a plan be "fair and equitable" to a non-accepting Class of Interests, includes the requirements that either: (a) the Plan provides that each Holder of an Interest in that Class receives or retains under the plan on account of that Interest property of a value, as of the Plan Effective Date, equal to the greater of: (A) the Allowed amount of any fixed liquidation preference to which such Holder is entitled; (B) any fixed redemption price to which such Holder is entitled; or (C) the value of such Interest; or (b) if the Class does not receive the amount as required under (a) hereof, no Class of Interests junior to the non-accepting Class may receive a distribution under the plan.

If any Impaired Class of Claims and Interests rejects the Plan or is deemed to reject the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, utilizing the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan before the Confirmation Date, including to amend or modify the Plan to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

The Debtors submit that if the Debtors need to "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for "cramdown."

## SECTION 6.
## Risk Factors

Holders of Claims and Interests should read and consider carefully the risk factors set forth below, as well as the other information set forth in this Disclosure Statement and the documents delivered together herewith, referred to or incorporated by reference herein, before voting to accept or reject the Plan, as applicable. These risk factors should not be regarded as constituting the only risks present in connection with the Plan and its implementation.

## 6.1. General Business and Financial Risk Factors

**The Debtors Will Not Have Sufficient Funds to Satisfy Unimpaired Claims and the Minimum Trust Recovery**

The Plan provides that all Unimpaired Claims will be paid by the Plan Administrator using, *inter alia*, the existing property of the Estates as of the Effective Date, with the remainder, the Trust Assets, being transferred to the Trust upon the Effective Date. While the Debtors believe that Debtors have, and will continue to have until the Effective Date, sufficient funds to satisfy all of the Allowed Claims in full in Cash or to fund the Minimum Trust Recovery, both as required under the Plan, it is possible that additional expenses or Administrative Claims are incurred such that the Debtors are unable to satisfy these requirements. This would violate the conditions precedent for the Plan to go effective pursuant to section 8.1 of the Plan. In this scenario, it is unclear what Holders of Claims and Interests, including PI/WD Claims, would be able to recover.

## 6.2. Certain Bankruptcy Considerations

### 6.2.1. Delay in Confirmation of the Plan May Result in Fewer Funds Available to Distribute to Holders of Claims.

If the Plan is not confirmed in the time frame currently contemplated, the Debtors will incur additional costs and expenses in administering the Chapter 11 Cases and in their ordinary business operations, which could result in insufficient funds to pay creditors in full or to satisfy the Minimum Trust Recovery as contemplated by the Plan. If this were to occur, the Plan could not become effective and the Debtors would be forced to consider alternative resolutions for the Chapter 11 Cases, which could result in significant reductions to value available for distributions to creditors, including Holders of PI/WD Claims.

### 6.2.2. Risk of Non-Occurrence of the Effective Date

Although the Debtors believe that the Effective Date will occur shortly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur. If the Effective Date does not occur, the Debtors would be forced to consider alternative resolutions for the Chapter 11 Cases, which could result in significant reductions to value available for distributions to creditors, including Holders of PI/WD Claims.

### 6.2.3. Failure to Satisfy Vote Requirements

If accepting votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, confirmation of the Plan. If an insufficient number of accepting votes are received, the Debtors may seek nonconsensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code, seek to confirm an alternative chapter 11 plan, or convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code. There can be no assurance that the Bankruptcy Court will reach the conclusion that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code, or that the terms of any alternative chapter 11 plan or recoveries under chapter 7 cases would be similar or as favorable to Holders of Allowed Claims as those proposed in the Plan.

#### 6.2.4. The Debtors May Not Have Sufficient Funds to Confirm the Plan

As of the date hereof, the Debtors contemplate that the Plan will be funded by, *inter alia*, Cash in the Debtors' bank accounts and cash equivalents otherwise held by the Debtors. Although the estimated amount of such funds is projected to be sufficient to fully satisfy the estimated distribution to Holders of the Allowed Claims that are required to be paid in full in Cash and to fund the Minimum Trust Recovery as required under the Plan, it is possible that the Debtors may otherwise have insufficient cash, or that additional expenses and Administrative Claims are incurred such that the Debtors are unable, on or by the Effective Date, to satisfy all of the Allowed Claims in full in Cash or to fund the Minimum Trust Recovery as required under the Plan. If this were to occur, the Plan could not become effective and the Debtors would be forced to consider alternative resolutions for the Chapter 11 Cases, which could result in significant reductions to value available for distributions to creditors, including Holders of PI/WD Claims.

### 6.3. Disclosure Statement Disclaimer

#### 6.3.1. No Representations Made Outside this Disclosure Statement Are Authorized

The information contained in this Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes. Except as otherwise provided herein or in the Plan, no representations relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtors and to the U.S. Trustee.

#### 6.3.2. No Legal or Tax Advice Is Provided to You by This Disclosure Statement

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

#### 6.3.3. No Admissions Are Made by This Disclosure Statement

The information and statements contained in this Disclosure Statement will neither constitute an admission of any fact or liability by any Entity (including the Debtors) nor be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or any other parties in interest. The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtors or the Plan Administrator (or any party in interest, as the case may be) to object to that Holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Causes of Action of the Debtors are specifically or generally identified herein.

In addition, no reliance should be placed on the fact that a particular litigation Claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The

Debtors or Plan Administrator, as applicable under the Plan, may seek to investigate, file or prosecute objections to Claims and may object to Claims after the Confirmation Date or Effective Date irrespective of whether this Disclosure Statement, the Plan, or the Plan Supplement (which are incorporated herein by reference) identifies such Claims or objections to such Claims or Objections thereto.

## SECTION 7.

## Certain U.S. Federal Income Tax Consequences of the Plan

### 7.1. Introduction

The following is a discussion of certain U.S. federal income tax consequences arising from the consummation of the Plan to certain Holders (as defined below) of Claims. This discussion is not a complete analysis of all potential U.S. federal income tax consequences arising from the consummation of the Plan and does not address any U.S. state or local or non-U.S. tax consequences or any U.S. federal tax consequences other than income tax consequences. This discussion is based on the U.S. Internal Revenue Code of 1986, as amended (the "**Code**"), U.S. Treasury Regulations promulgated or proposed thereunder and administrative and judicial interpretations thereof, all as in effect on the date hereof, and all of which are subject to change, possibly with retroactive effect, or to different interpretation. No ruling has been or will be sought from the Internal Revenue Service (the "**IRS**") with respect to any of the U.S. federal income tax consequences discussed below, and no assurance can be given that the IRS will not take a position contrary to any discussion below or that any such contrary position would not be sustained by a court.

This discussion does not address all of the U.S. federal income tax consequences that may be relevant to specific Holders in light of their particular circumstances or to Holders subject to special treatment under U.S. federal income tax law (such as banks, insurance companies, dealers in securities or other Holders that generally mark their securities to market for U.S. federal income tax purposes, tax-exempt entities, retirement plans, regulated investment companies, real estate investment trusts, accrual method U.S. Holders that prepare an "applicable financial statement" (as defined in Section 451 of the Code), Holders that are not "United States persons" (as such term is defined in the Code), certain former citizens or residents of the United States, Holders that hold their Claims as part of a straddle, hedge, conversion or other integrated transaction or Holders that have a "functional currency" other than the U.S. dollar).

As used in this discussion, the term "**Holder**" means a beneficial owner of a Claim that is entitled to vote on the Plan, which beneficial owner for U.S. federal income tax purposes is (a) an individual who is a citizen or resident of the United States, (b) a corporation created or organized in or under the laws of the United States, any state thereof or the District of Columbia, (c) an estate the income of which is subject to U.S. federal income tax regardless of its source or (d) a trust (x) with respect to which a court within the United States is able to exercise primary supervision over its administration and one or more United States persons have the authority to control all of its substantial decisions or (y) that has in effect a valid election under applicable U.S. Treasury Regulations to be treated as a United States person. This discussion does not address the U.S. federal income tax consequences to Holders (a) whose Claims are unimpaired or otherwise entitled

to payment in full under the Plan, or (b) that are deemed to accept or deemed to reject the Plan.

If an entity treated as a partnership for U.S. federal income tax purposes holds a Claim, the U.S. federal income tax consequences arising from the consummation of the Plan will depend in part upon the status and activities of such entity and the particular partner. Any such entity should consult its own tax advisor regarding the U.S. federal income tax consequences arising from the consummation of the Plan applicable to it and its partners.

The following discussion assumes that an instrument denominated as debt will be treated as such for U.S. federal income tax purposes.

The following discussion does not address the tax consequences of the receipt by a Holder or any other Person of any consideration other than as described in section 3.4 of the Plan or any transaction undertaken by a Holder other than in its capacity as such Holder.

THE FOLLOWING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED ON THE PARTICULAR CIRCUMSTANCES OF EACH HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISORS AS TO THE U.S. FEDERAL INCOME TAX CONSEQUENCES, AS WELL AS OTHER TAX CONSEQUENCES, INCLUDING UNDER ANY APPLICABLE STATE, LOCAL AND FOREIGN LAW, OF THE CONSUMMATION OF THE PLAN TO SUCH HOLDER, INCLUDING ANY CONSEQUENCES RESULTING FROM THE APPLICATION OF THE TURNOVER PROVISIONS IN THE INTERCREDITOR AGREEMENT.

### 7.2. U.S. Federal Income Tax Treatment of the Trust

It is intended that the Trust will be treated as a qualified settlement fund within the meaning of section 468B of the Code. In order to be treated as a qualified settlement fund, a trust must be (i) established pursuant to an order of, or be approved by, a U.S. federal, state or local governmental authority, including a court, and must be subject to the continuing jurisdiction of that governmental authority or court; (ii) established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to at least one claim asserting, among other things, liability arising out of a tort, breach of contract or violation of law; and (iii) a trust under applicable state law or have its assets otherwise segregated from other assets of the transferor and its related persons. The remainder of this discussion assumes that the Trust is treated as a qualified settlement fund.

As a qualified settlement fund, the Trust will generally be subject to an entity level tax at the maximum rate applicable to trusts and estates. In determining the taxable income of the Trust, (i) the transfer of the Trust Assets by the Debtors to the Trust generally will be excluded from the Trust's income, except that any dividends, interest and payments received as compensation for late or delayed transfers are not so excluded; (ii) a distribution of Trust Assets generally will result in the recognition of gain or loss in an amount equal to the difference between the fair market value of the distributed Trust Assets on the date of distribution and the adjusted tax basis of such Trust Assets; and (iii) administrative costs (including state and local taxes) incurred by the Trust

generally will be deductible. In general, the adjusted tax basis of the Trust Assets will be their fair market value at the time of receipt by the Trust.

### 7.3. Certain U.S. Federal Income Tax Consequences of the Plan to Holders of PI/WD Claims

The federal income tax treatment of the receipt of payments from the Trust by a Holder of a PI/WD Claim generally will depend upon the nature of such PI/WD Claim. To the extent that amounts received by a Holder of a PI/WD Claim are compensation for such Holder's personal physical injuries or physical sickness within the meaning of section 104 of the Code, any such amounts received by the Holder generally should be nontaxable. However, to the extent payments from the Trust to a Holder of a PI/WD Claim are attributable to medical expenses that were deducted under section 213 of the Code for a prior taxable year, such payments will be taxable as ordinary income to such Holder. To the extent that the payments from the Trust to Holders of a PI/WD Claim constitute amounts received on account of claims other than personal physical injury or physical sickness, such payments generally will be includable in the gross income of such Holders.

HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.

HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED INTEREST

### 7.4. Information Reporting and Backup Withholding

Information reporting generally will apply to payments to a Holder pursuant to the Plan, unless such Holder is an entity that is exempt from information reporting and, when required, demonstrates this fact. Any such payment to a Holder that is subject to information reporting generally will also be subject to backup withholding, unless such Holder provides the appropriate documentation (generally, IRS Form W-9) to the applicable withholding agent certifying that, among other things, its taxpayer identification number is correct, or otherwise establishes an exemption.

Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules generally will be allowed as a refund or a credit against a Holder's U.S. federal income tax liability if the required information is furnished by such Holder on a timely basis to the IRS.

Treasury regulations generally require disclosure by a taxpayer of its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of certain thresholds. You are urged to consult your own tax advisor regarding these regulations and whether the contemplated transactions under the Plan would be subject to these regulations and require disclosure on your tax return.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS OR INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

*[Remainder of page intentionally left blank]*

## SECTION 8.
## Recommendation

The Debtors submit that the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger recovery for the Debtors' Holders of Allowed Claims than such Holders would otherwise receive or retain in liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased Administrative Claims, resulting in lower recoveries to Holders of Allowed Claims than those proposed under the Plan. Accordingly, the Debtors strongly recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan.

Dated: July 31, 2026
Naugatuck, CT

Respectfully submitted,

Uniroyal Holding, Inc.
Great Hill Corporation

By: Robert V. D'Angelo Jr.
Name: Robert V. D'Angelo, Jr.
Title: President, General Counsel, Uniroyal Holding, Inc.
Vice President and Secretary, Great Hill Corporation

# <u>Exhibit A</u>

## Plan

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., e*t al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Joint Administration Requested) |

**JOINT CHAPTER 11 PLAN OF UNIROYAL**
**HOLDING, INC. AND GREAT HILL CORPORATION**

**THIS CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE, 11 U.S.C. § 1125. ACCEPTANCES OR REJECTIONS OF THE PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**DUANE MORRIS LLP**
Morris S. Bauer
Drew S. McGehrin
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

**TABLE OF CONTENTS**


SECTION 1 DEFINED TERMS AND RULES OF INTERPRETATION ..... 1
1.1. Defined Terms ..... 1
1.2. Rules of Interpretation ..... 11
1.3. Computation of Time ..... 12
1.4. Controlling Document ..... 12
SECTION 2 ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, PROFESSIONAL FEE CLAIMS, AND STATUTORY FEES ..... 12
2.1. Administrative Claims and Priority Tax Claims ..... 12
2.2. Professional Fee Claims ..... 13
2.3. U.S. Trustee Fees ..... 13
SECTION 3 CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 14
3.1. Class 1: Secured Claims ..... 14
3.2. Class 2: Other Priority Claims ..... 14
3.3. Class 3: General Unsecured Claims ..... 15
3.4. Class 4: PI/WD Claims ..... 15
3.5. Class 5: Intercompany Claims ..... 15
3.6. Class 6: Interests ..... 16
3.7. Elimination of Vacant Classes ..... 16
3.8. Voting Classes; Presumed Acceptance by Non-Voting Classes ..... 16
3.9. Reservation of Rights Regarding Claims and Interests. ..... 16
SECTION 4 MEANS FOR IMPLEMENTATION OF THE PLAN ..... 16
4.1. Restructuring Transactions ..... 16
4.2. The Minimum Trust Recovery ..... 17
4.3. Sources of Consideration for Plan Distributions ..... 17
4.4. Trustee ..... 17
4.5. Trust ..... 18
4.6. Corporate Action ..... 20
4.7. Cancellation of Existing Securities and Agreements ..... 21
4.8. Effectuating Documents and Further Transactions ..... 21
4.9. Additional Documents ..... 22
4.10. Section 1146 Exemption from Certain Taxes and Fees ..... 22
4.11. Authority to Act ..... 22

| | | |
|---|---|---|
| SECTION 5 | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 22 |
| 5.1. | General Treatment | 22 |
| 5.2. | Rejection Damages Claims | 23 |
| 5.3. | Reservation of Rights | 23 |
| 5.4. | Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases | 23 |
| 5.5. | Insurance Policies | 24 |
| 5.6. | D&O Policies | 24 |
| 5.7. | Non-Occurrence of Effective Date | 24 |
| 5.8. | Employee Compensation and Benefits | 24 |
| SECTION 6 | PROVISIONS GOVERNING DISTRIBUTIONS | 25 |
| 6.1. | Distributions to Holders of PI/WD Claims | 25 |
| 6.2. | Distribution Record Date | 25 |
| 6.3. | Disbursing Agent | 25 |
| 6.4. | Compliance with Tax Requirements | 25 |
| 6.5. | Date of Distributions | 25 |
| 6.6. | Delivery of Distributions | 26 |
| 6.7. | Manner of Payment | 26 |
| 6.8. | Foreign Currency Exchange Rate | 26 |
| 6.9. | Setoffs and Recoupments | 26 |
| 6.10. | Minimum Distributions | 27 |
| 6.11. | Allocation of Distributions Between Principal and Interest | 27 |
| 6.12. | Distributions Free and Clear | 27 |
| SECTION 7 | PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS | 27 |
| 7.1. | Allowance of Claims | 27 |
| 7.2. | Claims Administration Responsibilities | 27 |
| 7.3. | Estimation of Claims | 27 |
| 7.4. | Adjustment to Claims Without Objection | 28 |
| 7.5. | Time to File Objections to Claims | 28 |
| 7.6. | Disputed Claims Reserve | 28 |
| 7.7. | No Distributions Pending Allowance | 28 |
| 7.8. | Distributions After Allowance | 28 |

SECTION 8 CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ... 29
8.1. Conditions Precedent ... 29
8.2. Waiver of Conditions ... 30
SECTION 9 RELEASE, INJUNCTION, AND RELATED PROVISIONS ... 30
9.1. Releases by the Debtors ... 30
9.2. Releases by Holders of Claims and Interests ... 31
9.3. Exculpation ... 32
9.4. Injunction ... 33
9.5. Insurance Entity Injunction ... 35
9.6. Insurance Provision ... 37
9.7. Compromise and Settlement of PI/WD Claims ... 37
9.8. Claim Over ... 37
9.9. Setoff and Subrogation ... 37
9.10. No Discharge ... 38
9.11. Release of Liens ... 38
SECTION 10 RETENTION OF JURISDICTION ... 38
10.1. Retention of Jurisdiction ... 38
10.2. Term of Injunctions or Stays ... 40
SECTION 11 MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ... 40
11.1. Modification of the Plan ... 40
11.2. Other Amendments ... 40
11.3. Effect of Confirmation on Modifications ... 40
11.4. Revocation or Withdrawal of Plan ... 40
SECTION 12 MISCELLANEOUS PROVISIONS ... 41
12.1. Debtors' Operation from Confirmation Hearing Through Effective Date ... 41
12.2. Immediate Binding Effect ... 41
12.3. Substantial Consummation ... 41
12.4. Reservation of Rights ... 41
12.5. Successors and Assigns ... 41
12.6. Preservation of Books and Records ... 41
12.7. Notices ... 42
12.8. Entire Agreement ... 42
12.9. Nonseverability of Plan Provision Upon Confirmation ... 43
12.10. Governing Law ... 43

12.11. Dissolution of the Committee ........ 43
12.12. Closing of Chapter 11 Cases ........ 44

Each of Uniroyal Holding, Inc. and Great Hill Corporation (each, a "**Debtor**" and, collectively, the "**Debtors**") proposes the following joint prearranged chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein have the meanings set forth in section 1.1 below.

## SECTION 1
## DEFINED TERMS AND RULES OF INTERPRETATION

### 1.1. Defined Terms

1. "**Administrative Claim**" means any Claim for a cost or expense of administration of these Chapter 11 Cases under sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code including: (1) the actual and necessary costs and expenses incurred to preserve the Debtors' estates and operate the Debtors' business on or after the Petition Date; and (2) Allowed Professional Fee Claims.

2. "**Administrative Claims Bar Date**" means the deadline for filing requests for payment of Administrative Claims other than Professional Fee Claims and shall be the date [•] days after the Effective Date.

3. "**Ad Hoc Group**" means the law firms listed on Schedule 1 hereto that have formed an ad hoc group to advance the common interest of the law firms and their respective clients.

4. "**Ad Hoc Group Professional**" means (1) the law firms and other professionals retained by the Ad Hoc Group during these Chapter 11 Cases, pursuant to any executory contract between any Debtor and the Ad Hoc Group, whether or not such executory contract has been assumed prior to confirmation of the Plan; or (2) such law firms and professionals retained by the Ad Hoc Group and permitted to be reimbursed by the Debtor pursuant to a Court order under, *inter alia*, sections 363, 365 or 1123 of the Bankruptcy Code; in either case (1) or (2) the law firms and professionals of the Ad Hoc Group shall be treated as Professionals under the Plan.

5. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code and includes any Entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with any Debtor. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

6. "**Allowed**" means, with respect to any Claim, (1) any Claim that is listed in the Schedules, as such Schedules may be amended in accordance with Bankruptcy Rule 1009, as liquidated, non-contingent, and undisputed for which no contrary Proof of Claim has been Filed, (2) a Claim expressly allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, (3) any timely Filed Claim to which no objection has been made in accordance with the terms of the Plan or such other applicable period fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (4) a Claim that is compromised, settled, or otherwise resolved in a manner consistent with the Trust Distribution Procedures, or (5) any Claim that is compromised, settled, or otherwise resolved or allowed pursuant to a Final Order. Any claim allowed solely for the

purpose of voting to accept or reject the Plan shall not be considered an Allowed Claim under the Plan.

7. "**Bankruptcy Code**" means title 11 of the United States Code, as applicable to these Chapter 11 Cases.

8. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over these Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code or if the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over these Chapter 11 Cases under section 151 of title 28 of the United States Code.

9. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local bankruptcy rules of the Bankruptcy Court, in each case, as amended and as applicable to these Chapter 11 Cases.

10. "**Business Day**" means any day other than a Saturday, a Sunday, "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

11. "**Cash**" means legal tender of the United States of America.

12. "**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (1) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (2) claims pursuant to federal securities law; (3) the right to object to or otherwise contest Claims or Interests; (4) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code, including but not limited to sections 541 and 544 of the Bankruptcy Code; (5) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (6) state law fraudulent transfer, fraudulent conveyance, or voidable transfer claims.

13. "**Chapter 11 Cases**" means these chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

14. "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code, against a Debtor.

15. "**Class**" means any group of Claims or Interests classified under this Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

16. "**Common-Interest Communications**" means documents, information, or communications (whether written or oral) that are subject to the attorney-client privilege, attorney-work product doctrine, joint defense, or other privilege or protection from disclosure, and were shared between or among (i) the Debtors, on the one hand, and (ii) any third-party Entity or its representatives, including representatives of Insurance Companies or their counsel, that share a common legal interest with the Debtors, on the other hand, including documents that reflect litigation defense or strategy, case evaluations, discussions of settlements or resolutions, and communications regarding underlying litigation.

17. "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

18. "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases. "Confirm," "Confirmed" and "Confirmability" shall have correlative meanings.

19. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

20. "**Committee**" means any statutory committee of unsecured creditors if such a committee is appointed pursuant to section 1102 of the Bankruptcy Code.

21. "**Cure**" means any payment of Cash or distribution of other property (as the parties may agree or the Bankruptcy Court may order) necessary to (1) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of such Debtor and (2) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

22. "**Data Transfer**" means the transfer to the Trust of the files, documents, and communications that are included within the definition of Data Transfer Documents to enable the Trust to have full access to and utilization of such documents to the extent set forth in this Plan.

23. "**Data Transfer Documents**" means (1) all of the Debtor's document production to any party in these Chapter 11 Cases, (2) the Debtors' document production(s) to the Ad Hoc Group prior to and during these Chapter 11 Cases, and (3) all reasonably identifiable documents, communications, and Privileged Information in the Debtor's possession, custody, or control that contain information relevant to the liquidation of non-PI/WD Claims, PI/WD Claims, and the Retained Causes of Action. If the Bankruptcy Court enters an order approving modification of the Debtors' retirement benefit plans, notwithstanding anything to the contrary herein, Data Transfer Documents shall not include any information regarding the beneficiaries of the Debtors' retirement plans.

