**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
Evan M. Raskin (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
emraskin@debevoise.com

*Co-Counsel to the Debtors and Debtors in Possession*

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| UNIROYAL HOLDING, INC., *et al.*,[1] | Case No. 26-18668 (MBK) |
| Debtors. | (Jointly Administered) |

**OMNIBUS MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTORS TO (I) ASSUME AND ASSIGN OR (II) REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), by and through their undersigned counsel, hereby submit this motion (the "**Motion**") seeking entry of an order, substantially in the form attached as **Exhibit A** (the "**Order**"), authorizing the Debtors to (i) assume and assign to the Trust on the Effective Date (each as defined below) certain

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these Chapter 11 Cases is 70 Great Hill Road, Naugatuck, CT 06770.

executory contracts and unexpired leases identified on Schedule 1 to the Order (each, an "**Assumed Contract and Lease**" and collectively, the "**Assumed Contracts and Leases**"), and (ii) reject certain other executory contracts and unexpired leases identified on Schedule 2 to the Order (each, a "**Rejected Contract and Lease**" and collectively, the "**Rejected Contracts and Leases**") effective as of the date of the Order's entry.[2] In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATES

1. The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are sections 105, 365(a) and 554 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 9013-1 and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**").

[2] The fact that a particular contract or agreement is listed on either schedule hereto is not an admission that such contract or agreement is executory in nature.

# BACKGROUND

## A. General Background

5. On July 31, 2026 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court, commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").

6. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no statutory committees have been appointed or designated.

## B. The Plan

7. The Debtors hold and manage the assets and liabilities of Uniroyal, Inc.'s (f/k/a U.S. Rubber Company) legacy, non-operating businesses following its reorganization in 1985. Prior to 1985, Uniroyal, Inc. was a large and complex organization. In 1985, Uniroyal, Inc. was reorganized to responsibly address its legacy liabilities and retirement obligations. Since that time, these assets and liabilities have been managed by a team currently consisting of five employees who have worked for decades to make sure the Debtors fulfilled their obligations to these constituencies. As of the Petition Date, the Debtors had over 35,000 asbestos-related claims pending against them, were responsible for providing retiree benefits to approximately 140 persons, and had no funded debt obligations.[3] Now, the remaining legacy employees are nearing retirement. Due to their long tenures, each employee possesses comprehensive institutional

[3] Additional information regarding the Debtors, the events leading up to the Petition Date, and the facts and circumstances supporting the relief requested in this Motion is set forth in the *Declaration of Robert V. D'Angelo, Jr. in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 6] (the "**First Day Declaration**"), which is incorporated in this Motion by reference.

knowledge of the Debtors' operations, assets and liabilities, including management of tort litigation. The Debtors have prepared for and commenced these Chapter 11 Cases to provide for the satisfaction of the Debtors' remaining liabilities following the retirement of their employees, all in a way that will provide a fair and equitable distribution of all available assets among retirees and both current and future asbestos claimants.

8. On July 31, 2026, the Debtors entered into a restructuring support agreement (the "**RSA**") with, among others, an ad hoc group of law firms whose clients have asserted asbestos personal injury claims against the Debtors. The RSA contemplates a global resolution of asbestos personal injury claims and full satisfaction of all allowed non-asbestos claims against the Debtors pursuant to a consensual chapter 11 plan (the "**Plan**").

9. The Plan provides for, among other things, (a) satisfaction of all non-PI/WD Claims against the Debtors in full; (b) the establishment of a settlement trust (the "**Trust**") to assume, administer, and resolve PI/WD Claims; and (c) the dissolution of the Debtors.

10. In accordance with the RSA, on the Petition Date, the Debtors filed the Plan and a related disclosure statement.

11. The hearing to consider confirmation of the Plan is currently scheduled for November 3, 2026 at 2:30 p.m. ET.

**C. The Assumed Contracts and Leases**

12. As set forth on Schedule 1 to the Order, the Assumed Contracts and Leases represent a targeted listing of only those contracts and leases that are either essential to maintain the Debtors' headquarters where certain essential documents and records relating to, among other things, PI/WD Claims are housed, or otherwise vital to assure the efficient and effective transition of administration of the pending PI/WD Claims to the Trust.

