# **Exhibit A**

Revised Plan

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., e*t al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Joint Administration Requested) |

**MODIFIED JOINT CHAPTER 11 PLAN OF**
**UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION**

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com

*Co-Counsel to the Debtors and Debtors in Possession*

**DUANE MORRIS LLP**
Morris S. Bauer
Drew S. McGehrin
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

## TABLE OF CONTENTS

SECTION 1 DEFINED TERMS AND RULES OF INTERPRETATION ..... 1
1.1. Defined Terms ..... 1
1.2. Rules of Interpretation ..... 12
1.3. Computation of Time ..... 12
1.4. Controlling Document ..... 12
SECTION 2 ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, PROFESSIONAL FEE CLAIMS, AND STATUTORY FEES ..... 12
2.1. Administrative Claims and Priority Tax Claims ..... 12
2.2. Professional Fee Claims ..... 13
2.3. U.S. Trustee Fees ..... 14
SECTION 3 CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 14
3.1. Class 1: Secured Claims ..... 14
3.2. Class 2: Other Priority Claims ..... 15
3.3. Class 3: General Unsecured Claims ..... 15
3.4. Class 4: PI/WD Claims ..... 15
3.5. Class 5: Intercompany Claims ..... 16
3.6. Class 6: Interests ..... 16
3.7. Elimination of Vacant Classes ..... 16
3.8. Voting Classes; Presumed Acceptance by Non-Voting Classes ..... 17
3.9. Reservation of Rights Regarding Claims and Interests ..... 17
SECTION 4 MEANS FOR IMPLEMENTATION OF THE PLAN ..... 17
4.1. Restructuring Transactions ..... 17
4.2. The Minimum Trust Recovery ..... 17
4.3. Sources of Consideration for Plan Distributions ..... 17
4.4. Trustee ..... 18
4.5. Trust ..... 18
4.6. Corporate Action ..... 21
4.7. Cancellation of Existing Securities and Agreements ..... 22
4.8. Effectuating Documents and Further Transactions ..... 22
4.9. Additional Documents ..... 22
4.10. Section 1146 Exemption from Certain Taxes and Fees ..... 23
4.11. Authority to Act ..... 23

SECTION 5 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 23
5.1. General Treatment ..... 23
5.2. Rejection Damages Claims ..... 23
5.3. Reservation of Rights ..... 24
5.4. Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases ..... 24
5.5. Insurance Policies ..... 24
5.6. D&O Policies ..... 25
5.7. Non-Occurrence of Effective Date ..... 25
5.8. Employee Compensation and Benefits ..... 25
SECTION 6 PROVISIONS GOVERNING DISTRIBUTIONS ..... 25
6.1. Distributions to Holders of PI/WD Claims ..... 25
6.2. Distribution Record Date ..... 25
6.3. Disbursing Agent ..... 26
6.4. Compliance with Tax Requirements ..... 26
6.5. Date of Distributions ..... 26
6.6. Delivery of Distributions ..... 26
6.7. Manner of Payment ..... 27
6.8. Foreign Currency Exchange Rate ..... 27
6.9. Setoffs and Recoupments ..... 27
6.10. Minimum Distributions ..... 27
6.11. Allocation of Distributions Between Principal and Interest ..... 27
6.12. Distributions Free and Clear ..... 28
SECTION 7 PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS ..... 28
7.1. Allowance of Claims ..... 28
7.2. Claims Administration Responsibilities ..... 28
7.3. Estimation of Claims ..... 28
7.4. Adjustment to Claims Without Objection ..... 28
7.5. Time to File Objections to Claims ..... 29
7.6. Disputed Claims Reserve ..... 29
7.7. No Distributions Pending Allowance ..... 29
7.8. Distributions After Allowance ..... 29

SECTION 8 CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ....... 29
8.1. Conditions Precedent ....... 29
8.2. Waiver of Conditions ....... 30
SECTION 9 RELEASE, INJUNCTION, AND RELATED PROVISIONS ....... 31
9.1. Releases by the Debtors ....... 31
9.2. Releases by Holders of Claims and Interests ....... 32
9.3. Exculpation ....... 33
9.4. Injunction ....... 34
9.5. Insurance Entity Injunction ....... 35
9.6. Insurance Provision ....... 37
9.7. Compromise and Settlement of PI/WD Claims ....... 38
9.8. Claim Over ....... 38
9.9. Setoff and Subrogation ....... 38
9.10. No Discharge ....... 38
9.11. Release of Liens ....... 38
SECTION 10 RETENTION OF JURISDICTION ....... 39
10.1. Retention of Jurisdiction ....... 39
10.2. Term of Injunctions or Stays ....... 40
SECTION 11 MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....... 41
11.1. Modification of the Plan ....... 41
11.2. Other Amendments ....... 41
11.3. Effect of Confirmation on Modifications ....... 41
11.4. Revocation or Withdrawal of Plan ....... 41
SECTION 12 MISCELLANEOUS PROVISIONS ....... 41
12.1. Debtors' Operation from Confirmation Hearing Through Effective Date ....... 41
12.2. Immediate Binding Effect ....... 42
12.3. Substantial Consummation ....... 42
12.4. Reservation of Rights ....... 42
12.5. Successors and Assigns ....... 42
12.6. Preservation of Books and Records ....... 42
12.7. Notices ....... 42
12.8. Entire Agreement ....... 43
12.9. Nonseverability of Plan Provision Upon Confirmation ....... 43
12.10. Governing Law ....... 44

12.11. Dissolution of the Committee .......... 44
12.12. Closing of Chapter 11 Cases .......... 44

Each of Uniroyal Holding, Inc. and Great Hill Corporation (each, a "**Debtor**" and, collectively, the "**Debtors**") proposes the following joint prearranged chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein have the meanings set forth in section 1.1 below.

## SECTION 1
## DEFINED TERMS AND RULES OF INTERPRETATION

### 1.1. Defined Terms

1. "**Administrative Claim**" means any Claim for a cost or expense of administration of these Chapter 11 Cases under sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code including: (1) the actual and necessary costs and expenses incurred to preserve the Debtors' estates and operate the Debtors' business on or after the Petition Date; and (2) Allowed Professional Fee Claims.

2. "**Administrative Claims Bar Date**" means the deadline for filing requests for payment of Administrative Claims other than Professional Fee Claims and shall be the date 30 days after the Effective Date.

3. "**Ad Hoc Group**" means the law firms listed on Schedule 1 hereto that have formed an ad hoc group to advance the common interest of the law firms and their respective clients.

4. "**Ad Hoc Group Professional**" means (1) the law firms and other professionals retained by the Ad Hoc Group during these Chapter 11 Cases, pursuant to any executory contract between any Debtor and the Ad Hoc Group, whether or not such executory contract has been assumed prior to confirmation of the Plan; or (2) such law firms and professionals retained by the Ad Hoc Group and permitted to be reimbursed by the Debtors pursuant to a Court order under, *inter alia*, sections 363, 365 or 1123 of the Bankruptcy Code; in either case (1) or (2) the law firms and professionals of the Ad Hoc Group shall be treated as Professionals under the Plan.

5. "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code and includes any Entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with any Debtor. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

6. "**Allowed**" means, with respect to any Claim, (1) any Claim that is listed in the Schedules, as such Schedules may be amended in accordance with Bankruptcy Rule 1009, as liquidated, non-contingent, and undisputed for which no contrary Proof of Claim has been Filed, (2) a Claim expressly allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, (3) any timely Filed Claim to which no objection has been made in accordance with the terms of the Plan or such other applicable period fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (4) a Claim that is compromised, settled, or otherwise resolved in a manner consistent with the Trust Distribution Procedures, or (5) any Claim that is compromised, settled, or otherwise resolved or allowed pursuant to a Final Order. Any claim allowed solely for the

purpose of voting to accept or reject the Plan shall not be considered an Allowed Claim under the Plan.

7. "**Bankruptcy Code**" means title 11 of the United States Code, as applicable to these Chapter 11 Cases.

8. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over these Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code or if the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of such District Court having jurisdiction over these Chapter 11 Cases under section 151 of title 28 of the United States Code.

9. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any local bankruptcy rules of the Bankruptcy Court, in each case, as amended and as applicable to these Chapter 11 Cases.

10. "**Business Day**" means any day other than a Saturday, a Sunday, "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

11. "**Cash**" means legal tender of the United States of America.

12. "**Causes of Action**" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (1) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (2) claims pursuant to federal securities law; (3) the right to object to or otherwise contest Claims or Interests; (4) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code, including but not limited to sections 541 and 544 of the Bankruptcy Code; (5) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (6) state law fraudulent transfer, fraudulent conveyance, or voidable transfer claims.

13. "**Chapter 11 Cases**" means these chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

14. "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code, against a Debtor.

15. "**Class**" means any group of Claims or Interests classified under this Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

16. "**Common-Interest Communications**" means documents, information, or communications (whether written or oral) that are subject to the attorney-client privilege, attorney-work product doctrine, joint defense, or other privilege or protection from disclosure, and were shared between or among (i) the Debtors, on the one hand, and (ii) any third-party Entity or its representatives, including representatives of Insurance Companies or their counsel, that share a common legal interest with the Debtors, on the other hand, including documents that reflect litigation defense or strategy, case evaluations, discussions of settlements or resolutions, and communications regarding underlying litigation.

17. "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of these Chapter 11 Cases.

18. "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases. "Confirm," "Confirmed" and "Confirmability" shall have correlative meanings.

19. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

20. "**Committee**" means the Official Committee of Tort Claimants appointed on August 20, 2026, pursuant to section 1102(a)(1) of the Bankruptcy Code.

21. "**Cure**" means any payment of Cash or distribution of other property (as the parties may agree or the Bankruptcy Court may order) necessary to (1) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of such Debtor and (2) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

22. "**Data Transfer**" means the transfer to the Trust of the files, documents, and communications that are included within the definition of Data Transfer Documents to enable the Trust to have full access to and utilization of such documents to the extent set forth in this Plan.

