**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| UNIROYAL HOLDING, INC., *et al.*,[1] | Case No. 26-18668 (MBK) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ROBERT V. D'ANGELO, JR. IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION**

I, Robert V. D'Angelo, Jr., pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct:

1. I am the President, General Counsel, and a member of the board of directors of Uniroyal Holding, Inc., a New Jersey corporation ("**Uniroyal**") and the Vice President, Secretary, and a member of the board of directors of Great Hill Corporation, a Delaware corporation, ("**Great Hill**" and, together with Uniroyal, the "**Debtors**"). Uniroyal is the direct corporate parent of Great Hill. The Debtors have their sole office in Naugatuck, Connecticut.

2. As set forth in the declaration I provided at the outset of these chapter 11 cases,[2] I have served as President and Secretary of Uniroyal since October 29, 2019. Prior to that, I served as Vice President and Secretary from April 22, 1999 to the date of my election as President. I have also served as General Counsel of Uniroyal since April 22, 1999. Prior to that, I served as Associate General Counsel from August 1, 1996 to the date of my election as General Counsel. I have been

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

[2] *Declaration of Robert V. D'Angelo, Jr. in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 6] (the "**First Day Declaration**").

a member of the Uniroyal board of directors since October 16, 2016. I was also employed as an attorney with Uniroyal and Uniroyal, Inc. from September 1984 to February 1987. I am familiar with the Debtors' day-to-day functions, books and records, financial affairs, the circumstances leading to the commencement of these chapter 11 cases, and the development and negotiation of the restructuring support agreement attached to the First Day Declaration as Exhibit A (the "**RSA**") and the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 18] (as amended, modified, or supplemented from time to time, the "**Plan**").[3] I am knowledgeable and generally familiar with the contents of the RSA, the Plan, and various other material documents related thereto. I participated in the negotiation and preparation of these documents including providing supervision and direction to Debtors' counsel in connection with such efforts.

3. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees of the Debtors working directly with me or under my supervision, my experience with the Debtors, and my discussions with Alvarez & Marsal North America, LLC, financial advisor to the Debtors, and Debevoise & Plimpton LLP, counsel to the Debtors. If called upon to testify, I would and could testify competently to the facts set forth in this Declaration on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

## Key Plan Terms

4. As addressed in my First Day Declaration, the Plan is a consensual plan arising from the RSA that was heavily negotiated among the Debtors and their key stakeholders over the months leading up to these chapter 11 cases. The negotiation of the terms of the Plan and RSA and

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

entry into the RSA were overseen and unanimously authorized by the Debtors' board of directors, including William H. Henrich, an independent, disinterested director.

5. The Plan provides for (a) releases of claims held by the Debtors and the Estates (the "**Debtor Releases**"), (b) a customary exculpation of the Exculpated Parties with respect to acts or omissions in connection with, arising out of, or relating to the Debtors' chapter 11 cases, the Disclosure Statement, or the Plan (the "**Exculpation Provisions**"), (c) an injunction, including a gatekeeper provision, implementing the Debtor Releases and Exculpation Provisions (the "**Plan Injunction**"), and (d) an injunction, subject to limited express carve-outs, enjoining Entities other than the Trust from taking actions against any Insurance Company in connection with any Insurance Policy (the "**Insurance Injunction**" and, collectively, with the Debtor Releases, the Exculpation Provisions, and the Plan Injunction, the "**Key Plan Terms**").

6. Inclusion of the Key Plan Terms in the Plan was an integral part of the negotiation of the RSA and the Plan. During negotiations, it became apparent that inclusion of the Key Plan Terms in the Plan was necessary to secure the requisite support needed to execute the RSA. It is my opinion that, absent inclusion of the Key Plan Terms in the Plan, the Debtors would not have been able to secure the participation of or compromises from the parties necessary for formation of the Plan or the settlement with the beneficiaries of the Debtors' retirement benefit program, which provided the Debtors with releases from their obligations thereunder and the beneficiaries thereof with materially increased benefits. Accordingly, had the Key Plan Terms not been included in the Plan, I believe it would have significantly diminished (and potentially eliminated) the Debtors' chances of securing all of the valuable benefits provided by the Plan

**The Donations**

7. In the proposed order confirming the Plan (the "**Confirmation Order**"), which is being filed substantially contemporaneously with this Declaration, the Debtors are seeking authority, subject to the consent of the Trustee, to donate materials of historic importance to a museum, educational or research institution, library, or other organization engaged in the preservation of historical materials that may be interested in the Debtors' historic files.

8. The Debtors have historical records and materials relating to Uniroyal, Inc., f/k/a United States Rubber Company, dating back to the late 1800s, including minute books, annual reports, training materials, trademarks, and stock certificates, which document Uniroyal, Inc.'s historical importance. The Debtors have been in touch with multiple reputable museums and libraries, which have indicated interest in acquiring such materials for preservation, display, and study.

9. The Debtors have been in regular communication with their stakeholders, including the Committee, regarding the potential donations. The Debtors have received widespread support for the prospective donations in light of the historical significance of these materials, and the Committee has actively cooperated with the Debtors to ensure such donations can be made while preserving the Trust's access to such information.

10. I believe that, given the Company's historical significance and national and international contributions the donations are in the public interest and do not prejudice any parties in interest.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 30th day of October, 2026.

By: Robert V. D'Angelo Jr.
Name: Robert V. D'Angelo, Jr.
Title: President, General Counsel, Uniroyal Holding, Inc.
Vice President and Secretary, Great Hill Corporation