**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
Evan M. Raskin (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
emraskin@debevoise.com

*Co-Counsel to the Debtors and Debtors in Possession*

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| UNIROYAL HOLDING, INC., *et al.*,[1] | Case No. 26-18668 (MBK) |
| Debtors. | (Jointly Administered) |

# DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

I. General Background of Chapter 11 Cases and Development of Plan ........ 2

II. Plan Solicitation and Tabulation ........ 3

ARGUMENT ........ 5

I. The Plan Satisfies Section 1129 of the Bankruptcy Code and Should be Approved ........ 5

A. The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ........ 6

1. The Plan Complies with the Classification Requirements of Section 1122 of the Bankruptcy Code ........ 6

2. The Plan Complies with Section 1123(a) of the Bankruptcy Code ........ 8

3. The Plan Complies with Section 1123(b) of the Bankruptcy Code ........ 10

B. The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code ........ 11

1. The Plan Complies with Section 1125 of the Bankruptcy Code ........ 11

2. The Plan Complies with Section 1126 of the Bankruptcy Code ........ 12

C. The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code (Good Faith) ........ 13

D. The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code (Payments to Professionals) ........ 15

E. The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code (Identities of New Officers, Directors, and Trustees) ........ 16

F. Section 1129(a)(6) of the Bankruptcy Code Does Not Apply to the Plan (Rate Changes) ........ 16

G. The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code (Best Interest Test) ........ 17

H. The Plan Complies with Section 1129(a)(8) of the Bankruptcy Code ........ 18

I. The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code (Administrative and Priority Claims)........ 18

J. The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code (Impaired Accepting Class) ........ 19

K. The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code (Feasibility)........ 20

L. The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code (Statutory Fees)........ 21

M. Sections 1129(a)(13)-(16) of the Bankruptcy Code Do Not Apply to the Plan........ 21

N. The Plan Satisfies the "Cram Down" Provisions of Section 1129(b) of the Bankruptcy Code........ 23

1. The Plan Does Not Discriminate Unfairly........ 23

2. The Plan is Fair and Equitable with Respect to the Impaired Rejecting Classes ........ 24

O. The Plan Satisfies Sections 1129(c)-(e) of the Bankruptcy Code........ 25

II. The Plan's Releases, Exculpation Provision, and Injunction Provisions Are Appropriate and Comply with the Bankruptcy Code ........ 26

A. The Debtor Releases Are Appropriate........ 26

B. The Third-Party Release Is Consensual and Appropriate and Complies with the Bankruptcy Code ........ 28

C. The Exculpation Provision Is Narrowly Tailored and Customary and Should Be Approved........ 33

D. The Injunction Provisions Are Appropriate and Should Be Approved ........ 34

III. The Remaining U.S. Trustee Objections Should Be Overruled or Recognized as Moot, and the Plan Should Be Confirmed........ 37

A. The Plan Appropriately Protects Future Holders of PI/WD Claims........ 37

B. The "Deemed Acceptance" Provision Objection is Moot........ 38

C. Revision of the Statutory Fee Provision........ 38

IV. Cause Exists to Waive the Stay of Confirmation Order........ 39

CONCLUSION ........................................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 710 Long Ridge Rd. Operating Co., II, LLC*,
No. 13-13653 (DHS), 2014 WL 886433 (Bankr. D.N.J. Mar. 5, 2014) ... 27

*In re ABB Lummus Global Inc.*,
No. 06-10401 (JKF) (Bankr. D. Del. June 29, 2006) ... 36

*In re Abbotts Dairies of Pa., Inc.*,
788 F.2d 143 (3d Cir. 1986) ... 13

*In re AIO US, Inc.*,
No. 24-11836 (CTG) (Bankr. D. Del. Sept. 24, 2025) ... 36

*In re AOV Indus., Inc.*,
792 F.2d 1140 (D.C. Cir. 1986) ... 7

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) ... 14, 17, 24

*In re Bed Bath & Beyond Inc.*,
No. 23-13359 (VFP) (Bankr. D.N.J. Sept. 14, 2023) ... 28, 30, 34, 35

*In re BlockFi Inc.*,
Case No. 22-19361 (MBK) ... 28, 30, 34, 35

*In re Borders Group, Inc.*,
No. 11-10614 (MG) (Bankr. S.D.N.Y. Dec. 21, 2011) ... 9

*In re Boy Scouts of Am. & Del. BSA, LLC*,
No. 20-10343 (LSS) (Bankr. D. Del. Sept. 8, 2022) ... 8

*In re Careismatic Brands, LLC,*
Case No. 24-10561 (VFP) (Bankr. D.N.J. May 31, 2024) ... 30

*In re Congoleum Corp.*,
362 B.R. 167 (Bankr. D.N.J. 2007) ... 26

*Crown Vill. Farm, LLC v. ARL, L.L.C. (In re Crown Vill. Farm, LLC)*,
415 B.R. 86 (Bankr. D. Del. 2009) ... 14

*In re Cyxtera Techs., Inc.*,
No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023) ... 28, 30, 34, 35

*In re DirectBuy Home Improvement, Inc.*,
Case No. 23-19159 (SLM) (Bankr. D.N.J. Apr. 19, 2024) ........ 30

*In re Del Monte Foods Corp. II Inc.*,
No. 25-16984 (MBK) (Bankr. D.N.J. May 22, 2026) ........ 28, 29, 30, 34, 35

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ........ 6

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024) ........ 29

*In re Greate Bay Hotel & Casino, Inc.*,
251 B.R. 213 (Bankr. D.N.J. 2000) ........ 24

*Hargreaves v. Nuverra Env't Sols., Inc. (In re Nuverra Env't Sols., Inc.)*,
590 B.R. 75 (D. Del. 2018), aff'd, 834 F. App'x 729 (3d Cir. 2021), *as amended* (Feb. 2, 2021) ........ 24

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ........ 26, 27

*In re Invitae Corp.*,
No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024) ........ 28, 30, 34, 35

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993) ........ 7

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986) ........ 24

*In re Lernout & Hauspie Speech Prods., N.V.*,
301 B.R. 651 (Bankr. D. Del. 2003) ........ 23, 24

*Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*,
329 B.R. 491 (D.N.J. 2005), *aff'd*, 241 Fed. App'x. 1 (3d Cir. 2007) ........ 15, 17

*In re Madison Hotel Assocs.*,
749 F.2d 410 (7th Cir. 1984) ........ 13

*In re Maremont Corp.*,
No. 19-10118 (KJC) (Bankr. D. Del. May 17, 2019) ........ 8

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994) ........ 27

*In re New Rite Aid, LLC, et al.*,
No. 25-14861 (MBK) (Bankr. D.N.J. Nov. 26, 2025) ........ 28, 29, 30, 34, 35

*In re Nickels Midway Pier, LLC*,
No. 03-49462, 2010 WL 2034542 (Bankr. D.N.J. May 21, 2010) ........................................ 20

*In re Ocean View Motel, LLC*,
No. 20-21165 (ABA), 2022 WL 243213 (Bankr. D.N.J. Jan. 25, 2022) ............................... 23

*Off. Comm. of Unsecured Creditors v. Michelson (In re Michelson)*,
141 B.R. 715 (Bankr. E.D. Cal. 1992) ........................................................................ 11

*In re Paddock Enters., LLC*,
Case No. 20-10028 (LSS) (Bankr. D. Del. May 26, 2022) ........................................... 8

*In re Powin, LLC*,
No. 25-16137 (MBK) (Bankr. D.N.J. Dec. 1, 2025) ............................................ 29, 30, 31

*In re Premier Int'l Holdings, Inc.*,
2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ........................................................ 5

*In re Presperse Corp.*,
No. 24-18921 (MBK) (Bankr. D.N.J. July 29, 2025) ...................................................... 8

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000) ................................................................................ 11, 13

*In re Robertshaw US Holding Corp.,*
662 B.R. 300 (Bankr. S.D. Tex. 2024) .......................................................................... 20

*In re Sam Ash Music Corp.,*
No. 24-14727 (SLM) (Bankr. D.N.J. Aug. 15, 2024) ............................................... 29, 30

*In re S B Bldg. Assocs. Ltd. P'ship,*
621 B.R. 330 (Bankr. D.N.J. 2020) ........................................................................ 20, 26

*SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
960 F.2d 285 (2d Cir. 1992) ........................................................................................ 35

*In re TCI 2 Holdings, LLC,*
428 B.R. 117 (Bankr. D.N.J. 2010) ................................................................ 5, 13, 15, 26

*In re Thrasio Holdings, Inc.*,
No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024) ......................................... 28, 30, 34, 35

*In re Tribune Co.*,
476 B.R. 843 (Bankr. D. Del. 2012) ................................................................................ 7

*In re WeWork Inc.,*
Case No. 23-19865 (JKS) (Bankr. D.N.J. May 30, 2024) ............................................... 30



DM3\23142569.1

*In re Tribune Media Co.*,
799 F.3d 272 (3d Cir. 2015)........................................................................................ 7

*U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion Inc.)*,
426 B.R. 114 (Bankr. D. Del. 2010) ........................................................................ 26

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ........................................................................ 34

*In re Wiersma*,
227 F. App'x 603 (9th Cir. 2007) ............................................................................ 5

*In re W.R. Grace & Co.*,
729 F.3d 311 (3d Cir. 2013)........................................................................................ 7

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012)..................................................................................... 13, 14

*In re Young Broad. Inc.*,
430 B.R. 99 (Bankr. S.D.N.Y. 2010)........................................................................ 23

*In re Zenith Elecs. Corp.*,
241 B.R. 92 (Bankr. D. Del. 1999) .......................................................................... 27

**Statutes**

11 U.S.C. § 101(51D)(B)............................................................................................ 25

11 U.S.C. § 524(g) ................................................................................................ 29, 37

11 U.S.C. § 507.......................................................................................................... 21

11 U.S.C. § 507(a) ................................................................................................ 18, 21

11 U.S.C. § 507(a)(2)................................................................................................. 21

11 U.S.C. § 1114........................................................................................................ 21

11 U.S.C. § 1141........................................................................................................ 31