24. "**D&O Policies**" means, collectively, each director and officer liability insurance policy of any Debtor, along with any other applicable insurance policies, including primary insurance, excess insurance, professional liability, or tail insurance policies providing coverage to or for the benefit of the Debtors' directors, officers, or other personnel.

25. "**Debtor**" has the meaning set forth in the introductory paragraph of this Plan.

26. "**Debtor Related Parties**" means, collectively, with respect to a Debtor, its Affiliates, and other legal representatives and its and their (1) present and former, in each case, shareholders, direct and indirect owners, partners, members, participants, managers, consultants, subsidiaries, divisions, management companies, managed accounts or funds, fund advisors, predecessors, directors, officers, attorneys, accountants, financial advisors, investment bankers, employees, agents, and other representatives, (2) present Affiliates, and (3) former Affiliates solely to the extent such affiliation terminated on or after January 1, 1991.

27. "**Direct PI/WD Claim**" means any PI/WD Claim that is not an Indirect PI/WD Claim, including a PI/WD Claim asserted by an individual alleged to hold a "personal injury tort or wrongful death claim" against the Debtor within the meaning of 28 U.S.C. § 157(b)(2)(B).

28. "**Disbursing Agent**" means, with respect to the PI/WD Claims, the Trustee and, with respect to any other Claims, the Plan Administrator, or, in either case, a Person or Entity selected by the Trustee or the Plan Administrator, as applicable, to make or facilitate the applicable Plan Distributions.

29. "**Disclosure Statement**" means the disclosure statement for this Plan, including all exhibits, schedules, supplements, modifications, amendments, and annexes thereto, each as supplemented, which was prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, and all other applicable law.

30. "**Disputed**" means any Claim against or Interest that is not yet Allowed or disallowed.

31. "**Disputed Claims Reserve**" means the reserve established and maintained by the Plan Administrator for Holders of Disputed Claims in Classes 1, 2, or 3 to the extent such Claims are subsequently Allowed and entitled to Plan Distributions.

32. "**Distribution Record Date**" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall, except as specifically set forth herein, be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

33. "**Effective Date**" means the first Business Day on which each condition precedent to the effectiveness of the Plan has been satisfied or waived and on which a notice indicating the effectiveness of the Plan has been filed on the docket of the Bankruptcy Court by the Debtors with the consent of the Committee.

34. "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

35. "**Estates**" means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

36. "**Estate Causes of Action**" means Causes of Action owned, held, or capable of being asserted by, under, through or on behalf of the Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of warranty, breach of

contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, aiding and abetting breach of fiduciary duty, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtor or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions under chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the foregoing, Estate Causes of Action shall include: (1) Causes of Action seeking to impose liability for a Claim against the Debtor on any non-Debtor based on the doctrine of successor liability or the doctrines of alter ego or veil piercing; (2) Causes of Action that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of the Debtor and can be asserted by the Debtor under applicable law; and (3) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.

37. "**Exculpated Party**" means (1) each Debtor; (2) any Entity (other than an ordinary course professional) retained in the Debtors' chapter 11 cases pursuant to a final order in accordance with sections 327, 328, 330, 331, 363, or 1103 of the Bankruptcy Code; and (3) each of the Debtors' current officers and directors in their capacity as such, in each case solely in their respective capacities as such and solely to the extent they served in such capacity between the Petition Date and the Effective Date.

38. "**Executory Contract**" means a contract to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

39. "**File**" or "**Filed**" means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

40. "**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, or stayed, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired, or as to which any appeal that has been taken or if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

41. "**General Unsecured Claim**" means any Claim that is not an: (1) Administrative Claim; (2) Professional Fee Claim; (3) Priority Tax Claim; (4) Secured Claim; (5) Other Priority Claim; (6) PI/WD Claim; or (7) Intercompany Claim.

42. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

43. "**Holder**" means an Entity holding a Claim against, or an Interest in, the Debtor, as the context requires.

44. "**Impaired**" has the meaning set forth in section 1124 of the Bankruptcy Code.

45. "**Indirect PI/WD Claim**" means any PI/WD Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable law of the relevant jurisdiction), and any other Claim against the Debtor that is derivative of a Direct PI/WD Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever, including for indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, agreement, or contract.

46. "**Insurance Company**" means an Entity that issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any Insurance Policy, and any third party administrator, parent, subsidiary, affiliate, successor, predecessor, or assign of any of the foregoing, solely in their capacity as such with respect to an Insurance Policy.

47. "**Insurance Coverage Actions**" means any and all pending coverage, arbitration, litigation, or other dispute between the Debtors and any Insurance Company with respect to an Insurance Policy involving any PI/WD Claim as of the Effective Date.

48. "**Insurance Coverage Defense**" means all defenses at law or in equity that any Insurance Company may have under applicable law to provide insurance coverage to or for any PI/WD Claim, except for (1) any defense that the Insurance Rights Transfer is invalid or unenforceable or otherwise breaches the terms of such coverage, (2) any defense that the drafting, proposing, confirmation, or consummation of this Plan or the discharge or release of the Debtor or any other party from any Claims or Causes of Action under this Plan operates to, or otherwise results in, the elimination of or the reduction in any obligation such Insurance Company may have under rights assigned to the Trust, including in providing coverage for liabilities assumed by the Trust that were or are liabilities of the Debtor, and (3) any defense that the settlement framework embodied in the Trust Distribution Procedures, to the extent followed by and used by the Trust, did not or will not result in Allowed Claim amounts that are fair, reasonable, and equitable under the circumstances of the Chapter 11 Cases and for the purpose of determining the Debtor's liability and obligation to pay such Allowed Claims.

49. "**Insurance Entity Injunction**" means the injunction described in Section 9.5 of this Plan.

50. "**Insurance Policies**" means any insurance policies, insurance contracts, binders, certificates, or reinsurance policies, whether currently known or unknown, issued to or that provide or may provide coverage (whether as the primary or additional insured or otherwise) at any time to the Debtors or any parent, subsidiary, affiliate, successor, predecessor, or assign of any of the

foregoing, under which any of the foregoing have sought or reasonably believe they have grounds to seek coverage for any PI/WD Claim.

51. "**Insurance Proceeds**" means any proceeds recovered from an Insurance Company under, related to, or in connection with an Insurance Policy.

52. "**Insurance Rights**" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtors to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under, or attributable to, any and all Insurance Policies now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including (1) any Insurance Company's failure to provide coverage or otherwise pay under an Insurance Policy, (2) the refusal of any Insurance Company to compromise and settle any claim or provide defense to any claim, (3) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Claim, (4) any conduct by any Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law, or (5) any right to receive proceeds with respect to any Insurance Policy or a coverage action. For the avoidance of doubt, "Insurance Rights" include Insurance Proceeds.

53. "**Insurance Rights Transfer**" means the assignment and transfer to the Trust of (1) the Insurance Rights, (2) the Insurance Proceeds, and (3) all other rights, claims, benefits, or Causes of Action of the Debtors under or with respect to the Insurance Policies (but not the policies themselves).

54. "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

55. "**Interest**" means equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interest in the Debtors that existed immediately before the Petition Date.

56. "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

57. "**Minimum Trust Recovery**" means (1) $31.5 million paid on the Effective Date and (2) transfer of the Debtors' rights and obligations under the Specified Settlement and any postpetition proceeds thereof to the Trust. For the avoidance of doubt, future proceeds from Trust Assets shall in no way reduce the Minimum Trust Recovery.

58. "**Non-Released Party**" means any Person or Entity that is not a Released Party.

59. "**Notice and Claims Agent**" means [•] in its capacity as noticing, claims, and solicitation agent for the Debtors.

60. "**Other Priority Claim**" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

61. "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

62. "**Petition Date**" means July 31, 2026, the date on which the Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

63. "**PI/WD Claim**" means any Claim, known or unknown, that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim (whether or not diagnosable or manifested before confirmation of the Plan or the close of the Chapter 11 Cases) related to asbestos asserted under any legal theory, and any derivative Claim arising therefrom. The term "PI/WD Claim" includes Direct PI/WD Claims and Indirect PI/WD Claims.

64. "**Plan**" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

65. "**Plan Administrator**" means (1) the Trustee or (2) such other Person or Entity designated by the Committee to administer the wind up of the Debtors. Notwithstanding anything to the contrary in the Plan, if the Plan Administrator is designated by the Committee, the compensation and expenses of such Person or Entity shall be paid by the Trust.

66. "**Plan Distribution**" means a payment or distribution to Holders of Allowed Claims or other eligible Entities under this Plan.

67. "**Plan Supplement**" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be Filed by the Debtors no later than seven days before the deadline to submit a ballot to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest, as such appendix may be modified prior to the Confirmation Date. The Plan Supplement shall include, among other things, (1) the identity and compensation of the Plan Administrator; (2) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator, and the nature of any compensation for such insider; (3) the Trust Agreement; (4) the identity and compensation of the Trustee; (5) the Trust Distribution Procedures; and (6) other documentation necessary to effectuate the Plan or that is contemplated by the Plan.

68. "**Priority Tax Claim**" means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

69. "**Privileged Information**" means any privileged information of the Debtors, including information protected or purportedly protected by the attorney-client privilege, attorney work product doctrine, or other privilege or protection of immunity, including information shared pursuant to any joint defense, common interest, or confidentiality agreement among the Debtors

and any Related Party, and among the Debtors and any party that is not a Released Party related to any Retained Cause of Action, and any Common-Interest Communications.

70. "**Professional**" means any professional Person or Entity employed in these Chapter 11 Cases by Bankruptcy Court order pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 or otherwise.

71. "**Professional Fee Claim**" means a Claim for compensation or reimbursement of expenses of a Professional pursuant to sections 327, 328, 330, 331, 363, 365, 503(b), 1103, or 1123 of the Bankruptcy Code in connection with these Chapter 11 Cases.

72. "**Professional Fee Claims Estimat**e" means (1) with respect to each Professional, the Professional's good faith estimate of the amount of such Professional's accrued unpaid Professional Fee Claims through the Effective Date, to be provided by each Professional in writing to the Debtors not less than five days prior to the Effective Date, and (2) with respect to all of the Professionals, collectively, the sum of all individual Professional Fee Claims Estimates.

73. "**Professional Fee Escrow Account**" means an escrow account to hold an amount of Cash equal to the Professional Fee Claims Estimate funded by the Debtors as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed Professional Fee Claims.

74. "**Proof of Claim**" means a proof of Claim Filed against any Debtor in these Chapter 11 Cases.

75. "**Related Party**" means with respect to any Entity, each of its Affiliates, and other legal representatives and its and their present and former, in each case, shareholders, direct and indirect owners, partners, members, participants, managers, consultants, Affiliates, subsidiaries, divisions, management companies, managed accounts or funds, fund advisors, predecessors, directors, officers, attorneys, accountants, financial advisors, investment bankers, employees, agents, and other representatives.

76. "**Release Opt-Out**" means the item set forth in each of the ballots and the materials sent to Holders of Claims and Interests not entitled to vote to accept or reject the Plan, which permits both those Holders of Claims and Interests entitled to vote on the Plan and those not entitled to vote on the Plan the right to opt out of the third-party release set forth in section 9.2 herein.

77. "**Released Party**" means, in each case solely in its capacity as such: each of (1) the Debtors, (2) the Debtor Related Parties, (3) each Holder of an Interest, (4) the Ad Hoc Group, (5) the Committee, and (6) each Related Party of each party described in clauses (3) through (4). Notwithstanding anything to the contrary herein, the term "Released Party" shall not include (a) any successors in interest to (i) Uniroyal Power Transmission, Inc. (including The Gates Rubber Company, Tomkins plc, Onex Corporation, Blackstone, and Gates Industrial Corporation plc), (ii) Uniroyal Plastics Company, Inc. (including Polycast Technology Company and Uniroyal Technology Corp.), (iii) Uniroyal Chemical Company, Inc. (including Uniroyal Chemical Acquisition Corporation, Avery, Inc., Chemtura Corporation, and Laxness AG), (iv) Michelin North America, Inc., (v) Uniroyal Textiles (including Dominion Textile, Polymer Group, Inc.,

Blackstone, Avintiv, Inc., Berry Global Group, Inc., and Amcor PLC), (vi) Uniroyal-Goodrich Tire Company, or (vii) Uniroyal Properties Company, Inc., or for the foregoing (a)(i)-(vii) any of their affiliates, or (b) Michelin and any of its past, present and future Affiliates, parent and subsidiary entities, related parties, successors, board members, executives, and shareholders solely in their capacity as such; *provided*, *however*, that the exclusions set forth in clauses (a) through (b) shall apply only to the extent such party is not listed on Schedule 2 of the Plan.

78. "**Releasing Parties**" means, collectively, and in each case solely in their respective capacities as such: (1) each Released Party; (2) each holder of a Claim in Class 1, Class 2, or Class 3 that has not filed an objection to the release contained in section 9.2 herein prior to the deadline to submit a ballot to accept or reject the Plan or timely submitted a Release Opt-Out; (3) each holder of a Claim in Class 4 that did not check the Release Opt-Out on its ballot; and (4) each Related Party of an Entity in clauses (2) through (3) solely to the extent that such Entity is legally entitled to bind such Related Party to the releases contained in section 9.2 herein.

79. "**Retained Causes of Action**" means any Estate Cause of Action that is not expressly subject to the releases and exculpations of the Plan. Retained Causes of Action include but are not limited to any Cause of Action of the Debtors against any person or entity listed in Schedule 3 of the Plan, solely to the extent such person is not a Released Party.

80. "**RSA**" means that certain Restructuring Support Agreement means that certain Restructuring Support Agreement, dated as of July 31, 2026, by and among the Debtors and the Supporting Counsel (as defined in the RSA), including all exhibits, schedules, and other attachments thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms.

81. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

82. "**Secured Claim**" means any Claim to the extent reflected in the Schedules or a Proof of Claim as a Claim which is secured by a Lien on collateral, solely to the extent the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, solely to the extent of such permissible setoff.

83. "**Specified Settlement**" means each settlement agreement that Uniroyal Holding, Inc. is party to that is identified on Schedule 4 of the Plan and the proceeds thereof.

84. "**Trust**" means the settlement trust established under the Plan and the Trust Agreement, which shall (1) satisfy the applicable provisions of the Bankruptcy Code, (2) have the powers, duties and obligations set forth in the Plan and the Trust Agreement, and (3) assume all liability of the Debtors and their Estates for, and administer, all PI/WD Claims.

85. "**Trust Agreement**" means the Trust Agreement governing the Trust, dated as of the Effective Date, as may be amended or modified in accordance with the terms thereof, which

shall be prepared by the Committee and be in form and substance reasonably acceptable to the Debtors.

86. "**Trust Assets**" means all assets, rights, benefits, and retained Causes of Action after satisfaction of all non-PI/WD Claims including: (1) the Minimum Trust Recovery, (2) the Retained Causes of Action, (3) the Insurance Rights and the Insurance Proceeds, and (4) the Data Transfer Documents.

87. "**Trust Distribution Procedures**" means the trust distribution procedures for the Trust, as may be amended or modified in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Trust in a manner that is fair and equitable to holders of Allowed PI/WD Claims, which shall be prepared by the Committee and be in form and substance reasonably acceptable to the Debtors.

88. "**Trust Documents**" means collectively, (1) the Trust Agreement, (2) the Trust Distribution Procedures, (3) the Confirmation Order, and (4) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Trust.

89. "**Trustee**" means the trustee selected by the Committee with the consent of the Debtor, which consent shall not be unreasonably withheld or delayed, to be the trustee of the Trust, which shall be identified in the Plan Supplement and subject to approval of the Bankruptcy Court, or such successor as may be appointed after the Effective Date in accordance with the Trust Agreement.

90. "**U.S. Trustee**" means the Office of the United States Trustee for Region 3.

91. "**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

92. "**Unexpired Lease**" means a lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

93. "**Unimpaired**" means, with respect to a Claim or Class of Claims, not Impaired.

## 1.2. Rules of Interpretation

Unless otherwise provided herein: (1) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this document as a whole and not to any particular section, subsection, or clause contained therein, unless the context requires otherwise; (2) any reference herein to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (3) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (4) any reference to any Entity as a Holder includes that Entity's successors and assigns; (5) any effectuating provisions regarding the Allowance of PI/WD Claims may be interpreted by the Trustee in such a manner that is consistent with the overall purpose and intent of this Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, and such interpretation shall control in all respects to the extent permitted by the Trust Agreement, the Trust Distribution

Procedures and this Plan, as applicable; (6) the captions and headings in this Plan are for convenience of reference only and do not limit or otherwise affect the provisions hereof; and (7) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, release, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

### 1.3. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) will apply.

### 1.4. Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement or the Plan and the Plan Supplement, the terms of the Plan shall control. In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## SECTION 2
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, PROFESSIONAL FEE CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in section 3 herein.

### 2.1. Administrative Claims and Priority Tax Claims

Except with respect to Administrative Claims that are (1) Professional Fee Claims, (2) Claims for U.S. Trustee Fees, or (3) Governmental Claims that are subject to section 503(b)(1)(D) of the Bankruptcy Code, Holders of Administrative Claims must File with the Notice and Claims Agent and serve on the Plan Administrator requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, so as to be actually received on or before the Administrative Claim Bar Date.

To the extent not already paid as of the Effective Date and unless otherwise agreed to by the Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim, each Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim will receive payment in full, as soon as practicable after (1) the Effective Date but in no event later than 30 days after the Administrative Claim Bar Date, or (2) the date such Administrative Claim or Priority Tax Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, to be paid in Cash or pursuant to such other treatment as may be agreed upon by the Holder of such Claim and the Debtors or the Plan Administrator, as applicable.

Any Person or Entity who is required to timely file an Administrative Claim or Priority Tax Claim but fails to do so will not be treated as a Holder with respect to such Claim for Plan

Distribution purposes in these Chapter 11 Cases. The notice of the Effective Date of the Plan that will be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) will set forth the Administrative Claim Bar Date and will constitute notice of such Administrative Claim Bar Date.

**2.2. Professional Fee Claims**

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served within 30 days after the Effective Date. The Bankruptcy Court will determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

The Professional Fee Escrow Account will be maintained in trust solely for the Professionals and for no other Entities until all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests will encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account. Funds held in the Professional Fee Escrow Account will not be considered property of the Debtors or their Estates.

Allowed Professional Fee Claims will be paid from the Professional Fee Escrow Account or Cash, as applicable, as and when such Claims are Allowed or otherwise approved for payment by entry of an order of the Bankruptcy Court. When all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account will promptly be transferred to the Trust.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**2.3. U.S. Trustee Fees**

On the Effective Date, the Debtors shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date. Nothing in the Plan shall release the Debtors or the Plan Administrator from their obligation to pay all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by the Bankruptcy Court closing, dismissing or converting the Chapter 11 Cases. The U.S. Trustee shall not be treated as providing any release under the Plan regarding the U.S. Trustee Fees. The U.S. Trustee shall not be required to file any Proof of Claim or any request for administrative expense for U.S. Trustee Fees. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due. After the Effective Date, the Plan Administrator will file with the Bankruptcy Court all quarterly post-confirmation reports when they become due.

## SECTION 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (1) Impaired or Unimpaired by the Plan and (2) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to accept or reject the Plan. The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | PI/WD Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### 3.1. Class 1: Secured Claims

*Classification*: Class 1 for each Debtor consists of all Secured Claims against the applicable Debtor.

*Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Secured Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; (2) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (3) such other treatment rendering such Claim Unimpaired.

*Voting*: Class 1 is Unimpaired, and Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

### 3.2. Class 2: Other Priority Claims

*Classification*: Class 2 for each Debtor consists of all Other Priority Claims against the applicable Debtor.

*Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired.

*Voting*: Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**3.3. Class 3: General Unsecured Claims**

*Classification*: Class 3 for each Debtor consists of all General Unsecured Claims against the applicable Debtor.

*Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of each such Allowed General Unsecured Claim, each Holder thereof will receive: (1) payment in full in Cash from the Debtors if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired.

*Voting*: Class 3 is Unimpaired, and Holders of General Unsecured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 3 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

**3.4. Class 4: PI/WD Claims**

*Classification*: Class 4 for each Debtor consists of all PI/WD Claims against the applicable Debtor.

*Treatment*: On the Effective Date, all PI/WD Claims shall automatically and, without further act, deed, or order of the Bankruptcy Court, be incurred in full and assumed by the Trust. Subject to the Trust Agreement, each holder of an Allowed PI/WD Claim shall be entitled to receive distributions in accordance with the Trust Distribution Procedures. Holders of Allowed PI/WD Claims against the Debtors shall not receive any payment from the Trust unless and until such Claims are resolved in accordance with the Trust Distribution Procedures. The terms, provisions and procedures set forth in the Trust Distribution Procedures shall establish the method by which PI/WD Claims shall be submitted, processed, liquidated, reserved for, and, if applicable, paid.

*Voting*: Class 4 is Impaired, and Holders of PI/WD Claims are entitled to vote to accept or reject the Plan.

**3.5. Class 5: Intercompany Claims**

*Classification*: Class 5 for each Debtor consists of all Intercompany Claims against the applicable Debtor.

*Treatment*: On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any Plan Distribution on account of such Claims.

*Voting*: Class 5 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

**3.6. Class 6: Interests**

*Classification*: Class 6 consists of all Interests.

*Treatment*: On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Interests shall not receive any Plan Distribution on account of such Interests.

*Voting*: Class 6 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 6 Interests are not entitled to vote to accept or reject the Plan.

**3.7. Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the confirmation hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**3.8. Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class shall be deemed to have accepted the Plan.

**3.9. Reservation of Rights Regarding Claims and Interests.**

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors', the Plan Administrator's or the Trust's respective rights and defenses with respect to any Claim or Interest, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

## SECTION 4
## MEANS FOR IMPLEMENTATION OF THE PLAN

**4.1. Restructuring Transactions**

On the Effective Date, the Plan Administrator and Trustee shall enter into any transaction and take any reasonable actions as may be necessary or appropriate to effect the transactions

described herein, including, as applicable (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable Entities agree, (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law, and (4) all other actions that the Plan Administrator and Trustee determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with this Plan or the Plan Supplement.

### 4.2. The Minimum Trust Recovery

On the Effective Date, the Debtors shall (1) contribute $31.5 million in Cash to the Trust and (2) transfer to the Trust the Debtors' rights and obligations under the Specified Settlement and any postpetition proceeds thereof. Future proceeds from Trust Assets shall in no way reduce the Minimum Trust Recovery. The Minimum Trust Recovery shall not be reduced, offset, or diminished by the payment of, *inter alia*, Administrative Claims, including Professional Fee Claims.

### 4.3. Sources of Consideration for Plan Distributions

Subject to the provisions of the Plan concerning the Professional Fee Escrow and the Disputed Claims Reserve, the Debtors, Plan Administrator, or the Trustee (as applicable), shall fund Plan Distributions with (1) Cash on Hand and (2) Trust Assets.

### 4.4. Trustee

1. **Powers and Duties of the Trustee**. The Trust shall be governed by the Trustee. The powers and duties of the Trustee shall include those powers, duties and responsibilities vested in the Trustee pursuant to the terms of the Trust Agreement.

2. **Trust Advisory Committee**. On the Effective Date and pursuant to the Trust Agreement, the Trust Advisory Committee (as defined in the Trust Agreement) shall be established. The Trust Advisory Committee shall have [●] members selected by the Committee in consultation with the Debtor, whose identities shall be set forth in the Plan Supplement. The Trust Advisory Committee shall serve in a fiduciary capacity in the administration of the Trust and shall have such rights and powers relating to the supervision of the Trust as set forth in the Trust Agreement, which rights and powers shall include consent and consultation rights over (1) any amendments to the Trust Distribution Procedures and the Trust Agreement, (2) any changes for the forms of acceptance and release under the Trust Distribution Procedures, (3) the prosecution or settlement of Trust Causes of Action, and (4) any loan or financing obtained by the Trust. The Confirmation Order shall constitute an order of the Bankruptcy Court appointing the initial members of the Trust Advisory Committee.