13. Specifically, these contracts include, among others, the month-to-month real property lease for the headquarters where the records are stored[4], the security system for the property, the cable contract allowing the property access to the internet, certain insurance policies, licensing agreements, and a copier lease, together with certain indemnification agreements.

14. As set forth in the Plan, on the effective date of the Plan (the "**Effective Date**"), the Trust will become the sole entity responsible for administering the pending PI/WD Claims.

15. Maintaining this location and, by extension, the documents and records is therefore critical to assure the smooth transition of these records and responsibility for the PI/WD Claims to the Trust.

### D. The Rejected Contracts and Leases

16. The Rejected Contracts and Leases listed on Schedule 2 to the Order represent the balance of the Debtors' remaining contracts and leases.

17. The Debtors are no longer in need of maintaining these contracts and leases and, absent rejection, could face unnecessary and otherwise avoidable liabilities associated with the same.

## BASIS FOR RELIEF REQUESTED

### I. Assumption and Rejection of the Applicable Contracts and Leases Are Justified by the Debtors' Sound Business Judgment.

18. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or

[4] The Trust is in discussions with the landlord, G.A.J. Realty, to execute a supplemental lease agreement to memorialize the terms of the month-to-month lease arrangement the Debtors are currently in.

unexpired lease is a matter within the "business judgment" of the debtor. *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995). Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. *See In re Trans World Airlines*, 261 B.R. 103, 121 (Bankr. D. Del. 2001). The "business judgment" test merely requires a showing that assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *Id*. ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845 (Bankr. W.D. Pa. 1987)); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7–8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate).

**a. Assumption and Assignment to the Trust of the Assumed Contracts and Leases Reflects a Sound Exercise of the Debtors' Reasonable Business Judgment and Is in the Best Interests of the Debtors' Estates.**

19. The Debtors' assumption and assignment of the Assumed Contracts and Leases to the Trust on the Effective Date reflects a sound exercise of the Debtors' reasonable business judgment and is in the best interests of the Debtors' estates.

20. As set forth above, the Plan provides for the establishment of the Trust on the Effective Date, which will assume, administer, and resolve PI/WD Claims.

21. The Assumed Contracts and Leases represent a targeted listing of only those contracts and leases that are essential to maintain the Debtors' headquarters, where certain essential documents and records critical to the administration of the over 35,000 pending asbestos-related PI/WD Claims are housed or that are otherwise necessary for the Trust to maintain to assure the effective administration of such claims.

22. Upon the Effective Date of the Plan, the Trust will become the sole entity responsible for administering the pending PI/WD Claims. The Debtors' current employees—who possess decades of institutional knowledge regarding the management of the Debtors' tort litigation, assets, and liabilities—are nearing retirement, and the Plan contemplates the dissolution of the Debtors following their departure.

23. Assumption and assignment of the Assumed Contracts and Leases to the Trust is therefore necessary and appropriate to enable the Trust to fulfill its role under the Plan.

**b. Rejection of the Rejected Contracts and Leases Is Justified by the Debtors' Sound Business Judgment.**

24. Rejection of a contract or unexpired lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989). Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

25. The Debtors, in an exercise of their sound business judgment, have determined that the Rejected Contracts and Leases, which represent the balance of the Debtors' executory contracts and unexpired leases, are no longer needed given the disposition provided for in the Plan, including the establishment of the Trust and the dissolution of the Debtors.

26. Absent rejection, the Rejected Contracts and Leases impose ongoing obligations on the Debtors and their estates that constitute an unnecessary drain on the Debtors' resources and could expose the Debtors to otherwise avoidable liabilities.

27. Because these contracts and leases are not essential to the Debtors' remaining operations or to the Trust's ability to administer PI/WD Claims following the Effective Date, the Debtors seek to reject the Rejected Contracts and Leases to avoid incurring additional unnecessary expenses and liabilities.