23. "**Data Transfer Documents**" means (1) all of the Debtor's document production to any party in these Chapter 11 Cases, (2) the Debtors' document production(s) to the Ad Hoc Group prior to and during these Chapter 11 Cases, and (3) all reasonably identifiable documents, communications, and Privileged Information in the Debtor's possession, custody, or control that contain information relevant to the liquidation of non-PI/WD Claims, PI/WD Claims, and the Retained Causes of Action. If the Bankruptcy Court enters an order approving modification of the Debtors' retirement benefit plans, notwithstanding anything to the contrary herein, Data Transfer Documents shall not include any information regarding the beneficiaries of the Debtors' retirement plans.

24. "**D&O Policies**" means, collectively, each director and officer liability insurance policy of any Debtor, along with any other applicable insurance policies, including primary insurance, excess insurance, professional liability, or tail insurance policies providing coverage to or for the benefit of the Debtors' directors, officers, or other personnel.

25. "**Debtor**" has the meaning set forth in the introductory paragraph of this Plan.

26. "**Debtor Related Parties**" means, collectively, with respect to a Debtor, its Affiliates, and other legal representatives and its and their (1) present and former, in each case, shareholders, direct and indirect owners, partners, members, participants, managers, consultants, subsidiaries, divisions, management companies, managed accounts or funds, fund advisors, predecessors, directors, officers, attorneys, accountants, financial advisors, investment bankers, employees, agents, and other representatives, (2) present Affiliates, and (3) former Affiliates solely to the extent such affiliation terminated on or after January 1, 1991.

27. "**Direct PI/WD Claim**" means any PI/WD Claim that is not an Indirect PI/WD Claim, including a PI/WD Claim asserted by an individual alleged to hold a "personal injury tort or wrongful death claim" against the Debtors within the meaning of 28 U.S.C. § 157(b)(2)(B).

28. "**Disbursing Agent**" means, with respect to the PI/WD Claims, the Trustee and, with respect to any other Claims, the Plan Administrator, or, in either case, a Person or Entity selected by the Trustee or the Plan Administrator, as applicable, to make or facilitate the applicable Plan Distributions.

29. "**Disclosure Statement**" means the disclosure statement for this Plan, including all exhibits, schedules, supplements, modifications, amendments, and annexes thereto, each as supplemented, which was prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, and all other applicable law.

30. "**Disputed**" means any Claim against or Interest that is not yet Allowed or disallowed.

31. "**Disputed Claims Reserve**" means the reserve established and maintained by the Plan Administrator for Holders of Disputed Claims in Classes 1, 2, or 3 to the extent such Claims are subsequently Allowed and entitled to Plan Distributions.

32. "**Distribution Record Date**" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall, except as specifically set forth herein, be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

33. "**Effective Date**" means the first Business Day on which each condition precedent to the effectiveness of the Plan has been satisfied or waived and on which a notice indicating the effectiveness of the Plan has been filed on the docket of the Bankruptcy Court by the Debtors with the consent of the Committee.

34. "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

35. "**Estates**" means the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

36. "**Estate Causes of Action**" means Causes of Action owned, held, or capable of being asserted by, under, through or on behalf of any of the Debtors or their Estates, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of warranty, breach

of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, aiding and abetting breach of fiduciary duty, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtors or their Estates, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions under chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the foregoing, Estate Causes of Action shall include: (1) Causes of Action seeking to impose liability for a Claim against a Debtor on any non-Debtor based on the doctrine of successor liability or the doctrines of alter ego or veil piercing; (2) Causes of Action that seek to impose liability for a Claim against a Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of a Debtor and can be asserted by a Debtor under applicable law; and (3) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of a Debtor.

37. "**Exculpated Party**" means (1) each Debtor; (2) any Entity (other than an ordinary course professional) retained in the Debtors' chapter 11 cases pursuant to a final order in accordance with sections 327, 328, 330, 331, 363, or 1103 of the Bankruptcy Code; (3) each of the Debtors' current officers and directors, in each case solely in their respective capacities as such and solely to the extent they served in such capacity between the Petition Date and the Effective Date; (4) each member of the Committee, in each case solely in their capacity as such; and (5) each member of the Retirees Committee, in each case solely in their capacity as such.

38. "**Executory Contract**" means a contract to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

39. "**File**" or "**Filed**" means file, filed, or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

40. "**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, or stayed, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired, or as to which any appeal that has been taken or if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

41. "**General Unsecured Claim**" means any Claim that is not an: (1) Administrative Claim; (2) Professional Fee Claim; (3) Priority Tax Claim; (4) Secured Claim; (5) Other Priority Claim; (6) PI/WD Claim; or (7) Intercompany Claim.

42. "**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

43. "**Holder**" means an Entity holding a Claim against, or an Interest in, any of the Debtors, as the context requires.

44. "**Impaired**" has the meaning set forth in section 1124 of the Bankruptcy Code.

45. "**Indirect PI/WD Claim**" means any PI/WD Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable law of the relevant jurisdiction), and any other Claim against any of the Debtors that is derivative of a Direct PI/WD Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever, including for indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, agreement, or contract.

46. "**Insurance Company**" means an Entity that issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any Insurance Policy, and any third party administrator, parent, subsidiary, affiliate, successor, predecessor, or assign of any of the foregoing, solely in their capacity as such with respect to an Insurance Policy.

47. "**Insurance Coverage Actions**" means any and all pending coverage, arbitration, litigation, or other dispute between the Debtors and any Insurance Company with respect to an Insurance Policy involving any PI/WD Claim as of the Effective Date.

48. "**Insurance Coverage Defense**" means all defenses at law or in equity that any Insurance Company may have under applicable law to provide insurance coverage to or for any PI/WD Claim, except for (1) any defense that the Insurance Rights Transfer is invalid or unenforceable or otherwise breaches the terms of such coverage, (2) any defense that the drafting, proposing, confirmation, or consummation of this Plan or the discharge or release of the Debtors or any other party from any Claims or Causes of Action under this Plan operates to, or otherwise results in, the elimination of or the reduction in any obligation such Insurance Company may have under rights assigned to the Trust, including in providing coverage for liabilities assumed by the Trust that were or are liabilities of the Debtors, and (3) any defense that the settlement framework embodied in the Trust Distribution Procedures, to the extent followed by and used by the Trust, did not or will not result in Allowed Claim amounts that are fair, reasonable, and equitable under the circumstances of the Chapter 11 Cases and for the purpose of determining the Debtors' liability and obligation to pay such Allowed Claims.

49. "**Insurance Entity Injunction**" means the injunction described in Section 9.5 of this Plan.

50. "**Insurance Policies**" means any insurance policies, insurance contracts, binders, certificates, or reinsurance policies, whether currently known or unknown, issued to or that provide or may provide coverage (whether as the primary or additional insured or otherwise) at any time to the Debtors or any parent, subsidiary, affiliate, successor, predecessor, or assign of any of the foregoing, under which any of the foregoing have sought or reasonably believe they have grounds to seek coverage for any PI/WD Claim.

51. "**Insurance Proceeds**" means any proceeds recovered from an Insurance Company under, related to, or in connection with an Insurance Policy.

52. "**Insurance Rights**" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtors to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under, or attributable to, any and all Insurance Policies now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including (1) any Insurance Company's failure to provide coverage or otherwise pay under an Insurance Policy, (2) the refusal of any Insurance Company to compromise and settle any claim or provide defense to any claim, (3) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Claim, (4) any conduct by any Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law, or (5) any right to receive proceeds with respect to any Insurance Policy or a coverage action. For the avoidance of doubt, "Insurance Rights" include Insurance Proceeds.

53. "**Insurance Rights Transfer**" means the assignment and transfer to the Trust of (1) the Insurance Rights, (2) the Insurance Proceeds, and (3) all other rights, claims, benefits, or Causes of Action of the Debtors under or with respect to the Insurance Policies (but not the policies themselves).

54. "**Intercompany Claim**" means any Claim held by a Debtor against another Debtor.

55. "**Interest**" means equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interest in the Debtors that existed immediately before the Petition Date.

56. "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

57. "**Minimum Trust Recovery**" means (1) $31.5 million paid on the Effective Date and (2) transfer of the Debtors' rights and obligations under the Specified Settlement and any postpetition proceeds thereof to the Trust. For the avoidance of doubt, future proceeds from Trust Assets shall in no way reduce the Minimum Trust Recovery.

58. "**Non-Released Party**" means any Person or Entity that is not a Released Party.

59. "**Notice and Claims Agent**" means Omni Agent Solutions, Inc. in its capacity as noticing, claims, and solicitation agent for the Debtors.

60. "**Other Priority Claim**" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

61. "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

62. "**Petition Date**" means July 31, 2026, the date on which the Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

63. "**PI/WD Claim**" means any Claim, known or unknown, that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim (whether or not diagnosable or manifested before confirmation of the Plan or the close of the Chapter 11 Cases) related to asbestos asserted under any legal theory, and any derivative Claim arising therefrom. The term "PI/WD Claim" includes Direct PI/WD Claims and Indirect PI/WD Claims.

64. "**Plan**" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

65. "**Plan Administrator**" means (1) the Trustee or (2) such other Person or Entity designated by the Committee to administer the wind up of the Debtors. Notwithstanding anything to the contrary in the Plan, if the Plan Administrator is designated by the Committee, the compensation and expenses of such Person or Entity shall be paid by the Trust.

66. "**Plan Distribution**" means a payment or distribution to Holders of Allowed Claims or other eligible Entities under this Plan.

67. "**Plan Supplement**" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be Filed by the Debtors no later than seven days before the deadline to submit a ballot to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest, as such appendix may be modified prior to the Confirmation Date. The Plan Supplement shall include, among other things, (1) the identity and compensation of the Plan Administrator; (2) to the extent known, the identity of any insider that will be employed or retained by the Plan Administrator, and the nature of any compensation for such insider; (3) the Trust Agreement; (4) the identity and compensation of the Trustee; (5) the Trust Distribution Procedures; and (6) other documentation necessary to effectuate the Plan or that is contemplated by the Plan.

68. "**Priority Tax Claim**" means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) or 507(a)(8) of the Bankruptcy Code.