11 U.S.C. § 1122.................................................................................................. 6, 7, 8

11 U.S.C. § 1122(a) .................................................................................................. 6, 7

11 U.S.C. § 1123(a) ...................................................................................................... 8

11 U.S.C. § 1123(a)(1)............................................................................................... 7, 8

11 U.S.C. § 1123(a)(2)..................................................................................................... 9

11 U.S.C. § 1123(a)(3) .... 9

11 U.S.C. § 1123(a)(4) .... 9

11 U.S.C. § 1123(a)(5) .... 9

11 U.S.C. § 1123(a)(6) .... 9

11 U.S.C. § 1123(a)(7) .... 10

11 U.S.C. § 1123(a)(8) .... 8

11 U.S.C. § 1123(b) .... 10, 11, 26

11 U.S.C. § 1123(b)(1) .... 10

11 U.S.C. § 1123(b)(2) .... 10

11 U.S.C. § 1123(b)(3) .... 26

11 U.S.C. § 1123(b)(3)(A) .... 10, 26

11 U.S.C. § 1123(b)(3)(B) .... 10

11 U.S.C. § 1123(b)(5) .... 10

11 U.S.C. § 1123(b)(6) .... 10

11 U.S.C. § 1125 .... 11, 12, 13

11 U.S.C. § 1126 .... 11, 12, 13

11 U.S.C. § 1126(a) .... 12

11 U.S.C. § 1126(c) .... 12, 13

11 U.S.C. § 1126(f) .... 12

11 U.S.C. § 1126(g) .... 12

11 U.S.C. § 1129 .... 2, 5, 6

11 U.S.C. § 1129(a)(1) .... 6

11 U.S.C. § 1129(a)(2) .... 11, 13

11 U.S.C. § 1129(a)(3) .... 13, 15

11 U.S.C. § 1129(a)(4) .... 15

11 U.S.C. § 1129(a)(5) ........ 16

11 U.S.C. § 1129(a)(6) ........ 6, 16

11 U.S.C. § 1129(a)(7) ........ 17, 18

11 U.S.C. § 1129(a)(7)(A) ........ 17

11 U.S.C. § 1129(a)(8) ........ 18, 23

11 U.S.C. § 1129(a)(9) ........ 18, 19

11 U.S.C. § 1129(a)(9)(A) ........ 19

11 U.S.C. § 1129(a)(9)(B) ........ 19

11 U.S.C. § 1129(a)(10) ........ 19, 20

11 U.S.C. § 1129(a)(11) ........ 20, 21

11 U.S.C. § 1129(a)(12) ........ 21

11 U.S.C. § 1129(a)(13) ........ 6, 21, 22

11 U.S.C. § 1129(a)(14) ........ 6, 22

11 U.S.C. § 1129(a)(15) ........ 6, 22

11 U.S.C. § 1129(a)(16) ........ 6, 22

11 U.S.C. § 1129(b) ........ 18, 23, 24, 25

11 U.S.C. § 1129(b)(1) ........ 23, 24

11 U.S.C. § 1129(b)(2)(B)(i) ........ 24

11 U.S.C. § 1129(b)(2)(B)(ii) ........ 24

11 U.S.C. § 1129(c) ........ 25

11 U.S.C. § 1129(d) ........ 25

11 U.S.C. § 1129(e) ........ 25

28 U.S.C. § 1930 ........ 21

**Rules**

Fed. R. Bankr. P. 3016(c) ........ 36

Fed. R. Bankr. P. 3017 ........ 31

Fed. R. Bankr. P. 3018 ........ 31

Fed. R. Bankr. P. 3020(e) ........ 5, 39

Fed. R. Bankr. P. 9019 ........ 26

**Other Authorities**

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 (1977) ........ 6, 11

S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 (1978) ........ 6, 11

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this memorandum of law in support of confirmation of the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 18] (as amended, modified, or supplemented from time to time, the "**Plan**"),[2] including the agreements and other documents set forth in that certain supplement to the Plan, as set forth in the *Notice of Filing Plan Supplement* [Docket No. 229] (the "**Plan Supplement**").

## Preliminary Statement

1. The Plan is the culmination of more than four decades of the Debtors' stewardship and management of Uniroyal, Inc.'s (f/k/a U.S. Rubber Company) legacy, non-operating businesses following its reorganization in 1985. The Plan has been accepted by 99.96% of the voting Holders of PI/WD Claims, the only class of voting creditors, and has not been objected to by any economic stakeholder. The remarkable support for the Plan by the overwhelming majority of voting creditors speaks volumes as to the Plan's fairness, the good-faith efforts that culminated in its filing and its compliance with the Bankruptcy Code. As a result of the contributions and support of the Debtors' key constituents, including the official committee of tort claimants (the "**Tort Claimant Committee**")[3] and official committee of retirees (the "**Retiree Committee**")[4] appointed by the U.S. Trustee, the Plan provides for satisfaction in full of all non-PI/WD Claims against the Debtors and the establishment of a settlement trust to assume, administer, and resolve PI/WD Claims.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. The rules of interpretation set forth in the Plan shall apply to this memorandum.

[3] *See* Docket No. 95.

[4] *See* Docket No. 105.

2. As demonstrated in this brief and in the Supporting Declarations (as defined herein), and as will be established at the Confirmation Hearing, the Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code and achieves the objectives of chapter 11.

3. The Plan is supported by the sole voting class and all economic parties. The only objecting party is the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**"), which has raised certain objections to the Plan as described herein [Docket No. 248] (the "**U.S. Trustee Objection**"). However, the Debtors believe that they have resolved some (though not all) of the objections and other informal comments and responses received from the U.S. Trustee with respect to the Plan and proposed order confirming the Plan (the "**Confirmation Order**"), which is being filed substantially contemporaneously with this memorandum. Contemporaneous with the filing of this memorandum, the Debtors have filed a modified Plan [Docket No. 256] that contains certain technical changes which address certain of the U.S. Trustee's concerns (the "**Plan Modifications**").

4. For the reasons set forth herein and in the Supporting Declarations (as defined herein), the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

## Background

### I. General Background of Chapter 11 Cases and Development of Plan

5. The Debtors respectfully refer the Court to the Plan, the First Day Declaration,[5] the *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 20] (as amended, modified, or supplemented from time to time, the "**Disclosure Statement**"), the *Order (I) Approving the Disclosure Statement, (II) Approving*

---

[5] The "**First Day Declaration**" means the *Declaration of Robert V. D'Angelo, Jr. in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 6].

*Solicitation, Notice, and Tabulation Procedures and Forms Related Thereto, (III) Scheduling a Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Plan Confirmation, and (V) Granting Related Relief* [Docket No. 205] (the "**Solicitation Order**"), the *Proof of Publication* dated September 30, 2026 [Docket No. 217] (the "**Publication Affidavit**"), the *Affidavit of Service* dated October 7, 2026 [Docket No. 218] (the "**Solicitation Affidavit**"), the Plan Supplement, the *Declaration of Robert V. D'Angelo, Jr. in Support of Confirmation of the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 258] (the "**D'Angelo Declaration**"), the *Declaration of Ray Dombrowski in Support of Confirmation of the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 259] (the "**Dombrowski Declaration**"), the *Declaration of Jeriad R. Paul with Respect to the Tabulation of Votes on the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 260] (the "**Voting Declaration**," and collectively with the foregoing declarations and affidavits, the "**Supporting Declarations**"), the proposed Confirmation Order, and the record of these chapter 11 cases for an overview of the Debtors' history and other relevant facts that may bear on approval of confirmation of the Plan. The Supporting Declarations and any testimony and other declarations that may be adduced or submitted at or in connection with the Confirmation Hearing are incorporated herein as if fully set forth.

## II. Plan Solicitation and Tabulation

6. On September 23, 2026, the Court entered the Solicitation Order, which, among other things, established certain procedures for noticing of and soliciting votes on the Plan (the "**Solicitation and Voting Procedures**"). Subsequently, in accordance with the Solicitation Order, the Debtors commenced the solicitation of votes for the Plan on September 29, 2026 by causing Omni Agent Solutions, Inc., the Debtors' claims, noticing, and balloting agent, to distribute (a) the Solicitation Packages (as defined in the Solicitation and Voting Procedures) to Holders of

Claims in Class 4 (PI/WD Claims) or their counsel and (b) the Non-Voting Notice and the Opt-Out Form (each as defined in the Solicitation and Voting Procedures) to Holders of Claims and Interests in Classes 1 (Secured Claims), 2 (Other Priority Claims), 3 (General Unsecured Claims), and 6 (Interests).[6] Parties in interest also received notice of the Plan and the ability to object thereto through (a) service of the Confirmation Hearing Notice (as defined in the Solicitation and Voting Procedures) and (b) publication of the Confirmation Hearing Notice in *The Wall Street Journal*, in each case on September 29, 2026.[7]

7. Pursuant to the Solicitation Order, the voting deadline for the Plan was October 27, 2026 at 4:00 p.m. (prevailing Eastern Time). The voting results, as reflected in the Voting Declaration, are summarized as follows:[8]

| Class | % Amount Accepted | % Number Accepted | % Amount Rejected | % Number Rejected |
|---|---|---|---|---|
| 4 PI/WD Claims | 38,247.00 (99.96%) | 38,247.00 (99.96%) | 15 (0.04%) | 15 (0.04%) |

8. In addition, a total of 33 Holders of Claims and/or Interests affirmatively elected to opt out of the Third-Party Release.[9]

9. On October 20, 2026, the Debtors filed the Plan Supplement, consisting of the following: (a) the Trust Agreement, (b) the Trust Distribution Procedures, (c) the Release Agreement, (d) the Identity and Compensation of the Plan Administrator and Trustee, (e) the Identity of the Trust Advisory Committee, and (f) the identity of any insiders employed or retained

[6] *See* Solicitation Affidavit.

[7] *See* Solicitation Affidavit; Publication Affidavit.

[8] *See* Voting Decl. ¶ 16. Pursuant to the Solicitation Order, all PI/WD Claims were temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00.

[9] *See* Voting Decl. ¶ 17.

by the Plan Administrator.[10] All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.