## 4.5. Trust

1. **Establishment of Trust**. On or before the Effective Date, the Trust Agreement shall be executed, and all other necessary steps shall be taken to create the Trust. On the Effective Date, the Trust shall be automatically appointed as a representative of the Debtors' Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code for the purposes set forth in the Trust Agreement. From and after the Effective Date, the Trust shall succeed to all rights, privileges, and powers of the Debtors and their Estates with respect to the applicable Trust Assets. The Trust shall automatically be substituted and will replace the Debtors and their Estates in all Causes of Action, whether or not such Causes of Action are pending in filed litigation.

2. **Purposes of Trust**. The purpose of the Trust shall be to (1) hold, manage, protect and monetize the Trust Assets and (2) administer, process and satisfy all PI/WD Claims, which for the avoidance of doubt shall be submitted exclusively to the Trust and satisfied by the Trust in accordance with the terms, provisions and procedures of the Trust Distribution Procedures. The Trust shall have the exclusive power and authority to, among other things, in accordance with the Trust Documents (a) hold, manage, protect and monetize Trust Assets, (b) commence, prosecute, transfer, settle, compromise, withdraw, or abandon all Retained Causes of Action and Insurance Rights, and (c) perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Trust and carry out the provisions of this Plan relating to the Trust. The Trust shall be administered and implemented by the Trustee, subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents.

3. **Vesting of Trust Assets**. As of the Effective Date, the Trust Assets shall vest in the Trust free and clear of all Liens, Claims, encumbrances, charges or other interests to the extent permitted by section 1141 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the transfer of the Trust Assets to the Trust shall not diminish, and shall fully preserve, any rights and defenses the Debtors would have if such assets had been retained by the Debtors. The Trust and the Trustee, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce the Trust Causes of Action vested, transferred, or assigned to such entity on behalf of the Trust. The Trust or the Trustee, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, *provided*, *however*, that the exercise of such right, authority, and discretion by the Trustee shall be subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents.

4. **Insurance Rights Transfer**. On the Effective Date, the Debtors shall transfer to the Trust all their rights in connection with (1) the Insurance Rights, (2) the Insurance Proceeds, and (3) all other rights, claims, benefits, or Causes of Action they have with respect to the Insurance Policies (but not the policies themselves).

5. **Certain Tax Matters of Trust**. The Trust is intended to qualify, and shall be reported, as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code for U.S. federal income tax purposes and shall

be treated consistently for state and local purposes, to the extent applicable. The Trustee and all holders of beneficial interests in the Trust shall report consistently with the foregoing. The Trustee shall be the "administrator" of the Trust as such term is used in Treasury Regulation Section 1.468B-2(k)(3) and shall be responsible for filing all tax returns of the Trust. The Trust shall be responsible for the payment, out of the assets of the Trust, of any taxes imposed on the Trust or the Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Trust Agreement. The Trustee may request an expedited determination of taxes on the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust.

6. **Privileged Information of Trust**. On the Effective Date, any attorney-client privilege, work-product privilege, common-interest communications protection or privilege granted by joint defense, common interest, or other privilege or immunity of the Debtors relating, in whole or in part, to the PI/WD Claims or the Trust Assets shall be irrevocably transferred to and vested in the Trust. The Trust shall have the same rights as the Debtors in Privileged Information relating to the PI/WD Claims and the Trust Assets. Prior to or on the Effective Date, the Debtors shall cause the Data Transfer to occur.

7. **Trust Distribution Procedures**. On the Effective Date, the Trust shall implement the Trust Distribution Procedures in accordance with the terms of the Trust Agreement. On or after the Effective Date, the Trustee shall have the authority to administer, amend, supplement, or modify the applicable Trust Distribution Procedures in accordance with the terms of this Plan and the Trust Documents, and subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents. The Trust Distribution Procedures shall be binding on all Holders of PI/WD Claims. Allowed Claims under the Trust Distribution Procedures shall be solely enforceable against the Trust. The Allowed amount of any PI/WD Claim shall be the amount determined pursuant to this Plan and the Trust Distribution Procedures. Allowed PI/WD Claims under the Trust Distribution Procedures shall be legally enforceable against the Trust. The amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Agreement, as determined or as actually paid by the Trust are not, as such, the equivalent of any Holder's Allowed Claim amount. The Allowance of Claims under the Trust Agreement, including the Trust Distribution Procedures, shall not determine, and shall not be used to determine, in any respect the liability of any Released Party for any Claim or Cause of Action.

8. **Institution and Maintenance of Legal and Other Proceedings**. As of the Effective Date, the Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including the Retained Causes of Action in accordance with the Trust Documents. Without limiting the foregoing, on and after the Effective Date, the Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the Debtors' name to the extent deemed necessary or appropriate by the Trust. Furthermore, without limiting the foregoing, the Trust shall be empowered to maintain, administer, preserve, or pursue Insurance Rights.

9. **Preservation of Retained Causes of Action**. On the Effective Date, the Retained Causes of Action shall vest in the Trust in accordance with the Trust Documents free and clear of

all Claims, Liens, encumbrances, and other interests. On and after the Effective Date, the Trustee shall have discretion to pursue and dispose of the Retained Causes of Action. No Person or Entity may rely on the absence of a specific reference in this Plan or Disclosure Statement as to any Cause of Action as any indication that the Debtors, and on and after the Effective Date, the Trustee, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation. Prior to the Effective Date, the Debtor and, on and after the Effective Date, the Trustee, shall retain and shall have, through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person or Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Trustee will not pursue any and all available Causes of Action. Unless and until any such Causes of Action against any Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or assigned, or settled under this Plan or a Final Order, the Trustee expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

10. **Trust Discovery**. The Trust is authorized pursuant to Bankruptcy Rule 2004 or other applicable discovery rules to seek discovery necessary to satisfy its obligations under this Plan and the Trust Documents. The Trust shall take whatever steps are necessary to enforce such discovery obligations pursuant to Bankruptcy Rules 2004 and 9016, Rule 45 of the Federal Rules of Civil Procedure, other applicable court resolution processes, bankruptcy law, and non-bankruptcy law. Nothing herein shall abridge or affect the rights of the Trust or the Trustee to take discovery in any proceeding or litigation brought by the Trust or the Trustee.

11. **Litigation Fees**. The Trust shall pay any Released Party that is called as a witness, deponent, consultant, expert, or otherwise in any litigation that is related to a Debtor (including discovery): (1) a reasonable and customary per diem payment for a lawyer of commensurate experience and (2) after provision of a budget, reimbursement of out-of-pocket legal fees for a lawyer of such Released Party's choosing.

12. **Indemnification**. The Trust shall indemnify each of the Debtors' current and former directors and officers against any asbestos-related claim asserted against them, not to exceed $2 million of total indemnification payments in the aggregate.

### 4.6. Corporate Action

On the Effective Date and following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes. The Plan Administrator shall submit with the appropriate governmental agencies a copy of the

Confirmation Order, which shall suffice for purposes of obtaining a Certificate of Dissolution from the New Jersey Secretary of State and the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Plan Administrator and the Trustee, as applicable, shall be authorized to act on behalf of the Estates, provided that the Plan Administrator and the Trustee shall have no duties other than as expressly set forth in the Trust Agreement, this Plan, or the Confirmation Order.

On and after the Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by this Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sole director, or governing body of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors. The foregoing shall not limit the authority of the Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement or other agreement entered into on or after the Effective Date. Following the Effective Date, the Plan Administrator is given full power of attorney and has the authority to execute or endorse documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation, including but not limited to, the filing of final tax returns and the dissolution of the Debtors.

### 4.7. Cancellation of Existing Securities and Agreements

Except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator. The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### 4.8. Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors, the Plan Administrator, and the Trustee (as applicable) shall be authorized to execute, deliver, File, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and

take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtors, the Plan Administrator, the Trustee, all Holders of Claims receiving Plan Distributions, and all other parties in interest shall, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 4.9. Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator (as applicable), the Trustee, all Holders of Claims or Interests receiving Plan Distributions, and all other parties in interest, shall prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### 4.10. Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Trust Assets to the Trust.

### 4.11. Authority to Act

Prior to, on, or after the Effective Date, all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

## SECTION 5
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1. General Treatment

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected in accordance with sections 365 and 1123 of the

Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to a Bankruptcy Court order, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**5.2. Rejection Damages Claims**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within 30 days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable bar date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Section 3.3 herein.

**5.3. Reservation of Rights**

Neither the exclusion or inclusion of any contract or lease in the Schedules or in any Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator (as applicable) may elect within 30 calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan by filing a notice of such election on the docket of these Chapter 11 Cases.

**5.4. Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Trustee, or Plan Administrator (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Trustee, and the Plan Administrator (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

### 5.5. Insurance Policies

Notwithstanding anything to the contrary herein, each of the Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any such Insurance Policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in this Plan to the contrary, this Plan will constitute a motion to assume such Insurance Policy and assign the same to the Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Insurance Policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible.

### 5.6. D&O Policies

Each D&O Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. Coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the applicable D&O Policy. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the relevant D&O Policy.

### 5.7. Non-Occurrence of Effective Date

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### 5.8. Employee Compensation and Benefits

Except to the extent previously ordered by the Bankruptcy Court in these Chapter 11 Cases, all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

# SECTION 6
# PROVISIONS GOVERNING DISTRIBUTIONS

## 6.1. Distributions to Holders of PI/WD Claims

All PI/WD Claims shall be administered by the Trust pursuant to and in accordance with this Plan and the Trust Distribution Procedures.

## 6.2. Distribution Record Date

On the Distribution Record Date, the claims register shall be closed and any party responsible for making Plan Distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

## 6.3. Disbursing Agent

Except as otherwise provided herein, all Plan Distributions shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all Plan Distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

## 6.4. Compliance with Tax Requirements

In connection with the Plan and all distributions hereunder, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, requiring a Holder of a Claim or Interest to submit appropriate tax and withholding certifications. Notwithstanding any other provision of the Plan: (1) each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (2) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan if, after 90 days from the date of transmission of a written request to the holder of an Allowed Claim, the Plan Administrator does not receive a valid, completed IRS form from such Holder of an Allowed Claim.

## 6.5. Date of Distributions

Plan Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any Plan Distribution related thereto. In the event that any payment or

act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.6. Delivery of Distributions

Subject to applicable Bankruptcy Rules, all Plan Distributions shall be made by the Disbursing Agent, who shall transmit such Plan Distributions to the applicable Holders of Allowed Claims or their designees.

If any Plan Distribution to a Holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise; or (2) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within 90 calendar days after the mailing of such Plan Distribution, the Plan Administrator or Trustee, as applicable, shall be authorized to cancel such Plan Distribution and file with the Bankruptcy Court the name and last known address of the Holder of undeliverable Plan Distribution or uncashed Plan Distribution, as applicable. If, after the passage of 30 calendar days after such Filing, the payment or Plan Distribution on the Allowed Claim still cannot be made, then (1) the Holder of such Claim shall cease to be entitled to the undeliverable Plan Distribution or uncashed Plan Distribution, which will be transferred to the Trust; and (2) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further Plan Distributions.

### 6.7. Manner of Payment

Except as specifically provided herein, at the option of the Disbursing Agent, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.8. Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### 6.9. Setoffs and Recoupments

The applicable Disbursing Agent may, but shall not be required to, apply, set off against or recoup against any Allowed Claim and the Plan Distributions on account of such Allowed Claim (before any Plan Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors, the Estates, or the Trust may have against the Holder of such Allowed Claim without the need for Bankruptcy Court approval; *provided*, that (1) no less than 14 calendar days notice is provided to the applicable Holder of the Claim prior to setoff or recoupment or such Holder consents, and (2) neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Plan Administrator, or the Trust of any such claim the Debtors, their Estates, or the Trust may have against the Holder of such Claim.

### 6.10. Minimum Distributions

No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan. If the Cash available for the final Plan Distribution is less than the cost to distribute such funds, such funds will be transferred to the Trust.

### 6.11. Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Plan Distribution includes both principal and accrued but unpaid prepetition interest, such Plan Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### 6.12. Distributions Free and Clear

Except as otherwise provided in this Plan, any Plan Distribution shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

## SECTION 7
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### 7.1. Allowance of Claims

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### 7.2. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 7.3. Estimation of Claims

The Debtors or the Plan Administrator (as applicable) may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Plan Distributions), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any Plan Distribution on account of such Claim.

**7.4. Adjustment to Claims Without Objection**

Any Claim that has been paid or satisfied or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Plan Administrator (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.

**7.5. Time to File Objections to Claims**

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the applicable deadline to file such objection (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator).

**7.6. Disputed Claims Reserve**

The Debtor shall prepare a reasonable and good faith estimate, which shall be reasonably acceptable to the Committee, of the projected amount necessary to satisfy Disputed Claims no later than five Business Days prior to the anticipated Effective Date. This estimate shall not be considered or deemed an admission or limitation with respect to the amount of any Disputed Claim, and the Holder of any such Disputed Claims shall not be bound to any extent by such estimate.

Upon the Effective Date, the Plan Administrator shall establish and maintain the Disputed Claims Reserve, which shall hold the amount consistent with the estimate made in accordance with this section 7.6. Upon the satisfaction or resolution of all Disputed Claims, the Plan Administrator will transfer any amounts remaining in the Disputed Claims Reserve to the Trust.

**7.7. No Distributions Pending Allowance**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no Plan Distribution shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

**7.8. Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a Plan Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Plan Distribution to which such Holder is entitled under the Plan as

of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final Plan Distribution is made on account of such Claim.

## SECTION 8
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### 8.1. Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1. The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Plan and Confirmation Order shall be in form and substance reasonably acceptable to each of the Debtors and the Committee.

3. The Confirmation Order shall have been entered and shall be in full force and effect.

4. There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the material transactions contemplated by this Plan from being consummated.

5. The Professional Fee Escrow shall have been fully funded pursuant to the terms of this Plan.

6. All actions, documents and agreements necessary to implement the Plan shall have been effected, executed or tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7. The Data Transfer shall have occurred.

8. The Plan Administrator shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

9. The Trustee shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

10. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

11. The Trust shall have received the Trust Assets, including but not limited to, the Minimum Trust Recovery.

12. The Debtors must be reasonably satisfied with the Release Opt-Outs exercised including that each Party electing to exercise a Release Opt-Out is doing so in a manner consistent with any obligations it owes under the terms of the RSA.

### 8.2. Waiver of Conditions

Unless otherwise specifically provided for in this Plan, the conditions set forth in section 8.1 herein may be waived in whole or in part with the consent of each of the Debtors and the Ad Hoc Group without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

## SECTION 9
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

### 9.1. Releases by the Debtors

PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AS OF THE EFFECTIVE DATE, THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II)THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.1 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD,

WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS SECTION 9.1 BY THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS SECTION 9.1 IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (6) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (7) A BAR TO THE DEBTORS OR THEIR ESTATES, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.

**9.2. Releases by Holders of Claims and Interests**

AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE

DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

**9.3. Exculpation**

AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS EXCULPATED FROM, ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, OR ANY OTHER PARTY IN INTEREST, FOR (1) ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THESE CHAPTER 11 CASES FROM THE PETITION DATE TO THE EFFECTIVE DATE; (2) THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DISCLOSURE STATEMENT OR THE PLAN; (3) THE FILING OF THESE CHAPTER 11 CASES; (4) THE PURSUIT OF CONFIRMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY PERSON OR ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY

EXCULPATED PARTY ON THE PLAN, THE CONFIRMATION ORDER, THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER AGREEMENT (WHETHER OR NOT SUCH ISSUANCE OR DISTRIBUTION OCCURS FOLLOWING THE EFFECTIVE DATE); (6) NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING; AND (7) THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED HEREUNDER. THE EXCULPATED PARTIES SHALL BE DEEMED TO HAVE PARTICIPATED IN GOOD FAITH IN CONNECTION WITH THE ABOVE AND ENTITLED TO THE PROTECTION OF SECTION 1125(E) OF THE BANKRUPTCY CODE. EACH EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.

**9.4. Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO THE PLAN; (3) ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN; OR (4) ARE OTHERWISE SATISFIED, STAYED, RELEASED, OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES, INCLUDING BEING PERMANENTLY ENJOINED AND PRECLUDED FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE PLAN ADMINISTRATOR, THE TRUST, THE RELEASED PARTIES, OR EXCULPATED PARTIES (AS APPLICABLE): (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN

CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING ANY OTHER INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

UPON THE BANKRUPTCY COURT'S ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, OR PRINCIPALS, SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THIS PLAN BY THE DEBTORS, THE PLAN ADMINISTRATOR, THE TRUST, AND THEIR RESPECTIVE AFFILIATES, EMPLOYEES, ADVISORS, OFFICERS AND DIRECTORS, OR AGENTS.

NO PARTY MAY COMMENCE, CONTINUE, AMEND, OR OTHERWISE PURSUE, JOIN IN, OR OTHERWISE SUPPORT ANY OTHER PARTY OR ENTITY COMMENCING, CONTINUING, AMENDING, OR PURSUING, A CAUSE OF ACTION OF ANY KIND AGAINST THE DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES THAT RELATES TO, OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, A CAUSE OF ACTION SUBJECT TO SECTION 9.1, SECTION 9.2, OR SECTION 9.3 HEREIN WITHOUT FIRST (1) REQUESTING A DETERMINATION FROM THE BANKRUPTCY COURT, AFTER NOTICE AND A HEARING, THAT SUCH CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM AGAINST SUCH DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY AND IS NOT A CLAIM THAT THE DEBTORS RELEASED UNDER THIS PLAN, WHICH REQUEST MUST ATTACH THE COMPLAINT OR PETITION PROPOSED TO BE FILED BY THE REQUESTING PARTY AND (2) OBTAINING FROM THE BANKRUPTCY COURT SPECIFIC AUTHORIZATION FOR SUCH PARTY TO BRING SUCH CAUSE OF ACTION AGAINST ANY SUCH DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY. TO THE EXTENT THAT ANY PARTY THAT OBTAINS SUCH DETERMINATION AND AUTHORIZATION AND SUBSEQUENTLY WISHES TO AMEND THE AUTHORIZED COMPLAINT OR PETITION TO ADD ANY CAUSES OF ACTION NOT EXPLICITLY INCLUDED IN THE AUTHORIZED COMPLAINT OR PETITION, SUCH PARTY MUST OBTAIN AUTHORIZATION FROM THE BANKRUPTCY COURT BEFORE FILING ANY SUCH AMENDMENT IN THE COURT WHERE SUCH COMPLAINT OR PETITION IS PENDING. THE BANKRUPTCY COURT WILL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CAUSE OF ACTION CONSTITUTES A DIRECT OR DERIVATIVE CLAIM, IS COLORABLE AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE, WILL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CAUSE OF ACTION.

**9.5. Insurance Entity Injunction**

ALL PERSONS THAT HAVE HELD OR ASSERTED, THAT HOLD OR ASSERT, OR THAT MAY IN THE FUTURE HOLD OR ASSERT ANY CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY BASED UPON, ATTRIBUTABLE TO, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH ANY INSURANCE POLICY, WHENEVER AND WHEREVER ARISING OR ASSERTED, WHETHER IN THE UNITED STATES OF AMERICA OR ANYWHERE ELSE IN THE WORLD, WHETHER SOUNDING IN TORT, CONTRACT, WARRANTY, STATUTE OR ANY OTHER THEORY OF LAW, EQUITY OR ADMIRALTY, SHALL BE STAYED, RESTRAINED, AND ENJOINED FROM TAKING ANY ACTION FOR THE PURPOSE OF DIRECTLY OR INDIRECTLY COLLECTING, RECOVERING, OR RECEIVING PAYMENTS, SATISFACTION, OR RECOVERY WITH RESPECT TO ANY SUCH CAUSE OF ACTION, INCLUDING:

(1) COMMENCING, CONDUCTING, OR CONTINUING, IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND (INCLUDING A JUDICIAL, ARBITRATION, ADMINISTRATIVE, OR OTHER PROCEEDING) IN ANY FORUM WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION (INCLUDING, FOR THE AVOIDANCE OF DOUBT, DIRECTLY PURSUING ANY SUIT, ACTION OR OTHER PROCEEDING WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY);

(2) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING, BY ANY MEANS OR IN ANY MANNER, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT AWARD, DECREE, OR OTHER ORDER AGAINST ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION;

(3) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE AGAINST ANY INSURANCE COMPANY, OR THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION; AND

(4) EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF SUBROGATION, INDEMNITY, OR CONTRIBUTION OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION OF ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION;

*PROVIDED*, *HOWEVER*, THAT (A) THIS INJUNCTION SHALL NOT IMPAIR IN ANY WAY ANY ACTIONS BROUGHT BY THE TRUST AGAINST ANY INSURANCE COMPANY, (B) THE TRUST SHALL HAVE THE AUTHORITY AT ANY TIME TO TERMINATE, OR REDUCE OR LIMIT THE SCOPE OF, THE INJUNCTION WITH RESPECT TO ANY INSURANCE COMPANY, IN ACCORDANCE WITH THE TRUST DOCUMENTS, UPON EXPRESS WRITTEN NOTICE TO SUCH INSURANCE COMPANY, AND (C) THIS INJUNCTION IS NOT ISSUED FOR THE BENEFIT OF ANY INSURANCE COMPANY, AND NO INSURANCE COMPANY IS A THIRD-PARTY BENEFICIARY OF THIS INJUNCTION.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, THIS INJUNCTION SHALL NOT ENJOIN:

(1) THE RIGHTS OF ANY INSURED PARTY UNDER ANY COVERAGE OF ANY D&O POLICY;

(2) THE RIGHTS OF ANY SUCCESSOR IN INTEREST TO (1) UNIROYAL PROPERTIES, INC., (2) UNIROYAL TIRE COMPANY, INC., (3) UNIROYAL PLASTICS COMPANY, INC., (4) UNIROYAL POWER TRANSMISSION, INC., OR (5) UNIROYAL CHEMICAL COMPANY, INC. UNDER ANY COVERAGE OF ANY INSURANCE POLICY THAT WAS THE SUBJECT OF LITIGATION IN *UNIROYAL, INC. V. AMERICAN REINSURANCE CO., ET. AL.*;

(3) THE RIGHTS OF ANY PERSON TO THE TREATMENT ACCORDED THEM UNDER THIS PLAN, AS APPLICABLE, INCLUDING THE RIGHTS OF HOLDERS OF PI/WD CLAIMS TO ASSERT SUCH CLAIMS, AS APPLICABLE, IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES;

(4) THE RIGHTS OF THE TRUST TO PROSECUTE ANY ACTION BASED ON OR ARISING FROM INSURANCE POLICIES;

(5) THE RIGHTS OF THE TRUST TO ASSERT ANY CAUSE OF ACTION, DEBT, OBLIGATION, OR LIABILITY FOR PAYMENT AGAINST ANY INSURANCE COMPANY BASED ON OR ARISING FROM THE INSURANCE POLICIES;

(6) THE RIGHTS OF ANY INSURANCE COMPANY TO ASSERT ANY CAUSE OF ACTION, DEBT, OBLIGATION, OR LIABILITY FOR PAYMENT AGAINST ANY OTHER INSURANCE COMPANY; OR

(7) THE CAUSE OF ACTION FOR REINSURANCE UNDER REINSURANCE CONTRACTS OR CAUSE OF ACTION UNDER RETROCESSIONAL CONTRACTS AMONG AN INSURANCE COMPANY AND ANY ANOTHER INSURANCE COMPANY.