**II. The Debtors Will Cure All Defaults Under the Assumed Contracts and Leases and Have Provided Adequate Assurance of Future Performance for the Assumed Contracts and Leases.**

28. Pursuant to section 365(b)(1) of the Bankruptcy Code, a debtor may not assume an executory contract or unexpired lease unless, at the time of assumption, the debtor (1) cures or provides adequate assurance that it will promptly cure any defaults under such contract or lease; (2) compensates or provides adequate assurance of prompt future compensation for actual pecuniary losses resulting from such defaults; and (3) provides adequate assurance of future performance under such contract or lease. *See* 11 U.S.C. § 365(b)(1)(A)-(C); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).

29. The Debtors believe that, in accordance with the requirements of section 365(b)(1) of the Bankruptcy Code, the Cure Amounts (as defined below) identified on Schedule 1 are

appropriate in connection with their proposed assumption of the Assumed Contracts and Leases. The Cure Amounts represent the amounts, if any, owed under the Assumed Contracts and Leases to the counterparties to such contracts and leases (each, a "**Counterparty**" and collectively, the "**Counterparties**") as of the date of this Motion.

30. In connection with this Motion, if the applicable Counterparty objects to the amounts, pursuant to section 365(b)(1) of the Bankruptcy Code, listed by the Debtors as required to be paid in order to satisfy any monetary defaults arising under the Assumed Contracts and Leases (each, a "**Cure Amount**" and collectively, the "**Cure Amounts**"), the Debtors propose that on or before the objection deadline for this Motion, such Counterparty shall file and serve a cure objection, in writing, setting forth with specificity any and all cure obligations that the Counterparty asserts must be cured or satisfied in respect of any such contract or lease, together with all documentation supporting such objection (a "**Cure Objection**").

31. The Debtors request that in the event that no Cure Objections are timely filed, the applicable Counterparty shall be deemed to have consented to the Cure Amount and shall be forever enjoined and barred from seeking any additional amount(s) on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors or their estates, or from the Trust.

32. In addition, upon entry of the Order, the Trust shall enjoy all of the rights and benefits under the Assumed Contracts and Leases without the necessity of obtaining any party's written consent to the Debtors' assumption and assignment of any such contract or lease, and the applicable Counterparty shall be deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption and assignment to the Trust of such Assumed Contract or Lease.

33. As described above, the Debtors intend to assign the Assumed Contracts and Leases to the Trust as part of the Plan.

34. Upon the Effective Date of the Plan, the Trust will be funded with assets sufficient to administer and resolve PI/WD Claims and will be governed by a trust agreement overseen by a trustee.

35. Accordingly, the Debtors submit that the Counterparties are adequately assured of future performance under the Assumed Contracts and Leases.

## REQUEST FOR WAIVER OF STAY

36. To the extent that the relief sought in this Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d). To ensure that the Trust can assume responsibility for such administration immediately upon the Effective Date and to facilitate the orderly transition contemplated by the Plan, any delay in the effectiveness of the relief sought herein could jeopardize the Debtors' ability to implement the Plan and preserve continuity of operations for the benefit of all parties in interest. Similarly, prompt rejection of the Rejected Contracts and Leases is necessary to avoid the continued accrual of administrative expenses and contractual obligations that provide no benefit to the Debtors' estates, thereby preserving estate resources for the benefit of creditors. Accordingly, the Debtors respectfully request that the Court waive the fourteen (14)-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## NO PRIOR REQUEST

37. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

## NOTICE

38. No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases. Notice of this Motion has been given to (i) the United States Trustee for the District of New Jersey; (ii) counsel to the Committees; (iii) the Counterparties to the Assumed Contracts and Leases and Rejected Contracts and Leases; and (iv) each person who filed a notice of appearance with the Court pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, the Debtors request that the Court enter the Order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: October 27, 2026

Respectfully submitted,

**DUANE MORRIS LLP**

By: /s/ *Drew S. McGehrin*
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
Email: msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

-and-

**DEBEVOISE & PLIMPTON LLP**

M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
Evan M. Raskin (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
emraskin@debevoise.com

*Counsel to the Debtors*
*and Debtors in Possession*