69. "**Privileged Information**" means any privileged information of the Debtors, including information protected or purportedly protected by the attorney-client privilege, attorney

work product doctrine, or other privilege or protection of immunity, including information shared pursuant to any joint defense, common interest, or confidentiality agreement among the Debtors and any Related Party, and among the Debtors and any party that is not a Released Party related to any Retained Cause of Action, and any Common-Interest Communications.

70. "**Professional**" means any professional Person or Entity employed in these Chapter 11 Cases by Bankruptcy Court order pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 or otherwise.

71. "**Professional Fee Claim**" means a Claim for compensation or reimbursement of expenses of a Professional pursuant to sections 327, 328, 330, 331, 363, 365, 503(b), 1103, or 1123 of the Bankruptcy Code in connection with these Chapter 11 Cases.

72. "**Professional Fee Claims Estimat**e" means (1) with respect to each Professional, the Professional's good faith estimate of the amount of such Professional's accrued unpaid Professional Fee Claims through the Effective Date, to be provided by each Professional in writing to the Debtors not less than five days prior to the Effective Date, and (2) with respect to all of the Professionals, collectively, the sum of all individual Professional Fee Claims Estimates.

73. "**Professional Fee Escrow Account**" means an escrow account to hold an amount of Cash equal to the Professional Fee Claims Estimate funded by the Debtors as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date solely for the purpose of paying all remaining Allowed Professional Fee Claims.

74. "**Proof of Claim**" means a proof of Claim Filed against any Debtor in these Chapter 11 Cases.

75. "**Related Party**" means with respect to any Entity, each of its Affiliates, and other legal representatives and its and their present and former, in each case, shareholders, direct and indirect owners, partners, members, participants, managers, consultants, Affiliates, subsidiaries, divisions, management companies, managed accounts or funds, fund advisors, predecessors, directors, officers, attorneys, accountants, financial advisors, investment bankers, employees, agents, and other representatives.

76. "**Release Opt-Out**" means the item set forth in each of the ballots and the materials sent to Holders of Claims and Interests not entitled to vote to accept or reject the Plan, which permits both those Holders of Claims and Interests entitled to vote on the Plan and those not entitled to vote on the Plan the right to opt out of the third-party release set forth in section 9.2 herein.

77. "**Released Party**" means, in each case solely in its capacity as such: each of (1) the Debtors, (2) the Debtor Related Parties, (3) each Holder of an Interest, (4) the Ad Hoc Group, (5) the Ad Hoc Group of Retirees, and (6) each Related Party of each party described in clauses (3) through (4). Notwithstanding anything to the contrary herein, the term "Released Party" shall not include (a) any successors in interest to (i) Uniroyal Power Transmission, Inc. (including The Gates Rubber Company, Tomkins plc, Onex Corporation, Blackstone, and Gates Industrial Corporation plc), (ii) Uniroyal Plastics Company, Inc. (including Polycast Technology Company and Uniroyal Technology Corp.), (iii) Uniroyal Chemical Company, Inc. (including Uniroyal

Chemical Acquisition Corporation, Avery, Inc., Chemtura Corporation, and Laxness AG), (iv) Michelin North America, Inc., (v) Uniroyal Textiles (including Dominion Textile, Polymer Group, Inc., Blackstone, Avintiv, Inc., Berry Global Group, Inc., and Amcor PLC), (vi) Uniroyal-Goodrich Tire Company, or (vii) Uniroyal Properties Company, Inc., or for the foregoing (a)(i)-(vii) any of their affiliates, or (b) Michelin and any of its past, present and future Affiliates, parent and subsidiary entities, related parties, successors, board members, executives, and shareholders solely in their capacity as such; *provided*, *however*, that the exclusions set forth in clauses (a) through (b) shall apply only to the extent such party is not listed on Schedule 2 of the Plan.

78. "**Releasing Parties**" means, collectively, and in each case solely in their respective capacities as such: (1) each Released Party; (2) each holder of a Claim in Class 1, Class 2, or Class 3 that has not filed an objection to the release contained in section 9.2 herein prior to the deadline to submit a ballot to accept or reject the Plan or timely submitted a Release Opt-Out; (3) each holder of a Claim in Class 4 that did not check the Release Opt-Out on its ballot; and (4) each Related Party of an Entity in clauses (2) through (3) solely to the extent that such Entity is legally entitled to bind such Related Party to the releases contained in section 9.2 herein.

79. "**Retained Causes of Action**" means any Estate Cause of Action that is not expressly subject to the releases and exculpations of the Plan. Retained Causes of Action include but are not limited to any Cause of Action of the Debtors against any person or entity listed in Schedule 3 of the Plan, solely to the extent such person is not a Released Party.

80. "**RSA**" means that certain Restructuring Support Agreement means that certain Restructuring Support Agreement, dated as of July 31, 2026, by and among the Debtors and the Supporting Counsel (as defined in the RSA), including all exhibits, schedules, and other attachments thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms.

81. "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

82. "**Secured Claim**" means any Claim to the extent reflected in the Schedules or a Proof of Claim as a Claim which is secured by a Lien on collateral, solely to the extent the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, solely to the extent of such permissible setoff.

83. "**Specified Settlement**" means each settlement agreement that Uniroyal Holding, Inc. is party to that is identified on Schedule 4 of the Plan and the proceeds thereof.

84. "**Trust**" means the settlement trust established under the Plan and the Trust Agreement, which shall (1) satisfy the applicable provisions of the Bankruptcy Code, (2) have the powers, duties and obligations set forth in the Plan and the Trust Agreement, and (3) assume all liability of the Debtors and their Estates for, and administer, all PI/WD Claims.

85. "**Trust Agreement**" means the Trust Agreement governing the Trust, dated as of the Effective Date, as may be amended or modified in accordance with the terms thereof, which shall be prepared by the Committee and be in form and substance reasonably acceptable to the Debtors.

86. "**Trust Assets**" means all assets, rights, benefits, and retained Causes of Action after satisfaction of all non-PI/WD Claims including: (1) the Minimum Trust Recovery, (2) the Retained Causes of Action, (3) the Insurance Rights and the Insurance Proceeds, and (4) the Data Transfer Documents.

87. "**Trust Distribution Procedures**" means the trust distribution procedures for the Trust, as may be amended or modified in accordance with the terms thereof, that will govern the claims submission, adjudication, and distribution processes for the Trust in a manner that is fair and equitable to holders of Allowed PI/WD Claims, which shall be prepared by the Committee and be in form and substance reasonably acceptable to the Debtors.

88. "**Trust Documents**" means collectively, (1) the Trust Agreement, (2) the Trust Distribution Procedures, (3) the Confirmation Order, and (4) any other agreements, instruments, and documents governing the establishment, administration, and operation of the Trust.

89. "**Trustee**" means the trustee selected by the Committee with the consent of the Debtor, which consent shall not be unreasonably withheld or delayed, to be the trustee of the Trust, which shall be identified in the Plan Supplement and subject to approval of the Bankruptcy Court, or such successor as may be appointed after the Effective Date in accordance with the Trust Agreement.

90. "**U.S. Trustee**" means the Office of the United States Trustee for Region 3.

91. "**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

92. "**Unexpired Lease**" means a lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

93. "**Unimpaired**" means, with respect to a Claim or Class of Claims, not Impaired.

94. "**Ad Hoc Group of Retirees**" means the individuals listed on Schedule 5 hereto that have formed an ad hoc group to advance the common interest of retirees.

95. "**Ad Hoc Group of Retirees' Professionals**" means Porzio, Bromberg & Newman, P.C. solely in their capacity as counsel to the Ad Hoc Group of Retirees.

96. "**Official Committees**" means the Committee and the Retiree Committee.

97. "**Retiree Committee**" means the Official Committee of Retirees appointed on August 27, 2026, pursuant to sections 1102(a)(1) and 1114 of the Bankruptcy Code.

### 1.2. Rules of Interpretation

Unless otherwise provided herein: (1) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this document as a whole and not to any particular section, subsection, or clause contained therein, unless the context requires otherwise; (2) any reference herein to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (3) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (4) any reference to any Entity as a Holder includes that Entity's successors and assigns; (5) any effectuating provisions regarding the Allowance of PI/WD Claims may be interpreted by the Trustee in such a manner that is consistent with the overall purpose and intent of this Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Person, and such interpretation shall control in all respects to the extent permitted by the Trust Agreement, the Trust Distribution Procedures and this Plan, as applicable; (6) the captions and headings in this Plan are for convenience of reference only and do not limit or otherwise affect the provisions hereof; and (7) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, release, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

### 1.3. Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) will apply.

### 1.4. Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement or the Plan and the Plan Supplement, the terms of the Plan shall control. In the event of an inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## SECTION 2
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, PROFESSIONAL FEE CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in section 3 herein.

### 2.1. Administrative Claims and Priority Tax Claims

Except with respect to Administrative Claims that are (1) Professional Fee Claims, (2) Claims for U.S. Trustee Fees, or (3) Governmental Claims that are subject to section 503(b)(1)(D) of the Bankruptcy Code, Holders of Administrative Claims must File with the Notice and Claims Agent and serve on the Plan Administrator requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the

Bankruptcy Rules, and the Local Rules, so as to be actually received on or before the Administrative Claim Bar Date.

To the extent not already paid as of the Effective Date and unless otherwise agreed to by the Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim, each Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim will receive payment in full, as soon as practicable after (1) the Effective Date but in no event later than 30 days after the Administrative Claim Bar Date, or (2) the date such Administrative Claim or Priority Tax Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, to be paid in Cash or pursuant to such other treatment as may be agreed upon by the Holder of such Claim and the Debtors or the Plan Administrator, as applicable.

Any Person or Entity who is required to timely file an Administrative Claim or Priority Tax Claim but fails to do so will not be treated as a Holder with respect to such Claim for Plan Distribution purposes in these Chapter 11 Cases. The notice of the Effective Date of the Plan that will be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) will set forth the Administrative Claim Bar Date and will constitute notice of such Administrative Claim Bar Date.

**2.2. Professional Fee Claims**

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served within 30 days after the Effective Date. The Bankruptcy Court will determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

The Professional Fee Escrow Account will be maintained in trust solely for the Professionals and for no other Entities until all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests will encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account. Funds held in the Professional Fee Escrow Account will not be considered property of the Debtors or their Estates.