## Argument

10. The following argument in support of confirmation of the Plan is divided into four parts. Part I addresses the applicable requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code and demonstrates the satisfaction or non-applicability of each requirement. Part II addresses why the Plan's Releases, Exculpation Provision, and Injunction Provisions (each as defined herein) are appropriate and comply with the Bankruptcy Code, and why the U.S. Trustee's objections thereto should be overruled. Part III addresses the Debtors' responses to the remaining U.S. Trustee objections, demonstrating why they should be overruled or are otherwise moot. Part IV addresses the Debtors' request for a waiver of the 14-day stay imposed by operation of Bankruptcy Rule 3020(e), and why the U.S. Trustee's objection thereto should be overruled.

### I. The Plan Satisfies Section 1129 of the Bankruptcy Code and Should be Approved

11. To achieve confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies section 1129 of the Bankruptcy Code by a preponderance of the evidence.[11]

12. As set forth below and based on the record and filings in these chapter 11 cases, and as will be demonstrated at the Confirmation Hearing, the Plan meets all applicable requirements of section 1129 of the Bankruptcy Code and should be confirmed. The Debtors will demonstrate, by

---

[10] *See* Plan Supplement.

[11] *See In re TCI 2 Holdings, LLC*, 428 B.R. 117, 148 (Bankr. D.N.J. 2010) ("The plan proponent bears the burden to show by a preponderance of the evidence that the proposed Chapter 11 plan has a reasonable probability of success, and is more than a visionary scheme" (internal quotation marks omitted) (citing *In re Wiersma*, 227 F. App'x 603, 606 (9th Cir. 2007))); *In re Premier Int'l Holdings, Inc.*, No. 09-12019, 2010 WL 2745964, at *4 (Bankr. D. Del. Apr. 29, 2010) (noting that plan proponents have the "burden of proving each of the elements of" section 1129 and that "a preponderance of the evidence . . . is the applicable evidentiary standard for confirmation").

a preponderance of the evidence, that all of the applicable subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.[12]

A. **The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code**

13. Under section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of the Bankruptcy Code.[13] The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and contents of the plan, respectively.[14] The Plan fully complies with these requirements.

1. *The Plan Complies with the Classification Requirements of Section 1122 of the Bankruptcy Code*

14. Section 1122 of the Bankruptcy Code provides that "[e]xcept as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[15] To

---

[12] Sections 1129(a)(6) and 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to the Plan. Section 1129(a)(6) requires that any rate change pursuant to a governmental regulatory commission that is provided for in a plan be approved by such governmental regulatory commission. The Plan does not provide for any rate changes by the Debtors. Section 1129(a)(13) requires that a plan provide for the continued performance of the debtor's retiree benefit obligations. *See* 11 U.S.C. § 1129(a)(13). The Debtors executed a settlement with the beneficiaries of their retiree benefits program, which provided the Debtors a release from all obligations thereunder. Section 1129(a)(14) relates to the payment of domestic support obligations. *See* 11 U.S.C. § 1129(a)(14). The Debtors are not subject to any domestic support obligations. Section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code). *See* 11 U.S.C. § 1129(a)(15). None of the Debtors is an "individual." Finally, section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust must be made in accordance with any applicable provisions of nonbankruptcy law. *See* 11 U.S.C. § 1129(a)(16). Each Debtor is a moneyed, business, or commercial corporation.

[13] *See* 11 U.S.C. § 1129(a)(1).

[14] *See S.* Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *see also In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001) ("The phrase 'applicable provisions' is not defined. The legislative history reflects that 'the applicable provisions of chapter 11 [includes sections] such as section 1122 and 1123, governing classification and contents of plan.'" (alteration in original) (citations omitted)).

[15] 11 U.S.C. § 1122(a).



DM3\23142569.1

determine whether claims are "substantially similar," courts have held that the proper focus is on "the legal character of the claim as it relates to the assets of the debtor."[16] The Third Circuit has endorsed a flexible approach to classification of claims. Courts interpreting section 1122(a) of the Bankruptcy Code generally uphold separate classification of claims if a reasonable basis exists for the classification and all claims within a particular class are substantially similar.[17]

15. In total, there are six Classes of Claims against and Interests in the Debtors[18] as follows: Class 1 (Secured Claims), Class 2 (Other Priority Claims), Class 3 (General Unsecured Claims), Class 4 (PI/WD Claims), Class 5 (Intercompany Claims), and Class 6 (Interests).[19]

16. The classification scheme of the Plan is rational and complies with the Bankruptcy Code. Generally, the Plan incorporates a "waterfall" classification and distribution scheme that strictly follows the statutory priorities prescribed by the Bankruptcy Code. All Claims and Interests within any Class have the same or similar rights against the Debtors. To the extent that Claims or Interests of equal priority are placed in different Classes, such separate classification is permissible because of the legal character of the Claim or because a valid business or factual reason otherwise exists.

---

[16] *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986); *see also In re Tribune Co.*, 476 B.R. 843, 855 (Bankr. D. Del. 2012) (concluding that phrase "substantially similar" reflects "the legal attributes of the claims, not who holds them" (internal quotation marks omitted) (citation omitted)), *aff'd as modified,* No. 12-CV-1072 GMS, 2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part sub nom. In re Tribune Media Co.*, 799 F.3d 272 (3d Cir. 2015).

[17] *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993) (interpreting section 1122(a) to bar debtors from arbitrarily designating classes or doing so in a manner that "would not serve any legitimate purpose"); *see also In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) (same).

[18] In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims have not been classified under the Plan. *See* Plan § 2.

[19] *See* Plan § 3.

17. Specifically, the Debtors have sound justification for the separate classification of Class 4 (PI/WD Claims) from Class 3 (General Unsecured Claims). PI/WD Claims are classified separately to reflect their status as arising out of alleged personal injury tort or wrongful death claims related to asbestos against the Debtors. It is standard in mass tort cases to classify general unsecured claims separately from tort claims.[20] Moreover, such classification reflects the consensual outcome of good-faith arm's length negotiation between the Debtors and an ad hoc group of law firms whose clients have asserted asbestos personal injury claims against the Debtors documented in the restructuring support agreement in favor of the Plan.

18. Accordingly, the classification of Claims and Interests under the Plan complies with section 1122 of the Bankruptcy Code and should be approved.

2. *The Plan Complies with Section 1123(a) of the Bankruptcy Code*

20. Section 1123(a) of the Bankruptcy Code sets forth seven applicable requirements which the proponent of a chapter 11 plan must satisfy.[21] The Plan fully complies with each such requirement:

- The Plan designates Classes of Claims and Classes of Interests as required by section 1123(a)(1) of the Bankruptcy Code.[22]

---

[20] *See, e.g.*, *In re Presperse Corp.*, No. 24-18921 (MBK) (Bankr. D.N.J. July 29, 2025) (separate classes for general unsecured claims and talc claims) [Docket No. 592]; *In re Boy Scouts of Am. & Del. BSA, LLC*, No. 20-10343 (LSS) (Bankr. D. Del. Sept. 8, 2022) [Docket No. 10316] (separate classes for general unsecured claims and abuse claims); *In re Paddock Enters., LLC*, Case No. 20-10028 (LSS) (Bankr. D. Del. May 26, 2022) [Docket No. 1406] (separate classes for general unsecured claims and asbestos claims); *In re Maremont Corp.*, No. 19-10118 (KJC) (Bankr. D. Del. May 17, 2019) [Docket No. 241] (same).

[21] *See* 11 U.S.C. § 1123(a)(1)-(7). An eighth requirement, set forth in 11 U.S.C. § 1123(a)(8), only applies in a case in which the debtor is an individual and, thus, is inapplicable to these chapter 11 cases.

[22] *See* Plan § 3.

- The Plan specifies whether each Class of Claims and Interests is impaired or unimpaired under the Plan and the treatment of each such impaired Class, as required by sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, respectively.[23]

- Except as otherwise agreed to by a holder of a particular Claim or Interest, the treatment of each Claim or Interest in each particular Class is the same as the treatment of each other Claim or Interest in such Class, as required by section 1123(a)(4) of the Bankruptcy Code.[24]

- The Plan provides adequate means for implementation as required by section 1123(a)(5) of the Bankruptcy Code through, among other things: (a) establishment of the Trust;[25] (b) the transfer of assets to the Trust;[26] (c) cancellation of existing securities and agreements;[27] (d) dissolution of the Debtors;[28] and (e) the provisions governing distribution under the Plan.[29]

- Section 1123(a)(6) of the Bankruptcy Code, which requires the inclusion of a provision in the Debtors' charter prohibiting the issuance of non-voting securities, is inapplicable because the Plan provides for the dissolution of the Debtors.[30]

- The Plan provides for the appointment of the Trustee by the Tort Claimant Committee with the consent of the Debtors (which was not to be unreasonably withheld) and the six-member Trust Advisory Committee selected by members of the Tort Claimant Committee.[31] On October 20, 2026, the Debtors and the Tort Claimant Committee disclosed the identity of the initial Trustee and the initial Trust Advisory Committee in the Plan Supplement. No creditor or other party in interest has raised any objection to the appointment of such members. Accordingly, the manner of selection of officers and directors is consistent with the interests of

---

[23] *See Plan* § 3.

[24] *See* Plan § 3.

[25] *See* Plan §§ 4.3-4.5.

[26] *See* Plan §§ 4.5.3, 4.5.4, 4.5.6, 4.5.9.

[27] *See* Plan § 4.7.

[28] *See* Plan § 4.6.

[29] *See* Plan § 6.

[30] *See In re Borders Group, Inc.*, No. 11-10614 (MG) (Bankr. S.D.N.Y. Dec. 21, 2011) [Docket No. 2384] ("[T]he Plan provides for the dissolution of the Debtors and therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable in these Bankruptcy Cases."); Plan § 4.6 (providing for dissolution of the Debtors).