### 9.6. Insurance Provision

Nothing in this Plan, the Trust Documents, the Confirmation Order, any finding of fact or conclusion of law with respect to the Confirmation of this Plan, any order or opinion entered on appeal from the Confirmation Order, or any valuation of Claims (either individually or in the aggregate) in the Chapter 11 Cases shall, with respect to any Insurance Company (1) constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, other determination establishing the coverage obligation of any such Insurance Company for any Claim, or (2) limit the right of any such Insurance Company to assert any Insurance Coverage Defense; *provided*, *however*, that with, respect to (1) and (2), (a) the transfer of rights to the Trust pursuant to the Insurance Rights Transfer shall be valid and enforceable, and (b) the discharge or release of any party from any Claims or Causes of Action under this Plan shall not affect the liability of any such Insurance Company. The establishment of any claim in litigation against the Trust in its capacity as the Debtors' representative shall be deemed the establishment of a claim against the Debtor for the purpose of triggering any available Insurance Policy. Neither this Plan nor the Trust Documents shall in any way reduce, limit, discharge or release any Insurance Company.

### 9.7. Compromise and Settlement of PI/WD Claims

The treatment provided for PI/WD Claims under the Plan and the Trust Documents incorporate and reflect a proposed settlement framework of such Claims against the Debtors.

### 9.8. Claim Over

It is the intent of the Released Parties that: (1) the contributions made by the Debtor to the Trust should be the sole payments the Debtors and the Debtor Related Parties shall make to address the PI/WD Claims; (2) a claim by the Holder of a PI/WD Claim against any Non-Released Party should not result in any additional payment by any Released Party; and (3) the compromise and settlement effectuated through the Plan meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state or federal law or doctrine that reduces or discharges a released party's liability to any other parties. The Plan and Confirmation Order will specify that the Plan is a good faith settlement that bars any Cause of Action by a Non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that Non-Released Party and paid or awarded to any Holder of a PI/WD Claim by way of settlement, judgment, or otherwise on any claim that would be released were such Non-Released Party a Released Party (a "**Claim Over**") to the extent that a good-faith settlement (or released thereunder) has such an effect under applicable law. Nothing herein prevents the Trust or a Releasing Party from pursing litigation against a Non-Released Party and collecting the full amount of any judgment.

### 9.9. Setoff and Subrogation

In no event shall any Holder of a Claim or Interest be entitled to set off or subrogate any Claim that such Holder has against a Debtor or the Trust against any Cause of Action of a Debtor, or the Trust, as applicable, unless such Holder Filed a motion before the Confirmation Date requesting the right to perform such setoff or subrogation or indicated in an Allowed Proof of

Claim Filed before the Confirmation Date that such Holders asserts, has or intends to preserve, such right of setoff, or subrogation.

### 9.10. No Discharge

Because the Debtors are liquidating, confirmation of the Plan does not discharge the Debtors pursuant to section 1141 of the Bankruptcy Code.

### 9.11. Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Plan Distributions, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

## SECTION 10
## RETENTION OF JURISDICTION

### 10.1. Retention of Jurisdiction

Notwithstanding confirmation of this Plan or occurrence of the Effective Date, and except as otherwise provided by applicable law, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1. To hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and any disputes over Cure amounts resulting therefrom;

2. To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on, or commenced after, entry of the Confirmation Order;

3. To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided in this Plan and the Confirmation Order;

4. To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Claim;

5. To enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated;

6. To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

7. To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof

8. To hear and determine all Professional Fee Claims;

9. To resolve disputes concerning any reserves with respect to any Disputed Claim or the administration thereof;

10. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing, or related to, any of the foregoing;

11. To take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, exculpation, or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following the occurrence of the Effective Date;

12. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order;

13. To hear and determine any other matters related to these Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

14. To resolve any disputes concerning whether a Person had sufficient notice of these Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with these Chapter 11 Cases, any bar date established in these Chapter 11 Cases, or any deadline for responding or objecting to a Cure amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

15. To recover all assets of the Debtors and property of their Estates, wherever located;

16. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

17. To enter a Final Decree closing these Chapter 11 Cases.

### 10.2. Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (1) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (2) the date that these Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

## SECTION 11
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 11.1. Modification of the Plan

Subject to the limitations contained in the Plan, in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Debtors may (1) amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code or (2) after the entry of the Confirmation Order, institute proceedings in the Bankruptcy Court, to amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 11.2. Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 11.3. Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.4. Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke and withdraw this Plan at any time prior to the Confirmation Date in the exercise of their fiduciary duties or, if the Debtors are for any reason unable to consummate this Plan after the Confirmation Date, at any time up to the Effective Date. If the Debtors revoke or withdraw this Plan, (1) nothing contained in this Plan will be deemed to constitute a waiver or release of any claims by or against a Debtor or to prejudice in any manner the rights of a Debtor or any Entity in any further proceeding involving a Debtor and (2) the result

will be the same as if the Confirmation Order were not entered, this Plan was not filed and the Effective Date did not occur.

## SECTION 12
## MISCELLANEOUS PROVISIONS

### 12.1. Debtors' Operation from Confirmation Hearing Through Effective Date

During the period from the confirmation hearing through and until the Effective Date, the Debtors shall continue to operate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### 12.2. Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Plan Administrator, the Trust, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### 12.3. Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### 12.4. Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### 12.5. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### 12.6. Preservation of Books and Records

On the Effective Date, the Debtors shall provide the Plan Administrator and the Trustee with timely access to all of the books and records of the Debtors in the Debtors' possession as of the Petition Date and the Effective Date. The Debtors shall also instruct any third parties, or professionals possessing such books and records (including computer generated or computer

maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Plan Administrator or Trustee, and each such party shall be directed not to dispose of or destroy any such books and records until such time as authorized in writing by the Plan Administrator and Trustee or further order of the Bankruptcy Court.

### 12.7. Notices

In order for all notices, requests, and demands to or upon the Debtors or the Plan Administrator, as the case may be, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| Uniroyal Holding, Inc.<br>70 Great Hill Road<br>Naugatuck, CT 06770<br>Attention: Robert V. D'Angelo, Jr., President and General Counsel<br>Email: rdangelo@unihold.net | Debevoise & Plimpton LLP<br>66 Hudson Boulevard<br>New York, NY 10001<br>Attention: Samuel A. Newman<br>Michael C. Godbe<br>Email: snewman@debevoise.com<br>mcgodbe@debevoise.com<br><br>-and-<br><br>Duane Morris LLP<br>200 Campus Drive, Suite 300<br>Florham Park, NJ 07932-1007<br>Attention: Morris S. Bauer<br>Email: msbauer@duanemorris.com |
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

### 12.8. Entire Agreement

On the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.9. Nonseverability of Plan Provision Upon Confirmation

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not have the power to alter and interpret such term or provision to make it valid or enforceable; *provided*, that at the request of the Debtors, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (3) nonseverable and mutually dependent.

### 12.10. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### 12.11. Dissolution of the Committee

On the Effective Date, the Committee will dissolve. Upon the dissolution of the Committee, the Committee and its respective Professionals shall cease to have any duty, obligation, or role arising from, or related to, these Chapter 11 Cases and shall be released and discharged from all rights and duties from, or related to, these Chapter 11 Cases. Notwithstanding the foregoing, the Committee may, at its option and without taking any action or seeking or receiving any approval, continue to serve and function after the Effective Date for the purposes of participating in any (1) appeal of any order entered in these Chapter 11 Cases, including the Confirmation Order, (2) applications for compensation or expense reimbursements of Professionals and any hearing thereon, or (3) adversary proceeding pending on the Effective Date to which the Committee was a participant. To the extent that the Committee determines to continue to serve and function after the Effective Date pursuant to the preceding sentence, it will dissolve upon the completion of its participation in the matters described in clause (1) through (3), as applicable. Effective as of the dissolution of the Committee, the Trust will succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Committee and shall enjoy the work product protections that were applicable or available to the Committee before its dissolution.

### 12.12. Closing of Chapter 11 Cases

After the full administration of these Chapter 11 Cases, the Plan Administrator shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

Dated: July 31, 2026

Respectfully submitted,

By: Robert V. D'Angelo Jr.
Name: Robert V. D'Angelo, Jr.
Title: President, General Counsel, Uniroyal Holding, Inc.
Vice President and Secretary, Great Hill Corporation

**Schedule 1**

- Weitz & Luxenberg, P.C.
- Early, Lucarelli, Sweeney & Meisenkothen LLC
- Cooney & Conway LLP
- Law Offices of Peter T. Nicholl

# <u>Exhibit B</u>

## Solicitation and Voting Procedures Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
Benjamin A. Mishkin (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
bamishkin@debevoise.com

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2037
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., e*t al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>(Joint Administration Requested) |

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) APPROVING SOLICITATION, NOTICE, AND TABULATION PROCEDURES AND FORMS RELATED THERETO, (III) SCHEDULING A CONFIRMATION HEARING, (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR PLAN CONFIRMATION, AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered 3 through 17, is hereby **ORDERED**.

Upon the motion (the "**Motion**")[2] of the Debtors pursuant to sections 105, 502, 1107, 1108, 1125, 1126, and 1128 the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, 3020, 9006, 9007 and 9008 and Local Rules 3018-1, 9013-1, and 9013-2, for entry of an order (this "**Order**") (a) approving the Disclosure Statement; (ii) approving solicitation, notice, and tabulation procedures and forms related thereto; (iii) scheduling a confirmation hearing; (iv) establishing notice and objection procedures for confirmation of the Plan; and (v) granting related relief; all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and consideration of the Motion and the relief requested being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given under the circumstances; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion, the First Day Declaration, and at the Hearing establish just cause for the relief granted, and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest and upon all of the proceedings had before

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that;

**IT IS HEREBY FOUND THAT:**

A. The Debtors have all the necessary authority to propose and prosecute the Plan and the Disclosure Statement.

B. The Debtors have provided adequate notice of the Motion and the time fixed for filing objections thereto, and no other or further notice need be provided with respect to the Motion.

C. The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code. No further information is necessary.

D. The period, set forth below, during which the Debtors may solicit the Plan is a reasonable and adequate period of time under the circumstances for claimants in the Voting Class to make an informed decision to accept or reject the Plan, including to make an informed decision to object to the Plan or to opt-out of the Consensual Third-Party Releases.

E. The period, set forth below, during which the Debtors may solicit opt-outs of the Consensual Third-Party Releases is a reasonable and adequate period of time under the circumstances for claimants in the Non-Voting Classes to make an informed decision to opt-out of the Consensual Third-Party Releases or to object to the Plan.

F. The notice substantially in the form attached hereto as **Exhibit 1** (the "**Confirmation Hearing Notice**") and the procedures set forth below for providing such notice to Holders of Known Claims and Interests and unknown Holders of Claims and Interest of

the time, date and place of the Confirmation Hearing, and the contents of the Confirmation Hearing Notice, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties.

G. The Solicitation and Voting Procedures satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and provide for a fair and equitable process. The forms of the Individual Ballot and Master Ballot attached hereto as **Exhibits 3** and **4**, respectively, are sufficiently consistent with Official Form No. 314, adequately address the particular needs of these chapter 11 cases, and are appropriate for the Voting Classes to vote to accept or reject the Plan and to opt-out of the Consensual Third-Party Releases.

H. The notice of non-voting status and opt-out form substantially in the form attached hereto as **Exhibit 5** (the "**Opt-Out Form**" and, together with the Confirmation Hearing Notice, the "**Non-Voting Notice**"), the procedures set forth below for providing such notice to Holders of Claims or Interests in the Non-Voting Classes of their non-voting status, and the content of the Non-Voting Notice, comply with the requirements of the Bankruptcy Code and are appropriate for the Non-Voting Classes who are deemed to accept or reject the Plan.

I. Pursuant to the Plan, Holders of Claims Class 4, are entitled to vote on account of such Claims.

J. Pursuant to the Plan, Holders of Claims in Classes 1, 2 and 3 are Unimpaired under the Plan and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are presumed to accept the Plan and are not entitled to vote on account of such Claims.

K. Pursuant to the Plan, Holders of Claims in Class 5 and Holders of Interests in Class 6 will not receive or retain any property under the Plan and, accordingly, pursuant to section 1126(g) of the Bankruptcy Code, Holders of Claims in Class 5 and Interests in Class 6 are deemed to reject the Plan and are not entitled to vote on account of such Claims and Interests.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1. The Motion is **GRANTED** to the extent set forth herein.

2. The Disclosure Statement is approved under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

3. The Confirmation Schedule is approved in its entirety as follows:

| EVENT | DATE | DESCRIPTION |
|---|---|---|
| Disclosure Statement Objection Deadline | September 3, 2026, at 4:00 p.m. prevailing Eastern Time | Date by which objections to approval of the Disclosure Statement must be filed with the Court. |
| Disclosure Statement Objection Reply Deadline | September 7, 2026 | Date by which replies to objections to approval of the Disclosure Statement must be filed with the Court (the "**Disclosure Statement Objection Reply Deadline**"). |
| Voting Record Date | September 7, 2026 | Date to determine which Holders of Claims are entitled to vote on the Plan (the "**Voting Record Date**"). |
| General Bar Date | September 8, 2026 at 5:00 p.m. prevailing Eastern Time | Date by which all entities[3] must file proofs of claim for prepetition claims (other than PI/WD Claims, claims held by a governmental |

[3] As used herein, the term "entity" has the meaning given to it in section 101(15) of the Bankruptcy Code and includes, among other things, a "person" as such term is defined in section 101(41) of the Bankruptcy Code

| EVENT | DATE | DESCRIPTION |
|---|---|---|
| | | unit,[4] Supplemental Claims, or Rejection Claims including secured claims, unsecured priority claims, unsecured non-priority claims, and claims arising under section 503(b)(9)), so that such proofs of claim are actually received by Omni Agent Solutions, Inc., in its capacity as claims and noticing agent (“**General Bar Date**”). |
| Disclosure Statement Hearing | September 10, 2026 | Hearing on approval of the Disclosure Statement and this Motion (the “**Disclosure Statement Hearing**”). |
| Solicitation Deadline | Two business days following entry of the Solicitation and Voting Procedures Order (or as soon as reasonably practicable thereafter) | Date by which the Debtors will distribute Solicitation Packages (defined below) to Holders of Claims in the Voting Class and Non-Voting Notices (defined below) to Holders of Claims and Interests in the Non-Voting Classes, with the exception of Holders of Claims in Class 5 (the “**Solicitation Deadline**”). |
| Publication Deadline | Two business days following entry of the Solicitation and Voting Procedures Order (or as soon as reasonably practicable thereafter) | Date by which the Debtors will cause the Publication Notice (defined below) to be published (the “**Publication Deadline**”). |
| Deadline to File Plan Supplement | October 6, 2026 | Date by which the Debtors will file the Plan Supplement. |
| Voting Deadline | October 13, 2026, at 4:00 p.m. prevailing Eastern Time | Date by which all Ballots and Opt-Out Forms must be actually |

4 As used herein, the term “governmental unit” has the meaning given to it in section 101(27) of the Bankruptcy Code

| EVENT | DATE | DESCRIPTION |
|---|---|---|
| | | received by the Balloting Agent (the "**Voting Deadline**"). |
| Plan Objection Deadline | October 13, 2026, at 4:00 p.m. prevailing Eastern Time | Date by which objections to confirmation of the Plan must be filed with the Court (the "**Plan Objection Deadline**"). |
| Plan Objection Reply Deadline | October 16, 2026 | Date by which the Debtors must file their brief in support of confirmation of the Plan and reply to any objections (the "**Plan Objection Reply Deadline**"). |
| Deadline to File Certification of Balloting | October 17, 2026 | Date by which the report tabulating the voting on the Plan shall be filed with the Court. |
| Confirmation Hearing | October 20, 2026 at [●]. prevailing Eastern Time | Date of hearing for confirmation of the Plan (the "**Confirmation Hearing**"). |
| Government Bar Date | January 27, 2027 at 5:00 p.m. prevailing Eastern Time | Date by which any governmental unit must file a proof of claim for a prepetition claim, including governmental units with claims against the Debtors for unpaid taxes, whether such claims arise from prepetition tax years or periods or prepetition transactions to which the Debtors were a party ("**Government Bar Date**"). |

4. The Confirmation Hearing is scheduled for **October 20, 2026, at : .m. prevailing Eastern Time**. The Plan Objection Deadline is **October 13, 2026, at 4:00 p.m. prevailing Eastern Time**. The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court.

5. The deadline for the Debtors to file the Certification of Balloting is **October 17, 2026**.

6. The Deadline for the Debtors (and other parties in support of the Plan) to file a brief in support of confirmation of the Plan or a reply to any objections to confirmation of the Plan is **October 16, 2026**.

7. Objections to confirmation of the Plan, if any, must:

a. be in writing;

b. conform to the Bankruptcy Rules and Local Rules;

c. state the name and address of the objecting party and the amount and nature of the Claim or Interest of such entity;

d. state with particularity the basis and nature of any objection to the Disclosure Statement, the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and

e. be filed, together with a proof of service, with the Court and served on the following parties: (i) counsel to the Debtors (A) Debevoise and Plimpton LLP, 66 Hudson Blvd., New York, NY 10001 (Attn: M. Natasha Labovitz, Samuel Newman, Michael Godbe, and Benjamin Mishkin) and (B) Duane Morris LLP, 200 Campus Drive, Suite 300, Florham Park, NJ 07932 (Attn: Morris Bauer, Drew McGehrin, and Klara Bradbury) and (ii) the Office of the United States Trustee for Region 3, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 (Attn: Jeffrey M. Sponder).

8. The Confirmation Hearing Notice, in substantially the form attached hereto as **Exhibit 1**, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d), and 3017(d) and is approved in all respects. The Confirmation Hearing Notice shall be served upon the Debtors' creditors and all parties requesting notice pursuant to Bankruptcy Rule 2002 on or before **September 14, 2026**, or as soon as reasonably practicable thereafter.

9. The form of Individual Ballot attached hereto as **Exhibit 3** is hereby approved in all respects.

10. The form of Master Ballot attached hereto as **Exhibit 4** is hereby approved in all respects.

11. The Opt-Out Form, substantially in the form attached hereto as **Exhibit 5**, is hereby approved in all respects. The Non-Voting Notice, consisting of the Confirmation Hearing Notice and the Opt-Out Form, is hereby approved in all respects.

12. As part of the Solicitation Package sent to Known counsel who represent one Holder of a PI/WD Claim in their capacity as such, the Debtors shall distribute the Individual Ballot.

13. As part of the Solicitation Package sent to Known counsel who represent more than one Holder of a PI/WD Claim in their capacity as such, the Debtors shall distribute the Master Ballot.

14. The Solicitation Package shall contain (a) directions on how to obtain the Plan Documents, in electronic format from the Debtors' case website via a provided QR code; (b) the Confirmation Hearing Notice; (c) the Individual Ballot or the Master Ballot, as applicable; and (d) pre-addressed, return envelopes for completed Ballots.

15. The Debtors shall serve the Solicitation Package on Known counsel to Holders of Claims in the Voting Class unless such counsel request, in the manner prescribed in section (IV)(a)(i)(2) of the Solicitation and Voting Procedures, that the Debtors solicit their

client(s) directly in which case the Debtors shall serve the Solicitation Package, containing an Individual Ballot, on the respective Holder.

16. Upon request by counsel who are not authorized to vote for their client, the Debtors will distribute Individual Ballots to such counsel, *provided* that such request is in the manner prescribed in section (IV)(a)(i)(2) of the Solicitation and Voting Procedures.

17. The Debtors shall serve the Solicitation Packages, containing an Individual Ballot, directly on Unrepresented Claimants.

18. The Debtors shall distribute the Solicitation Packages on or before the Solicitation Deadline, or as soon as reasonably practicable thereafter.

19. The Debtors shall distribute the Non-Voting Notices on or before the Solicitation Deadline, or as soon as reasonably practicable thereafter.

20. The Non-Voting Notices shall be served upon all Holders of Claims or Interests in the Non-Voting Classes, except Holders of Claims in Class 5.

21. No Holders of Claims or Interests in the Non-Voting Classes, nor their counsel, will be provided with a Ballot because such Holders either are unimpaired or recover nothing on account of their Claim or Interest under the Plan and are therefore presumed to accept or reject, respectively, the Plan under sections 1126(f) and 1126(g) of the Bankruptcy Code.

22. The Voting Deadline shall be **October 13, 2026, at 4:00 p.m. prevailing Eastern Time** for Holders of Claims and Interests in the Voting Class and Non-Voting Classes.

23. The Solicitation and Voting Procedures attached hereto as **Exhibit 2** are hereby approved in their entirety, provided that the Debtors reserve the right to amend or supplement the Solicitation and Voting Procedures and related documents to better facilitate the confirmation process.[5]

24. In order to properly submit a Ballot or an Opt-Out Form, parties must fully complete and execute the appropriate Ballot or Opt-Out Form, as applicable. Individual Ballots and Opt-Out Forms may be returned by first class mail, over-night courier, or hand-delivery to the Balloting Agent at the address set forth in the Individual Ballots and Opt-Out Forms so as to be received by the Balloting Agent on or before the Voting Deadline.

25. Alternatively, parties may submit on or before the Voting Deadline (a) an Individual Ballot via electronic online transmission solely through the online portal on the Debtors' case website, at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab, selecting "Submit Individual Ballot" (the "**Individual Balloting Portal**") and (b) an Opt-Out Form via electronic online transmission solely through the online portal on the Debtors' case website at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab, selecting "Electronic Opt-Out" (the "**Opt-Out Portal**") and following the applicable instructions therein.

26. Master Ballots may only be submitted via the law firm master ballot portal on the Debtors' case website at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab,

[5] If there is a discrepancy between the terms herein and the Solicitation and Voting Procedures, the Solicitation and Voting Procedures shall govern and control.

selecting "Submit Firm Master Ballot" (the "**Law Firm Master Ballot Portal**") and following the instructions therein.

27. Ballots and Opt-Out Forms otherwise sent by facsimile, telecopy, or electronic submissions (other than through the applicable online portal) will not be accepted, nor for the avoidance of doubt will any other form of ballot be accepted, unless written permission to do so has been granted by the Debtors to the respective party prior to the submission thereof. Only properly completed, executed, and timely submitted Ballots and Opt-Out Forms will be accepted.

28. The following Ballots and Opt-Out Forms, as applicable, will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected and/or the Consensual Third-Party Release has been opted-out of:

a. any Ballot or Opt-Out Form received after the Voting Deadline (as may be extended by the Debtors as provided herein);

b. any Ballot or Opt-Out Form that is illegible or contains insufficient information to permit the identification of the claimant;

c. any Ballot that indicates both an acceptance and rejection of the Plan;

d. any Ballot that is not completed, including, without limitation, (i) a Master Ballot with respect to PI/WD Claims on which the attorney fails to make the required certification, or (ii) an Individual Ballot submitted by a Holder of a PI/WD Claim that does not provide the claimant's e-mail address and year of birth;

e. any Opt-Out Form that indicates that the Holder makes part of its election in the same Class to opt-out of the Consensual Third-Party Releases and that the Holder has not opted-out of the Consensual Third-Party Releases with respect to part of its Claim in the same Class;

f. any form of Ballot or Opt-Out Form other than the forms sent by the Balloting Agent, or a copy thereof;

g. any Ballot or Opt-Out Form received that the Balloting Agent cannot match to an existing database record;

h. any Ballot or Opt-Out Form that does not contain an original signature;[6]

i. any Ballot or Opt-Out Form that is submitted by facsimile, email, or by other electronic means (other than through the Individual Balloting Portal, Law Firm Master Ballot Portal, Opt-Out Portal, as applicable);

j. Any Master Ballot that is submitted other than through the Law Firm Master Ballot Portal; or

k. any Ballot or Opt-Out Form sent to the Debtors' professionals or to the Balloting Agent at any address other than the official address set forth on the Ballot or Opt-Out Form, as applicable.