Allowed Professional Fee Claims will be paid from the Professional Fee Escrow Account or Cash, as applicable, as and when such Claims are Allowed or otherwise approved for payment by entry of an order of the Bankruptcy Court. When all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account will promptly be transferred to the Trust.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 2.3. U.S. Trustee Fees

All U.S. Trustee Fees due and payable prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. On and after the Effective Date, the Debtors and the Plan Administrator shall be jointly and severally liable for paying any and all U.S. Trustee Fees in full in Cash when due and payable in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtors and the Plan Administrator shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (1) the U.S. Trustee Fees are Allowed; (2) the U.S. Trustee shall not be treated as providing any release under the Plan; and (3) the U.S. Trustee shall not be required to file any Proof of Claim or any other request(s) for payment with respect to U.S. Trustee Fees.

## SECTION 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (1) Impaired or Unimpaired by the Plan and (2) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to accept or reject the Plan. The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | PI/WD Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### 3.1. Class 1: Secured Claims

*Classification*: Class 1 for each Debtor consists of all Secured Claims against the applicable Debtor.

*Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of a Secured Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Secured Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; (2) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (3) such other treatment rendering such Claim Unimpaired.

*Voting*: Class 1 is Unimpaired, and Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

**3.2. Class 2: Other Priority Claims**

*Classification*: Class 2 for each Debtor consists of all Other Priority Claims against the applicable Debtor.

*Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired.

*Voting*: Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**3.3. Class 3: General Unsecured Claims**

*Classification*: Class 3 for each Debtor consists of all General Unsecured Claims against the applicable Debtor.

*Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Plan Administrator, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of each such Allowed General Unsecured Claim, each Holder thereof will receive: (1) payment in full in Cash from the Debtors if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired.

*Voting*: Class 3 is Unimpaired, and Holders of General Unsecured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 3 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

**3.4. Class 4: PI/WD Claims**

*Classification*: Class 4 for each Debtor consists of all PI/WD Claims against the applicable Debtor.

*Treatment*: On the Effective Date, all PI/WD Claims shall automatically and, without further act, deed, or order of the Bankruptcy Court, be incurred in full and assumed by the Trust. Subject to the Trust Agreement, each holder of an Allowed PI/WD Claim shall be entitled to receive distributions in accordance with the Trust Distribution Procedures. Holders of Allowed PI/WD Claims against the Debtors shall not receive any payment from the Trust unless and until such Claims are resolved in accordance with the Trust Distribution Procedures. The terms, provisions and procedures set forth in the Trust Distribution Procedures shall establish the method by which PI/WD Claims shall be submitted, processed, liquidated, reserved for, and, if applicable, paid.

*Voting*: Class 4 is Impaired, and Holders of PI/WD Claims are entitled to vote to accept or reject the Plan.

**3.5. Class 5: Intercompany Claims**

*Classification*: Class 5 for each Debtor consists of all Intercompany Claims against the applicable Debtor.

*Treatment*: On the Effective Date, all Intercompany Claims shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Claims shall not receive any Plan Distribution on account of such Claims.

*Voting*: Class 5 is Impaired, and Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

**3.6. Class 6: Interests**

*Classification*: Class 6 consists of all Interests.

*Treatment*: On the Effective Date, all Interests shall be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of such Interests shall not receive any Plan Distribution on account of such Interests.

*Voting*: Class 6 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 6 Interests are not entitled to vote to accept or reject the Plan.

**3.7. Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the confirmation hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 3.8. Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class shall be deemed to have accepted the Plan.

### 3.9. Reservation of Rights Regarding Claims and Interests.

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors', the Plan Administrator's or the Trust's respective rights and defenses with respect to any Claim or Interest, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

## SECTION 4
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 4.1. Restructuring Transactions

On the Effective Date, the Plan Administrator and Trustee shall enter into any transaction and take any reasonable actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable Entities agree, (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law, and (4) all other actions that the Plan Administrator and Trustee determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with this Plan or the Plan Supplement.

### 4.2. The Minimum Trust Recovery

On the Effective Date, the Debtors shall (1) contribute $31.5 million in Cash to the Trust and (2) transfer to the Trust the Debtors' rights and obligations under the Specified Settlement and any postpetition proceeds thereof. Future proceeds from Trust Assets shall in no way reduce the Minimum Trust Recovery. The Minimum Trust Recovery shall not be reduced, offset, or diminished by the payment of, *inter alia*, Administrative Claims, including Professional Fee Claims.

### 4.3. Sources of Consideration for Plan Distributions

Subject to the provisions of the Plan concerning the Professional Fee Escrow and the Disputed Claims Reserve, the Debtors, Plan Administrator, or the Trustee (as applicable), shall fund Plan Distributions with (1) Cash on Hand and (2) Trust Assets.

### 4.4. Trustee

1. **Powers and Duties of the Trustee**. The Trust shall be managed and administered by the Trustee and shall be governed by Delaware Law. The powers and duties of the Trustee shall include those powers, duties and responsibilities vested in the Trustee pursuant to the terms of the Trust Agreement.

2. **Trust Advisory Committee**. On the Effective Date and pursuant to the Trust Agreement, the Trust Advisory Committee (as defined in the Trust Agreement) shall be established. The Trust Advisory Committee shall have six members selected by the Committee in consultation with the Debtor, whose identities shall be set forth in the Plan Supplement. The Trust Advisory Committee shall serve in a fiduciary capacity in the administration of the Trust and shall have such rights and powers relating to the supervision of the Trust as set forth in the Trust Agreement, which rights and powers shall include consent and consultation rights over (1) any amendments to the Trust Distribution Procedures and the Trust Agreement, (2) any changes for the forms of acceptance and release under the Trust Distribution Procedures, (3) the prosecution or settlement of Trust Causes of Action, and (4) any loan or financing obtained by the Trust. The initial members of the Trust Advisory Committee shall be appointed pursuant to the Confirmation Order.

### 4.5. Trust

1. **Establishment of Trust**. On or before the Effective Date, the Trust Agreement shall be executed, and all other necessary steps shall be taken to create the Trust. On the Effective Date, the Trust shall be a successor of the Debtors' Estates governed by the Trust Agreement, and pursuant thereto the Plan shall comply with sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code. From and after the Effective Date, the Trust shall succeed to all rights, privileges, and powers of the Debtors and their Estates with respect to the applicable Trust Assets. The Trust shall automatically be substituted and will replace the Debtors and their Estates in all Causes of Action, whether or not such Causes of Action are pending in filed litigation.

2. **Purposes of Trust**. The purpose of the Trust shall be to (1) hold, manage, protect and monetize the Trust Assets and (2) administer, process and satisfy, to the extent of available assets, all PI/WD Claims, which for the avoidance of doubt shall be asserted exclusively against the Trust and satisfied by the Trust in accordance with the terms, provisions and procedures of the Trust Distribution Procedures. The Trustee shall have the exclusive power and authority to, among other things, in accordance with the Trust Documents (a) hold, manage, protect and monetize Trust Assets, (b) commence, prosecute, transfer, settle, compromise, withdraw, or abandon all Retained Causes of Action and Insurance Rights, and (c) perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Trust and carry out the provisions of the Trust Agreement. The Trust shall be administered and implemented by the Trustee, subject to the consent and consultation rights of the Trust Advisory Committee, in accordance with the Trust Documents.

3. **Vesting of Trust Assets**. As of the Effective Date, the Trust Assets shall vest in the Trust free and clear of all Liens, Claims, encumbrances, charges or other interests to the extent permitted by section 1141 of the Bankruptcy Code. Notwithstanding anything herein to the

contrary, the transfer of the Trust Assets to the Trust shall not diminish, and shall fully preserve, any rights and defenses the Debtors would have if such assets had been retained by the Debtors. The Trustee on behalf of the Trust shall retain and may exclusively enforce the Trust Causes of Action vested, transferred, or assigned to such entity under the Plan. The Trustee on behalf of the Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, *provided*, *however*, that the exercise of such right, authority, and discretion by the Trustee shall be subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents.

4. **Insurance Rights Transfer**. On the Effective Date, the Debtors shall contribute, transfer, and assign to the Trust all of their rights, title, and interest in connection with (1) the Insurance Rights, (2) the Insurance Proceeds, and (3) all other rights, claims, benefits, or Causes of Action they have with respect to the Insurance Policies (but not the policies themselves).

5. **Certain Tax Matters of Trust**. The Trust is intended to qualify, and shall be reported, as a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code for U.S. federal income tax purposes and shall be treated consistently for state and local purposes, to the extent applicable. The Trustee and all holders of beneficial interests in the Trust shall report consistently with the foregoing. The Trustee shall be the "administrator" of the Trust as such term is used in Treasury Regulation Section 1.468B-2(k)(3) and shall be responsible for filing all tax returns of the Trust. The Trust shall be responsible for the payment, out of the assets of the Trust, of any taxes imposed on the Trust or the Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Trust Agreement. The Trustee may request an expedited determination of taxes on the Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust.

6. **Privileged Information of Trust**. On the Effective Date, any attorney-client privilege, work-product privilege, common-interest communications protection or privilege granted by joint defense, common interest, or other privilege or immunity of the Debtors relating, in whole or in part, to the PI/WD Claims or the Trust Assets shall be irrevocably transferred to and vested in the Trust. The Trust shall have the same rights as the Debtors in Privileged Information relating to the PI/WD Claims and the Trust Assets. Prior to or on the Effective Date, the Debtors shall cause the Data Transfer to occur.

7. **Trust Distribution Procedures**. On and after the Effective Date, the Trustee shall implement the Trust Distribution Procedures in accordance with the terms of the Trust Agreement. On and after the Effective Date, the Trustee shall have the authority to administer, amend, supplement, or modify the applicable Trust Distribution Procedures in accordance with the terms of this Plan and the Trust Documents, subject to the consent and consultation rights of the Trust Advisory Committee as provided in the Trust Documents. The Trust Distribution Procedures shall be binding on all Holders of PI/WD Claims. Allowed Claims under the Trust Distribution Procedures shall be enforceable solely against the Trust. The Allowed amount of any PI/WD Claim shall be the amount determined pursuant to this Plan and the Trust Distribution Procedures.