[31] *See* Plan §§ 1.1.89, 4.4.2.

creditors, equity security holders, and public policy, and the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

3. *The Plan Complies with Section 1123(b) of the Bankruptcy Code*

21. Section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan.[32] Each provision of the Plan is consistent with section 1123(b):

- As permitted by section 1123(b)(1) of the Bankruptcy Code, the Plan provides that: (a) Class 1 (Secured Claims), Class 2 (Other Priority Claims) and Class 3 (General Unsecured Claims) are Unimpaired and (b) Class 4 (PI/WD Claims), Class 5 (Intercompany Claims), and Class 6 (Interests) are impaired.[33]

- As permitted by section 1123(b)(2) of the Bankruptcy Code, section 5 of the Plan provides the procedures governing the assumption and rejection of executory contracts and unexpired leases to which the Debtors are parties.[34]

- As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, section 9.1 of the Plan provides for a release of Claims and Causes of Action owned by the Debtors and their Estates.[35] Additionally, as permitted by section 1123(b)(3)(B) of the Bankruptcy Code, the Plan preserves for the Trust any Retained Causes of Action.[36]

- As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims and Interests in Class 4 (PI/WD Claims), Class 5 (Intercompany Claims), and Class 6 (Interests) and leaves unimpaired the rights of Holders of Claims and Interests in the remaining classes.[37]

- As permitted by section 1123(b)(6) of the Bankruptcy Code, a plan "may include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[38] In accordance with section 1123(b)(6) of the Bankruptcy

---

32 *See* 11 U.S.C. § 1123(b).

33 *See* Plan § 3.

34 *See* Plan § 5.

35 *See* Plan § 9.1.

36 *See* Plan §§ 1.1.79, 1.1.86, 4.5.9.

37 *See* Plan § 3.

38 *See* 11 U.S.C. § 1123(b).

Code, the Plan contains certain release and exculpation provisions[39] consistent with the applicable provisions of the Bankruptcy Code and case law in the Third Circuit, which, for the reasons discussed in Part II below, are consistent with section 1123(b) of the Bankruptcy Code.

B. **The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code**

1. *The Plan Complies with Section 1125 of the Bankruptcy Code*

22. Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent comply with the applicable provisions of the Bankruptcy Code.[40] The legislative history to section 1129(a)(2) indicates that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code.[41]

23. Under section 1125 of the Bankruptcy Code, prior to the solicitation of votes on a chapter 11 plan, a debtor must disclose information that is adequate to permit an informed judgment by creditors and shareholders entitled to vote on the Plan.[42] On September 23, 2026, the Court entered the Solicitation Order. The Solicitation Order approved the Disclosure Statement as containing "adequate information within the meaning of section 1125 of the Bankruptcy Code."[43] The Solicitation Package was transmitted in connection with the solicitation of votes to accept the Plan in compliance with section 1125 of the Bankruptcy Code and as set forth in the Solicitation Affidavit. The Debtors did not solicit acceptances of the Plan from any creditor or equity interest

---

[39] *See* Plan §§ 9.2-9.3.

[40] *See* 11 U.S.C. § 1129(a)(2).

[41] *See* S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *see also In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) ("[Section] 1129(a)(2) requires that the plan proponent comply with the adequate disclosure requirements of § 1125."); *Off. Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what Congress had in mind when it enacted Section 1129(a)(2).").

[42] See 11 U.S.C. § 1125.

[43] Solicitation Order ¶ C.

holder prior to the transmission of the Disclosure Statement. Accordingly, the Debtors have satisfied the requirements of section 1125 of the Bankruptcy Code.

2. *The Plan Complies with Section 1126 of the Bankruptcy Code*

24. Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of the Plan. Under section 1126, only holders of Allowed Claims and Interests in Impaired Classes that will receive or retain property under the Plan on account of such Claims or Interests may vote to accept or reject the Plan.[44]

25. In accordance with section 1126 of the Bankruptcy Code and section 3 of the Plan, with respect to each Debtor, the Debtors solicited acceptances of the Plan from the holders of Claims in Class 4 (PI/WD Claims).

26. In accordance with section 1126(f) of the Bankruptcy Code, the Solicitation Order, and section 3 of the Plan, the Debtors did not solicit acceptances from the Holders of Claims in Class 1 (Secured Claims), Class 2 (Other Priority Claims), or Class 3 (General Unsecured Claims) as the Holders of such Claims are Unimpaired under the Plan and thus are presumed to accept the Plan.

27. In accordance with section 1126(g) of the Bankruptcy Code, the Solicitation Order, and section 3 of the Plan, the Debtors did not solicit acceptances from the Holders of Claims and Interests in Class 5 (Intercompany Claims) or Class 6 (Interests) as Holders of such Claims and Interests are Impaired but will not receive any distribution or property on account of their Claims and Interests and thus are deemed to have rejected the Plan.

28. Section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance of a plan by impaired classes of claims entitled to vote to accept or reject a plan:

---

[44] *See* 11 U.S.C. § 1126(a).

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.[45]

29. As set forth in the Voting Declaration, the Plan has been accepted by at least two-thirds in amount and more than one-half in number of Claims in Class 4 (PI/WD Claims), which is the only voting class.[46]

30. For the reasons stated, the Debtors have satisfied the requirements of sections 1125 and 1126 of the Bankruptcy Code and, accordingly, 1129(a)(2) of the Bankruptcy Code.

C. **The Plan Complies with Section 1129(a)(3) of the Bankruptcy Code (Good Faith)**

31. Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."[47] Although the Bankruptcy Code does not define "good faith," the Third Circuit has stated that "[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code."[48]

32. The determination of whether a plan has been proposed in good faith requires a factual inquiry into the "totality of the circumstances" surrounding the plan's proposal.[49]

---

45 11 U.S.C. § 1126(c).

46 *See* Voting Decl. ¶ 16.

47 11 U.S.C. § 1129(a)(3).

48 *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) (alteration in original) (omission in original) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986) (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984))).

49 *See, e.g.*, *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 142 (Bankr. D.N.J. 2010); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012).

33. The Debtors developed the Plan in close consultation with their primary stakeholders following months of diligence and negotiation. More specifically, the Debtors conducted exhaustive analyses of and related to the Plan and the Debtors' retiree benefits program to provide for a final disposition in the best interests of all stakeholders. These chapter 11 cases and the Plan (including all documents necessary to effectuate the Plan) are the ultimate result of months of discussions, negotiations, and cooperation among the Debtors, an ad hoc group of law firms representing PI/WD Claimants, an ad hoc group of beneficiaries of the Debtors' retiree benefits program, the Tort Claimant Committee, and the Retiree Committee.

34. The Plan fosters a result consistent with the Bankruptcy Code's objectives. "The Supreme Court of the United States has specifically identified two purposes of chapter 11 as: (1) preserving going concerns; and (2) maximizing property available to satisfy creditors."[50] The Debtors filed the Plan with the legitimate and honest purpose of maximizing value given their limited cash. With regard to liquidating plans, courts in this Circuit have stated that "so long as the liquidation plan is maximizing the value of the debtor's estate, it serves a valid bankruptcy purpose and meets the good faith requirement."[51] The Plan creates an efficient and fair mechanism to resolve the thousands of outstanding PI/WD Claims that is much less costly than resolving those claims would be individually in the tort system, thereby saving money and preserving funds to allow the Trust to pursue the Debtors' remaining assets for the benefit of Holders of PI/WD Claims.

35. Moreover, the acceptance of the Plan by the vast majority of the Holders of PI/WD Claims reflects the Plan's fairness and the good-faith efforts of the parties to achieve the objectives

---

50 *See W.R. Grace*, 475 B.R. at 88 (citing *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)).

51 *Crown Vill. Farm, LLC v. ARL, L.L.C. (In re Crown Vill. Farm, LLC)*, 415 B.R. 86, 92 (Bankr. D. Del. 2009).

of chapter 11. Accordingly, the Debtors have acted with the best intentions of creditors in proposing the Plan and the good faith requirement of section 1129(a)(3) is satisfied.

### D. The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code (Payments to Professionals)

36. Section 1129(a)(4) requires that "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."[52] Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval as to their reasonableness by the court.[53]

37. All payments for services provided to the Debtors during these chapter 11 cases must be approved by the Court as reasonable in accordance with section 1129(a)(4) of the Bankruptcy Code. Specifically, Section 2.2 of the Plan provides that all professional fees for estate professionals must be approved by the Court as reasonable pursuant to final fee applications.[54] Further, the Plan provides that the Court shall retain jurisdiction to "hear and determine all Professional Fee Claims."[55] Therefore, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

---

52 11 U.S.C. § 1129(a)(4).

53 *See TCI 2 Holdings*, 428 B.R. at 145 ("Under its clear terms, 'any payment' made or to be made by the plan proponent or the debtor for services 'in or in connection with' the plan or the case must be approved by or 'subject to the approval of' the bankruptcy court as 'reasonable.'" (citation omitted)); *Lisanti v. Lubetkin* (*In re Lisanti Foods, Inc.*), 329 B.R. 491, 503 (D.N.J. 2005) ("Pursuant to § 1129(a)(4), a Plan should not be confirmed unless fees and expenses related to the Plan have been approved, or are subject to the approval, of the Bankruptcy Court."), *aff'd*, 241 F. App'x 1 (3d Cir. 2007).

54 *See* Plan § 2.2.

55 Plan § 10.1.8.

E. **The Plan Complies with Section 1129(a)(5) of the Bankruptcy Code (Identities of New Officers, Directors, and Trustees)**

38. Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and, to the extent there are any insiders that will be retained or employed by the reorganized debtors, that there be disclosure of the identity and nature of any compensation of any such insiders.[56]

39. The Debtors have satisfied the foregoing requirements. In accordance with the provisions of the Plan, from and after the Effective Date, the Trustee, the Trust Advisory Committee, and the Plan Administrator shall consist of those individuals listed in the Plan Supplement, which includes information about retention of insiders. The Plan, therefore, complies with section 1129(a)(5) of the Bankruptcy Code.

F. **Section 1129(a)(6) of the Bankruptcy Code Does Not Apply to the Plan (Rate Changes)**

40. Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval."[57] The Plan does not provide for any rate changes by the Debtors, and, therefore, section 1129(a)(6) is inapplicable.

[56] *See* 11 U.S.C. § 1129(a)(5).