29. Subject to any contrary order of the Court and except as otherwise set forth herein, the Debtors may waive any defects or irregularities as to any particular Ballot or Opt-Out Form at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the Certification of Balloting prepared by the Balloting Agent.

30. All PI/WD Claims shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00.

31. The following conditions for purposes of determining the voting amounts or classifications shall apply, to the extent such Claim is not withdrawn or otherwise satisfied:

a. if the Debtors have filed an objection or request for estimation as to a Claim at least fourteen days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or

[6] For the avoidance of doubt, any Ballot or Opt-Out Form submitted online, through the applicable portal in accordance with the instructions therein, will be deemed to contain an original signature.

distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;

b. for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

c. notwithstanding anything to the contrary contained herein, any counsel to a creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one Solicitation Package and one appropriate Ballot, regardless of whether the Debtors have objected to such duplicate Claims; and

d. If a Proof of Claim has been amended by a later Proof of Claim that is filed on or before the Record Date, the later filed amended Claim shall be entitled to vote in a manner consistent with these tabulation rules, and the earlier filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim. Except as otherwise ordered by the Court, any amendments to Proof of Claim after the Record Date shall not be considered for purposes of these tabulation rules.

32. The Voting Record Date shall be September 7, 2026.

33. The Debtors shall submit by the Publication Deadline a form of the Confirmation Hearing Notice (modified as necessary) for publication on one occasion in the national edition of either *The New York Times* or *The Wall Street Journal*.

34. With the exception of parties in the Voting Class and Non-Voting Classes, the Debtors shall mail only the Confirmation Hearing Notice to all parties requesting notice pursuant to Bankruptcy Rule 2002 and any other parties on the Master Service List, and shall not be required to mail any Plan Documents to such parties. Instead, the Debtors are authorized to provide in the

Confirmation Hearing Notice directions for such parties to obtain electronic copies of the Plan Documents from the Debtors' case website via a provided QR code.

35. To the extent Claims in the Voting Class are subject to an objection that is filed with the Court on or before fourteen days before the Voting Deadline, the Holder of such Claim shall not be entitled to vote to accept or reject the Plan unless one or more of the following has occurred no later than two days before the Voting Deadline (each, a "**Resolution Event**"):

a. an order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b. an order of the Bankruptcy Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

c. a stipulation or other agreement is executed between the Holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

d. the pending objection is voluntarily withdrawn by the objecting party.

36. The Debtors are authorized to make non-material changes to the Disclosure Statement, Plan, Solicitation and Voting Procedures, Non-Voting Notice, Individual Ballot, Master Ballot, Confirmation Hearing Notice, Publication Notice, and related papers and pleadings without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the foregoing documents before providing service thereof.

37. Notwithstanding the relief granted in this Order and any actions taken hereunder, nothing contained in the Motion or this Order or any payment made pursuant to this Order shall

constitute, nor is it intended to constitute: (a) an admission as to the amount, basis, or validity of any particular claim against a Debtor; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission relating to any lien, security interest or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any of the Debtors' rights under the Bankruptcy Code or other applicable law.

38. The Debtors are authorized to take all actions they deem necessary to effectuate the relief granted in this Order.

39. The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this order.

40. This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the interpretation, implementation, or enforcement of this Order.

# Exhibit 1

## Confirmation Hearing Notice

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Joint Administration Requested) |

**NOTICE OF (A) APPROVAL OF THE DISCLOSURE STATEMENT AND (B) HEARING TO CONSIDER CONFIRMATION OF THE PLAN AND THE OBJECTION DEADLINE RELATED THERETO**

TO ALL PARTIES IN INTEREST, PLEASE TAKE NOTICE THAT:

1. **Filing of the Disclosure Statement and Plan**. On [●], 2026, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [●]] (as amended from time to time and including all exhibits and supplements thereto, the "**Disclosure Statement**") and *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [●]] (as may be amended, supplemented or modified, including all exhibits thereto, the "**Plan**").[2]

2. **Bankruptcy Court Approval of the Disclosure Statement and the Notice Procedures**. On [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") entered an order [Docket No. [●]] (the "**Solicitation and Voting Procedures Order**") approving, among other things, the Disclosure Statement and authorizing the Debtors to provide notice of their intent to seek confirmation of the Plan pursuant to certain procedures set forth therein, including the solicitation of votes to accept or reject the Plan. The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. If there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

3. **The Confirmation Hearing**. A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") will commence on [●], **2026, at [•]:[•] [a/p].m. prevailing Eastern Time** before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in Courtroom [●] of the United States Bankruptcy Court for the District of New Jersey, located at 402 East State Street, Trenton, New Jersey. Please be advised that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on parties entitled to notice under Bankruptcy Rule 2002 and the Local Rules or otherwise. In accordance with the Plan, the Plan may be modified, if necessary, before, during, or as a result of the Confirmation Hearing by further action of the Debtors and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

4. **Objections to Confirmation of the Plan**. The Bankruptcy Court has established [●]**, 2026, at 4:00 p.m. prevailing Eastern Time**, as the last date and time for filing and serving objections to confirmation of the Plan (the "**Plan Objection Deadline**"). Any objection to confirmation of the Plan must (a) be in writing, (b) conform to the Bankruptcy Rules and the Local Rules, (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such Entity, (d) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection, and (e) be filed with the Clerk of the Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, NJ 08608, and served on the following: (i) counsel to the Debtors (A) Debevoise and Plimpton LLP, 66 Hudson Blvd., New York, NY 10001 (Attn: M. Natasha Labovitz, Samuel Newman, Michael Godbe, and Benjamin Mishkin) and (B) Duane Morris LLP, 200 Campus Drive, Suite 300, Florham Park, NJ 07932 (Attn: Morris Bauer, Drew McGehrin, and Klara Bradbury) and (ii) the Office of the United States Trustee for Region 3, One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 (Attn: [●]), with proof of service of such objection filed when and as required under the Local Rules of the Bankruptcy Court.

5. The following chart summarizes the classification and treatment of Claims and Interests under the Plan:

[*Remainder of page left intentionally blank*]

| Class | Claim or Interest Description | Summary of Treatment | Entitled to Vote | Estimated Midpoint Amount of Asserted Claims[3] | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Secured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Secured Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; (2) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (3) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $0.00 | 100% |
| 2 | Other Priority Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $45,000 | 100% |

[3] The amounts reflected herein represent a fair estimate of the aggregate asserted amounts of Claims based on the Debtors' books and records, and do not necessarily reflect contingent, unliquidated or disputed Claims that may be asserted in proofs of claim or a total of Claims ultimately Allowed in the Chapter 11 Cases. The Debtors have not completed their Claims reconciliation process. Certain Claims included in these totals may be contingent, unliquidated, disputed, or intercompany, and may ultimately be Allowed in amounts materially different from those shown, or not Allowed at all. These amounts are presented for illustrative purposes only to reflect the face amounts asserted for solicitation and voting purposes. The Debtors reserve all rights to object to any claim and to amend these amounts based on further review of proofs of Claim, the Debtors' books and records, and other known liabilities.

| Class | Claim or Interest Description | Summary of Treatment | Entitled to Vote | Estimated Midpoint Amount of Asserted Claims[3] | Estimated Recovery |
|---|---|---|---|---|---|
| 3 | General Unsecured Claims | On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of each such Allowed General Unsecured Claim, each Holder thereof will receive: (1) payment in full in Cash from the Debtors if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired. | Not Entitled to Vote (Deemed to Accept) | $1,000 | 100% |
| 4 | PI/WD Claims | On the Effective Date, all PI/WD Claims shall automatically and, without further act, deed, or order of the Bankruptcy Court, be assumed by the Trust. Subject to the Trust Agreement, each Holder of an Allowed PI/WD Claim shall be entitled to receive distributions in accordance with the Trust Distribution Procedures. Holders of Allowed PI/WD Claims against the Debtors shall not receive any payment from the Trust unless and until such Claims are resolved in accordance with the Trust Distribution Procedures. The terms, provisions and procedures set forth in the Trust Distribution Procedures shall establish the method by which PI/WD Claims shall be submitted, processed, liquidated, reserved for, and, if applicable, paid. | Entitled to Vote | N/A | N/A |
| 5 | Intercompany Claims | On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any Plan Distribution on account of such Claims. | Not Entitled to Vote (Deemed to Reject) | $3.07 million | 0% |

| Class | Claim or Interest Description | Summary of Treatment | Entitled to Vote | Estimated Midpoint Amount of Asserted Claims[3] | Estimated Recovery |
|---|---|---|---|---|---|
| 6 | Interests | On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Interests shall not receive any Plan Distribution on account of such Interests. | Not Entitled to Vote (Deemed to Reject) | N/A | 0% |

6. **<u>The Solicitation and Voting Procedures</u>**. Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan. Pursuant to the Solicitation and Voting Procedures, Holders of Known Claims in Class 4, or, as applicable, their counsel, will receive a Solicitation Package which shall include, among other things, a copy of (i) this Notice, (ii) directions to access electronic copies of the Disclosure Statement (including exhibits thereto, including the Plan) from the Debtors' case website via a provided QR code, and (iii) an appropriate Ballot (as defined in the Solicitation and Voting Procedures Order). Law firms receiving a Master Ballot will also receive a USB drive containing a form of the exhibit that must accompany the Master Ballot in Microsoft Excel format. Please review the Ballot and the instructions included therewith for how to vote on the Plan. Failure to follow the Solicitation and Voting Procedures may disqualify your or your client's vote. Please be advised that the Holders of Claims in Class 4 are the only Holders of Claims or Interests that are entitled to vote on the Plan. Holders of Claims and Interests in Classes 1, 2, 3, 5, and 6 will be sent an Opt-Out Form (as defined in the Solicitation and Voting Procedures Order) through which they may elect to opt out of the releases contained in section 9.2 of the Plan. Holders of such Claims or Interests should carefully review the instructions on the Opt-Out Form on how to submit their Opt-Out Form. Failure to follow the Solicitation and Voting Procedures as to the Opt-Out Form and the instructions on the Opt-Out Form may render the opt-out election ineffective.

7. **<u>Voting Deadline</u>**. The deadline to vote on the Plan and determine whether to exercise an election on the Opt-Out Form, as applicable, is **October 13, 2026, at 4:00 p.m. prevailing Eastern Time**. The Debtors' notice, claims, and balloting agent, Omni Agent Solutions, Inc. (the "**Balloting Agent**"), must receive the Ballot with an original signature by the Voting Deadline, otherwise your or your client's vote will not be counted. In order for your or your client's vote to count, unless voting through either the Individual Balloting Portal or the Law Firm Master Ballot Portal (as described on each Ballot as applicable), you or your attorney must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot by (a) first class mail, in the return envelope provided with each Ballot; (b) overnight courier; or (c) hand-delivery so that such Ballot is actually received by the Balloting Agent on or before the Voting Deadline.

8. **Directions to Obtain the Plan Documents and Make Inquiries**. If you have not received copies of the Plan, the Disclosure Statement, or the Solicitation and Voting Procedures Order (the "**Plan Documents**") and wish to obtain copies of the same, you may do so by: (a) accessing the Debtors' chapter 11 case website at https://omniagentsolutions.com/Uniroyal-Ballots; (b) writing to the Balloting Agent at Uniroyal Holding, Inc and Great Hill Corporation c/o Omni Agent Solutions, Inc., 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91637 (c) calling the Balloting Agent at (888) 741-5787 (US & Canada) or (747) 400-0068 (International); (d) emailing Omni at UniroyalInquiries@OmniAgnt.com with a reference to "Uniroyal Holding, Inc.." in the subject line; and/or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. You may also access electronic copies of the Plan, Disclosure Statement, and any other solicitation materials via the QR Code below. Please be advised that the Balloting Agent cannot provide legal advice.

9. **Settlement, Release, Exculpation, and Injunction Language in the Plan**. Please be advised that the Plan, as proposed, contains the following exculpation, releases, and injunction provisions:

Releases by the Debtors – Section 9.1 of the Plan

**PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AS OF THE EFFECTIVE DATE, THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE,**

**WHETHER PREPETITION OR POSTPETITION); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II)THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.1 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS SECTION 9.1 BY THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS SECTION 9.1 IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (6) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (7) A BAR TO THE DEBTORS OR THEIR ESTATES, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.**

Releases by Holders of Claims and Interests – Section 9.2 of the Plan

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND**

**DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION**

**ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASES, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated: **[●]**, 2026

*/s/ [●]*

**DUANE MORRIS LLP**
Morris S. Bauer
Drew S. McGehrin
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
Email: msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
Benjamin A. Mishkin (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
bamishkin@debevoise.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# Exhibit 2

**Solicitation and Voting Procedures**

# SOLICITATION AND VOTING PROCEDURES FOR JOINT CHAPTER 11 PLAN OF UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION

The following procedures (the "**Solicitation and Voting Procedures**") are adopted with respect to (a) the distribution of solicitation packages with respect to the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation*, dated [●] (as may be amended, modified, or supplemented from time to time, the "**Plan**")[1] and (b) the return and tabulation of ballots and master ballots to be used in voting on the Plan in the chapter 11 cases of Uniroyal Holding, Inc. and Great Hill Corporation in the United States Bankruptcy Court for the District of New Jersey.

The Solicitation and Voting Procedures set out in this document are supplemented by the instructions accompanying the Ballots that will be included in the Solicitation Packages, which will be sent to (or can be obtained by) those persons entitled to vote on the Plan. You should review those instructions and these Solicitation and Voting Procedures carefully. In the event of conflict between the ballot instructions and these Solicitation and Voting Procedures, the terms of these Solicitation and Voting Procedures will govern and control.

## I. DEFINITIONS

1. "**Ballot**" means the Individual Ballot and Master Ballot.

2. "**Balloting Agent**" means Omni Agent Solutions, Inc., as the Debtors' solicitation and tabulation agent with respect to the Plan.

3. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey.

4. "**Confirmation Hearing**" means the hearing(s) that will be held before the Bankruptcy Court in which the Debtors will seek confirmation of the Plan.

5. "**Confirmation Hearing Notice**" means the notice of (a) the date and time of the Confirmation Hearing; (b) the Plan Objection Deadline and the manner in which objections shall be filed; (c) a disclosure in bold text regarding the release, exculpation, and injunction provisions of the Plan; and (d) instructions on how to obtain electronic or print copies of any of the Plan Documents.

6. "**Debtors**" means, collectively, Uniroyal Holding, Inc. and Great Hill Corporation.

7. "**Disclosure Statement**" means the disclosure statement pertaining to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, as submitted by the Debtors pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be further amended, supplemented, or modified from time to time.

8. "**Individual Ballot**" means the form of ballot attached as Exhibit 3 to the Solicitation and Voting Procedures Order and distributed with the Plan and Disclosure Statement

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

upon which an individual Holder of a Claim in Class 4 may register their acceptance or rejection of the Plan.

9. "**Individual Ballot Portal**" means the link at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab and selecting "Submit Individual Ballot", used for uploading an Individual Ballot.

10. "**Interests**" means the equity interest in the Debtors on the Petition Date.

11. "**Known**" means, (i) with respect to counsel to Holders of PI/WD Claims, such counsel as are listed on the Debtors' as-filed Schedules or counsel regarding whom the Debtors hereafter are provided timely notice on or prior to the Voting Record Date sufficient to provide the Debtors with knowledge of the representation of a Holder of a PI/WD Claim as such or (ii) with respect to PI/WD Claims, any such claim regarding which the Debtors have received notice in a timely manner on or prior to the Voting Record Date sufficient to provide the Debtors with knowledge of such asserted PI/WD Claim.

12. "**Law Firm Master Ballot Portal**" means the link at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab and selecting "Submit Firm Master Ballot", used for uploading a Master Ballot.

13. "**Master Ballot**" means the form of ballot attached as Exhibit 4 to the Solicitation and Voting Procedures Order submitted on behalf of one or more Holders of PI/WD Claims pursuant to section V hereof, including all required attachments or exhibits thereto.

14. "**Non-Voting Notice**" means the notice sent to (a) Holders of Claims in Class 1, Class 2, and Class 3 who are unimpaired under the Plan and therefore presumed to accept the Plan and (b) Holders of Interests in Class 6 who will not recover under the Plan and thus are deemed to reject the Plan and shall contain:

a. notice of the filing of the Disclosure Statement and Plan;

b. notice of the approval of the Disclosure Statement;

c. information regarding the Confirmation Hearing;

d. directions for filing objections to confirmation of the Plan by the Plan Objection Deadline;

e. directions for such parties to obtain (a) electronic copies of the Plan Documents via download from the website maintained by the Balloting Agent, and (b) a print copy of the Plan Documents free of charge (but only to the extent so requested of the Balloting Agent by telephone, letter, or email) to be delivered by the Balloting Agent to the requesting party by first class mail; and

f. the Opt-Out Form.

15. "**Opt-Out Form**" means the *Non-Voting Status Notice and Opportunity to Opt-Out Form* attached as Exhibit 5 to the Solicitation and Voting Procedures Order which shall be provided to Holders of Claims and Interests in Classes 1, 2, 3, and 6.

16. "**Opt-Out Portal**" means the link at https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab and selecting "Electronic Opt-Out", used for uploading an Opt-Out Form.

17. "**PI/WD Claim**" means any Claim, known or unknown, that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim (whether or not diagnosable or manifested before confirmation of the Plan or the close of the Chapter 11 Cases) related to asbestos asserted under any legal theory, and any derivative Claim arising therefrom. The term "PI/WD Claim" includes Direct PI/WD Claims and Indirect PI/WD Claims.

18. "**Plan Objection Deadline**" means [●] at 4:00 p.m. (ET), established by the Bankruptcy Court in the Solicitation and Voting Procedures Order as the deadline for filing objections to confirmation of the Plan.

19. "**Publication Notices**" means the published notices of (a) the date and time of the hearing regarding confirmation of the Plan; (b) the procedures for Holders of Class 4 (PI/WD Claims) to vote on the Plan; and (c) the procedures and deadlines for filing objections to confirmation of the Plan.

20. "**Schedules**" means the schedules, statements, and lists filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time.

21. "**Solicitation Deadline**" means the date fixed by the Court by which Solicitation Packages must be served on Holders of Claims in Class 4, or their Known counsel, and the Non-Voting Notice must be served on Class 1, Class 2, Class 3, and Class 6.

22. "**Solicitation and Voting Procedures Order**" means the order of the Bankruptcy Court approving the Disclosure Statement, setting a hearing on confirmation of the Plan, and approving these Solicitation and Voting Procedures, entered at Docket No. [●].

23. "**Solicitation Package**" means the package sent to Holders of Claims in Class 4, or their counsel, which Holders are impaired under the Plan and therefore eligible to vote on the Plan and shall include:

a. a cover letter describing the contents of the Solicitation Package;

b. the Solicitation and Voting Procedures Order, as entered by the Court and all exhibits thereto, in electronic format via a provided QR code;

c. the Disclosure Statement with all exhibits thereto, including the Plan, in electronic format via a provided QR code;

d. the Confirmation Hearing Notice;

e. the Individual Ballot or the Master Ballot, as applicable;

f. pre-addressed, return envelopes for completed Ballots; and

g. such other materials as the Court may direct.

24. "**Solicitation Procedures Motion**" means the *Debtors' Motion for Entry of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation, Notice, and Tabulation Procedures and Forms Related Thereto; (III) Scheduling a Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Plan Confirmation; and (V) Granting Related Relief*.

25. "**Voting Deadline**" means 4:00 p.m. Eastern Standard Time on [●], the time and date established by the Bankruptcy Court in the Solicitation and Voting Procedures Order as the deadline for returning Ballots voting on acceptance or rejection of the Plan.

26. "**Voting Record Date**" means [●], 2026.

## II. PUBLICATION NOTICES

In addition to mailing the Confirmation Hearing Notice with the Solicitation Packages, the Debtors will cause the Publication Notices to be published in (i) the national edition of either *The New York Times* or *The Wall Street Journal*; and (ii) Mealey's Litigation Report: Asbestos and Mealey's Asbestos Bankruptcy Report (in a format modified for publication) on or before [●].

## III. DISTRIBUTION OF SOLICITATION PACKAGES

This section explains the manner in which Solicitation Packages will be dispatched to parties entitled to vote on the Plan.

a. **Class 4 (PI/WD Claims)**. On or before the Solicitation Deadline, the Balloting Agent will cause Solicitation Packages with Ballots in the form attached as **Exhibit 3** to the Solicitation and Voting Procedures Order to be served on Holders of Known PI/WD Claims or in the form attached as **Exhibit 4** to the Solicitation and Voting Procedures Order to such Holders' attorneys in the manner prescribed in section IV of these Solicitation and Voting Procedures.

b. **Exception for Undeliverable Solicitation Packages**. Notwithstanding any provision in section III of the Solicitation and Voting Procedures to the contrary, the Balloting Agent shall not be required to resend a Solicitation Package to any person or entity whose Solicitation Package was returned as undeliverable by the postal service, unless the Debtors or the Balloting Agent is provided with an accurate address for such person or entity prior to the Voting Record Date. For the avoidance of doubt, the Balloting Agent is not required to conduct any independent research in an attempt to determine the correct email or mailing address of any

person or entity whose Solicitation Package was returned as undeliverable without a forwarding address.

## IV. PROCEDURES RELATING TO PI/WD CLAIMS

a. **Distribution of Solicitation Packages**. The Balloting Agent will cause Solicitation Packages to be served with respect to PI/WD Claims as follows:

i. **To Known Counsel Representing Holders of PI/WD Claims**:

1. A single Solicitation Package will be served upon each attorney Known by the Debtors to represent or potentially to represent Entities who may hold or assert PI/WD Claims.

2. If an attorney who receives a Solicitation Package either (a) is unable to certify with respect to any Holder of a PI/WD Claim represented by such attorney that such attorney has the authority to vote on the Plan on behalf of such Holder (*see* section IV(c) of these Solicitation and Voting Procedures) or (b) wishes any Holder of a PI/WD Claim represented by such attorney to cast such Holder's own Ballot on the Plan, such attorney shall furnish the Balloting Agent by encrypted email with a list in electronic Microsoft Excel format setting forth the name and address for each such Holder within five Business Days of receiving the Solicitation Package.

3. Attorneys who wish for any Holder of a PI/WD Claim whom they represent to receive a Solicitation Package for informational purposes (without a Ballot) shall furnish the Balloting Agent by encrypted email with a list in electronic Microsoft Excel format setting forth such names and addresses of each such Holder, within five Business Days of receiving a copy of the Solicitation Package.

ii. **To Holders of PI/WD Claims**:

1. **Transmittal by the Balloting Agent**. If either (i) an individual who holds or asserts a PI/WD Claim requests a Solicitation Package by notice to the Balloting Agent in a manner sufficient to provide the Balloting Agent with knowledge of such request, which notice may be by email to UniroyalInquiries@OmniAgnt.com with "Uniroyal – Ballot" in the subject line or by contacting the Balloting Agent at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International), no later than 14 days prior to the Voting Deadline, and provided that in each case the individual provides a valid and current mailing address therewith, or (ii) an attorney who represents or purports to represent the Holder of a PI/WD Claim furnishes the name and address of the individual to the Balloting Agent and certifies that such attorney represents such Holder, then the

Balloting Agent will cause a Solicitation Package with an Individual Ballot to be mailed, together with a Ballot, directly to each such individual who holds or asserts such PI/WD Claim within five Business Days after receiving such request or as soon as practicable thereafter. If an individual who holds or asserts a PI/WD Claim signs and files a proof of PI/WD Claim prior to the Solicitation Deadline, then the Balloting Agent will cause a Solicitation Package, together with an Individual Ballot, to be mailed directly to such individual by the Solicitation Deadline or as soon as practicable thereafter.