Allowed PI/WD Claims under the Trust Distribution Procedures shall be legally enforceable against the Trust. The amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Agreement, as determined or as actually paid by the Trust are not, as such, the equivalent of any Holder's Allowed Claim amount. The Allowance of Claims under the Trust Agreement, including the Trust Distribution Procedures, shall not determine, and shall not be used to determine, in any respect the liability of any Released Party for any Claim or Cause of Action.

8. **Institution and Maintenance of Legal and Other Proceedings**. As of the Effective Date, the Trustee shall be empowered on behalf of the Trust to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust, including the Retained Causes of Action in accordance with the Trust Documents. Without limiting the foregoing, on and after the Effective Date, the Trustee shall be empowered on behalf of the Trust to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the Debtors' name to the extent deemed necessary or appropriate by the Trustee. Furthermore, without limiting the foregoing, the Trustee shall be empowered to maintain, administer, preserve, or pursue Insurance Rights.

9. **Preservation of Retained Causes of Action**. On the Effective Date, the Retained Causes of Action shall vest in the Trust in accordance with the Trust Documents free and clear of all Claims, Liens, encumbrances, and other interests. On and after the Effective Date, the Trustee shall have discretion to pursue and dispose of the Retained Causes of Action. No Person or Entity may rely on the absence of a specific reference in this Plan or Disclosure Statement as to any Cause of Action as any indication that the Debtors, and on and after the Effective Date, the Trustee, as applicable, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation. Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Trustee, shall retain and shall have, through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person or Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Trustee will not pursue any and all available Causes of Action. Unless and until any such Causes of Action against any Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or assigned, or settled under this Plan or a Final Order, the Trustee expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

10. **Trust Discovery**. The Trustee is authorized on behalf of the Trust pursuant to Bankruptcy Rule 2004 or other applicable discovery rules to seek discovery necessary to satisfy its obligations under this Plan and the Trust Documents. The Trustee shall take whatever steps are

necessary to enforce such discovery obligations pursuant to Bankruptcy Rules 2004 and 9016, Rule 45 of the Federal Rules of Civil Procedure, other applicable court resolution processes, bankruptcy law, and non-bankruptcy law. Nothing herein shall abridge or affect the rights of the Trustee on behalf of the Trust to take discovery in any proceeding or litigation brought by the Trustee on behalf of the Trust.

11. **Litigation Fees**. The Trust shall pay any Released Party that is called as a witness, deponent, consultant, expert, or otherwise in any litigation that is related to a Debtor (including discovery): (1) a reasonable and customary per diem payment for a lawyer of commensurate experience and (2) after provision of a budget, reimbursement of out-of-pocket legal fees for a lawyer of such Released Party's choosing.

12. **Indemnification**. The Trust shall hold in escrow a segregated account of $2 million funded by the Debtors (the "**D&O Contingency Fund**"), which fund shall exist to indemnify each of the Debtors' current and former directors and officers against any asbestos-related claim asserted against them, which indemnification shall not exceed $2 million of total indemnification payments in the aggregate. The D&O Contingency Fund shall be invested in accordance with the Trust's investment guidelines and the interest income of the D&O Contingency Fund shall be paid to the D&O Contingency Fund. The D&O Contingency Fund shall be administered by the Trustee and the costs thereof shall be paid from the D&O Contingency Fund. On the later of (1) the date on which the Asbestos Trust stops accepting PI/WD Claims and (2) the fifth anniversary of the Effective Date, the balance of the D&O Contingency Fund shall be released to the Trust and the D&O Contingency Fund shall be permanently closed.

13. The Trust shall indemnify each of the Debtors' current and former directors and officers against any asbestos-related claim asserted against them, not to exceed $2 million of total indemnification payments in the aggregate.

### 4.6. Corporate Action

On the Effective Date and following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes. The Plan Administrator shall submit with the appropriate governmental agencies a copy of the Confirmation Order, which shall suffice for purposes of obtaining a Certificate of Dissolution from the New Jersey Secretary of State and the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Plan Administrator and the Trustee, as applicable, shall be authorized to act on behalf of the Estates, provided that the Plan Administrator and the Trustee shall have no duties other than as expressly set forth in the Trust Agreement, this Plan, or the Confirmation Order.

On and after the Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, officers, or other governing

body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by this Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, officers, directors, sole director, or governing body of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors. The foregoing shall not limit the authority of the Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer, including pursuant to any transition services agreement or other agreement entered into on or after the Effective Date. Following the Effective Date, the Plan Administrator is given full power of attorney and has the authority to execute or endorse documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation, including but not limited to, the filing of final tax returns and the dissolution of the Debtors.

**4.7. Cancellation of Existing Securities and Agreements**

Except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator. The holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

**4.8. Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Debtors, the Plan Administrator, and the Trustee (as applicable) shall be authorized to execute, deliver, File, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtors, the Plan Administrator, the Trustee, all Holders of Claims receiving Plan Distributions, and all other parties in interest shall, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**4.9. Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator (as applicable), the Trustee, all Holders of Claims or Interests receiving Plan Distributions, and all other parties in interest, shall prepare, execute, and deliver any agreements or documents and take

any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**4.10. Section 1146 Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Trust Assets to the Trust.

**4.11. Authority to Act**

Prior to, on, or after the Effective Date, all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

## SECTION 5
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1. General Treatment**

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court will be deemed rejected in accordance with sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to a Bankruptcy Court order, and payment of any Cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**5.2. Rejection Damages Claims**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim

shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within 30 days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable bar date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Section 3.3 herein.

**5.3. Reservation of Rights**

Neither the exclusion or inclusion of any contract or lease in the Schedules or in any Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator (as applicable) may elect within 30 calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan by filing a notice of such election on the docket of these Chapter 11 Cases.

**5.4. Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Trustee, or Plan Administrator (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Trustee, and the Plan Administrator (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

**5.5. Insurance Policies**

Notwithstanding anything to the contrary herein, each of the Insurance Policies and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtors prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any such Insurance Policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in this Plan to the contrary, this Plan will constitute a motion to assume such Insurance Policy and assign the same to the Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect

to any Insurance Policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible.

**5.6. D&O Policies**

Each D&O Policy to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be automatically assumed or assumed and assigned by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code. Coverage for defense and indemnity under the D&O Policies shall remain available to all individuals within the definition of "Insured" in the applicable D&O Policy. In addition, after the Effective Date, all officers, directors, agents, or employees of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Policies (including any "tail" policy) in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the relevant D&O Policy.

**5.7. Non-Occurrence of Effective Date**

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**5.8. Employee Compensation and Benefits**

Except to the extent previously ordered by the Bankruptcy Court in these Chapter 11 Cases, all employment policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

## SECTION 6
## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1. Distributions to Holders of PI/WD Claims**

All PI/WD Claims shall be administered by the Trust pursuant to and in accordance with this Plan and the Trust Distribution Procedures.

**6.2. Distribution Record Date**

On the Distribution Record Date, the claims register shall be closed and any party responsible for making Plan Distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

### 6.3. Disbursing Agent

Except as otherwise provided herein, all Plan Distributions shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all Plan Distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### 6.4. Compliance with Tax Requirements

In connection with the Plan and all distributions hereunder, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, requiring a Holder of a Claim or Interest to submit appropriate tax and withholding certifications. Notwithstanding any other provision of the Plan: (1) each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (2) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan if, after 90 days from the date of transmission of a written request to the holder of an Allowed Claim, the Plan Administrator does not receive a valid, completed IRS form from such Holder of an Allowed Claim.

### 6.5. Date of Distributions

Plan Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any Plan Distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.6. Delivery of Distributions

Subject to applicable Bankruptcy Rules, all Plan Distributions shall be made by the Disbursing Agent, who shall transmit such Plan Distributions to the applicable Holders of Allowed Claims or their designees.

If any Plan Distribution to a Holder of an Allowed Claim (1) is returned as undeliverable for lack of a current address or otherwise; or (2) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within 90 calendar days after the mailing of such Plan Distribution, the Plan Administrator or Trustee, as applicable, shall be authorized to cancel such

Plan Distribution and file with the Bankruptcy Court the name and last known address of the Holder of undeliverable Plan Distribution or uncashed Plan Distribution, as applicable. If, after the passage of 30 calendar days after such Filing, the payment or Plan Distribution on the Allowed Claim still cannot be made, then (1) the Holder of such Claim shall cease to be entitled to the undeliverable Plan Distribution or uncashed Plan Distribution, which will be transferred to the Trust; and (2) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further Plan Distributions.

### 6.7. Manner of Payment

Except as specifically provided herein, at the option of the Disbursing Agent, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 6.8. Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### 6.9. Setoffs and Recoupments

The applicable Disbursing Agent may, but shall not be required to, apply, set off against or recoup against any Allowed Claim and the Plan Distributions on account of such Allowed Claim (before any Plan Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors, the Estates, or the Trust may have against the Holder of such Allowed Claim without the need for Bankruptcy Court approval; *provided*, that (1) no less than 14 calendar days notice is provided to the applicable Holder of the Claim prior to setoff or recoupment or such Holder consents, and (2) neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Plan Administrator, or the Trust of any such claim the Debtors, their Estates, or the Trust may have against the Holder of such Claim.

### 6.10. Minimum Distributions

No payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan. If the Cash available for the final Plan Distribution is less than the cost to distribute such funds, such funds will be transferred to the Trust.

### 6.11. Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Plan Distribution includes both principal and accrued but unpaid prepetition interest, such Plan Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### 6.12. Distributions Free and Clear

Except as otherwise provided in this Plan, any Plan Distribution shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

## SECTION 7
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### 7.1. Allowance of Claims

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### 7.2. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### 7.3. Estimation of Claims

The Debtors or the Plan Administrator (as applicable) may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the claims register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at $0.00 unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Plan Distributions), and the Debtors or the Plan Administrator (as applicable) may elect to pursue any supplemental proceedings to object to any Plan Distribution on account of such Claim.