[57] 11 U.S.C. § 1129(a)(6).

G. **The Plan Complies with Section 1129(a)(7) of the Bankruptcy Code (Best Interest Test)**

41. Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value of not less than that which such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.[58] The best interests test applies to individual dissenting holders of impaired claims and interests rather than classes,[59] and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[60]

42. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test. As set forth in the Disclosure Statement and the Dombrowski Declaration, the Debtors, with the assistance of their financial advisors, prepared a liquidation analysis that estimates recoveries for members of each Class under the Plan.[61] As set forth in the Dombrowski Declaration, projected recoveries for each Class under the Plan are not less than the recoveries estimated in a hypothetical chapter 7 liquidation.[62] All Holders of Claims entitled to vote on the Plan received the Liquidation

---

58 *See* 11 U.S.C. § 1129(a)(7)(A).

59 *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

60 *See Lisanti v. Lubetkin (In re Lisanti Foods, Inc.)*, 329 B.R. 491, 500 (D.N.J. 2005) (holding that a plan satisfies the best interests test if "creditors will receive at least as much under the Plan as they would receive in a liquidation of the Debtors' assets under chapter 7.").

61 *See* Dombrowski Decl. ¶ 10.

62 *See* Dombrowski Decl. ¶ 13.

Analysis (which was attached to the Disclosure Statement) and have been provided ample time to consider the contents thereof. Accordingly, the Plan complies with section 1129(a)(7), and no party has asserted otherwise.

H. **The Plan Complies with Section 1129(a)(8) of the Bankruptcy Code**

43. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.[63] If any class of claims or interests rejects the plan, the plan must satisfy the "cram down" requirements of section 1129(b) of the Bankruptcy Code with respect to the claims or interests in that class.[64]

44. Class 4 (PI/WD Claims) was impaired and voted to accept the Plan. Classes 5 (Intercompany Claims) and 6 (Interests) were each impaired and deemed to have rejected the Plan and, accordingly, were not entitled to vote. Notwithstanding such rejections, the Plan is confirmable because it satisfies the requirements for "cram down" under section 1129(b) of the Bankruptcy Code, as discussed below.

I. **The Plan Complies with Section 1129(a)(9) of the Bankruptcy Code (Administrative and Priority Claims)**

45. Section 1129(a)(9) of the Bankruptcy Code requires that holders of allowed claims entitled to priority under section 507(a) receive specified cash payments under the plan.[65] Unless the holder of a priority claim agrees to a different treatment, section 1129(a)(9) of the Bankruptcy Code sets forth the treatment the plan must provide.

46. The Plan complies with section 1129(a)(9) of the Bankruptcy Code. Section 2.1 of the Plan provides that, "unless otherwise agreed to by the Holder of an Allowed Administrative

---

[63] *See* 11 U.S.C. § 1129(a)(8).

[64] *See* 11 U.S.C. § 1129(b).

[65] *See* 11 U.S.C. § 1129(a)(9).

Claim or Allowed Priority Tax Claim, each Holder of an Allowed Administrative Claim or Allowed Priority Tax Claim will receive payment in full, as soon as practicable after (1) the Effective Date but in no event later than 30 days after the Administrative Claim Bar Date, or (2) the date such Administrative Claim or Priority Tax Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, to be paid in Cash or pursuant to such other treatment as may be agreed upon by the Holder of such Claim and the Debtors or the Plan Administrator, as applicable."[66] Therefore, the Plan complies with sections 1129(a)(9)(A) and (C) of the Bankruptcy Code.

47. Moreover, section 3.2 of the Plan provides that each Holder of an Allowed Other Priority Claim shall receive "(1) payment in full in Cash if such Claim is Allowed as of the Effective Date, and otherwise from the Disputed Claims Reserve; or (2) such other treatment rendering such Claim Unimpaired."[67] Therefore, the Plan complies with Section 1129(a)(9)(B) of the Bankruptcy Code.

48. Accordingly, the Plan satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

### J. The Plan Complies with Section 1129(a)(10) of the Bankruptcy Code (Impaired Accepting Class)

49. Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance of the Plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider."[68] As set forth in the Voting Declaration, Class 4 (PI/WD Claims) is

[66] Plan § 2.1.

[67] Plan § 3.2.

[68] 11 U.S.C. § 1129(a)(10).

Impaired and voted to accept the Plan.[69] Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

K. **The Plan Complies with Section 1129(a)(11) of the Bankruptcy Code (Feasibility)**

50. Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation. Specifically, the Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[70] For liquidating plans, such as the Plan, "feasibility is established when the liquidation itself is feasible." [71] In this district, for a chapter 11 liquidating plan, "the main focus of the feasibility analysis pertains to whether or not [the debtor] will have sufficient resources to fund the Plan."[72] There is a relatively low threshold of proof necessary to satisfy this requirement.[73]

51. The Plan meets this standard. The Plan is a straightforward plan of liquidation that provides for the payment in full of allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, and all outstanding U.S. Trustee fees prior to the transfer of the Debtors' remaining assets, less amounts set aside for reserves, to the Trust for ultimate distribution to Holders of PI/WD

---

[69] *See* Voting Decl. ¶ 16.

[70] 11 U.S.C. § 1129(a)(11).

[71] *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 321 (Bankr. S.D. Tex. 2024).

[72] *In re Nickels Midway Pier, LLC*, No. 03-49462 (GMB), 2010 WL 2034542, at *18 (Bankr. D.N.J. May 21, 2010).

[73] *See, e.g., In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 354 (Bankr. D.N.J. 2020) ("A 'relatively low threshold of proof' may satisfy the feasibility requirement." (citation omitted)).

Claims. The Plan provides a mechanism for accomplishing this goal through the Plan Distributions and the formation of the Trust.

52. Accordingly, the Debtors believe that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

L. **The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code (Statutory Fees)**

53. Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan."[74] Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority as administrative expenses.[75] In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, section 2.3 of the Plan provides that the Debtors shall pay all U.S. Trustee Fees that are due and owing as of the Effective Date and that nothing in the Plan shall release the Debtors or the Plan Administrator from their obligation to pay all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by the Court closing, dismissing or converting these chapter 11 cases.[76] Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

M. **Sections 1129(a)(13)-(16) of the Bankruptcy Code Do Not Apply to the Plan**

54. Section 1129(a)(13) of the Bankruptcy Code requires that a plan "provide[] for the continuation after its effective date of payment of all retiree benefits . . . at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of [the Bankruptcy Code], at any time prior

---

74 11 U.S.C. § 1129(a)(12).

75 11 U.S.C. § 507(a)(2).

76 *See* Plan § 2.3.

to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."[77] In accordance with the Court's order authorizing the Debtors' modification of their retiree benefits program,[78] the Debtors executed a settlement with the beneficiaries of their retiree benefits program, which provided the Debtors a release from all obligations thereunder. Accordingly, the Debtors have no obligation to pay retiree benefits, and section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

55. Section 1129(a)(14) of the Bankruptcy Code requires, as a condition to confirmation of a plan, a debtor to have paid all postpetition amounts payable under a judicial or administrative order or statute requiring the debtor to pay a domestic support obligation.[79] Because the Debtors are not subject to any domestic support obligations, section 1129(a)(14) is inapplicable to the Plan.

56. Section 1129(a)(15) of the Bankruptcy Code only applies in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.[80] Because neither of the Debtors is an "individual," section 1129(a)(15) is inapplicable to the Plan.

57. Section 1129(a)(16) of the Bankruptcy Code relates only to nonprofit corporations or trusts.[81] Because neither Debtor is a nonprofit corporation or trust, section 1129(a)(16) is inapplicable to the Plan.

---

77 11 U.S.C. § 1129(a)(13).

78 *See* Docket No. 170.

79 *See* 11 U.S.C. § 1129(a)(14).

80 *See* 11 U.S.C. § 1129(a)(15).

81 *See* 11 U.S.C. § 1129(a)(16).

N. **The Plan Satisfies the "Cram Down" Provisions of Section 1129(b) of the Bankruptcy Code**

58. Section 1129(b) of the Bankruptcy Code provides a mechanism (known colloquially as "cram down") for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims. Under section 1129(b) of the Bankruptcy Code, the court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests as long as the plan "does not discriminate unfairly" and "is fair and equitable" with respect to such dissenting class or classes.[82]

59. By its express terms, section 1129(b) of the Bankruptcy Code is only applicable to a class of creditors or interest holders that rejects a plan.[83] As Class 4 (PI/WD Claims), the only class entitled to vote, voted to accept the Plan, "cram down" is only relevant to Classes 5 (Intercompany Claims) and 6 (Interests), which are deemed to reject the Plan.

60. As discussed below, the Plan may be confirmed as to Classes 5 and 6 pursuant to the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

1. *The Plan Does Not Discriminate Unfairly*

61. Section 1129(b)(1) does not prohibit discrimination between classes. Rather, it prohibits discrimination that is unfair. In general, a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only where it provides for materially different treatment of classes with similar legal rights without a reasonable basis for the disparate treatment.[84]

---

82 *See* 11 U.S.C. § 1129(b)(1).

83 *See* 11 U.S.C. § 1129(b)(1) ("[T]he court . . . shall confirm the plan notwithstanding the requirements of [§ 1129(a)(8)] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, *and has not accepted*, the plan.") (emphasis added).

84 *See In re Ocean View Motel, LLC*, No. 20-21165 (ABA), 2022 WL 243213, at *1 (Bankr. D.N.J. Jan. 25, 2022) (quoting *In re Young Broad. Inc.*, 430 B.R. 99, 139-40 (Bankr. S.D.N.Y. 2010)) ("[u]nder 1129(b)(1), a plan unfairly discriminates when it treats similarly situated classes differently without a reasonable basis for the disparate treatment"); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003)

62. The Bankruptcy Code does not provide a bright line test for when "unfair discrimination" exists.[85] Thus, courts typically examine the facts and circumstances of the particular case to make the determination.[86]

63. The Plan does not discriminate unfairly against Class 5 (Intercompany Claims) or Class 6 (Interests) because the Plan does not provide any distributions to similarly situated creditors or equity security holders.