2. **Transmittal by an Attorney**. An attorney may choose to transmit Solicitation Packages to his or her clients directly. If an attorney chooses to do so, such attorney must, within five Business Days after the Solicitation Deadline, furnish a written request to the Balloting Agent by email to UniroyalInquiries@OmniAgnt.com for a specified amount of Solicitation Packages and Individual Ballots, which will be provided to such attorney within five Business Days after receipt of such written request or as soon as practicable thereafter. The Debtors will reimburse such attorney for the reasonable and documented postage expenses incurred by the attorney.

3. **Unrepresented Claimants**. Notwithstanding other provisions of these Solicitation and Voting Procedures to the contrary, the Balloting Agent shall cause a Solicitation Package (including, among other things, an Individual Ballot) to be mailed directly to Holders of Known Claims in Class 4 not otherwise represented by Known counsel ("**Unrepresented Claimants**").

iii. The Confirmation Hearing Notice and the Publication Notices will contain instructions regarding how a party may obtain a Solicitation Package if any such party believes it may be entitled to vote on the Plan and has not received a Solicitation Package.

b. **Calculation of Votes with Respect to PI/WD Claims**. Each Holder of a PI/WD Claim will have a single vote on the Plan, in the amount of $1.00 for voting purposes only.

c. **Required Certifications**. No vote to accept or reject the Plan by or on behalf of a Holder of a PI/WD Claim shall be counted by the Balloting Agent unless the Ballot reflecting such vote is timely submitted to the Balloting Agent with the written certifications contained on the Ballot.

i. **Certification for Individual Ballots**. Individual Ballots voted by, or on behalf of, holders of PI/WD Claims shall contain an acknowledgement and certification, *inter alia*, that (i) the person signing the ballot has received the documents included in the Solicitation Package and (ii) on information and

belief, the person signing the Ballot holds a PI/WD Claim (as defined in the Plan) against the Debtors or is an agent authorized to submit the Ballot on behalf of such Holder.

ii. **Certification for Master Ballots**. Master Ballots voted on behalf of Holders of PI/WD Claims shall contain an acknowledgement and certification, *inter alia*, that (i) the attorney signing the Master Ballot has received the documents included in the Solicitation Package; (ii) the attorney signing the Master Ballot is authorized under applicable law by each of the Holders of PI/WD Claims listed on the exhibit accompanying the Master Ballot to vote on behalf of such Holders; and (iii) each claimant identified on such exhibit has, on information and belief, a PI/WD Claim against the Debtors.

d. **Completion and Return of Master Ballots by Attorneys for Holders of PI/WD Claims**. Attorneys who represent individual Holders of PI/WD Claims shall be permitted to cast Master Ballots for such Holders, but only to the extent such attorneys have the authority under applicable law to do so, and so certify in the manner set forth herein and on the Master Ballots respecting such PI/WD Claims. Each attorney voting on behalf of more than one individual whom the attorney represents and who hold or assert PI/WD Claims shall complete a Master Ballot, which will set forth the votes cast by such attorney on behalf of any such clients. Each attorney voting on behalf of a single individual whom the attorney represents who holds or asserts a PI/WD Claim shall complete an Individual Ballot, which will set forth the vote cast by such attorney on behalf of any such client. The following procedures will govern the completion and return of a Master Ballot:

i. **Summarizing Votes on the Master Ballot**: The Master Ballot shall contain the following options for voting, one of which shall be marked by the attorney:

1. "All Class 4 PI/WD Claims listed on the Master Ballot Exhibit **ACCEPT / VOTE IN FAVOR OF** the Plan."

2. "All Class 4 PI/WD Claims listed on the Master Ballot Exhibit **REJECT / VOTE AGAINST** the Plan."

3. "Some of the individuals listed on the Exhibit required in Item 3 **ACCEPT / VOTE IN FAVOR OF** the Plan while other individuals listed on such Exhibit **REJECT / VOTE AGAINST** the Plan."

ii. **Inability to Make Required Certifications on Master Ballot**: If the attorney is unable to make such certifications on behalf of any Holder of a PI/WD Claim whom he or she represents, the attorney may *not* cast a vote on behalf of such claimant and *must* timely send the information relating to the names and addresses of its clients for whom he or she may not vote to

the Balloting Agent in accordance with section V.1.A.(2) of these Solicitation and Voting Procedures.

iii. **Spreadsheet Exhibit to the Master Ballot**:

1. Each attorney shall complete the spreadsheet in the form shown on the Master Ballot and included on the USB drive included in the Solicitation Package. This spreadsheet will become an exhibit to the Master Ballot and list in separate columns the following information for each Holder of a PI/WD Claim on whose behalf the attorney is voting: (a) the last name of the Holder of the PI/WD Claim, (b) the first name of the Holder of the PI/WD Claim, (c) the last 4 digits of the Social Security Number of the Holder of the PI/WD Claim (if the Holder of the PI/WD Claim has a Social Security Number), (d) the date of birth of the Holder of the PI/WD Claim, (e) whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan, (f) the method of certification of the claimant's vote, (g) the service method that the attorney used to transmit the Solicitation Package materials (excluding a ballot) to the Holder of the PI/WD Claim; and (h) whether the Holder of the PI/WD Claim opts out of the releases in the Plan.

2. The entire spreadsheet must be submitted in MICROSOFT EXCEL or similar format, and submitted with the Master Ballot. The completed Master Ballot and spreadsheet exhibit must be returned to the Balloting Agent in accordance with section V(d) of these Solicitation and Voting Procedures.

## V. RETURN OF BALLOTS

a. **Claimants Entitled to Vote**. Only Holders of Claims in Class 4 (PI/WD Claims) will be permitted to vote.

b. **Authority to Complete and Execute Ballots**. If a Ballot is signed by a trustee, executor, guardian, attorney-in-fact, officer of a corporation, or any other entity acting in a fiduciary or representative capacity, the signatory must indicate such capacity when signing. The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed, but by executing a Ballot, each signatory certifies that he or she has such authority, and shall provide evidence of such authority upon request of the Balloting Agent.

c. **Submission of Completed Individual Ballots**. All Individual Ballots may be (i) submitted through the Individual Ballot Portal on the Debtors' case website, at https://omniagentsolutions.com/Uniroyal, click on the "Balloting" tab of the Debtors' website, select "Submit Individual Ballot", and follow the instructions, provided on the website to submit the Individual Ballot or (ii) returned by regular

mail, using the pre-addressed return envelope included in the Solicitation Package or otherwise, or by hand delivery or overnight courier to:

| **IF BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY**:<br>Uniroyal Holding, Inc. Ballot Processing<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367<br><br>(to arrange hand delivery of your Individual Ballot, please email the Balloting Agent at UniroyalInquiries@OmniAgnt.com (with "Uniroyal Ballot Submission" in the subject line) at least 24 hours prior to arrival at the Omni address above and provide the anticipated date and time of delivery) |
|---|

If the Holder of a Claim in Class 4 submits an Individual Ballot electronically, such Holder should **not** also complete and return a paper Individual Ballot.

d. **Submission of Master Ballots**. The Balloting Agent will accept Master Ballots and related client list exhibits, if properly completed, **only** through the Law Firm Master Ballot Portal accessible on the Balloting Agent's case website at https://omniagentsolutions.com/Uniroyal, click on the "Balloting" tab, select "Submit Firm Master Ballot", and follow the instructions; *provided*, however, that the Balloting Agent shall accept Master Ballots or exhibits submitted other than through the Law Firm Master Ballot Portal where the submitting party has received prior permission in writing from the Debtors to do so. Detailed submission instructions are provided in the Master Ballot. For the avoidance of doubt, votes contained in a Master Ballot delivered to the Balloting Agent in hard copy (whether by regular mail, overnight courier, or hand delivery) or submitted by facsimile, email, or any other means of electronic transmission (except the Law Firm Master Ballot Submission Portal) will **not** be counted, unless the party submitting such Master Ballot previously received permission in writing from the Debtors to submit a Master Ballot via means other than the Law Firm Master Ballot Portal.

e. **Deadline for Receiving Completed Ballots**. All Ballots must be **actually received** by the Balloting Agent by the Voting Deadline in order to register a vote on the Plan. If any Ballot is received by the Balloting Agent after such date and time, the vote(s) recorded on that Ballot will not be counted.

f. **Ballots Submitted by Facsimile or Electronic Transmission**. The Balloting Agent shall **not** accept Individual Ballots or Master Ballots submitted by electronic transmission other than through the applicable dedicated online portal, unless the party submitting such Ballot previously received permission in writing from the Debtors to submit a Ballot via electronic means other than the applicable dedicated online portal.

g. **Retention of Individual Ballots and Master Ballots by Balloting Agent**. The Balloting Agent will date-stamp all Ballots when received. Ballots received on the

day of the Voting Deadline will be date- and time-stamped. In addition, the Balloting Agent will retain originals of all Ballots for a period of one year after the Effective Date of the Plan, unless otherwise instructed by the Debtors in writing or otherwise ordered by the Bankruptcy Court.

## VI. TABULATION OF BALLOTS

a. **Determination of Amount of PI/WD Claims Voted**. The amounts used to tabulate acceptance/votes in favor of or rejection of/votes against the Plan by those holding PI/WD Claims are set forth in section IV(b) of these Solicitation and Voting Procedures.

b. **Ballots Excluded**. A Ballot will not be counted for the purposes of voting on the Plan if any of the following applies to such Ballot:

i. any Ballot received after the Voting Deadline (as may be extended by the Debtors as provided herein);

ii. any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

iii. any Ballot that indicates both an acceptance and rejection of the Plan;

iv. any Ballot that is not completed, including, without limitation, (i) a Master Ballot with respect to PI/WD Claims on which the attorney fails to make the required certification, or (ii) an Individual Ballot submitted by a Holder of a PI/WD Claim that does not provide the claimant's email address and year of birth;

v. any form of Ballot other than the forms sent by the Balloting Agent, or a copy thereof;

vi. any Ballot received that the Balloting Agent cannot match to an existing database record;

vii. any Ballot that does not contain an original signature;[2]

viii. any Ballot that is submitted by facsimile, email, or by other electronic means (other than through the Individual Balloting Portal or Law Firm Master Ballot Portal as applicable);

ix. any Master Ballot that is submitted other than through the Law Firm Master Ballot Portal; or

[2] For the avoidance of doubt, any Ballot submitted online, through the applicable portal in accordance with the instructions therein, will be deemed to contain an original signature.

x. any Ballot sent to the Debtors' professionals or to the Balloting Agent at any address other than the official address set forth on the Ballot.

c. **General Solicitation and Voting Procedures and Standard Assumptions**. In addition to all other provisions of these Solicitation and Voting Procedures, the following procedures for voting and standard assumptions will be used in tabulating Ballots:

i. Holders of Claims in Class 4 need not vote to accept or reject the Plan in order to make a valid election with respect to releases in section 9.2 of the Plan (the "**Consensual Third-Party Releases**"), whether voting on an Individual Ballot or via a Master Ballot, *provided* that the submission of the applicable Ballot otherwise complies with the requirements set forth herein.

ii. The Balloting Agent shall have the discretion to, but shall not be obligated to, contact voters to cure any defects in the Ballots.

iii. Any Holder or attorney on behalf of a Holder of a Class 4 Claim who delivers a valid Ballot may withdraw his, her, or its vote by delivering a written notice of withdrawal to the Balloting Agent before the Voting Deadline. If an attorney would like to change the vote of one or more of its clients who hold a PI/WD Claim before the Voting Deadline, such attorney must submit an entirely new and updated Master Ballot and Exhibit, which will replace (in their entirety) the previously submitted Master Ballot and Exhibit. To be valid, the notice of withdrawal must (a) be signed by the person who signed the Individual Ballot or Master Ballot to be revoked and (b) be received by the Balloting Agent on or before the Voting Deadline. The Debtors reserve the right to contest any withdrawals.

iv. In the event an attorney requests after the Voting Deadline to (a) withdraw the vote of one or more of its Clients or (b) change the vote of one or more of its PI/WD Clients, such withdrawal or change, as applicable, must comply with the process and requirements set forth in Bankruptcy Rule 3018.

v. Notwithstanding the foregoing, if multiple Master Ballots are received for the same Holder on the same Claim, but are submitted by different attorneys, the claimant's vote will be counted only once and only if the votes on each Ballot are consistent. If the votes are not consistent, the Balloting Agent shall contact the relevant Firms, with notice of such communication to counsel to the Debtors, and request that the Firms coordinate with each other to resolve the conflicting representation, and for the appropriate Firms to send an e-mail to UniroyalInquiries@OmniAgnt.com with "Uniroyal – Master Ballot" in the subject line, copying all affected Firms and the Debtors confirming such resolution. If representation of a Holder of a Class 4 Claim is not resolved before the earlier of (a) 10 calendar days from

the notice of the conflict as provided by the Balloting Agent or (b) the Voting Deadline, such votes shall not be counted.

vi. If multiple Ballots are received from the Holder of a Claim and someone purporting to be his, her, or its attorney or agent, the Ballot received from the Holder of the Claim will be the Ballot that is counted (regardless of the order in which the votes were submitted), and the vote of the purported attorney or agent will not be counted.

vii. There shall be a rebuttable presumption that any claimant who submits a properly completed superseding Ballot or withdrawal of a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan.

viii. If multiple Ballots are received from a Holder of a Claim for the same Claim, the latest-dated valid Ballot that is received by the applicable Voting Deadline shall be the Ballot that is counted as a vote on the Plan.

ix. If a vote cast by an individual Holder of a PI/WD Claim on an Individual Ballot differs from the vote cast by the same individual Holder's attorney on behalf of such individual Holder via a Master Ballot, the vote cast by the individual Holder on the Individual Ballot will control.

x. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one Claim against the Debtors in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

## VII. DISTRIBUTION OF NON-VOTING NOTICES

This section explains the manner in which Non-Voting Notices will be dispatched to parties not entitled to vote on the Plan. Each Holder of an Allowed Claim or of an Interest in the following classes is unimpaired and/or not entitled to vote to accept or reject the Plan and will be sent a Non-Voting Notice:

a. **Class 1 (Secured Claims), Class 2 (Other Priority Claims), and Class 3 (General Unsecured Claims)**. On or before the Solicitation Deadline, the Balloting Agent will cause a Non-Voting Notice to be served upon each Holder of a Claim in Class 1, Class 2, and Class 3 who, as of the Solicitation Deadline, is listed in the Schedules.

b. **Class 6 (Interests)**. On or before the Solicitation Deadline, the Balloting Agent will cause a Non-Voting Notice to be served upon each Holder of an Interest in Class 6.

The Debtors, through the Balloting Agent, shall also cause the Non-Voting Notices to be served on: (i) the U.S. Trustee; (ii) each person who filed a notice of appearance with the Court pursuant to Bankruptcy Rule 2002; and (iii) taxing authorities. The Debtors may, in their discretion, distribute or cause the Balloting Agent to distribute Non-Voting Notices to other parties not specified herein.

**Exception for Undeliverable Non-Voting Notices**. Notwithstanding any provision in section III of the Solicitation and Voting Procedures to the contrary, the Balloting Agent shall not be required to resend a Non-Voting Notice to any person or entity whose Non-Voting Notice was returned as undeliverable by the postal service, unless the Debtors or the Balloting Agent is provided with an accurate address for such person or entity prior to the Voting Record Date. For the avoidance of doubt, the Balloting Agent is not required to conduct any independent research in an attempt to determine the correct email or mailing address of any person or entity whose Non-Voting Notice was returned as undeliverable without a forwarding address.

## VIII. ACCEPTANCE OF OPT-OUT FORMS

a. **Opt-Out Forms Not Accepted**. An Opt-Out Form will not be accepted and will not be considered effective to elect to not grant the Consensual Third-Party Releases if any of the following applies to such Opt-Out Form:

i. any Opt-Out Form received after the Voting Deadline (as may be extended by the Debtors as provided herein);

ii. any Opt-Out Form that is illegible or contains insufficient information to permit the identification of the claimant;

iii. any Opt-Out Form that indicates that the Holder makes part of its election in the same Class to opt-out of the Consensual Third-Party Releases and that the Holder has not opted-out of the Consensual Third-Party Releases with respect to part of its Claim in the same Class;

iv. any form of Opt-Out Form other than the forms sent by the Balloting Agent, or a copy thereof;

v. any Opt-Out Form received that the Balloting Agent cannot match to an existing database record;

vi. any Opt-Out Form that does not contain an original signature;[3]

vii. any Opt-Out Form that is submitted by facsimile, email, or by other electronic means (other than through the Opt-Out Portal); or

[3] For the avoidance of doubt, any Opt-Out Form submitted online, through the Opt-Out Portal, in accordance with the instructions therein, will be deemed to contain an original signature.

viii. any Opt-Out Form sent to the Debtors' professionals or to the Balloting Agent at any address other than the official address set forth on the Opt-Out Form.

b. **Opt-Out Form Solicitation Procedures and Standard Assumptions**. In addition to all other provisions of these Solicitation and Voting Procedures, the following procedures and assumptions will be used in accepting Opt-Out Forms:

i. The Balloting Agent shall have the discretion to, but shall not be obligated to, contact voters to cure any defects in the Opt-Out Forms.

ii. Any Holder or attorney on behalf of a Holder of a Claim or Interest in either Class 1, 2, 3, or 6 who delivers a valid Opt-Out Form may withdraw his, her, or its vote by delivering a written notice of withdrawal to the Balloting Agent before the Voting Deadline. To be valid, the notice of withdrawal must (a) be signed by the person who signed the Opt-Out Form to be revoked and (b) be received by the Balloting Agent on or before the Voting Deadline. The Debtors reserve the right to contest any withdrawals.

iii. If two or more Opt-Out Forms are received for the same claimant but submitted by a different attorney or agent, the claimant's vote will be accepted as an election with respect to the Consensual Third-Party Releases only if the elections are consistent. If the elections are not consistent, the Balloting Agent will instruct the two (or more) attorneys to coordinate for purposes of reconciling the elections and to email the Balloting Agent with the result of such reconciliation. If the two (or more) attorneys are unable to reconcile the inconsistent elections, none of the inconsistent elections will be accepted as an election with respect to the Consensual Third-Party Releases.

iv. If multiple Opt-Out Forms are received from the Holder of a Claim and someone purporting to be his, her, or its attorney or agent, the Opt-Out Form received from the Holder of the Claim will be the Opt-Out Form that is accepted (regardless of the order in which the Opt-Out Forms were submitted), and the Opt-Out Form received from the purported attorney or agent will not be accepted as an election with respect to the Consensual Third-Party Releases.

v. There shall be a rebuttable presumption that any claimant who submits a properly completed superseding Opt-Out Form or withdrawal of an Opt-Out Form on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's election with respect to the Consensual Third-Party Releases.

vi. If multiple Opt-Out Forms are received from a Holder of a Claim for the same Claim, the latest-dated valid Opt-Out Form that is received by the

applicable Voting Deadline shall be the Opt-Out Form that is accepted as an election with respect to the Consensual Third-Party Releases.

# **Exhibit 3**

## Individual Ballot - Class 4 PI/WD Claim

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC. , *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br><br>(Joint Administration Requested) |

**INDIVIDUAL BALLOT FOR ACCEPTING**
**OR REJECTING THE JOINT CHAPTER 11 PLAN OF**
**UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION**

**CLASS 4 — PI/WD CLAIMS**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE DEBTORS' NOTICE, CLAIMS, AND SOLICITATION AGENT, OMNI AGENT SOLUTIONS, INC. (THE "**BALLOTING AGENT**") BY **[●], 2026 AT 4:00 P. M. (ET)** (THE "**VOTING DEADLINE**")

On [•], the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") entered an order [Docket No. [•]] (the "**Solicitation and Voting Procedures Order**")[2] (a) approving the *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") submitted by above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"), (b) approving the procedures for soliciting and tabulating votes to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), and (c) establishing the Voting Deadline and other deadlines with respect to

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Solicitation and Voting Procedures Order.

confirmation of the Plan. The Bankruptcy Court has approved the Disclosure Statement as containing adequate information, as required under section 1125 of title 11 of the United States Code (the "**Bankruptcy Code**"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this ballot ("**Ballot**") because (a) you hold or are asserting a PI/WD Claim against the Debtors and (i) you submitted a request for a Solicitation Package to the Balloting Agent or (ii) an attorney who has certified they represent you has furnished your name and address to the Balloting Agent as a Holder of a PI/WD Claim; (b) your attorney has requested the Balloting Agent to furnish them a Solicitation Package to provide to you directly; (c) the Debtors' books and records show that (i) you may be a Holder of a PI/WD Claim and (ii) do not show that you are represented by an attorney.

*Your rights are described in the Disclosure Statement and the Solicitation and Voting Procedures Order. You should review the Disclosure Statement and the Plan before you vote. Your Claims have been placed in Class 4 under the Plan. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claims.*

If the Balloting Agent does not receive your Ballot on or before the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count. If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you vote. Ballots may be (a) submitted through the Individual Ballot Portal on the Debtors' case website, at https://omniagentsolutions.com/Uniroyal, click on the "Balloting" tab of the Debtors' website, select "Submit Individual Ballot", and follow the instructions, provided on the website to submit the Ballot or (b) returned by regular mail, using the pre-addressed return envelope included in the Solicitation Package or otherwise, or by hand delivery or overnight courier to:

**IF BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY**:
Uniroyal Holding, Inc. Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

(to arrange hand delivery of your Ballot, please email the Balloting Agent at UniroyalInquiries@OmniAgnt.com (with "Uniroyal Ballot Submission" in the subject line) at least 24 hours prior to arrival at the Omni address above and provide the anticipated date and time of delivery)

If you submit a Ballot electronically, you should **not** also complete and return a paper Ballot.

Copies of the Disclosure Statement, the Plan, and the Solicitation and Voting Procedures Order may be accessed by using the QR code below. In addition, contained in this package (the "**Solicitation Package**") are: an Individual Ballot; and a pre-addressed, return envelope for your completed Individual Ballot (each as defined in the Solicitation and Voting Procedures Order). Additionally, the contents of the Solicitation Package may be obtained by (a) accessing the Debtors' chapter 11 case website at https://omniagentsolutions.com/Uniroyal-Ballots; (b) writing to the Balloting Agent at Uniroyal Holding, Inc. Ballot Processing, c/o Omni Agent

Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; (c) calling the Balloting Agent at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International); (d) emailing the Balloting Agent at UniroyalInquiries@OmniAgnt.com; or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Please be advised that the Balloting Agent is authorized to answer questions and provide additional copies of solicitation materials but may **not** advise you as to whether you should accept, reject, or object to the Plan.

*[Remainder of page intentionally left blank]*

# INSTRUCTIONS FOR COMPLETING YOUR INDIVIDUAL BALLOT

**If Submitting your Ballot through the Individual Ballot Portal**

The Balloting Agent will accept Ballots if properly completed through the Individual Ballot Portal. To submit your Ballot via the Individual Ballot Portal, visit https://omniagentsolutions.com/Uniroyal, click on the "Balloting" tab of the Debtors' website, select "Submit Individual Ballot", and follow the instructions, provided on the website to submit the Ballot.

The Individual Ballot Portal is the sole manner in which Individual Ballots will be accepted via electronic or online transmission. Individual Ballots submitted by facsimile, email or other means of electronic transmission will not be counted, unless the party submitting such Individual Ballot previously received permission in writing from the Debtors to submit an Individual Ballot via electronic means other than the Individual Ballot Portal.