### 7.4. Adjustment to Claims Without Objection

Any Claim that has been paid or satisfied or any Claim that has been amended or superseded, may be adjusted or expunged on the claims register by the Debtors or the Plan

Administrator (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket in the Bankruptcy Court of such adjustment or expungement.

### 7.5. Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the applicable deadline to file such objection (as such date may be extended upon presentment of an order to the Bankruptcy Court by the Plan Administrator).

### 7.6. Disputed Claims Reserve

The Debtor shall prepare a reasonable and good faith estimate, which shall be reasonably acceptable to the Committee, of the projected amount necessary to satisfy Disputed Claims no later than five Business Days prior to the anticipated Effective Date. This estimate shall not be considered or deemed an admission or limitation with respect to the amount of any Disputed Claim, and the Holder of any such Disputed Claims shall not be bound to any extent by such estimate.

Upon the Effective Date, the Plan Administrator shall establish and maintain the Disputed Claims Reserve, which shall hold the amount consistent with the estimate made in accordance with this section 7.6. Upon the satisfaction or resolution of all Disputed Claims, the Plan Administrator will transfer any amounts remaining in the Disputed Claims Reserve to the Trust.

### 7.7. No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no Plan Distribution shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until the Disputed Claim becomes an Allowed Claim.

### 7.8. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a Plan Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Plan Distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final Plan Distribution is made on account of such Claim.

## SECTION 8
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### 8.1. Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1. The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Plan and Confirmation Order shall be in form and substance reasonably acceptable to each of the Debtors and the Committee.

3. The Confirmation Order shall have been entered and shall be in full force and effect.

4. There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the material transactions contemplated by this Plan from being consummated.

5. The Professional Fee Escrow shall have been fully funded pursuant to the terms of this Plan.

6. All actions, documents and agreements necessary to implement the Plan shall have been effected, executed or tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7. The Data Transfer shall have occurred.

8. The Plan Administrator shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

9. The Trustee shall have been appointed and prepared to assume its rights and responsibilities under the Plan or Confirmation Order.

10. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

11. The Trust shall have received the Trust Assets, including but not limited to, the Minimum Trust Recovery.

12. The Debtors must be reasonably satisfied with the Release Opt-Outs exercised including that each Party electing to exercise a Release Opt-Out is doing so in a manner consistent with any obligations it owes under the terms of the RSA.

**8.2. Waiver of Conditions**

Unless otherwise specifically provided for in this Plan, the conditions set forth in section 8.1 herein may be waived in whole or in part with the consent of each of the Debtors and the Committee without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

## SECTION 9
## RELEASE, INJUNCTION, AND RELATED PROVISIONS

### 9.1. Releases by the Debtors

PURSUANT TO SECTION 1123(b) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AS OF THE EFFECTIVE DATE, THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II)THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.1 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN. ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE RELEASES DESCRIBED IN THIS SECTION 9.1 BY THE DEBTORS, THEIR ESTATES, AND ANY AND ALL OTHER ENTITIES WHO MAY PURPORT TO ASSERT ANY CAUSE OF ACTION BY, THROUGH, FOR, OR BECAUSE OF THE FOREGOING ENTITIES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THIS PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH RELEASE DESCRIBED IN THIS SECTION 9.1 IS: (1) IN EXCHANGE FOR THE GOOD

AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, INCLUDING, WITHOUT LIMITATION, THE RELEASED PARTIES' CONTRIBUTIONS TO IMPLEMENTING THE PLAN; (2) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTORS; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; (6) A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT; AND (7) A BAR TO THE DEBTORS OR THEIR ESTATES, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELATED THERETO, OF ANY KIND, AGAINST ANY OF THE RELEASED PARTIES OR THEIR PROPERTY.

**9.2. Releases by Holders of Claims and Interests**

AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE), INCLUDING: (1) ANY DERIVATIVE CLAIMS ASSERTED OR THAT MAY BE ASSERTED ON BEHALF OF THE DEBTORS OR THEIR ESTATES, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS OR THE CONDUCT OF THEIR BUSINESS (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION UP UNTIL THE EFFECTIVE DATE); (2) THE FORMULATION, PREPARATION, DISSEMINATION, OR NEGOTIATION OF: (A) THE PLAN; (B) THE DISCLOSURE STATEMENT; OR (C) ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH: (I) THE PLAN; (II) THE DISCLOSURE STATEMENT; OR (III) THESE CHAPTER 11 CASES; (3) THE PURSUIT OF CONFIRMATION OF THE PLAN; (4) THE PURSUIT OF CONSUMMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT; AND (6) ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE (IN EACH CASE, WHETHER PREPETITION OR POSTPETITION) RELATED OR RELATING TO THE FOREGOING. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH IN THIS SECTION 9.2 SHALL NOT RELEASE (1) ANY RELEASED PARTY FROM CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED BY A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; OR (2) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN OR ANY

DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

EACH RELEASING PARTY DEEMED TO GRANT THE RELEASES DESCRIBED IN THIS SECTION 9.2 SHALL BE DEEMED TO HAVE GRANTED SUCH RELEASES NOTWITHSTANDING THAT SUCH PERSON OR ENTITY MAY HEREAFTER DISCOVER FACTS IN ADDITION TO, OR DIFFERENT FROM, THOSE WHICH SUCH PERSON OR ENTITY NOW KNOWS OR BELIEVES TO BE TRUE, AND WITHOUT REGARD TO THE SUBSEQUENT DISCOVERY OR EXISTENCE OF SUCH DIFFERENT OR ADDITIONAL FACTS, AND SUCH PERSON OR ENTITY EXPRESSLY WAIVES ANY AND ALL RIGHTS THAT SUCH PERSON OR ENTITY MAY HAVE UNDER ANY STATUTE OR COMMON LAW PRINCIPLE, INCLUDING, WITHOUT LIMITATION, SECTION 1542 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT SUCH SECTION IS APPLICABLE, WHICH WOULD LIMIT THE EFFECT OF SUCH RELEASES TO THOSE CLAIMS OR CAUSES OF ACTION ACTUALLY KNOWN OR SUSPECTED TO EXIST ON THE EFFECTIVE DATE. SECTION 1542 OF THE CALIFORNIA CIVIL CODE GENERALLY PROVIDES AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH A DEBTOR OR RELEASED PARTY."

**9.3. Exculpation**

AS OF THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS EXCULPATED FROM, ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST, OR ANY OTHER PARTY IN INTEREST FROM THE PETITION DATE TO THE EFFECTIVE DATE, FOR (1) ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THESE CHAPTER 11 CASES; (2) THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR CONSUMMATION OF THE DISCLOSURE STATEMENT OR THE PLAN; (3) THE FILING OF THESE CHAPTER 11 CASES; (4) THE PURSUIT OF CONFIRMATION OF THE PLAN; (5) THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING PROVIDING ANY LEGAL OPINION REQUESTED BY ANY PERSON OR ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT, OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY EXCULPATED PARTY ON THE PLAN, THE CONFIRMATION ORDER, THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER AGREEMENT (WHETHER OR NOT SUCH ISSUANCE OR DISTRIBUTION OCCURS FOLLOWING THE EFFECTIVE DATE); (6) NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING; AND (7) THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED HEREUNDER. THE EXCULPATED PARTIES SHALL BE DEEMED TO HAVE PARTICIPATED IN GOOD FAITH IN CONNECTION WITH THE ABOVE AND ENTITLED TO THE PROTECTION OF SECTION 1125(E) OF THE BANKRUPTCY CODE. EACH EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE

ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.

**9.4. Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO THE PLAN; (3) ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN; OR (4) ARE OTHERWISE SATISFIED, STAYED, RELEASED, OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF, OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES, INCLUDING BEING PERMANENTLY ENJOINED AND PRECLUDED FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE PLAN ADMINISTRATOR, THE TRUST, THE RELEASED PARTIES, OR EXCULPATED PARTIES (AS APPLICABLE): (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING ANY OTHER INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

UPON THE BANKRUPTCY COURT'S ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, OR PRINCIPALS, SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THIS PLAN BY THE DEBTORS, THE PLAN ADMINISTRATOR, THE TRUST, AND THEIR RESPECTIVE AFFILIATES, EMPLOYEES, ADVISORS, OFFICERS AND DIRECTORS, OR AGENTS.

NO PARTY MAY COMMENCE, CONTINUE, AMEND, OR OTHERWISE PURSUE, JOIN IN, OR OTHERWISE SUPPORT ANY OTHER PARTY OR ENTITY COMMENCING, CONTINUING, AMENDING, OR PURSUING, A CAUSE OF ACTION OF ANY KIND AGAINST THE DEBTORS, THE EXCULPATED PARTIES, OR THE RELEASED PARTIES THAT RELATES TO, OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, A CAUSE OF ACTION SUBJECT TO SECTION 9.1, SECTION 9.2, OR SECTION 9.3 HEREIN WITHOUT FIRST (1) REQUESTING A DETERMINATION FROM THE BANKRUPTCY COURT, AFTER NOTICE AND A HEARING, THAT SUCH CAUSE OF ACTION IS NOT A CLAIM THAT THE DEBTORS RELEASED UNDER THIS PLAN, WHICH REQUEST MUST ATTACH THE COMPLAINT OR PETITION PROPOSED TO BE FILED BY THE REQUESTING PARTY AND (2) OBTAINING FROM THE BANKRUPTCY COURT SPECIFIC AUTHORIZATION FOR SUCH PARTY TO BRING SUCH CAUSE OF ACTION AGAINST ANY SUCH DEBTOR, EXCULPATED PARTY, OR RELEASED PARTY. TO THE EXTENT THAT ANY PARTY THAT OBTAINS SUCH DETERMINATION AND AUTHORIZATION AND SUBSEQUENTLY WISHES TO AMEND THE AUTHORIZED COMPLAINT OR PETITION TO ADD ANY CAUSES OF ACTION NOT EXPLICITLY INCLUDED IN THE AUTHORIZED COMPLAINT OR PETITION, SUCH PARTY MUST OBTAIN AUTHORIZATION FROM THE BANKRUPTCY COURT BEFORE FILING ANY SUCH AMENDMENT IN THE COURT WHERE SUCH COMPLAINT OR PETITION IS PENDING. THE BANKRUPTCY COURT WILL HAVE SOLE AND EXCLUSIVE JURISDICTION TO DETERMINE WHETHER A CAUSE OF ACTION CONSTITUTES A DIRECT OR DERIVATIVE CLAIM, AND, ONLY TO THE EXTENT LEGALLY PERMISSIBLE, WILL HAVE JURISDICTION TO ADJUDICATE THE UNDERLYING CAUSE OF ACTION.