2. *The Plan is Fair and Equitable with Respect to the Impaired Rejecting Classes*

64. A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule, which provides that an impaired rejecting class of claims or interests must either be paid in full or that a class junior to the impaired rejecting class must not receive any distribution under a plan on account of its junior claim or interest.[87]

65. The Plan satisfies the absolute priority rule with respect to Classes 5 (Intercompany Claims) and 6 (Interests) because there is no Class that is junior to such Classes that will receive or

---

(permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (finding no unfair discrimination where the interests of objecting class were not similar or comparable to those of any other class).

85 *See, e.g.*, *Greate Bay Hotel & Casino,* 251 B.R. 213, 231 (Bankr. D.N.J. 2000) ("There is no bright line test which establishes whether a given difference in percentage recovery results in unfair discrimination.").

86 *See In re Nuverra Env't Sols., Inc.*, 590 B.R. 75, 89 (D. Del. 2018) ("Courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists."), *aff'd*, 834 F. App'x 729 (3d Cir. 2021), as amended (Feb. 2, 2021).

87 *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii).[87] That latter condition is the core of what is known as the 'absolute priority rule.'" (alteration in original)).

retain any property on account of the Claims or Interests in such Class.[88] Accordingly, the Plan is "fair and equitable" and, therefore, consistent with the requirements of section 1129(b) of the Bankruptcy Code.

O. **The Plan Satisfies Sections 1129(c)-(e) of the Bankruptcy Code**

66. Section 1129(c) of the Bankruptcy Code provides that, with a limited exception not relevant here, a court "may confirm only one plan."[89] Section 1129(c) is not implicated here because the Plan is the only proposed plan in these chapter 11 cases.

67. Section 1129(d) of the Bankruptcy Code provides that a court "may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[90] The principal purpose of the Plan is not to avoid taxes or the requirements of Section 5 of the Securities Act. The Debtors filed the Plan to accomplish their objective of maximizing value for all their stakeholders. No governmental unit or any other party has made any assertion to the contrary. Accordingly, the Plan complies with section 1129(d) of the Bankruptcy Code.

68. Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases are a "small business case."[91] Because these chapter 11 cases are not small business cases, section 1129(e) of the Bankruptcy Code is inapplicable to the Plan.

---

[88] *See* Plan §§ 3.5-3.6.

[89] 11 U.S.C. § 1129(c).

[90] 11 U.S.C. § 1129(d).

[91] *See* 11 U.S.C. § 1129(e). A "small business debtor" cannot be a member "of a group of affiliated debtors under the [Bankruptcy Code] that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $3,424,000 [] (excluding debt owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor." 11 U.S.C. § 101(51D)(B) (footnote omitted).

## II. The Plan's Releases, Exculpation Provision, and Injunction Provisions Are Appropriate and Comply with the Bankruptcy Code

### A. The Debtor Releases Are Appropriate

69. Section 9.1 of the Plan and paragraph 7 of the Confirmation Order set forth the releases by the Debtors (the "**Debtor Releases**"). [92] Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[93] Claims belonging to a debtor are property of the debtor's estate and may properly be released as part of a settlement, including pursuant to a chapter 11 plan, as a valid exercise of its business judgment.[94] Courts in this district have held that "[t]he standards for approving a settlement are the same under both Bankruptcy Rule 9019 and section 1123(b)(3)."[95] In accordance with these standards, courts will approve a settlement if it "falls within the lowest range of reasonableness."[96]

70. Courts in this district and elsewhere generally analyze five factors when determining the propriety of a debtor release, commonly known as the *Zenith* factors or *Master Mortgage Factors*.[97] These factors are:

> (1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (2) substantial contribution by the non-debtor of assets to the reorganization; (3)

---

[92] *See* Plan § 9.1; Confirmation Order ¶ 7.

[93] 11 U.S.C. § 1123(b)(3)(A).

[94] *See U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) ("[A] debtor may release claims in a plan pursuant to Bankruptcy Code § 1123(b)(3)(A), if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate.").

[95] *In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 380 (Bankr. D.N.J. 2020).

[96] *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).

[97] *See, e.g.*, *In re Congoleum Corp.*, 362 B.R. 167, 192 (Bankr. D.N.J. 2007); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013).

> the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.[98]

Courts note that these factors are neither exhaustive nor all required to be met in order to approve a debtor release; rather, they are simply used to guide courts in weighing the equities of the case and determining fairness of such release.[99]

71. The *Zenith* factors weigh in favor of approving the Debtor Releases.

- An identity of interest exists between the Debtors and the parties to be released. Each of the Released Parties, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed and would have been highly unlikely to participate in the negotiations and compromises that led to the formation of the Plan (or to participate in the ultimate implementation of it) without the Debtor Releases.[100] For example, with respect to releases of the Debtors' current and former directors and officers, there is a clear identity of interest: the Trust will assume certain indemnification obligations under the Plan that will be honored by the Trust.[101]

- Substantial contributions are clear. The Released Parties have been instrumental in negotiating, formulating, and implementing both the RSA and the Plan, working tirelessly and in good faith throughout these chapter 11 cases and, in some cases, for no additional compensation.[102]

---

98 *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)).

99 *See 710 Long Ridge Rd. Operating Co., II, LLC*, No. 13-13653 (DHS), 2014 WL 886433, at *14 (Bankr. D.N.J. Mar. 5, 2014) ("These factors are not considered requirements for the approval of third-party releases, but they may be instructive to the court."); *Indianapolis Downs*, 486 B.R. at 303 ("These factors are neither exclusive nor are they a list of conjunctive requirements. Instead, they are helpful in weighing the equities of the particular case after a fact-specific review." (citation omitted)).

100 *See* D'Angelo Decl. ¶ 6.

101 *See* Plan § 4.5.12; Confirmation Order ¶ 15; *see also In re Indianapolis Downs*, 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release.").

102 *See* D'Angelo Decl. ¶ 6.

- The Debtor Releases are essential to confirmation and implementation of the Plan because but for the Debtor Releases, the Released Parties would not have expended the time, energy, and sacrifice needed throughout the Plan process to produce a value-maximizing Plan, and without such efforts of the Released Parties, the transactions contemplated by the Plan would not be possible.[103]

- The broad support for the RSA and the overwhelming acceptance of the Plan by Class 4 (PI/WD Claims) show that the Plan and the Debtor Releases contemplated therein are supported by a substantial majority of the Debtors' creditors.[104]

- The Plan maximizes value of the Debtors' estates and provides a meaningful recovery for all of their creditors, including, among other things, paying all General Unsecured Claims in full and administering a fair, equitable, and value-maximizing distribution to Holders of PI/WD Claims.[105]

72. Based on the foregoing, the *Zenith* factors support approval of the Debtor Releases. Moreover, the Debtors have easily satisfied the business judgment standard in granting the Debtor Releases because the Debtor Releases are fair, reasonable, and in the best interests of the Debtors' Estates. Finally, courts in this district routinely confirm chapter 11 plans with debtor releases substantially similar to the Debtor Releases.[106]

B. **The Third-Party Release Is Consensual and Appropriate and Complies with the Bankruptcy Code**

73. Section 9.2 of the Plan and paragraph 8 of the Confirmation Order set forth the consensual third-party release (the "**Third-Party Release**").[107] It provides that each Releasing

---

[103] *See* D'Angelo Decl. ¶ 6.

[104] *See* First Day Decl. ¶¶ 10, 50; Voting Decl. ¶ 16.

[105] *See* Plan § 3.3; First Day Decl. ¶ 9.

[106] *See, e.g.*, *In re Del Monte Foods Corp. II Inc.*, Case No. 25-16984 (MBK) (Bankr. D.N.J. May 22, 2026); *In re New Rite Aid, LLC*, Case No. 25-14861 (Bankr. D.N.J. Nov. 26, 2025); *In re Invitae Corp.*, Case No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024); *In re Thrasio Holdings, Inc.*, Case No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024); *In re Cyxtera Techs., Inc.*, Case No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023); *In re BlockFi Inc.*, Case No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023); *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. Sept. 14, 2023).

[107] *See* Plan § 9.2; Confirmation Order ¶ 8.



DM3\23142569.1

Party, including all Holders of Claims and Interests who do not specifically opt out of their inclusion as a Releasing Party, shall release any and all Causes of Action such parties could assert against the Released Parties.

74. The Third-Party Release is consensual, fair, and reasonable in light of the unique circumstances of these chapter 11 cases and is consistent with Third Circuit precedent. The Third-Party Release is permissible and consistent with Third Circuit precedent because all parties in interest will have had ample notice and opportunity to evaluate and opt out of the Third-Party Release. [108] Moreover, the Third-Party Release is appropriately tailored to the specific circumstances at issue in this particular case and is consistent with the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*[109]

75. In *Purdue*, the Supreme Court held that the Bankruptcy Code does not permit non-consensual third-party releases of non-debtors other than bankruptcy cases invoking section 524(g) of the Bankruptcy Code.[110] However, the *Purdue* decision has no bearing on the Plan or the Third-Party Release set forth in section 9.2 thereof. The Third-Party Release is a consensual release, and the *Purdue* decision expressly held that its ruling "should [not] be construed to call into question *consensual* third-party releases."[111]

[108] *See, e.g.*, *In re Del Monte Foods Corp. II Inc.*, Case No. 25-16984 (MBK) (Bankr. D.N.J. May 22, 2026) (confirming a plan which included a third-party release with an opt-out mechanism); *In re Powin, LLC*, Case No. 25-16137 (MBK) (Bankr. D.N.J. Dec. 1, 2025) (same); *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK) (Bankr. D.N.J. Nov. 26, 2025) (same); *In re Sam Ash Music Corp.*, Case No. 24-14727 (SLM) (Bankr. D.N.J. Aug. 15, 2024) (same).

[109] 603 U.S. 204 (2024).

[110] *Id.* at 227.

[111] *Id.* at 226 (emphasis in original). The Supreme Court further elaborated that its decision does not "express a view on what qualifies as a consensual release." *Id.* at 226.