Creditors who cast an Individual Ballot using the Individual Ballot Portal should **not** also submit a paper Individual Ballot.

**If your Individual Ballot is not received by the Balloting Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.**

**If Submitting your Individual Ballot by Regular Mail, Overnight Courier, or Hand Delivery**

Submit your completed and signed Individual Ballot by mail using the postage prepaid, pre-addressed business reply envelope included in the Solicitation Package, or otherwise by regular mail, hand delivery, or overnight courier to:

Uniroyal Holding, Inc. Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

(to arrange hand delivery of your Ballot, please email the Balloting Agent at UniroyalInquiries@OmniAgnt.com (with "Uniroyal Ballot Submission" in the subject line) at least 24 hours prior to arrival at the Omni address above and provide the anticipated date and time of delivery)

To fill out your Individual Ballot properly, you must complete the following:

**Item 1. Claimant's Name, Address, Birth Year, and Email Address.**

Please fill in the name, address, and birth year information requested. You should include your street address, city, state, ZIP Code, telephone number, and email address.

**Item 2. Vote on the Plan.**

Vote on the Plan by checking the box that corresponds to your choice. You may vote to accept the Plan (meaning that you vote in favor of the Plan) or to reject the Plan (meaning that you vote against the Plan). You must check either the accept or reject box below in order to have your vote counted. If you (a) check both the accept and reject boxes or (b) do not check either the accept or reject box, your vote will not be counted. Provided that, in either case, if you check the box in item 3 to elect to opt out of the releases provided in the Plan, then you will still be designated as having opted out of the releases provided in the Plan.

**Item 3. Claim Value.**

In order to vote to accept (in favor of) or to reject (against) the Plan, a claimant or such claimant's representative or authorized signatory must certify, on information and belief, that such claimant holds a PI/WD Claim against the Debtor as of the Voting Record Date.

**Voting Claim Amount: $1.00[3]**

**Item 4. Release Opt-Out.**

Please be advised that section 9.2 of the Plan provides for the following releases which Holders of PI/WD Claims may opt out of granting. Check the box only if you wish to opt out of the releases set forth below and in section 9.2 of the Plan.

**Section 9.2 of the Plan—Releases by Holders of Claims and Interests.**

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON**

[3] By order of the Bankruptcy Court, all PI/WD Claims shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00. This amount is not binding on you, the Debtors, the Trust, or any other party for any purpose other than voting.

**BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**ITEM 5. Certifications.**

The claimant, the claimant's personal representative, or the claimant's authorized signatory must certify certain information on the Ballot. Please ensure that you have read and understood the certifications prior to signing the Ballot.

**Return the completed, executed Individual Ballot so as to be actually received by the Balloting Agent before the Voting Deadline (or such later date as agreed by the Debtors or ordered by the Bankruptcy Court).**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS INDIVIDUAL BALLOT.**

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. IF THIS INDIVIDUAL BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST[4].**

**Item 1. Claimant's Name, Address, Birth Year, and Email Address.**

______________________________
Name

______________________________
Street Address

______________________________
City, State, and ZIP Code

______________________________
Birth Year

______________________________
Telephone Number

______________________________
Email Address

**Item 2. Vote on the Plan.**

The undersigned, as Holder of (or representative of a Holder of) a PI/WD Claim, votes (fill in ONE box only)

☐ to ACCEPT (vote in favor of) the Plan.

☐ to REJECT (vote against) the Plan.

4 For the avoidance of doubt, any Individual Ballot submitted online through the Individual Ballot Portal in accordance with the instructions therein will be deemed to contain an original signature.

**Item 3. Voting Claim Amount**

Voting Claim Amount: $1.00[5]

**Item 4. Release Opt-Out.**

Check the box if you elect to opt out of the releases contained in section 9.2 of the Plan as set forth below.

☐ **Opt Out**

**Section 9.2 of the Plan—Releases by Holders of Claims and Interests.**
**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING,**

[5] All PI/WD Claims shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00. This amount is not binding on you, the Debtors, the Trust, or any other party for any purpose other than voting.

**THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**ITEM 5. Certifications.**

By signing this Individual Ballot, the Holder of a PI/WD Claim (or such Holder's personal representative or authorized signatory) certifies under penalty of perjury that each of the following statements is true and correct:

(a) It has been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, and the Solicitation Package materials.

(b) It has full power and authority to vote to accept (vote in favor of the Plan) or to reject (vote against the Plan).

(c) It has a reasonable belief that it is a Holder of a PI/WD Claim as of the Voting Record Date.

| |
|---|
| **Signature and Date**<br><br>__________________________________________________<br>Signature of Holder or Personal Representative or Authorized Signatory<br><br>__________________________________________________<br>Print name of signatory and authority to sign, i.e. Holder, or Personal Representative or Authorized Signatory<br><br>__________________________________________________<br>Date |
| **YOU MUST SIGN ABOVE IN ORDER FOR YOUR VOTE ON THE PLAN TO BE COUNTED.** |

**IF THIS INDIVIDUAL BALLOT IS NOT RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE ON [●], 2026 AT 4:00 P.M. (EASTERN TIME), OR SUCH LATER DATE AS AGREED BY THE DEBTORS OR BY ORDER OF THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED AND YOU WILL NOT OPT OUT OF GRANTING THE RELEASES IN THE PLAN.**

# Exhibit 4

## Master Ballot - Class 4 PI/WD Claim

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Joint Administration Requested) |

**MASTER BALLOT FOR**
**ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN**
**OF UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION**

**CLASS 4 — PI/WD CLAIMS[2]**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THE BALLOT**

THIS BALLOT MUST BE ACTUALLY RECEIVED BY THE DEBTORS' NOTICE, CLAIMS, AND SOLICITATION AGENT, OMNI AGENT SOLUTIONS, INC. (THE "**BALLOTING AGENT**") BY **[●] AT 4:00 P. M. (ET)** (THE "**VOTING DEADLINE**")

On [•], the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") entered an order [Docket No. [•]] (the "**Solicitation and Voting Procedures Order**") (a) approving the *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") submitted by above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"), (b) approving the procedures for soliciting and tabulating votes to accept or reject the Plan (the "**Solicitation and Voting Procedures**"), and (c) establishing the Voting Deadline and other deadlines with respect to confirmation of the Plan. The Bankruptcy Court has approved the Disclosure Statement as containing adequate information, as required under section 1125 of title 11 of the United States

1 The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

Code (the "**Bankruptcy Code**"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this master ballot (the "**Master Ballot**") because the Debtors' records indicate that your firm (the "**Firm**") represents certain clients that may be Holders of Class 4 PI/WD Claims ("**PI/WD Clients**") under the Plan in their capacity as such. You may use the Master Ballot to transmit your PI/WD Clients' votes to accept or reject the Plan. This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications and elections with respect to the Plan. If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong Master Ballot, you must contact the Balloting Agent immediately via the contact information set forth herein.

*Your PI/WD Clients' rights are described in the Disclosure Statement and the Solicitation and Voting Procedures Order. Your PI/WD Clients should review the Disclosure Statement and the Plan before they vote. Your PI/WD Clients' Claims have been placed in Class 4 under the Plan. They may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of their Claims.*

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims. To have the votes of your Clients count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so it is actually received by the Balloting Agent on or before the Voting Deadline and, if the Voting Deadline is not extended, votes received after the Voting Deadline will not be counted.

**The entire Master Ballot (including the completed Exhibit (as defined below)) must be delivered to the Balloting Agent via the electronic Ballot submission platform on the Balloting Agent's website (the "Law Firm Master Ballot Portal") by visiting https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab of the Debtors' website, selecting "Submit Firm Master Ballot", and following the instructions set forth on the website.**

The Law Firm Master Ballot Portal, accessible per the instructions provided below, is the sole manner in which Master Ballots and Exhibits will be accepted unless you have received prior permission in writing from the Debtors to submit a Master Ballot and Exhibit via means other than the Law Firm Master Ballot Portal. In the absence of such permission, Master Ballots and Exhibits submitted by mail, facsimile, email, or other means will not be counted.

Copies of the Disclosure Statement, the Plan, and the Solicitation and Voting Procedures Order may be accessed by using the QR code below. In addition, contained in this package (the "**Solicitation Package**") are a paper copy of the Confirmation Hearing Notice (as defined in the Solicitation and Voting Procedures) and the Master Ballot and a USB drive containing a form of the Exhibit that must accompany the Master Ballot. Additionally, the contents of the Solicitation Package, except for the form of Exhibit, may be obtained by (a) accessing the Debtors' chapter 11 case website at https://omniagentsolutions.com/Uniroyal-Ballots; (b) writing to the Balloting Agent at Uniroyal Holding, Inc. Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; (c) calling the Balloting Agent at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International); (d) emailing the Balloting Agent at UniroyalInquiries@omniagnt.com; or (e) visiting (for a fee) PACER at

http://www.njb.uscourts.gov. Please be advised that the Balloting Agent is authorized to answer questions and provide additional copies of solicitation materials but may not advise you as to whether you should accept, reject, or object to the Plan.

If you wish for any of your PI/WD Clients to be sent a Solicitation Package (without a Ballot (as defined in the Solicitation and Voting Procedures)) you must furnish the Balloting Agent by encrypted e-mail at UniroyalInquiries@omniagnt.com with a list in electronic Microsoft Excel format setting forth the names and addresses of each such Holder, within five Business Days of receiving a copy of the Solicitation Package.

**To use this Master Ballot with respect to any PI/WD Client you represent, your Firm must certify that it has authority to vote on the Plan on behalf of such Holder pursuant to either an Option (a) Certification or Option (b) Certification (as defined below).**

> "**Option (a) Certification**": The Firm shall distribute the Solicitation Package (without a Ballot) to each of its PI/WD Clients and ask each client to provide his or her affirmative vote to accept or reject the Plan (along with any other responsive election to be reflected on the Exhibit to the Master Ballot) and the Firm shall record the affirmative responses on the Master Ballot and reflect that the vote and other responses were collected by means of an Option (a) Certification. For the avoidance of doubt, a Firm may not rely on providing any of its PI/WD Clients negative notice when completing the Master Ballot on behalf of any PI/WD Client if such client did not affirmatively respond with an express answer for each applicable election. Each Firm shall collect the responses through customary and accepted practices in accordance with applicable rules of professional conduct (including telephone, email, and other standard communication methods) from each PI/WD Client, and shall submit a log of the responses it has received to the Balloting Agent contemporaneously with its Master Ballot submission, which may be subject to discovery. For the avoidance of doubt, if a PI/WD Client provides his or her responses orally or via telephone, the Firm shall contemporaneously maintain a record of the responses of the Firm's PI/WD Clients and shall include those responses with the log.

> "**Option (b) Certification**": If the Firm has the authority under a power of attorney to vote to accept or reject the Plan (in addition to the other elections under the Master Ballot) on behalf of its PI/WD Clients, the Firm shall complete the Master Ballot in accordance with the power granted to the Firm and reflect that the vote and other elections were collected by means of an Option (b) Certification. For any PI/WD Clients whose elections on the Master Ballot were completed by utilizing the Option (b) Certification, the Firm shall supply the power(s) of attorney concurrently with the Master Ballot and Exhibit that provided the Firm with the authorization to act on behalf of such PI/WD Client(s).

With respect to any PI/WD Client you (a) are unable to certify that you have the authority to vote on the Plan on behalf of such Holder pursuant to Option (a) Certification or Option (b) Certification, or (b) wish such PI/WD Client to cast his or her own ballot on the Plan, you must:

furnish the Balloting Agent by encrypted e-mail at UniroyalInquiries@omniagnt.com with a list in electronic Microsoft Excel format setting forth the name and address for each such Holder within five Business Days of receiving the Solicitation Package.

*[Remainder of page intentionally left blank]*

## INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT

1. The Debtors are soliciting the votes of Holders of PI/WD Claims with respect to the Plan as described in the Disclosure Statement.

2. The Bankruptcy Court may confirm the Plan and thereby bind Holders of PI/WD Claims, if the Plan is confirmed and becomes effective. Please review the Disclosure Statement for more information.

3. This Master Ballot is to be used by Firms representing PI/WD Clients who are authorized to vote on behalf of such PI/WD Clients to accept or reject the Plan on their behalf.

4. If a Ballot is submitted by a PI/WD Client directly to the Balloting Agent and the PI/WD Client is also included in a Master Ballot, the Ballot submitted by the claimant will be counted and will supersede any vote returned in a Master Ballot on behalf of that PI/WD Client.

5. To be entitled to vote on the Plan, a Holder of a PI/WD Claim (either directly or through his or her attorney or agent) must be able to certify, on information and belief, formed after an inquiry reasonable under the circumstances, that such Holder has a PI/WD Claim.

6. To have the votes reflected on the Master Ballot counted for purposes of voting on the Plan, the Master Ballot must be completed, signed, and returned so that it is actually received no later than the Voting Deadline (or such later date as agreed by the Debtors or extended by order of the Bankruptcy Court) by the Balloting Agent as set forth in the instructions below. Master Ballots will **not** be accepted by e-mail, facsimile transmission, or other electronic submissions, nor will Master Ballots be accepted in hard copy format by regular mail, overnight courier, or hand delivery, unless the party submitting such Master Ballot previously received permission in writing from the Debtors to submit a Master Ballot via means other than the Law Firm Master Ballot Portal. If the Master Ballot is not signed, the Master Ballot will not be valid or counted.[3]

7. This Master Ballot will not constitute or be deemed a proof of Claim, an assertion of a Claim, the allowance of a Claim, or the acceptance or liquidation of any PI/WD Claim for purposes of distribution from the Trust. None of the information set forth in this Master Ballot shall constitute an admission by any Debtor as to the extent, validity, or priority of the Claim voted herein, nor shall anything contained herein be binding upon any Debtor or the claimant in any subsequent claims resolution process or other proceeding. This Master Ballot may not be used for any purposes other than to transmit votes on the Plan.

8. Votes reflected by multiple Master Ballots will be counted except to the extent that they are duplicative of other Master Ballots. If a Firm would like to change the vote of one or more of its PI/WD Clients before the Voting Deadline, such Firm must submit an entirely

[3] For the avoidance of doubt, any Master Ballot submitted online, through the Law Firm Master Ballot Portal in accordance with the instructions therein, will be deemed to contain an original signature.

new and updated Master Ballot and Exhibit, which will replace (in their entirety) the previously submitted Master Ballot and Exhibit. In the event a Firm requests after the Voting Deadline to (a) withdraw the vote of one or more of its Clients or (b) change the vote of one or more of its PI/WD Clients, such withdrawal or change, as applicable, must comply with the process and requirements set forth in Bankruptcy Rule 3018. Notwithstanding the foregoing, if multiple Master Ballots are received for the same Holder on the same Claim, but are submitted by different Firms, the PI/WD Client's vote will be counted only once and only if the votes on each Ballot are consistent. If the votes are not consistent, the Balloting Agent shall contact the relevant Firms, with notice of such communication to counsel to the Debtors, and request that the Firms coordinate with each other to resolve the conflicting representation, and for the appropriate Firms to send an e-mail to UniroyalInquiries@OmniAgnt.com with "Uniroyal – Master Ballot" in the subject line, copying all affected Firms and the Debtors confirming such resolution. If representation of a PI/WD Client is not resolved before the earlier of (a) 10 calendar days from the notice of the conflict as provided by the Balloting Agent or (b) the Voting Deadline, such votes shall not be counted.

9. Each PI/WD Client that votes must vote his, her, or its entire Claim either to accept (vote in favor of) or to reject (vote against) the Plan. A Holder of a PI/WD Claim may not split his, her, or its vote. Accordingly, the votes of any PI/WD Client who purports partially to accept and partially to reject the Plan will not be counted.

10. If the Master Ballot is signed and timely submitted to the Balloting Agent, but does not (a) designate either acceptance or rejection of the Plan, or designates both acceptance and rejection, of the Plan, or (b) provide each claimant's email address or (c) does not provide the birth year of the claimant, then the Balloting Agent or the Debtors may, at their own discretion, contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such vote will not be counted either as an acceptance or rejection of the Plan. Provided that, in the case of clause (a), if such PI/WD Client is designated as electing to opt out of the releases provided in the Plan, then such PI/WD Client will in each case be designated as having opted out of the releases provided in the Plan.

11. To complete the Master Ballot properly, you must follow the procedures described below:

**Item 1** of the Master Ballot asks you to indicate how many Holders of PI/WD Claims listed on the Exhibit accept or reject the Plan. If all of your Firm's PI/WD Clients have authorized your Firm to accept / vote in favor of the Plan, please check the box indicating same. If all of your Firm's PI/WD Clients have authorized your Firm to reject / vote against the Plan, please check the box indicating same. If some of your Firm's PI/WD Clients have authorized your Firm to accept / vote in favor of the Plan, while others have authorized you to reject / vote against the Plan, please check the box indicating the same and be certain to specify on the Exhibit which Clients have accepted the Plan and which Clients have rejected the Plan.

**Item 2** of the Master Ballot requires you to prepare a list of each Holder of a PI/WD Claim that you represent and for whom you are (a) voting under a power of attorney or (b) have been authorized to vote with such Holder's affirmative consent under applicable law, in substantially

the same format as provided in the Master Ballot that will become the Exhibit to the Master Ballot. The Exhibit should indicate the following for each claimant: (a) the last name of the PI/WD Client, (b) the first name of the PI/WD Client, (c) the last four digits of the Social Security Number of the PI/WD Client (if the PI/WD Client has a Social Security Number), (d) the date of birth of the PI/WD Client, (e) whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan, (f) whether the Client's vote is submitted pursuant to the Option (a) Certification or the Option (b) Certification (as defined above), (g) the service method that your Firm has used to transmit the Solicitation Package materials (excluding a Ballot) to your PI/WD Clients, *e.g.*, in hard copy, flash drive, or electronic formats; and (h) whether the PI/WD Client opts out of the releases as presented in the instructions.

**Item 3. Release Opt-Out.**

Please be advised that section 9.2 of the Plan provides for the following releases which Holders of PI/WD Claims may opt out of granting. Indicate on the Master Ballot Exhibit for each claimant only if they wish to opt out of the releases set forth below and in section 9.2 of the Plan.

**Section 9.2 of the Plan—Releases by Holders of Claims and Interests.**

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR**

**RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**Item 4** of the Master Ballot requires that you:

- make certain certifications as a prerequisite to the submission of votes on behalf of voting Clients (please ensure that you have read and understood the certifications prior to signing the Master Ballot, and that the certification is correct for each PI/WD Claim voted on the Master Ballot),
- sign the Master Ballot,
- provide your name and mailing address where indicated, and
- contact the Balloting Agent if you need additional information or copies of any documents contained in the Solicitation Package.

**Return the completed, executed Master Ballot, including the Exhibit so as to be actually received by the Balloting Agent before the Voting Deadline (or such later date as agreed by the Debtors or ordered by the Bankruptcy Court).**

**PLEASE COMPLETE, SIGN, AND DATE THIS**
**MASTER BALLOT AND RETURN IT WITH THE EXHIBIT PROMPTLY TO:**

**By the Law Firm Master Ballot Portal**

If you use this Master Ballot, you must submit the Master Ballot, and upload the Master Ballot Exhibit, through the Law Firm Master Ballot Portal, visit https://omniagentsolutions.com/Uniroyal, click on the "Balloting" tab of the Debtors' website, select "Submit Law Firm Master Ballot", and follow the instructions, provided on the website to submit the Ballot.

The Law Firm Master Ballot Portal is the sole manner in which Master Ballots and Exhibits will be accepted. Master Ballots submitted by any other means will **not** be counted, unless the party submitting such Master Ballot previously received permission in writing from the Debtors to submit a Master Ballot via electronic means other than the Law Firm Master Ballot Portal.

Master Ballots conforming to these instructions and properly submitted through the Law Firm Master Ballot Portal shall be deemed to contain an original signature.

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE BALLOTING AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT AND EXHIBIT.**

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 3. IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST[4].**

**Item 1. Voting Summary.**

Please note that each Holder of a PI/WD Claim who votes must vote the entire amount of his or her Claim to accept or reject the Plan. Any Holder of a PI/WD Claim who attempts partially to reject and partially to accept the Plan will not have their vote counted. If this Master Ballot is signed and timely received by the Balloting Agent but does not designate either acceptance or rejection or designates both acceptance and rejection of the Plan for any particular PI/WD Claim, such vote will not be counted either as an acceptance or rejection of the Plan. After you complete the voting summary below, you must complete the Exhibit accompanying this Master Ballot and discussed in Item 2 below for each of your PI/WD Clients for your PI/WD Clients' votes to be counted.

**Please mark only one of the boxes below:**

☐ All claimants listed on the Exhibit (as defined below) accompanying this Master Ballot ACCEPT (vote in favor of) the Plan.

☐ All claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote against) the Plan.

☐ Some of the claimants listed on the Exhibit accompanying this Master Ballot ACCEPT (vote in favor of) the Plan, while other claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote against) the Plan.

**Item 2. List of PI/WD Clients.**

You should have received in the Solicitation Package a USB drive with a file containing an Excel spreadsheet indicating each PI/WD Client you represent (the "**Exhibit**"), which list is formatted as follows below. The completed Exhibit should indicate the following for each PI/WD Client you represent: (a) the last name of the PI/WD Client, (b) the first name of the PI/WD Client, (c) the last 4 digits of the Social Security Number of the PI/WD Client (if the PI/WD Client has a Social Security Number), (d) the date of birth of the PI/WD Client, (e) whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan, (f) whether the Client's vote is submitted pursuant to the Option (a) Certification or the Option (b) Certification (as defined below), (g) the service method that your Firm has used to transmit the Solicitation Package materials (excluding a Ballot) to your clients *e.g.*, in hard copy, flash drive, or electronic formats,

---

[4] For the avoidance of doubt, any Master Ballot submitted online, through the Law Firm Master Ballot Portal in accordance with the instructions therein, will be deemed to contain an original signature.

and (h) whether the PI/WD Client opts out of the releases as presented in the instructions. Please note that your PI/WD Clients' votes may not be counted if you fail to provide each of the pieces of information listed in the Exhibit. If you are unable to submit your Master Ballot and Exhibit via the Law Firm Master Ballot Portal, please contact the Balloting Agent at UniroyalInquiries@OmniAgnt.com with "Uniroyal – Master Ballot" in the subject line or at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International). The Exhibit template should be in the following format and is included with the Solicitation Package:

| **Claimant's Last Name** | **Claimant's First Name** | **Claimant's SSN (last 4 digits)** | **Claimant's Date of Birth** | **Vote to ACCEPT / in Favor of OR Vote to REJECT / Against the Plan** | **Type of Authority for Vote** | **Method of Service of Solicitation Documents** | **Opts Out of Releases (Leave Blank if Not Opting Out)** |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**Please note that you must use the Exhibit accompanying your Master Ballot to record the votes of your PI/WD Clients, and you must submit the Exhibit together with the Master Ballot. If you do not complete the Exhibit provided to you with your Master Ballot and submit it together with your Master Ballot, your Clients' votes may not be counted.**

**Item 3. Release Opt-Out.**

Indicate on the Exhibit for each PI/WD Client only if they wish to opt out of the releases set forth below and in section 9.2 of the Plan. If a PI/WD Client votes to accept or to reject the Plan and wishes to opt out of granting the releases provided in the Plan, the opt out selection in the Exhibit must be made for such PI/WD Client, and the completed Master Ballot returned to the Balloting Agent so as to be received by the Voting Deadline.

**Please note:**

(a) Opting out of granting the releases in section 9.2 of the Plan on behalf of any PI/WD Client will not affect the treatment received by that PI/WD Client under the Plan other than with respect to the releases.