### 9.5. Insurance Entity Injunction

ALL PERSONS THAT HAVE HELD OR ASSERTED, THAT HOLD OR ASSERT, OR THAT MAY IN THE FUTURE HOLD OR ASSERT ANY CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY BASED UPON, ATTRIBUTABLE TO, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH ANY INSURANCE POLICY, WHENEVER AND WHEREVER ARISING OR ASSERTED, WHETHER IN THE UNITED STATES OF AMERICA OR ANYWHERE ELSE IN THE WORLD, WHETHER SOUNDING IN TORT, CONTRACT, WARRANTY, STATUTE OR ANY OTHER THEORY OF LAW, EQUITY OR ADMIRALTY, SHALL BE STAYED, RESTRAINED, AND ENJOINED FROM TAKING ANY ACTION FOR THE PURPOSE OF DIRECTLY OR INDIRECTLY COLLECTING,

RECOVERING, OR RECEIVING PAYMENTS, SATISFACTION, OR RECOVERY WITH RESPECT TO ANY SUCH CAUSE OF ACTION, INCLUDING:

(1) COMMENCING, CONDUCTING, OR CONTINUING, IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION, OR OTHER PROCEEDING OF ANY KIND (INCLUDING A JUDICIAL, ARBITRATION, ADMINISTRATIVE, OR OTHER PROCEEDING) IN ANY FORUM WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION (INCLUDING, FOR THE AVOIDANCE OF DOUBT, DIRECTLY PURSUING ANY SUIT, ACTION OR OTHER PROCEEDING WITH RESPECT TO ANY SUCH CAUSE OF ACTION, DEMAND, OR CAUSE OF ACTION AGAINST ANY INSURANCE COMPANY);

(2) ENFORCING, LEVYING, ATTACHING, COLLECTING, OR OTHERWISE RECOVERING, BY ANY MEANS OR IN ANY MANNER, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT AWARD, DECREE, OR OTHER ORDER AGAINST ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION;

(3) CREATING, PERFECTING OR ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIEN OR ENCUMBRANCE AGAINST ANY INSURANCE COMPANY, OR THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION; AND

(4) EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF SUBROGATION, INDEMNITY, OR CONTRIBUTION OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION OF ANY INSURANCE COMPANY, OR AGAINST THE PROPERTY OF ANY INSURANCE COMPANY, WITH RESPECT TO ANY SUCH CAUSE OF ACTION;

*PROVIDED*, *HOWEVER*, THAT (A) THIS INJUNCTION SHALL NOT IMPAIR IN ANY WAY ANY ACTIONS BROUGHT BY THE TRUST AGAINST ANY INSURANCE COMPANY, (B) THE TRUST SHALL HAVE THE AUTHORITY AT ANY TIME TO TERMINATE, OR REDUCE OR LIMIT THE SCOPE OF, THE INJUNCTION WITH RESPECT TO ANY INSURANCE COMPANY, IN ACCORDANCE WITH THE TRUST DOCUMENTS, UPON EXPRESS WRITTEN NOTICE TO SUCH INSURANCE COMPANY, AND (C) THIS INJUNCTION IS NOT ISSUED FOR THE BENEFIT OF ANY INSURANCE COMPANY, AND NO INSURANCE COMPANY IS A THIRD-PARTY BENEFICIARY OF THIS INJUNCTION.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS PLAN, THIS INJUNCTION SHALL NOT ENJOIN:

(1) THE RIGHTS OF ANY INSURED PARTY UNDER ANY COVERAGE OF ANY D&O POLICY;

(2) THE RIGHTS OF ANY SUCCESSOR IN INTEREST TO (1) UNIROYAL PROPERTIES, INC., (2) UNIROYAL TIRE COMPANY, INC., (3) UNIROYAL PLASTICS COMPANY, INC., (4) UNIROYAL POWER TRANSMISSION, INC., OR (5) UNIROYAL CHEMICAL COMPANY, INC. UNDER ANY COVERAGE OF ANY INSURANCE POLICY THAT WAS THE SUBJECT OF LITIGATION IN *UNIROYAL, INC. V. AMERICAN REINSURANCE CO., ET. AL.*;

(3) THE RIGHTS OF ANY PERSON TO THE TREATMENT ACCORDED THEM UNDER THIS PLAN, AS APPLICABLE, INCLUDING THE RIGHTS OF HOLDERS OF PI/WD CLAIMS TO ASSERT SUCH CLAIMS, AS APPLICABLE, IN ACCORDANCE WITH THE TRUST DISTRIBUTION PROCEDURES;

(4) THE RIGHTS OF THE TRUST TO PROSECUTE ANY ACTION BASED ON OR ARISING FROM INSURANCE POLICIES;

(5) THE RIGHTS OF THE TRUST TO ASSERT ANY CAUSE OF ACTION, DEBT, OBLIGATION, OR LIABILITY FOR PAYMENT AGAINST ANY INSURANCE COMPANY BASED ON OR ARISING FROM THE INSURANCE POLICIES;

(6) THE RIGHTS OF ANY INSURANCE COMPANY TO ASSERT ANY CAUSE OF ACTION, DEBT, OBLIGATION, OR LIABILITY FOR PAYMENT AGAINST ANY OTHER INSURANCE COMPANY; OR

(7) THE CAUSE OF ACTION FOR REINSURANCE UNDER REINSURANCE CONTRACTS OR CAUSE OF ACTION UNDER RETROCESSIONAL CONTRACTS AMONG AN INSURANCE COMPANY AND ANY OTHER INSURANCE COMPANY.

**9.6. Insurance Provision**

Nothing in this Plan, the Trust Documents, the Confirmation Order, any finding of fact or conclusion of law with respect to the Confirmation of this Plan, any order or opinion entered on appeal from the Confirmation Order, or any valuation of Claims (either individually or in the aggregate) in the Chapter 11 Cases shall, with respect to any Insurance Company (1) constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, other determination establishing the coverage obligation of any such Insurance Company for any Claim, or (2) limit the right of any such Insurance Company to assert any Insurance Coverage Defense; *provided*, *however*, that with, respect to (1) and (2), (a) the transfer of rights to the Trust pursuant to the Insurance Rights Transfer shall be valid and enforceable, and (b) the discharge or release of any party from any Claims or Causes of Action under this Plan shall not affect the liability of any such

Insurance Company. The establishment of any claim in litigation against the Trust in its capacity as the Debtors' representative shall be deemed the establishment of a claim against the Debtors for the purpose of triggering any available Insurance Policy. Neither this Plan nor the Trust Documents shall in any way reduce, limit, discharge or release any Insurance Company.

### 9.7. Compromise and Settlement of PI/WD Claims

The treatment provided for PI/WD Claims under the Plan and the Trust Documents incorporate and reflect a proposed settlement framework of such Claims against the Debtors.

### 9.8. Claim Over

It is the intent of the Released Parties that: (1) the contributions made by the Debtors to the Trust should be the sole payments the Debtors and the Debtor Related Parties shall make to address the PI/WD Claims; (2) a claim by the Holder of a PI/WD Claim against any Non-Released Party should not result in any additional payment by any Released Party; and (3) the compromise and settlement effectuated through the Plan meets the requirements of the Uniform Contribution Among Tortfeasors Act and any similar state or federal law or doctrine that reduces or discharges a released party's liability to any other parties. The Plan and Confirmation Order will specify that the Plan is a good faith settlement that bars any Cause of Action by a Non-Released Party against any Released Party for contribution, for indemnification, or otherwise seeking to recover any amounts paid by or awarded against that Non-Released Party and paid or awarded to any Holder of a PI/WD Claim by way of settlement, judgment, or otherwise on any claim that would be released were such Non-Released Party a Released Party (a "**Claim Over**") to the extent that a good-faith settlement (or released thereunder) has such an effect under applicable law. Nothing herein prevents the Trust or a Releasing Party from pursing litigation against a Non-Released Party and collecting the full amount of any judgment.

### 9.9. Setoff and Subrogation

In no event shall any Holder of a Claim or Interest be entitled to set off or subrogate any Claim that such Holder has against a Debtor or the Trust against any Cause of Action of a Debtor, or the Trust, as applicable, unless such Holder Filed a motion before the Confirmation Date requesting the right to perform such setoff or subrogation or indicated in an Allowed Proof of Claim Filed before the Confirmation Date that such Holders asserts, has or intends to preserve, such right of setoff, or subrogation.

### 9.10. No Discharge

Because the Debtors are liquidating, confirmation of the Plan does not discharge the Debtors pursuant to section 1141 of the Bankruptcy Code.

### 9.11. Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Plan Distributions, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the

right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Plan Administrator that are necessary or desirable to record or effectuate the cancellation or extinguishment of such Liens or security interests, including the making of any applicable filings or recordings, and the Plan Administrator shall be entitled to make any such filings or recordings on such Holder's behalf.