76. The U.S. Trustee objects to the Third-Party Release on several grounds, including that "silence is not acceptance" of an offer to release non-debtors[112] and that "[c]onsent to release third-party claims . . . cannot properly be inferred from a party's failure to check an opt-out box."[113] The weight of the authority in this district has held the opposite: that affirmative consent to a third-party release is not required for such release to be "consensual."[114] Indeed, courts in this district have routinely confirmed chapter 11 plans with third-party releases substantially similar to the Third-Party Release, i.e., where holders of claims and interests have the opportunity to opt out of such releases.[115]

77. The U.S. Trustee nevertheless argues that state contract law governs whether a third-party release is consensual,[116] and that under New Jersey law, an agreement to release claims is

[112] U.S. Trustee Obj. ¶ 55.

[113] U.S. Trustee Obj. ¶ 67.

[114] *See, e.g.*, *In re Powin, LLC*, Case No. No. 25-16137 (MBK), Hr'g Tr. at 65:12-19 (Bankr. D.N.J. Nov. 25, 2025) ("[T]his Court has not changed its position and joins other courts in this district, the circuit, and many of the 93 other districts which approve the use of informed opt-out procedures to reflect consent to proposed consensual releases under Chapter 11 plans. Indeed, in the District of new Jersey, our Court has been rather uniform in recognizing opt-out provisions as fundamentally fair and consistent with due process and applicable bankruptcy law."); *In re BlockFi Inc.*, Case No. 22-19361 (MBK), Hr'g Tr. 109:8-9, 110:2-6 (Bankr. D.N.J. Sept. 26, 2023) ("I, as well as my colleagues within the district, approved opt-out releases … And let's be clear, these are consensual releases because those who do not want to participate, who want to bring their claims, notwithstanding how they vote, had the ability and option to opt out and not doing so, made a conscious choice.").

[115] *See, e.g.*, *In re Del Monte Foods Corp. II Inc.*, Case No. 25-16984 (MBK) (Bankr. D.N.J. May 22, 2026) (confirming a plan which included a third-party release with an opt-out mechanism); *In re Powin, LLC*, Case No. No. 25-16137 (MBK) (Bankr. D.N.J. Dec. 1, 2025) (same); *In re New Rite Aid, LLC*, Case No. 25-14861 (MBK) (Bankr. D.N.J. Nov. 26, 2025) (same); *In re Sam Ash Music Corp.*, Case No. 24-14727 (SLM) (Bankr. D.N.J. Aug. 15, 2024) (same); *In re Invitae Corp.*, Case No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024) (same); *In re Thrasio Holdings, Inc.*, Case No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024) (same); *In re Careismatic Brands, LLC*, Case No. 24-10561 (VFP) (Bankr. D.N.J. May 31, 2024) (same); *In re WeWork Inc.*, Case No. 2319865 (JKS) (Bankr. D.N.J. May 30, 2024) (same); *In re Cyxtera Techs., Inc.*, Case No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023) (same); *In re DirectBuy Home Improvement, Inc.*, Case No. 23-19159 (SLM) (Bankr. D.N.J. Apr. 19, 2024) (same); *In re BlockFi Inc.*, Case No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023); *In re Bed Bath & Beyond Inc.*, Case No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023) (same).

[116] *See* U.S. Trustee Obj. ¶ 48.

"like any other contract" in that it "requires a manifestation of assent to that agreement."[117] Courts in this jurisdiction have unequivocally rejected the proposition that consensual third-party releases and opt-out release mechanics are governed by state law. For instance, in response to a similar objection to a plan's third-party releases with an opt-out mechanism brought by the U.S. Trustee, this Court found:

> An opt-out consent procedure is governed by Federal Rules. The opt-out procedure involves questions concerning ballot structure, disclosure adequacy, plan solicitation, and release mechanisms, and can be seen as governed by sections of the Code, including 1125, adequate disclosure; 1126, voting mechanisms; as well as Federal Bankruptcy Rule of Procedure 3017 and 3018. These are procedural Federal Rules and Federal substantive law, and Federal Courts maintain exclusive authority over them. State law cannot dictate the legal effects of a federal voting or solicitation process; applying state law would defeat national uniformity. A Chapter 11 plan is not merely a contract, but it is a federal judgment. Confirmation under Section 1141 binds all creditors, including nonvoting, dissenting, and silent creditors. Courts have repeatedly emphasized that a Chapter 11 plan is a Federal Court order, not merely a private contract with state law consent requirements. And courts evaluating releases, therefore, apply Federal Bankruptcy standards such as good faith, fairness, adequacy of notice, not necessarily state assent doctrines.[118]

78. The parties in interest were provided extensive notice of these chapter 11 proceedings, the Plan, the deadline to object to confirmation of the Plan, and the ability to opt out of the Third-Party Release.[119]

79. In accordance with the Solicitation and Voting Procedures, Holders of Claims in Class 4 (PI/WD Claims) were given notice of, instructions for, and an opportunity to opt out of the Third-Party Release by checking the appropriate box on their Ballot or objecting on or before the

---

[117] U.S. Trustee Obj. ¶ 51.

[118] *See, e.g.*, *In re Powin, LLC*, Case No. No. 25-16137 (MBK), Hr'g Tr. at 66:7-25, 67:1-2 (Bankr. D.N.J. Nov. 25, 2025).

[119] *See* Solicitation Order; Solicitation Affidavit; Publication Affidavit.

Voting Deadline.[120] An overwhelming percentage of creditors in Class 4 (PI/WD Claims) voted in favor of the Plan, including the Third-Party Release.[121]

80. Similarly, in accordance with the Solicitation and Voting Procedures, Holders of Claims and Interests in the non-voting classes (Classes 1, 2, 3, 5, and 6) were given notice of, instructions for, and an opportunity to opt out of the Third-Party Release in their Non-Voting Notice by checking the appropriate box on the Opt-Out Form by the deadline stated in bold and all-caps therein.[122]

81. The terms and instructions of both the ballots and the notices sent to parties in interest who were not entitled to vote on the Plan were negotiated with the U.S. Trustee, which expressly apprised such parties of the existence of the Third-Party Release and their ability to opt out of the release if they did not wish to be bound.[123] Indeed, 33 parties in interest elected to opt out of the Third-Party Release, evincing that notice of the opportunity to opt out was sufficient.[124]

82. In sum, the heavily-negotiated and Court-approved Ballots and the Non-Voting Notices, each of which explicitly included the full text of the Third-Party Release and indicated that failure to opt out would bind the Holder to the Third-Party Release, provided all parties in interest with ample notice and an opportunity to opt out of the Third-Party Release. It is thus evident from the record before this Court that the Third-Party Release is consensual, integral to the formation

[120] *See* Voting Decl. ¶ 9.

[121] *See* Solicitation Affidavit; Voting Decl. ¶ 16.

[122] *See* Voting Decl. ¶ 9.

[123] *See Debtors' Omnibus Reply to Objections to the Approval of the Debtors' Proposed Disclosure Statement and Related Solicitation Procedures* [Docket No. 185] Ex. A, at 3-9; Solicitation Order; Solicitation Affidavit; Publication Affidavit.

[124] *See* Voting Decl. ¶ 17.

and implementation of the Plan,[125] warranted under the circumstances, and clearly permitted by the applicable law. For the foregoing reasons, all objections to the Third-Party Release should be overruled.

### C. The Exculpation Provision Is Narrowly Tailored and Customary and Should Be Approved

83. The exculpation provision set forth in section 9.3 of the Plan and paragraph 9 of the Confirmation Order (the "**Exculpation Provision**") provides a customary exculpation of the Exculpated Parties with respect to acts or omissions in connection with, arising out of, or relating to the Debtors' chapter 11 cases, the Disclosure Statement, or the Plan.[126] The Exculpation Provision has a narrow and discrete purpose: to protect the Exculpated Parties, who made substantial contributions to the success of these chapter 11 cases, from lawsuits based on actions taken by the Exculpated Parties in furtherance of the Debtors' restructuring.

84. In response to the comments from the U.S. Trustee, the Debtors have made several modifications to the definition of the Exculpated Parties and the Exculpation Provision, which the Debtors understand resolve the U.S. Trustee Objection with respect to such provisions.[127]

85. The Exculpation Provision is an integral piece of the transactions contemplated by the Plan, and the Exculpated Parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtors.[128] Without the protection of the Exculpation Provision, the Exculpated Parties would not have expended the intensive time and energy that was asked of them

[125] *See* D'Angelo Decl. ¶ 6.

[126] *See* Plan § 9.3; Confirmation Order ¶ 9.

[127] *See* Plan Modifications §§ 1.1.37, 9.3.

[128] *See* D'Angelo Decl. ¶ 6; First Day Decl. ¶ 50.

in order to achieve a successful outcome in these chapter 11 cases.[129] Moreover, the Exculpation Provision is narrowly tailored: the Plan's definition of the term "Exculpated Parties" limits the scope of the Exculpation Provision to cover only certain Estate fiduciaries.[130] In addition, the Exculpation Provision is substantially similar to exculpation provisions approved by other courts in this jurisdiction.[131]

86. For the foregoing reasons, the Exculpation Provision is appropriate and should be approved.

D. **The Injunction Provisions Are Appropriate and Should Be Approved**

87. The plan injunction provision set forth in section 9.4 of the Plan and paragraph 10 of the Confirmation Order, including the gatekeeper clause contemplated therein, (the "**Plan Injunction**") implements the Debtor Releases, the Third-Party Release, and the Exculpation Provision by (a) permanently enjoining all Persons and Entities from commencing, continuing, amending, or pursuing, a Cause of Action against the Debtors, the Exculpated Parties, or the Released Parties that relates to, or is reasonably likely to relate to, any acts or omissions that are subject to the Debtor Releases, the Third-Party Release and the Exculpation Provision and (b) providing that the Court shall interpret its own order in the first instance and determine whether

---

129 *See* D'Angelo Decl. ¶ 6.

130 *See* Plan § 1.1.37; *see generally In re Wash. Mut., Inc.*, 442 B.R. 314, 350–51 (Bankr. D. Del. 2011) (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers" was appropriate).