(b) If the Plan becomes effective, your PI/WD Clients who vote to accept or reject the Plan will be deemed to provide the releases contained the Plan, unless the opt out has been selected for your PI/WD Client.

**Section 9.2 of the Plan—Releases by Holders of Claims and Interests.**

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH**

**RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**<u>Item 4</u>. Certifications and Acknowledgment**.

By signing this Master Ballot, the undersigned certifies under penalty of perjury that each of the following statements is true and correct:

(a) I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, and the Solicitation Package materials.

(b) I certify by either the Option (a) Certification or the Option (b) Certification that each of the claimants set forth on the accompanying Exhibit is represented by me.

(c) I have met all applicable standards to receive informed consent from each of my PI/WD Clients with respect to each such PI/WD Client's vote and the release opt out election on this Master Ballot.

(d) I have conducted the diligence necessary to form a reasonable belief that each of my PI/WD Clients set forth on the Exhibit is a Holder of a Claim in Class 4 (PI/WD Claim) as of the Voting Record Date.

(e) I acknowledge that a vote to accept the Plan constitutes acceptance of the treatment of each PI/WD Client as a Holder of a PI/WD Claim under the Plan.

(f) I understand that, if accepting the Plan on behalf of one of my PI/WD Clients, my client agrees with the treatment provided for his or her PI/WD Claim under the Plan.

(g) I have provided the Solicitation Package materials (excluding a Ballot) to my PI/WD Clients in a timely manner in the form (whether hard copy, flash drive, electronic format, or other means) which my PI/WD Clients have requested.

(h) I further acknowledge that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Solicitation and Voting Procedures Order, and the Solicitation and Voting Procedures contained therein.

| | |
|---|---|
| Print or Type Name of Attorney: | ________________________________________ |
| Name of Law Firm: | ________________________________________ |
| Attorney Signature: | ________________________________________ |
| Street Address: | ________________________________________ |
| City, State, Zip Code: | ________________________________________ |
| Telephone Number: | ________________________________________ |
| Email Address: | ________________________________________ |
| Date Completed: | ________________________________________ |

**The entire Master Ballot (including the completed Exhibit) must be delivered to the Balloting Agent via the Law Firm Master Ballot Portal by visiting https://omniagentsolutions.com/Uniroyal, clicking on the "Balloting" tab of the Debtors' website, selecting "Submit Firm Master Ballot", and following the instructions set forth therein.**

**IF THIS MASTER BALLOT AND ACCOMPANYING EXHIBIT ARE NOT RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE ON <u>[●] AT 4:00 P.M. (EASTERN TIME)</u>, OR SUCH LATER DATE AS AGREED BY THE DEBTORS OR BY ORDER OF THE BANKRUPTCY COURT, YOUR PI/WD CLIENTS' VOTES WILL NOT BE COUNTED AND YOUR PI/WD CLIENTS WILL NOT OPT OUT OF GRANTING THE RELEASES IN THE PLAN.**

# **Exhibit 5**

## **Opt-Out Form**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Joint Administration Requested) |

**NOTICE OF NON-VOTING STATUS AND OPT-OUT FORM TO HOLDERS OR POTENTIAL HOLDERS OF UNIMPAIRED OR IMPAIRED CLAIMS OR INTERESTS CONCLUSIVELY PRESUMED TO ACCEPT OR REJECT THE PLAN**

**You are receiving this Notice of Non-Voting Status and Opt-Out Form because your rights may be affected under the Plan. Due to the nature and treatment of your Claim or Interest under the Plan, you are not entitled to vote on the Plan.**

**SECTION 9 OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. SECTION 9.2 THEREIN CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MAY BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN SECTION 9 OF THE PLAN USING THE ENCLOSED OPT-OUT FORM WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN SECTION 9 OF THE PLAN, YOU WILL FORGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN SECTION 9 OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out; however, in the event you opt out of the third-party releases in the**

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

**Plan, you <u>will not</u> be granted a release from the Releasing Parties under the Plan to the extent you are entitled to one.**

**The Opt-Out Form must be submitted no later than [●] (the "Opt-Out Deadline").**

**You should review this notice and the Plan carefully and may wish to consult an attorney as your rights may be affected.**

*General Information Concerning this Notice of Non-Voting Status and Opt-Out Form*

On [●], Uniroyal Holding, Inc. and Great Hill Corporation, as debtors and debtors in possession (collectively, the "**Debtors**"), commenced chapter 11 cases in the United States Bankruptcy Court for the District of New Jersey (the "**Court**"). The Debtors have commenced the solicitation of votes, in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), to accept or reject the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**"),[2] attached as Exhibit A to the *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**") from Holders of PI/WD Claims.

Copies of the Disclosure Statement, the *Order (I) Approving the Disclosure Statement, (II) Approving Solicitation, Notice, and Tabulation Procedures and Forms Related Thereto, (III) Scheduling a Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Plan Confirmation, and (V) Granting Related Relief*, and the Plan may be accessed by using the QR code below. Additionally, each document may be obtained by (a) accessing the Debtors' chapter 11 case website at https://omniagentsolutions.com/Uniroyal-Ballots; (b) writing to the Balloting Agent at Uniroyal Holding, Inc. Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; (c) calling the Balloting Agent at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International); (d) emailing the Balloting Agent at UniroyalInquiries@omniagnt.com; or (e) visiting (for a fee) PACER at http://www.njb.uscourts.gov. Please be advised that the Balloting Agent is authorized to answer questions and provide additional copies of solicitation materials but may **<u>not</u>** advise you as to whether you should object to the Plan.

You are receiving this notice of non-voting status and the release opt-out form attached as Appendix B (the "**Opt-Out Form**") because, according to the Debtors' books and records, you may be a Holder of a Claim against or Interest in one or more of the Debtors that, due to the nature

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan.

and treatment of such Claim or Interest under the Plan, ***is not entitled to vote on the Plan***. Specifically, under the terms of the Plan, Claims in Class 1 (Secured Claims) and Class 2 (Other Priority Claims), and Class 3 (General Unsecured Claims) are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Claims and Interests in Class 5 (Intercompany Claims) and Class 6 (Interests) (collectively with Classes 1, 2, and 3, the "**Non-Voting Classes**") are Impaired under the Plan with no recovery and, pursuant to section 1126(g) of the Bankruptcy Code, are deemed to reject the Plan. Therefore, Holders of Claims and Interests in Classes 1, 2, 3, 5, and 6 are not entitled to vote to accept or reject the Plan.

Section 9.1 of the Plan contains Releases by the Debtors and section 9.2 of the Plan contains a ***Third-Party Release*** (the "**Consensual Third-Party Releases**"). Section 9 also contains exculpation and injunction provisions. These provisions are described in Appendix A. You are advised and encouraged to carefully review and consider the Plan and Disclosure Statement, including the release, exculpation, and injunction provisions, as your rights might be affected.

***The Opt-Out Form provided in Appendix B provides you with the opportunity to elect to opt out of the releases described in Appendix A.***

**THE OPT-OUT FORM MUST BE SUBMITTED NO LATER THAN [●], 2026, AT 4:00 P.M. (PREVAILING EASTERN TIME).** If you elect to opt out of the releases, you will not be deemed to have granted the releases set forth in section 9.2 of the Plan. If you opt out of the Releases, you will not be a Released Party under the Plan and will forgo any benefit of the Releases to which you may otherwise be entitled. The Opt-Out Form in Appendix B provides you with the opportunity to elect to opt out of the releases.

*Making an Alternative Election Under This Opt-Out Form*

**Holders of Claims and Interests who take no action with respect to the Opt-Out Form will automatically be deemed to grant the Consensual Third-Party Releases contained in section 9.2 of the Plan**.

You should review the Disclosure Statement and the Plan before you make any election on the Opt-Out Form. You may wish to seek legal advice concerning the election available under the Opt-Out Form.

**Questions may be directed to the Balloting Agent** at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International) or by e-mail at UniroyalInquiries@OmniAgnt.com (with "Uniroyal Solicitation" in the subject) or by submitting an inquiry on the Debtors' case website **https://omniagentsolutions.com/Uniroyal. Copies of the Plan and Disclosure Statement may also be obtained by** (a) accessing the Debtors' chapter 11 case website at https://omniagentsolutions.com/Uniroyal-Ballots; (b) writing to the Balloting Agent at Uniroyal Holding, Inc. Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; (c) calling the Balloting Agent at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International);or (d) emailing the Balloting Agent at UniroyalInquiries@omniagnt.com. **The Plan, Disclosure Statement, and related documents are also available for a fee through the Court's electronic case filing system at**

**www.njb.uscourts.gov using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).**

**YOU SHOULD NOT DIRECT ANY QUESTIONS TO ANY OF THE DEBTOR ENTITIES, THE DEBTORS' AGENTS (OTHER THAN THE BALLOTING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THE BALLOTING AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

Dated: [●], 2026

*/s/ [●]*
**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (*pro hac vice* pending)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
Email: msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (*pro hac vice* pending)
Samuel A. Newman (*pro hac vice* pending)
Michael C. Godbe (*pro hac vice* pending)
Benjamin A. Mishkin (*pro hac vice* pending)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
bamishkin@debevoise.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# Appendix A

## Release, Injunction, and Exculpation Provisions in the Plan[1]

**Section 9.2 of the Plan —Releases by Holders of Claims and Interests.**

AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER

---

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

# Appendix B

## Opt-Out Form

OPTIONAL: **Opt-Out Form**

**You are receiving this Opt-Out Form because you are a Holder of a Claim that is not entitled to vote on the** *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [•]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "**Plan**").

Section 9 of the Plan contains release, exculpation, and injunction provisions as set forth in Appendix A.

**This election allows you to:**

**OPT OUT OF THE RELEASES IN THE PLAN, WHICH WILL DISQUALIFY YOU FROM BEING SUBJECT TO AND BENEFITING FROM THE RELEASES IN SECTION 9.2 OF THE PLAN. IF YOU DO NOT OPT OUT OF THE RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.**

**Complete and return this Opt-Out Form if you wish to elect to opt out of the releases contained in section 9.2 of the Plan and described in Appendix A.**

*Summary of Election*

Section 9.2 of the Plan contains a third-party release that binds releasing parties, which is described in Appendix A.

**IMPORTANT INFORMATION REGARDING THE RELEASE**

**UNLESS YOU COMPLETE AND RETURN THIS OPT-OUT FORM BY [•], YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN SECTION 9.2 OF THE PLAN.**

*Instructions for Making a Release Opt-Out Election*

If you wish to make the election and opt out of granting the releases contained in section 9.2 of the Plan and described in Appendix A, check the box under "Your Election" below. If your election contained in this Opt-Out Form is not received by the Balloting Agent by [•], your election will not count, your Opt-Out Form will not be effective, and you will be deemed to have consented to the releases provided for in section 9.2 of the Plan. If your election is received and the Opt-Out box below is not checked, you will be deemed to have consented to the releases provided for in section 9.2 of the Plan. Any Opt-Out election that is illegible or does not provide sufficient information to identify the Claim Holder or Interest Holder will not be valid.

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of an Opt-Out election will be resolved by the Debtors in consultation with the Committee, which resolution will be final and binding.

If you have any questions on how to properly complete this Opt-Out Form, you may contact the Balloting Agent at (888) 741-5787 (US & Canada toll free) and (747) 400-0068 (International) or by e-mail at UniroyalInquiries@OmniAgnt.com (with "Uniroyal Solicitation" in the subject line).

**IF YOU WISH TO MAKE THE OPT-OUT ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By First Class Mail:**

**Uniroyal Holding, Inc., Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Avenue, Suite 100**
**Woodland Hills, CA 91367**

**By Hand Delivery:** To arrange hand delivery of your Opt-Out Form, please email UniroyalInquiries@OmniAgnt.com (with "Uniroyal Solicitation" in the subject line) at least 24 hours prior to your arrival at the Balloting Agent address above and provide the anticipated date and time of delivery.

***OR***

**By Electronic, Online Submission:**

**Please visit https://omniagentsolutions.com/Uniroyal. Click on the "Balloting" tab of the Debtors' website, select "Electronic Opt-Out" and follow the directions to submit your Opt-Out Form. If you choose to submit your Opt-Out Form via the Opt-Out Portal, you should NOT also return a hard copy of your Opt-Out Form. The "Opt-Out Portal" is the sole manner in which this Opt-Out Form will be accepted via electronic or online transmission, unless you have received prior written permission from the Debtors to submit your Opt-Out Form using an alternative method. Opt-Out Forms submitted by facsimile or email will not be counted, unless you have received prior written permission from the Debtors to submit your Opt-Out Form via these methods.**

**THE BALLOTING AGENT MUST ACTUALLY RECEIVE YOUR OPT-OUT ELECTION ON OR BEFORE THE OPT-OUT DEADLINE.**

*Opt-Out Election*

The undersigned, a Holder of a Secured Claim, Other Priority Claim, General Unsecured Claim, or Interest:

☐ ELECTS TO **OPT OUT** OF THE THIRD-PARTY RELEASE IN SECTION 9.2 OF THE PLAN AND, AS A RESULT, NOT BE SUBJECT TO OR BENEFIT FROM THE RELEASES UNDER SECTION 9 OF THE PLAN.

**If you have made the election above, you must complete and sign the below certification.**

**Certification and Signature for Opt-Out Election**

**Certification.** By signing this Opt-Out Form, the electing Holder of Claims or Interests, as applicable, certifies to the Court and the Debtors:

a. that the Holder acknowledges that the election provided for in this Opt-Out Form is being made pursuant to the terms and conditions set forth in the Plan;
b. that the Holder has the full power and authority to make the election provided for in this Opt-Out Form with respect to its Class 1, Class 2, Class 3, or Class 6 Claims or Interests.

Name of Holder (Please Print or Type) ________________________________

Authorized Signature ________________________________

Name of Signatory (if other than Holder) ________________________________

Title, (if other than Holder)[1] ________________________________

Street Address ________________________________

City, State, Zip Code ________________________________

Telephone Number ________________________________

Email ________________________________

Date Completed ________________________________

[1] If you are completing this Opt-Out Form on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.

# Exhibit C

## Liquidation Analysis

**Uniroyal Holding, Inc.**
*USD in thousands*

| *USD in thousands* Asset Realizations | Pro Forma 7/31/2026 | Recovery Estimate % Low | Recovery Estimate % Midpoint | Recovery Estimate % High | Recovery Estimate $ Low | Recovery Estimate $ Midpoint | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|
| Cash & Cash Equivalents | $ 34,515.2 | 100.0% | 100.0% | 100.0% | $ 34,515.2 | $ 34,515.2 | $ 34,515.2 |
| Property, Equipment, Furniture | 38.8 | 1.0% | 3.0% | 5.0% | 0.4 | 1.2 | 1.9 |
| **Gross Liquidation Proceeds** | **34,554.0** | **99.9%** | **99.9%** | **99.9%** | **34,515.6** | **34,516.4** | **34,517.2** |
| **Liquidation Costs** | | | | | | | |
| Ch. 7 Trustee Fees[1] | 1,035.5 | 3.0% | 3.0% | 3.0% | 1,035.5 | 1,035.5 | 1,035.5 |
| Ch. 7 Professional Fees - Legal / Advisory / Accounting | 2,506.3 | | | | 2,806.3 | 2,506.3 | 2,206.3 |
| Asbestos Litigation & Claims Resolution | 21,700.0 | | | | 22,460.0 | 21,700.0 | 20,930.0 |
| Professional Fees - Tax Preparation | 75.0 | | | | 75.0 | 75.0 | 75.0 |
| Winddown Costs | 1,200.0 | | | | 1,200.0 | 1,200.0 | 1,200.0 |
| **Total Liquidation Costs** | **26,516.8** | | | | **27,576.8** | **26,516.8** | **25,446.8** |
| **Net Liquidation Proceeds** | | | | | **$ 6,938.8** | **$ 7,999.6** | **$ 9,070.3** |

| Claims | Claim Value | Recovery % Low | Recovery % Midpoint | Recovery % High | Recovery $ Low | Recovery $ Midpoint | Recovery $ High |
|---|---|---|---|---|---|---|---|
| **Class 1: Secured Claims** | | | | | | | |
| Not Applicable | | | | | | | |
| **Remaining Amount Available for Distribution** | | | | | **$ 6,938.8** | **$ 7,999.6** | **$ 9,070.3** |
| **Class 2: Other Priority Claims** | | | | | | | |
| Prepetiton, State of Connecticut Capital Gains Tax | 45.0 | | | | 45.0 | 45.0 | 45.0 |
| **Remaining Amount Available for Distribution** | | | | | **$ 6,893.8** | **$ 7,954.6** | **$ 9,025.3** |
| **Class 3 & 4: General Unsecured Claims ('GUCs')** | | | | | | | |
| PI / WD Claims[2] | No Less than $31.5M + Specified Settlement | TBD | TBD | TBD | 6,848.8 | 7,902.6 | 8,966.4 |
| Tourangeau Settlement | 200.0 | 21.7% | 25.1% | 28.5% | 43.5 | 50.2 | 56.9 |
| Accounts Payable | 5.0 | 21.7% | 25.1% | 28.5% | 1.1 | 1.2 | 1.4 |
| Peterson-Puritan Ou2 Nrd Group | 2.3 | 21.7% | 25.1% | 28.5% | 0.5 | 0.6 | 0.6 |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Class 5: Interco** | | | | | | | |
| Eliminated through Consolidation | | | | | | | |

Footnote(s):

*(1) Ch. 7 Trustee Fees calculated as 3% of net proceeds*

*(2) PI/WD Claims recovery are modeled using the minimum amount referenced in the Plan solely for purposes of this hypothetical liquidation analysis. Actual allowed claims and distributions may differ.*

**Uniroyal Holding, Inc - UHI Waterfall**

*USD in thousands*

| *USD in thousands* | | Pro Forma | Recovery Estimate % | | | Recovery Estimate $ | | |
|---|---|---|---|---|---|---|---|---|
| **Asset Realizations** | **Notes** | **7/31/2026** | **Low** | **Midpoint** | **High** | **Low** | **Midpoint** | **High** |
| Cash & Cash Equivalents | | $ 34,508.7 | 100.0% | 100.0% | 100.0% | $ 34,508.7 | $ 34,508.7 | $ 34,508.7 |
| Property, Equipment, Furniture | | 38.8 | 1.0% | 3.0% | 5.0% | 0.4 | 1.2 | 1.9 |
| Intercompany Receivable from GH | | 595.9 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Gross Liquidation Proceeds** | | **35,143.4** | | | | **34,509.1** | **34,509.9** | **34,510.7** |
| **Liquidation Costs** | | | | | | | | |
| Ch. 7 Trustee Fees[1] | | 1,035.3 | 3.0% | 3.0% | 3.0% | 1,035.3 | 1,035.3 | 1,035.3 |
| Ch. 7 Professional Fees - Legal / Advisory / Accounting | | 2,500.0 | | | | 2,800.0 | 2,500.0 | 2,200.0 |
| Asbestos Litigation & Claims Resolution | | 21,700.0 | | | | 22,460.0 | 21,700.0 | 20,930.0 |
| Professional Fees - Tax Preparation | | 75.0 | | | | 75.0 | 75.0 | 75.0 |
| Winddown Costs | | 1,200.0 | | | | 1,200.0 | 1,200.0 | 1,200.0 |
| **Total Liquidation Costs** | | **26,510.3** | | | | **27,570.3** | **26,510.3** | **25,440.3** |
| **Net Liquidation Proceeds** | | | | | | **$ 6,938.8** | **$ 7,999.6** | **$ 9,070.3** |

| | Claim | Recovery % | | | Recovery $ | | |
|---|---|---|---|---|---|---|---|
| **Claims** | **Value** | **Low** | **Midpoint** | **High** | **Low** | **Midpoint** | **High** |
| **Class 1: Secured Claims** | | | | | | | |
| Not Applicable | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Remaining Amount Available for Distribution** | | | | | **$ 6,938.8** | **$ 7,999.6** | **$ 9,070.3** |
| **Class 2: Other Priority Claims** | | | | | | | |
| Prepetiton, State of Connecticut Capital Gains Tax | 45.0 | 100.0% | 100.0% | 100.0% | 45.0 | 45.0 | 45.0 |
| **Remaining Amount Available for Distribution** | | | | | **$ 6,893.8** | **$ 7,954.6** | **$ 9,025.3** |
| **Class 3 & 4: General Unsecured Claims ('GUCs')** | | | | | | | |
| PI / WD Claims[2] | No Less than $31.5M + Specified Settlement | TBD | TBD | TBD | 6,848.8 | 7,902.6 | 8,966.4 |
| Tourangeau Settlement | 200.0 | 21.7% | 25.1% | 28.5% | 43.5 | 50.2 | 56.9 |
| Accounts Payable | 5.0 | 21.7% | 25.1% | 28.5% | 1.1 | 1.2 | 1.4 |
| Peterson-Puritan Ou2 Nrd Group | 2.3 | 21.7% | 25.1% | 28.5% | 0.5 | 0.6 | 0.6 |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Class 5: Interco** | | | | | | | |
| Intercompany to GH | **2,483.7** | **0.0%** | **0.0%** | **0.0%** | **-** | **-** | **-** |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Remaining Amount Available to Equity** | | | | | **$ -** | **$ -** | **$ -** |

Footnote(s):

*(1) Ch. 7 Trustee Fees calculated as 3% of net proceeds*

*(2) PI/WD Claims recovery are modeled using the minimum amount referenced in the Plan solely for purposes of this hypothetical liquidation analysis. Actual allowed claims and distributions may differ.*

**Uniroyal Holding, Inc - GH Waterfall**
*USD in thousands*

| *USD in thousands* | Pro Forma | Recovery Estimate % | | | Recovery Estimate $ | | |
|---|---|---|---|---|---|---|---|
| **Asset Realizations** | 7/31/2026 | Low | Midpoint | High | Low | Midpoint | High |
| Cash & Cash Equivalents | $ 6.5 | 100.0% | 100.0% | 100.0% | $ 6.5 | $ 6.5 | $ 6.5 |
| Intercompany Note + Interest from UHI | 2,483.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Gross Liquidation Proceeds** | **2,490.2** | **0.3%** | **0.3%** | **0.3%** | **6.5** | **6.5** | **6.5** |
| **Liquidation Costs** | | | | | | | |
| Ch. 7 Trustee Fees[1] | 0.2 | 3.0% | 3.0% | 3.0% | 0.2 | 0.2 | 0.2 |
| Ch. 7 Professional Fees - Legal / Advisory / Accounting | 6.3 | | | | 6.3 | 6.3 | 6.3 |
| **Total Liquidation Costs** | **6.5** | | | | **6.5** | **6.5** | **6.5** |
| **Net Liquidation Proceeds** | | | | | **$ -** | **$ -** | **$ -** |

| | Claim | Recovery % | | | Recovery $ | | |
|---|---|---|---|---|---|---|---|
| **Claims** | Value | Low | Midpoint | High | Low | Midpoint | High |
| **Class 1: Secured Claims** | | | | | | | |
| Not Applicable | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Class 2: Other Priority Claims** | | | | | | | |
| Not Applicable | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Class 3 & 4: General Unsecured Claims ('GUCs')** | | | | | | | |
| PI / WD Claims | N/A | N/A | N/A | N/A | - | - | - |
| Accounts Payable | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Class 5: Intercompany Claims** | | | | | | | |
| Intercompany Payable to UHI | 595.9 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Remaining Amount Available for Distribution** | | | | | **$ -** | **$ -** | **$ -** |
| **Remaining Amount Available to Equity** | | | | | **$ -** | **$ -** | **$ -** |

Footnote(s):

*(1) Ch. 7 Trustee Fees calculated as 3% of net proceeds*