## SECTION 10
## RETENTION OF JURISDICTION

### 10.1. Retention of Jurisdiction

Notwithstanding confirmation of this Plan or occurrence of the Effective Date, and except as otherwise provided by applicable law, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1. To hear and determine applications for the assumption or rejection of Executory Contracts or Unexpired Leases and any disputes over Cure amounts resulting therefrom;

2. To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on, or commenced after, entry of the Confirmation Order;

3. To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided in this Plan and the Confirmation Order;

4. To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Claim;

5. To enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated;

6. To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

7. To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof

8. To hear and determine all Professional Fee Claims;

9. To resolve disputes concerning any reserves with respect to any Disputed Claim or the administration thereof;

10. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing, or related to, any of the foregoing;

11. To take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, exculpation, or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following the occurrence of the Effective Date;

12. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order;

13. To hear and determine any other matters related to these Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

14. To resolve any disputes concerning whether a Person had sufficient notice of these Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with these Chapter 11 Cases, any bar date established in these Chapter 11 Cases, or any deadline for responding or objecting to a Cure amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

15. To recover all assets of the Debtors and property of their Estates, wherever located;

16. To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code; and

17. To enter a Final Decree closing these Chapter 11 Cases.

**10.2. Term of Injunctions or Stays**

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Debtors' Estates arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Debtors' Estates; and (2) all other injunctions and stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (1) the date that these Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (2) the date that these Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

## SECTION 11
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 11.1. Modification of the Plan

Subject to the limitations contained in the Plan, in accordance with the Bankruptcy Code and the Bankruptcy Rules, the Debtors may (1) amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code or (2) after the entry of the Confirmation Order, institute proceedings in the Bankruptcy Court, to amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 11.2. Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 11.3. Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.4. Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke and withdraw this Plan at any time prior to the Confirmation Date in the exercise of their fiduciary duties or, if the Debtors are for any reason unable to consummate this Plan after the Confirmation Date, at any time up to the Effective Date. If the Debtors revoke or withdraw this Plan, (1) nothing contained in this Plan will be deemed to constitute a waiver or release of any claims by or against a Debtor or to prejudice in any manner the rights of a Debtor or any Entity in any further proceeding involving a Debtor and (2) the result will be the same as if the Confirmation Order were not entered, this Plan was not filed and the Effective Date did not occur.

## SECTION 12
## MISCELLANEOUS PROVISIONS

### 12.1. Debtors' Operation from Confirmation Hearing Through Effective Date

During the period from the confirmation hearing through and until the Effective Date, the Debtors shall continue to operate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### 12.2. Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Plan Administrator, the Trust, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### 12.3. Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### 12.4. Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### 12.5. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Entity.

### 12.6. Preservation of Books and Records

On the Effective Date, the Debtors shall provide the Plan Administrator and the Trustee with timely access to all of the books and records of the Debtors in the Debtors' possession as of the Petition Date and the Effective Date. The Debtors shall also instruct any third parties, or professionals possessing such books and records (including computer generated or computer maintained books, records, and data) to permit access to such books and records as may be reasonably requested by the Plan Administrator or Trustee, and each such party shall be directed not to dispose of or destroy any such books and records until such time as authorized in writing by the Plan Administrator and Trustee or further order of the Bankruptcy Court.

### 12.7. Notices

In order for all notices, requests, and demands to or upon the Debtors or the Plan Administrator, as the case may be, to be effective such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| Uniroyal Holding, Inc.<br>70 Great Hill Road<br>Naugatuck, CT 06770<br>Attention: Robert V. D'Angelo, Jr., President and General Counsel<br>Email: rdangelo@unihold.net | Debevoise & Plimpton LLP<br>66 Hudson Boulevard<br>New York, NY 10001<br>Attention: Samuel A. Newman<br>Michael C. Godbe<br>Email: snewman@debevoise.com<br>mcgodbe@debevoise.com<br><br>-and-<br><br>Duane Morris LLP<br>200 Campus Drive, Suite 300<br>Florham Park, NJ 07932-1007<br>Attention: Morris S. Bauer<br>Email: msbauer@duanemorris.com |
| **Plan Administrator** | **Counsel to the Plan Administrator** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that Filed such renewed requests.

### 12.8. Entire Agreement

On the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 12.9. Nonseverability of Plan Provision Upon Confirmation

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not have the power to alter and interpret such term or provision to make it valid or enforceable; *provided*, that at the request of the Debtors, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with

the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable); and (3) nonseverable and mutually dependent.

**12.10. Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**12.11. Dissolution of the Official Committees**

On the Effective Date, each of the Official Committees will dissolve. Upon the dissolution of the Official Committees, each Official Committee and its respective Professionals shall cease to have any duty, obligation, or role arising from, or related to, these Chapter 11 Cases and shall be released and discharged from all rights and duties from, or related to, these Chapter 11 Cases. Notwithstanding the foregoing, either of the Official Committees may, at its option and without taking any action or seeking or receiving any approval, continue to serve and function after the Effective Date for the purposes of participating in any (1) appeal of any order entered in these Chapter 11 Cases, including the Confirmation Order, (2) applications for compensation or expense reimbursements of Professionals and any hearing thereon, or (3) adversary proceeding pending on the Effective Date to which the Committee was a participant. To the extent that an Official Committee determines to continue to serve and function after the Effective Date pursuant to the preceding sentence, it will dissolve upon the completion of its participation in the matters described in clause (1) through (3), as applicable. Effective as of the dissolution of the Committee, the Trust will succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Committee and shall enjoy the work product protections that were applicable or available to the Committee before its dissolution.

**12.12. Closing of Chapter 11 Cases**

After the full administration of these Chapter 11 Cases, the Plan Administrator shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close these Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 30, 2026

Respectfully submitted,

By: *Robert V. D'Angelo Jr.*
Name: Robert V. D'Angelo, Jr.
Title: President, General Counsel, Uniroyal Holding, Inc.
Vice President and Secretary, Great Hill Corporation

**Schedule 1**

- Weitz & Luxenberg, P.C.
- Early, Lucarelli, Sweeney & Meisenkothen LLC
- Cooney & Conway LLP
- Law Offices of Peter T. Nicholl

**Schedule 2**

- Alan R. Elton
- Alan W. Stoner
- Albert S. Tavenor
- Alexander R. Castaldi
- Alfred F. Ingulli
- Alfred Weber
- Anthony A. Valentino
- Associated Investors
- Beverly J. Carrara, Earl A. Carrara, Jr. and Debra J. Glassbrenner as Trustees of the Earl A. Carrara Revocable Trust Agreement Dated January 16, 2007
- Booth & Co.
- Bost & Co.
- Champlain Associates
- Charlene Fairleigh
- Charles W. Fairleigh
- Charlotte Spalter and Jeffrey S. Spalter Trustees t/u/a Lloyd Spalter Trust dtd 7/23/1987 - Family Trust
- Cinanelle, L.L.C.
- Cudd & Co.
- David J. O'Boyle
- David W. Schaub
- Dengel & Co. as Nominee for Andrew Salzman Trust
- Dengel & Co. as Nominee for Victoria Salzman Trust
- Donald A. Ware
- Donald R. Tieken
- Doreen Salzman
- DPI Investments, L.P.
- Dr. Robert Miller
- Drexel Burnham Lambert, Inc.
- Earl Carrara
- Elizabeth A. Goodwin
- Elizabeth B. Stoner
- Ellen T. McCahill
- Emseg & Co.
- Far West Financial Services Corporation
- Finfund Management
- First Union Investments
- Foothill Managers Limited
- Frank J. Longto
- George Leidig

- Great Hill Corporation
- Guarantee Security Life Insurance Company
- Hare & Co.
- Investment Limited Partnership
- Ira J. Krakower
- Jacquith & Co.
- James Wylie
- Joanne Ciriello
- John I. O'Boyle
- John R. Graham
- John Y. Koren
- Joseph L. Rice, III
- Joseph P. Flannery
- Joseph P. Flannery Revocable Trust
- Julia A. Donovan
- Julie S. Nowak
- Kim Hall
- Kingsley & Co.
- Lambda Fund Management, Inc.
- Lambda III, L.P.
- Lawrence D. Lenihan
- Leon D. Black
- Liberty Service Corporation
- Linda R. Schaub, Trustee under the David W. Schaub Living Trust dated April 2, 2009
- Linda R. Schaub, Trustee under the Schaub Marital Trust dated October 19, 2023
- Lloyd Spalter
- LMAR Partners
- Lydia M. Santos
- Mark C. Sanford
- Martin H. Dubilier
- Mary L. O'Neil
- Michael J. O'Reilly
- MIG & Co.
- Monitor Equity
- Murdoch & Co.
- Nancy Hulsart
- Norman F. McLeod
- Richard Hoben
- Richard Sheramy
- Robert Alvine
- Robert Burgholzer
- Robert E. D'Avino

- Robert J. Mazaika
- Robert V. D'Angelo, Jr.
- Ronald H. Hawkins
- Ruth Weber
- Seidco
- Sharon Lynn Miller
- Sheldon R. Salzman
- State of Florida Department of Insurance as Receiver of Guarantee Security Life Insurance Company ("GSL")
- Stephen A. Stoner
- Stewart N. Smith and Marilyn M. Smith as Trustees of the S. Smith Nominee Trust
- Stewart Smith
- Teresa M. O'Boyle
- The Clayton & Dubilier Private Equity Fund Ltd. Partnership
- The David S. Salzman Trust
- The DBL Liquidating Trust And/Or Miracle Corp.
- The Foothill Group, Inc.
- The Margaret M. Longto Revocable Trust Dated April 11, 2012
- The Stewart N. Smith Revocable Trust dated 8/10/92
- Thomas W. Clark
- Translimited
- Uniroyal Holding, Inc.
- Wachovia Bank
- Walter J. Cook
- Westinghouse Credit Corp.
- William B. Blackburn
- William H. Henrich
- William J. Palmer

## Schedule 3

- Amcor PLC
- Avery, Inc.
- Avintiv, Inc.
- Berry Global Group, Inc.
- Blackstone, Inc.
- Chemtura Corporation
- Dominion Textile, Inc.
- Gates Corporation
- Gates Industrial Corporation Ltd
- Gates Industrial Corporation plc
- Government of Cuba and entities or state-owned enterprises trafficking in confiscated property
- Laxness Aktiengesellschaft
- Michelin North America, Inc.
- Onex Corporation
- Polycast Technology Corporation
- Polymer Group, Inc
- The Gates Rubber Company
- Tire Holding 1, Inc
- Tire Holding 2, Inc
- Tire Holding 3, Inc
- Tomkins plc
- Uniroyal Chemical Acquisition Corporation
- Uniroyal-Goodrich Tire Company
- Uniroyal Technology Corporation

## Schedule 4

- [redacted]

**Schedule 5**

- Virginia Ware
- Beverly Carrara
- Linda Fernandes
- Paul Violette
- Nancy Hulsart
- Patricia Evans
- Walter Gramberg