131 *See, e.g.*, *In re Del Monte Foods Corp. II Inc.*, Case No. 25-16984 (MBK) (Bankr. D.N.J. May 22, 2026); *In re New Rite Aid, LLC*, Case No. 25-14861 (Bankr. D.N.J. Nov. 26, 2025); *In re Invitae Corp.*, Case No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024); *In re Thrasio Holdings, Inc.*, Case No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024); *In re Cyxtera Techs., Inc.*, Case No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023); *In re BlockFi Inc.*, Case No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023); *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. Sept. 14, 2023).

a litigant has a claim that was not released under the Plan as of the Effective Date.[132] The Plan Injunction is a necessary part of the Plan precisely because it enforces the release and exculpation provisions that are critically important to the Plan and prevents frivolous litigation.[133] Moreover, the terms of the Plan Injunction are substantially similar to injunction provisions approved by other courts in this jurisdiction.[134]

88. The insurance entity injunction provision set forth in section 9.5 of the Plan and paragraph 11 of the Confirmation Order (the "**Insurance Entity Injunction**," and together with the Plan Injunction, the "**Injunction Provisions**") is a highly negotiated provision that plays an important role in the Plan. Subject to certain express carve-outs for certain rights and parties, including the rights of Insured Parties under the D&O Policies, the rights of Insurance Companies to seek collection from other Insurance Companies, and the right to bring Causes of Action under reinsurance contracts or retrocessional contracts, the Insurance Entity Injunction enjoins all Persons and Entities other than the Trust from taking any action for the purpose of collecting, recovering, or receiving any payments from any Insurance Company in connection with any Insurance Policy.[135] The Insurance Entity Injunction is integral to the Plan because any recovery against the Insurance Policies by parties other than the Trust would deplete the Trust Assets available for

---

132 *See* Plan § 9.4; Confirmation Order ¶ 10.

133 *See SEC v. Drexel Burnham Lambert Grp. (In re Drexel Burnham Lambert Grp.)*, 960 F.2d 285, 293 (2d Cir. 1992) (holding that a court may approve an injunction provision where such provision "plays an important part in the debtor's reorganization plan").

134 *See, e.g.*, *In re Del Monte Foods Corp. II Inc.*, Case No. 25-16984 (MBK) (Bankr. D.N.J. May 22, 2026); *In re New Rite Aid, LLC*, Case No. 25-14861 (Bankr. D.N.J. Nov. 26, 2025); *In re Invitae Corp.*, Case No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024); *In re Thrasio Holdings, Inc.*, Case No. 24-11840 (CMG) (Bankr. D.N.J. June 13, 2024); *In re Cyxtera Techs., Inc.*, Case No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023); *In re BlockFi Inc.*, Case No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023); *In re Bed Bath & Beyond Inc.*, Case No. 23-13359 (VFP) (Bankr. D.N.J. Sept. 14, 2023).

135 *See* Plan § 9.5; Confirmation Order ¶ 11.

distribution to Holders of PI/WD Claims. In addition, courts within this circuit have confirmed chapter 11 plans with injunction provisions substantially similar to the Insurance Entity Injunction.[136]

89. Further, the Injunction Provisions comply with the requirements of Bankruptcy Rule 3016(c), which provides that a plan must "describe in specific and conspicuous language . . . all acts to be enjoined" and "identify the entities that would be subject to the injunction."[137] The Injunction Provisions are clearly identified in the Plan, with such text displayed in all caps, and specifically identify all acts to be enjoined and all entities that would be subject to the injunction.[138]

90. The U.S. Trustee objects to the Injunction Provisions on the ground that the Court does not have the authority to enter an injunction with respect to the Plan. As described above and as set forth in the D'Angelo Declaration, the Injunction Provisions are heavily-negotiated terms of the Plan that were necessary to secure the requisite support needed to execute the RSA, and without the Injunction Provisions the Debtors would not have been able to secure the compromises from the parties whose participation was essential to the formation of the Plan and the settlement with the beneficiaries of the Debtors' retiree benefits program. Moreover, in response to the comments from the U.S. Trustee, the Debtors have worked with numerous stakeholders to negotiate several modifications to the terms of the gatekeeper provisions of the Plan Injunction which the Debtors believe will address some, if not all, of the U.S. Trustee Objection with respect to such provision.[139]

---

[136] *See, e.g.*, *In re AIO US, Inc.*, Case No. 24-11836 (CTG) (Bankr. D. Del. Sept. 24, 2025); *In re ABB Lummus Global Inc.*, Case No. 06-10401 (JKF) (Bankr. D. Del. June 29, 2006).

[137] Fed. R. Bankr. P. 3016(c).

[138] *See* Plan §§ 9.4-9.5.

[139] *See* Plan Modifications § 9.4.

91. For the foregoing reasons, the Injunction Provisions are appropriate and should be approved, and all objections thereto, if any, should be overruled.

## III. The Remaining U.S. Trustee Objections Should Be Overruled or Recognized as Moot, and the Plan Should Be Confirmed

### A. The Plan Appropriately Protects Future Holders of PI/WD Claims

92. The U.S. Trustee argues that the Plan seeks to bind future asbestos claimants without providing representation, specifically noting that:

> Had a 524(g) trust been proposed at the outset of these cases, a legal representative would have been selected to represent future claimants. As such, future claimants were not represented during these cases, did not take part in the pre-petition negotiations leading to the amount to be included in the Trust, and did not take part in the postpetition negotiations concerning the terms of the Trust and the TDP.[140]

93. The Plan, which was filed on the Petition Date, dating back to the commencement of negotiations with the Ad Hoc Group on the terms of the RSA, is and has been predicated on the establishment of the Trust to provide fair and equitable distribution for all PI/WD Claims, which includes present *and future* asbestos claimants. The definition of "PI/WD Claims" under the Plan, which was pre-negotiated and approved by the Ad Hoc Group, includes any asbestos-related personal injury or wrongful death Claim "known or unknown," which means that it covers Holders of present *and future* PI/WD Claims.[141] From the Debtors' perspective, the Tort Claimant Committee, which was appointed by the U.S. Trustee,[142] effectively replaced the Ad Hoc Group in representing Holders of PI/WD Claims, which, as stated earlier, includes future claimants. The Bar

[140] U.S. Trustee Obj. ¶ 116.

[141] *See* Plan § 1.1.63.

[142] *See* Docket No. 95.



DM3\23142569.1

Date Order[143] expressly carves out holders of PI/WD Claims from being subject to any applicable Bar Date (as defined therein), in order to preserve the rights of and avoid any potential prejudice to unknown future asbestos claimants. Moreover, the Trustee and the Trust Advisory Committee have fiduciary duties under the Trust Agreement to all Holders of PI/WD Claims, which includes future claimants, thereby providing such Claimants with adequate representation.

94. For the foregoing reasons, future claimants were adequately represented leading up to and throughout these chapter 11 cases and are adequately protected under the Plan.

B. **The "Deemed Acceptance" Provision Objection is Moot**

95. The U.S. Trustee objects to section 3.8 of the Plan, which provides that "[i]f a Class contains Claims eligible to vote, and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Holders of Claims in such Class shall be deemed to have accepted the Plan."[144] As set forth in the Voting Declaration, Class 4 (PI/WD Claims), the only Class entitled to vote under the Plan, voted to accept the Plan.[145] Accordingly, the Deemed Acceptance Provision Objection is moot.

C. **Revision of the Statutory Fee Provision**

96. In response to the comments from the U.S. Trustee, the Debtors have made the modifications to the statutory fee provisions in the Plan the U.S. Trustee requested, with the exception of the request to provide that the Trustee be jointly and severally liable along with the

---

[143] The "**Bar Date Order**" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim Other than with Respect to PI/WD Claims, (II) Establishing and Amended Schedules Bar Date, and Rejection Damages Bar Date, (III) Establishing a Bar Date for the Filing of Proofs of Claim by Governmental Units, (IV) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (V) Approving Notice Thereof, and (VI) Granting Related Relief* [Docket No. 66].

[144] *See* Plan § 3.8.

[145] *See* Voting Decl. ¶ 16.

Debtors and Plan Administrator for such fees and the requirement that the Trustee file post-confirmation quarterly operating reports.[146] The Trustee is responsible for the administration of the Trust, which is not a party to these chapter 11 cases. Accordingly, the statutory fee provisions of the Plan, as modified, should be approved, and all objections thereto, if any, should be overruled.

## IV. Cause Exists to Waive the Stay of Confirmation Order

97. The Debtors request that the Court direct that the Confirmation Order shall be effective immediately upon its entry, notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e). Bankruptcy Rule 3020(e) provides that "[u]nless the court orders otherwise, a confirmation order is stayed for 14 days after its entry."[147]

98. The U.S. Trustee objects to this request on the ground that the Debtors "have presented no exigencies that would justify departing from" the 14-day stay requirement of Bankruptcy Rule 3020(e).[148] The Debtors submit that more than adequate cause exists to waive any stay of the Confirmation Order. As discussed above, the Plan enjoys overwhelming support from the Debtors' creditors. Any potential extension of the length of time the Debtors remain in chapter 11 would only serve to increase the administrative and professional burn of these cases. The Debtors are eager for the Plan to go effective and believe that incurring these additional expenses is unnecessary given the overwhelming support for the Plan. Such relief is in the best interests of the Debtors' Estates, creditors, and other parties in interest.

---

[146] *See* Plan Modifications § 2.3.

[147] Fed. R. Bankr. P. 3020(e).

[148] U.S. Trustee Obj. ¶ 105.

99. For these reasons, it is appropriate for the Court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and all objections to such waiver should be overruled.

## **Conclusion**

For the reasons set forth in this memorandum, the Debtors respectfully submit that: (a) the Plan fully satisfies all applicable requirements of the Bankruptcy Code; (b) the Plan should be confirmed by the Court; and (c) all objections, to the extent not previously withdrawn or resolved, should be overruled.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 30, 2026

By: /s/ *Drew S. McGehrin*

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
Email: msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
Evan M. Raskin (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
Email: nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
emraskin@debevoise.com

*Co-Counsel to the Debtors and Debtors in Possession*