# **Exhibit A**

Proposed Confirmation Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
Evan M. Raskin (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
emraskin@debevoise.com

**DUANE MORRIS LLP**
Morris S. Bauer (NJ Bar No. 039711990)
Drew S. McGehrin (NJ Bar No. 196852016)
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

*Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>Judge: Michael B. Kaplan<br><br>(Jointly Administered) |

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE JOINT CHAPTER 11 PLAN OF UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION**

The relief set forth on the following pages, numbered 3 through 30, is **ORDERED**.

The above-captioned debtors (the "**Debtors**") having:

a. filed, on July 31, 2026 (the "**Petition Date**"), the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 18];

b. filed, on July 31, 2026, the *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 20];

c. filed, on September 22, 2026, the revised *Disclosure Statement for the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 195] (the "**Disclosure Statement**");

d. filed, on September 22, 2026, the revised *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 194] (the "**Plan**");[2]

e. caused the distribution of solicitation materials on September 29, 2026, in accordance with the *Order (I) Approving the Disclosure Statement, (II) Approving Solicitation, Notice, and Tabulation Procedures and Forms Related Thereto, (III) Scheduling a Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Plan Confirmation, and (V) Granting Related Relief* [Docket No. 205] (the "**Solicitation Order**") as set forth in the *Affidavit of Service* dated October 7, 2026 [Docket No. 218] (the "**Solicitation Affidavit**") including:

   i. the *Notice of (A) Approval of the Disclosure Statement and (B) Hearing to Consider Confirmation of the Plan and the Objection Deadline Related Thereto* (the "**Confirmation Hearing Notice**");

   ii. the ballots for voting on the Plan (the "**Ballots**"), in the form approved in the Solicitation Order, to holders of certain Claims and parties in interest, in compliance with the procedures contained in the Solicitation Order, title 11 of the United States Code, and the Federal Rules of Bankruptcy Procedure; and

   iii. non-voting status and opt-out forms (the "**Opt-Out Form**"), in the form approved in the Solicitation Order, to Holders of certain Claims, Interests, and parties in interest, in unclassified and non-voting classes, in compliance with the procedures contained in the Solicitation Order;

f. caused the filing of, on October 6, 2026, the *Affidavit of Publication of the Notice of (A) Approval of the Disclosure Statement and (B) Hearing to Consider Confirmation of the Plan and the Objection Deadline Related Thereto* [Docket No. 217] (the "**Publication Affidavit**");

g. filed, on October 20, 2026, the *Notice of Filing of Plan Supplement* [Docket No. 229] (the "**Plan Supplement**");

---

[2] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Plan. The rules of interpretation set forth in the Plan shall apply to this order (the "**Confirmation Order**").

h. filed, on October 30, 2026, the *Declaration of Jeriad R. Paul with Respect to the Tabulation of Votes on the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 260] (the "**Voting Declaration**");

i. filed, on October 30, 2026, the *Declaration of Robert V. D'Angelo Jr. in Support of Confirmation of the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 258] (the "**D'Angelo Declaration**");

j. filed, on October 30, 2026, the *Declaration of Ray Dombrowski in Support of Confirmation of the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 259] (the "**Dombrowski Declaration**");

k. filed, on October 30, 2026, the *Modified Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation*, which contains technical modifications to the Plan [Docket No. 256] (the "**Plan Modifications**"); and

l. filed, on October 30, 2026, the *Debtors' Memorandum of Law in Support of Confirmation of the Plan* [Docket No. 261] (the "**Confirmation Brief**").

The United States Bankruptcy Court for the District of New Jersey having:

a. entered the Solicitation Order on September 23, 2026;

b. by the Solicitation Order, set the (i) deadline to object to the Plan and (ii) the Plan voting deadline as October 27, 2026, at 4:00 p.m. prevailing Eastern Time;

c. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the D'Angelo Declaration, the Dombrowski Declaration, the Solicitation Affidavit, the Publication Affidavit and all other pleadings, exhibits, statements, affidavits, declarations, and comments regarding Confirmation of the Plan, including all objections, statements, and reservations of rights made with respect thereto, if any;

d. heard the statements, arguments, and objections, if any, made by counsel and parties in interest in respect of confirmation of the Plan;

e. considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan;

f. overruled any and all objections to final approval of the Plan and confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing held on November 3, 2026; and

g. taken judicial notice of the papers and pleadings filed in these chapter 11 cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan have been adequate and appropriate as to all entities affected or to be affected by the Plan, and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and presented at the Confirmation Hearing establish just cause for the relief granted herein, and that after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A. Findings and Conclusions. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. Jurisdiction, Venue, Core Proceeding. The Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* entered July 23, 1984, and amended June 6, 2025 (Bumb, C.J.). Approval of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court has jurisdiction to enter a final order with respect thereto. Venue was proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409 at all times during these chapter 11 cases.

C. Chapter 11 Petitions. On July 31, 2026, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On August 20, 2026, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Official Committee of Tort Claimants

(the "**Tort Claimant Committee**") [Docket No. 95] pursuant to section 1102 of the Bankruptcy Code. On August 27, 2026, the U.S. Trustee also appointed the Official Committee of Retirees (the "**Retiree Committee**") [Docket No. 105] pursuant to sections 1102 and 1114 of the Bankruptcy Code.

D. Judicial Notice. The Court takes judicial notice of the docket of these chapter 11 cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these chapter 11 cases, including the Confirmation Hearing.

E. Burden of Proof. Each of the Debtors has met the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

F. Voting and Solicitation. As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law. The Released Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

G. Notice. The transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Order, and any applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

H. Plan Supplement. All documents included in the Plan Supplement, including the Trust Agreement, Trust Distribution Procedures, and Release Agreement, are integral to, part of, and incorporated by reference into the Plan.

I. Plan Compliance with the Bankruptcy Code. The Plan complies with the applicable provisions of the Bankruptcy Code, and as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a) Proper Classification; No Discrimination. With the exception of Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which need not be classified in accordance with section 1123(a)(1) of the Bankruptcy Code, section 3 of the Plan classifies six Classes of Claims and Interests in the Debtors. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b) Implementation of the Plan. The Plan and the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(c) Non-Voting Equity Securities. Section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan because the Debtors do not propose to issue any non-voting equity securities under the Plan.

(d) Designation of Directors and Officers. The Plan Supplement included a form of the Trust Agreement disclosing the identities of the Trustee, the Plan Administrator, and

the Trust Advisory Committee. The provisions of the Plan governing the manner of selection of the Trustee, the Plan Administrator, and the Trust Advisory Committee are consistent with the interests of creditors and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(e) Assumption and Rejection. Section 5 of the Plan addresses the treatment of executory contracts and unexpired leases and satisfies the requirements of sections 365 and 1123 of the Bankruptcy Code. On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all executory contracts or unexpired leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Court will be deemed rejected in accordance with sections 365 and 1123 of the Bankruptcy Code, other than those executory contracts or unexpired leases that are the subject of a motion to assume that is pending on the Confirmation Date.

(f) Settlement. The entry of this Order constitutes the Court's approval of all the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests, and are fair, equitable, and well within the range of reasonableness. In concluding that the compromises and settlements contained in the Plan are substantively fair, the Court considered the following factors: (a) the probability of success of potential litigation compared to the benefit of such compromises and settlements; (b) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the compromises and settlements; (d) the competency of counsel; and (e) the extent to which the compromises and settlements are

the product of arm's-length negotiations. The Court finds that each of these factors weighs in favor of approving the compromises and settlements embodied in the Plan.

J. Plan Proposed in Good Faith. The Debtors have proposed the Plan, the Plan Supplement, and any other documents necessary to effectuate the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, and are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the success of the Plan.

K. Payment for Services or Costs and Expenses. Any payment made or to be made by the Debtors pursuant to the Plan for services or for costs and expenses of the Debtors' Professionals in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

L. Best Interests of Creditors. Confirmation of the Plan is in the best interests of creditors and satisfies section 1129(a)(7) of the Bankruptcy Code.

M. Acceptance by Certain Classes. Sections 3.1, 3.2, and 3.3 of the Plan specify that Claims in Class 1 (Secured Claims), Claims in Class 2 (Other Priority Claims), and Claims in Class 3 (General Unsecured Claims) are Classes of Claims that are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Class 4 (PI/WD Claims) voted to accept the Plan by at least two-thirds in amount and more than one-half in number as provided pursuant to section 1126(c) of the Bankruptcy Code. Holders of Claims in Class 5 (Intercompany Claims) and Holders of Interests

in Class 6 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims and Holders of Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders have not been solicited with respect to Intercompany Claims and Interests.

N. Treatment of Administrative Claims, Priority Tax Claims, Professional Fee Claims, and U.S. Trustee Fees. The treatment of Allowed Administrative Claims and Allowed Professional Fee Claims pursuant to sections 2.1 and 2.2 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to section 2.1 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The treatment of U.S. Trustee Fees pursuant to section 2.3 of the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

O. Acceptance by Impaired Class. Class 4 (PI/WD Claims) is a Class of Impaired Claims that has voted to accept the Plan by the requisite majorities set forth in the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

P. Feasibility. The evidence proffered or adduced in these chapter 11 cases including at the Confirmation Hearing and in the Confirmation Brief: (a) is reasonable, persuasive, and credible; (b) has not been controverted by other evidence; and (c) establishes that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind-down and liquidation of the Debtors' estates, as contemplated by the Plan, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Q. Retiree Benefits. As set forth in the *Debtors' Application for Entry of an Order (I) Authorizing the Modification of the Debtors' Retiree Benefits Program; (II) Approving the*

*Settlement Between the Debtors, the VEBA and the Official Committee of Retirees Regarding the Proposed Modifications; and (III) Granting Related Relief* [Docket No. 128], the Debtors, the Uniroyal Holding, Inc. Welfare Benefit Trust II, and the Retiree Committee reached a consensual settlement providing for the modification of the Debtors' Retiree Benefits Program (the " **Retiree Modification**") in accordance with section 1114 of the Bankruptcy Code. Pursuant to the *Order (I) Authorizing the Modification of the Debtors' Retiree Benefits Program; (II) Approving the Settlement Between the Debtors, the VEBA, and the Official Committee of Retirees Regarding the Proposed Modifications; and (III) Granting Related Relief* [Docket No. 170], the Court approved the Retiree Modification and the related settlement pursuant to sections 105 and 1114 of the Bankruptcy Code and Bankruptcy Rule 9019. The conditions precedent of the Retiree Modification have been met, and, accordingly, pursuant to the terms of the Retiree Modification, the Debtors have no continuing retiree benefit obligations.

R. No Unfair Discrimination; Fair and Equitable. Class 5 (Intercompany Claims) and Class 6 (Interests) are deemed to have rejected the Plan. The Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

S. Only One Plan. The Plan is the only plan filed in each of these chapter 11 cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these chapter 11 cases.

T. Principal Purpose of the Plan. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

U. Implementation. The documents and agreements contemplated by the Plan, including those contained in the Plan Supplement, are essential elements of the Plan, and the execution, delivery, and implementation of such documents and agreements are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining to enter into such documents and agreements, and such documents and agreements are necessary or appropriate to effectuate and implement the transactions contemplated by the Plan. Subject to the satisfaction or waiver of the conditions precedent set forth in section 8 of the Plan, the Debtors, the Plan Administrator, and the Trustee, as applicable, are authorized to execute, deliver, and implement such documents and agreements in accordance with the terms of the Plan.

V. Opt-Out Procedures. The procedures for opting out of the third-party release (the "**Opt-Out Procedures**") set forth in the Ballots, the notices of non-voting status, and the Opt-Out Form are good, sufficient, and adequate to bind the applicable parties to the third-party release set forth in section 9.2 of the Plan and are approved in all respects. As set forth in the Voting Declaration, the Debtors received 33 Release Opt-Outs, highlighting the adequacy and conspicuous nature of the Opt-Out Procedures and that such procedures worked as intended.

W. Releases, Exculpation, and Injunction. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, settlements, compromises, exculpations, and injunctions set forth in section 9 of the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, creditors, and Holders of Interests. The Releases by the Debtors and the Releases by Holders of Claims and Interests are warranted, necessary, and appropriate, and, in the case of the Releases by Holders of Claims and Interests, consensual by virtue of the Opt-Out Procedures approved above, and such releases are supported by the facts and circumstances of these chapter 11 cases and are consistent with sections

105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this jurisdiction. The record of the Confirmation Hearing and these chapter 11 cases is sufficient to support the settlements, releases, exculpations, and injunctions provided for in section 9 of the Plan.

X. Insurance Entity Injunction. The terms of the Insurance Entity Injunction are set out in conspicuous language in the Plan and in the Disclosure Statement.

Y. Compromise of Controversies. In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan, and the entry of this Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

Z. Good Faith. The Debtors and the Released Parties will be acting in good faith if they proceed to (a) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (b) take any actions authorized and directed by this Order.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1. Confirmation of the Plan. The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Order. The Debtors are authorized to consummate the Plan after the entry of this Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in the Plan.

2. Objections. All objections, responses to, and formal or informal statements and comments in opposition to the Plan have either been resolved or withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, other than those raised by the U.S. Trustee in the *Objection of the United States Trustee to Joint Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. 248]. To the extent any other formal or informal comments in opposition to the Plan are raised on the record prior to or at the Confirmation Hearing, such oppositions are overruled in their entirety for the reasons stated on the record.

3. No Action. To the extent that, under applicable non-bankruptcy law, any action to effectuate the terms of the Plan would otherwise require the consent or approval of the managers, directors, or officers of the Debtors, this Order shall, pursuant to sections 1123(a)(5) and 1142 of the Bankruptcy Code, constitute the consent or approval, and such actions are deemed to have been taken by unanimous action of the managers, directors, and officers of the Debtors.

4. Binding Effect. On or after entry of this Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, all Holders of Claims against and Interests in the Debtors (irrespective of whether such Claims or Interests are impaired under the Plan or whether the Holders of such Claims or Interests voted on, accepted or rejected, or are deemed to have accepted or rejected the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the chapter 11 cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

5. Implementation of the Plan. After the Confirmation Date, the Debtors, the Plan Administrator, the Trust Advisory Committee, and the Trustee, and the appropriate officers and representatives thereof, shall be authorized to and may issue, execute, deliver, file, or record such

documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take such other actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including the formation and funding of the Trust and the appointment of the Plan Administrator, the Trust Advisory Committee, and the Trustee and all such other actions delineated in section 4 of the Plan or otherwise contemplated by the Plan, without the need for any further approvals, authorizations, or consents, except for those expressly required pursuant to the Plan.

6. Dissolution of the Debtors. Pursuant to Section 4.6 of the Plan, on the Effective Date and following satisfaction of the Debtors' Plan Distribution and funding requirements set forth in the Plan, the Debtors shall be dissolved for all purposes. The Plan Administrator shall submit with the appropriate governmental agencies a copy of this Order, which shall suffice for purposes of obtaining a Certificate of Dissolution from the New Jersey Secretary of State and the Delaware Secretary of State.

7. Approval of Trustee, Plan Administrator, and Trust Advisory Committee. The Trustee identified in the Plan Supplement is hereby approved to serve as Trustee of the Trust, and the Plan Administrator identified in the Plan Supplement is hereby approved to serve as Plan Administrator, in each case in accordance with the terms of the Plan and the Trust Agreement. The initial members of the Trust Advisory Committee identified in the Plan Supplement are hereby approved to serve as members of the Trust Advisory Committee in accordance with the terms of the Plan and the Trust Agreement.

8. Document Retention Policy. The Trustee, with the consent of the Trust Advisory Committee will adopt a document retention policy that complies with all applicable law within one year of the Effective Date (as it may be amended, the "**Document Retention Policy**"). The

Document Retention Policy may be subsequently amended by the Trustee with the consent of the Trust Advisory Committee. A copy of the Document Retention Policy will be included on the website maintained by the Trust.

9. Releases by the Debtors. Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors, their Estates, and any and all other Entities who may purport to assert any Cause of Action by, through, for, or because of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition) including: (1) any derivative claims asserted or that may be asserted on behalf of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition); (2) the formulation, preparation, dissemination, or negotiation of: (a) the Plan; (b) the Disclosure Statement; or (c) any contract, instrument, release, or other agreement or document created or entered into in connection with: (i) the Plan; (ii) the Disclosure Statement; or (iii) these chapter 11 cases; (3) the pursuit of confirmation of the Plan; (4) the pursuit of consummation of the Plan; (5) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement; and (6) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in section 9.1 of the Plan shall not release (1) any

Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence or (2) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan. Entry of this Order shall constitute the Court's approval of the releases described in section 9.1 of the Plan by the Debtors, their Estates, and any and all other Entities who may purport to assert any Cause of Action by, through, for, or because of the foregoing Entities, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Court's finding that each release described in section 9.1 of the Plan is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; (6) a sound exercise of the Debtors' business judgment; and (7) a bar to the Debtors or their Estates, asserting any Claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

10. Releases by Holders of Claims and Interests. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition up until the Effective Date), including: (1) any derivative claims asserted or that may be asserted on behalf of the Debtors or their Estates, that such Releasing Party would have

been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition up until the Effective Date); (2) the formulation, preparation, dissemination, or negotiation of: (a) the Plan; (b) the Disclosure Statement; or (c) any contract, instrument, release, or other agreement or document created or entered into in connection with: (i) the Plan; (ii) the Disclosure Statement; or (iii) these chapter 11 cases; (3) the pursuit of confirmation of the Plan; (4) the pursuit of consummation of the Plan; (5) the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement; and (6) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in section 9.2 of the Plan shall not release (1) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; or (2) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan. Each Releasing Party deemed to grant the releases described in section 9.2 of the Plan shall be deemed to have granted such releases notwithstanding that such Person or Entity may hereafter discover facts in addition to, or different from, those which such Person or Entity now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person or Entity expressly waives any and all rights that such Person or Entity may have under any statute or common law

principle, including, without limitation, section 1542 of the California Civil Code, to the extent such section is applicable, which would limit the effect of such releases to those Claims or Causes of Action actually known or suspected to exist on the Effective Date. Section 1542 of the California Civil Code generally provides as follows: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with a debtor or released party."

11. Exculpation. As of the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from, any liability to any Holder of a Claim or Interest, or any other party in interest from the Petition Date to the Effective Date, for (1) any act or omission in connection with, relating to, or arising out of, these chapter 11 cases; (2) the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement or the Plan; (3) the filing of these chapter 11 cases; (4) the pursuit of confirmation of the Plan; (5) the administration and implementation of the Plan, including providing any legal opinion requested by any Person or Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan, the Confirmation Order, the issuance or distribution of securities pursuant to the Plan or the distribution of property under the Plan or any other agreement (whether or not such issuance or distribution occurs following the Effective Date); (6) negotiations regarding or concerning any of the foregoing; and (7) the administration of the Plan or property to be distributed hereunder. The Exculpated Parties shall be deemed to have participated in good faith in connection with the above and entitled to the protection of section

1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

12. Injunction. Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) are subject to exculpation pursuant to the Plan; or (4) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any Claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Plan Administrator, the Trust, the Released Parties, or Exculpated Parties (as applicable): (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff or subrogation of any kind against any obligation due from such

Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Court explicitly preserving such setoff, and notwithstanding any other indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Upon the Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtors, the Plan Administrator, the Trust, and their respective Affiliates, employees, advisors, officers and directors, or agents. No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party or Entity commencing, continuing, amending, or pursuing, a Cause of Action of any kind against the Debtors, the Exculpated Parties, or the Released Parties that relates to, or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of, a Cause of Action subject to section 9.1, section 9.2, or section 9.3 of the Plan without first (1) requesting a determination from the Court, after notice and a hearing, that such Cause of Action is not a Claim that the Debtors released under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (2) obtaining from the Court specific authorization for such party to bring such Cause of Action against any such Debtor, Exculpated Party, or Released Party. To the extent that any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Causes of Action not explicitly included in

the authorized complaint or petition, such party must obtain authorization from the Court before filing any such amendment in the court where such complaint or petition is pending. The Court will have sole and exclusive jurisdiction to determine whether a Cause of Action constitutes a direct or derivative Claim, and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying Cause of Action.

13. Insurance Entity Injunction. Pursuant to section 9.5 of the Plan, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Cause of Action against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, statute or any other theory of law, equity or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Cause of Action, including: (1) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Cause of Action, demand, or Cause of Action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Cause of Action, demand, or Cause of Action (including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such Cause of Action, demand, or Cause of Action against any Insurance Company); (2) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Cause of Action; (3) creating, perfecting or

enforcing in any manner, directly or indirectly, any lien or encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Cause of Action; and (4) except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, or contribution of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Cause of Action; *provided, however*, that (a) this injunction shall not impair in any way any actions brought by the Trust against any Insurance Company, (b) the Trust shall have the authority at any time to terminate, or reduce or limit the scope of, the injunction with respect to any Insurance Company, in accordance with the Trust Documents, upon express written notice to such Insurance Company, and (c) this injunction is not issued for the benefit of any Insurance Company, and no Insurance Company is a third-party beneficiary of this injunction. Notwithstanding anything to the contrary in the Plan, this injunction shall not enjoin: (1) the rights of any insured party under any coverage of any D&O Policy; (2) the rights of any successor in interest to (a) Uniroyal Properties, Inc., (b) Uniroyal Tire Company, Inc., (c) Uniroyal Plastics Company, Inc., (d) Uniroyal Power Transmission, Inc., or (e) Uniroyal Chemical Company, Inc. under any coverage of any Insurance Policy that was the subject of litigation in *Uniroyal, Inc. v. American Reinsurance Co., et. al.*; (3) the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of holders of PI/WD Claims to assert such claims, as applicable, in accordance with the Trust Distribution Procedures; (4) the rights of the Trust to prosecute any action based on or arising from Insurance Policies; (5) the rights of the Trust to assert any Cause of Action, debt, obligation, or liability for payment against any Insurance Company based on or arising from the Insurance Policies; (6) the rights of any Insurance Company to assert any Cause of Action, debt, obligation, or liability for payment against any other Insurance

Company; or (7) the Cause of Action for reinsurance under reinsurance contracts or Cause of Action under retrocessional contracts among an Insurance Company and any other Insurance Company.

14. Insurance Provision. Pursuant to section 9.6 of the Plan, nothing in the Plan, the Trust Documents, this Order, any finding of fact or conclusion of law with respect to confirmation of the Plan, any order or opinion entered on appeal from this Order, or any valuation of claims (either individually or in the aggregate) in these chapter 11 cases shall, with respect to any Insurance Company, (1) constitute any adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination establishing the coverage obligation of any such Insurance Company for any Claim, or (2) limit the right of any such Insurance Company to assert any Insurance Coverage Defense; *provided, however*, that with respect to (1) and (2), (i) the transfer of rights to the Trust pursuant to the Insurance Rights Transfer shall be valid and enforceable, and (ii) the discharge or release of any party from any Claims or Causes of Action under the Plan shall not affect the liability of any such Insurance Company. The establishment of any claim in litigation against the Trust in its capacity as the Debtors' representative shall be deemed the establishment of a claim against the Debtors for the purpose of triggering any available Insurance Policy. Neither the Plan nor the Trust Documents shall in any way reduce, limit, discharge, or release any Insurance Company.

15. Compromise and Settlement of PI/WD Claims. Pursuant to section 9.7 of the Plan, the treatment provided for PI/WD Claims under the Plan and the Trust Documents incorporates and reflects a settlement of such Claims against the Debtors, and such settlement is approved pursuant to Bankruptcy Rule 9019(a) and found to be fair, reasonable, and in the best interests of the Debtors, their Estates, and Holders of PI/WD Claims.

16. Claim Over. Pursuant to section 9.8 of the Plan, the Plan and this Order constitute a good faith settlement that bars any Cause of Action by a Non-Released Party against any Released Party for contribution, indemnification, or otherwise seeking to recover any amounts paid by or awarded against that Non-Released Party and paid or awarded to any Holder of a PI/WD Claim by way of settlement, judgment, or otherwise on any claim that would be released were such Non-Released Party a Released Party, to the extent that a good faith settlement (or release thereunder) has such an effect under applicable law. Nothing herein prevents the Trust or a Releasing Party from pursuing litigation against a Non-Released Party and collecting the full amount of any judgment.

17. Indemnification Obligations. Pursuant to section 4.5 of the Plan, The Trust shall hold in escrow a segregated account of $2 million funded by the Debtors (the "**D&O Contingency Fund**"), which fund shall exist to indemnify each of the Debtors' current and former directors and officers against any asbestos-related claim asserted against them, which indemnification shall not exceed $2 million of total indemnification payments in the aggregate. The D&O Contingency Fund shall be invested in accordance with the Trust's investment guidelines and the interest income of the D&O Contingency Fund shall be paid to the D&O Contingency Fund. The D&O Contingency Fund shall be administered by the Trustee and the costs thereof shall be paid from the D&O Contingency Fund. On the later of (1) the date on which the Asbestos Trust stops accepting PI/WD Claims and (2) the fifth anniversary of the Effective Date, the balance of the D&O Contingency Fund shall be released to the Trust and the D&O Contingency Fund shall be permanently closed.

18. Litigation Fees. The Trust shall pay any Released Party that is called as a witness, deponent, consultant, expert, or otherwise in any litigation that is related to a Debtor (including discovery): (1) a reasonable and customary per diem payment for a lawyer of commensurate

experience and (2) after provision of a budget, reimbursement of out-of-pocket legal fees for a lawyer of such Released Party's choosing.

19. Exemption from Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to the transfer of the Trust Assets to the Trust.

20. Professional Fee Claims. All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served within 30 days after the Effective Date. The Court will determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Court orders.

21. Cancellation of Existing Securities and Agreements. Except as otherwise provided in the Plan, on the Effective Date, all agreements, instruments, notes, certificates, indentures, mortgages, securities, and other documents evidencing any Claim or Interest, and any rights of any Holder in respect thereof, shall be deemed cancelled and of no further force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged and, as applicable, shall be deemed to have been surrendered to the Plan Administrator. The Holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights

arising from or related to such instruments, securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.

22. Reversal/Stay/Modification/Vacatur of Order. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

23. Retention of Jurisdiction. Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these chapter 11 cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in section 10 of the Plan.

24. Modifications. The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by this Court.

25. Provisions of Plan and Order Nonseverable and Mutually Dependent. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set

forth herein, are nonseverable and mutually dependent. Pursuant to section 12.9 of the Plan, each term and provision of the Plan, as it may have been altered or interpreted in accordance with such section, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Plan Administrator (as applicable), and (c) nonseverable and mutually dependent.

26. Dissolution of Statutory Committees. On the Effective Date, the Retiree Committee and the Tort Claimant Committee will dissolve. Upon the dissolution of the Retiree Committee and the Tort Claimant Committee, each committee and its respective Professionals shall cease to have any duty, obligation, or role arising from, or related to, these chapter 11 cases and shall be released and discharged from all rights and duties from, or related to, these chapter 11 cases. Notwithstanding the foregoing, either of the Retiree Committee or the Tort Claimant Committee may, at its option and without taking any action or seeking or receiving any approval, continue to serve and function after the Effective Date for the purposes of participating in any (1) appeal of any order entered in these chapter 11 cases, including the Confirmation Order, (2) applications for compensation or expense reimbursements of Professionals and any hearing thereon, or (3) adversary proceeding pending on the Effective Date to which the Retiree Committee or the Tort Claimant Committee was a participant. To the extent that either the Retiree Committee or the Tort Claimant Committee determines to continue to serve and function after the Effective Date pursuant to the preceding sentence, it will dissolve upon the completion of its participation in the matters described in clause (1) through (3), as applicable. Effective as of the dissolution of the Retiree Committee and the Tort Claimant Committee, the Trust will succeed to, and exclusively hold, the attorney-client privilege and any other privilege held by the Retiree Committee and the Tort

Claimant Committee and shall enjoy the work product protections that were applicable or available to either committee before its dissolution.

27. Applicable Non-Bankruptcy Law. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

28. Governmental Approvals Not Required. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan or any documents, instruments, or agreements and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

29. Donations. Prior to the Effective Date, the Debtors are authorized, in each case subject to the consent of the Trustee, to: (a) identify one or more museum, educational or research institution, library, or other organization engaged in the preservation of historical materials that may be interested in the Debtors' historic files (each, a "**Donee**"), (b) work with such Donees to identify materials of interest owned by the Debtors for potential donation to the applicable Donee (the "**Donated Materials**"), (c) negotiate and enter into agreements with Donees regarding the terms of donation and preservation requirements for Donated Materials, and (d) donate the Donated Materials to the Donee in accordance with such agreements.

30. Notice of Order. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form annexed as **Exhibit A**, to all parties who hold a Claim or Interest in these cases and the U.S. Trustee. Such

notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

31. Post-Effective Date Notices. After the occurrence of the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that filed such renewed requests.

32. Final Order. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

33. Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

34. Waiver of Stay. The requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or other applicable rule.

35. Inconsistency. To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

36. No Waiver. The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

# Exhibit A

## Notice of Effective Date

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>UNIROYAL HOLDING, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-18668 (MBK)<br><br>(Jointly Administered) |

**NOTICE OF ENTRY OF THE ORDER**
**(I) CONFIRMING THE JOINT CHAPTER 11 PLAN OF**
**UNIROYAL HOLDING, INC. AND GREAT HILL CORPORATION,**
**(II) THE EFFECTIVE DATE THEREOF, AND (III) CERTAIN DEADLINES**

**PLEASE TAKE NOTICE THAT:**

1. **Confirmation of the Plan**. On [•], 2026, the Honorable Michael B. Kaplan, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of New Jersey, entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation* [Docket No. [•]] (the "**Confirmation Order**"), confirming the *Joint Chapter 11 Plan of Uniroyal Holding, Inc. and Great Hill Corporation*] [Docket No. [•]] (as modified, supplemented and amended including all attachments and exhibits thereto, the "**Plan**").[2]

2. **Effective Date of the Plan**. All conditions precedent to the occurrence of the Effective Date of the Plan have been satisfied or waived. The Effective Date of the Plan occurred on [•], 2026.

3. **Administrative Claims Bar Date**. All requests for payment of Administrative Claims must be filed with the Bankruptcy Court and served on the Plan Administrator on or before [•], 2026.

4. **Professional Fee Claims**. Each Professional asserting an Administrative Claim for compensation for services rendered must file a request for payment of such Claim with the Bankruptcy Court and serve such request on the Plan Administrator on or before [•], 2026.

5. **Copies of the Plan and the Confirmation Order**. Copies of the Confirmation Order, Disclosure Statement, the Plan, and related documents, are available free of charge at

---

1 The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal taxpayer identification number, are: Uniroyal Holding, Inc. (8485) and Great Hill Corporation (9024). The mailing address for each Debtor for purposes of these chapter 11 cases is 70 Great Hill Road, Naugatuck, CT 06770.

2 Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the Confirmation Order.

https://cases.omniagentsolutions.com/?clientId=3786, or for a fee at the Court's website at http://www.njb.uscourts.gov. The Confirmation Order, the Disclosure Statement, the Plan, and related documents also are available for inspection during regular business hours in the office of the Clerk of the Court for the District of New Jersey, Clarkson S. Fisher U.S. Courthouse, 402 East State Street, Trenton, NJ 08608.

6. **Cancellation of Equity Interests**. In accordance with the Plan, all equity interests in the Debtors are cancelled, released, discharged, and extinguished and will be of no further force or effect. Holders of such interests should consult with a tax advisor concerning the effect of the Plan upon their equity interests.

7. **Binding Nature of the Plan**. The Plan and its provisions are binding on the Debtors and any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired by the Plan and whether or not such holder voted to accept or reject the Plan.

[*Remainder of page intentionally left blank*]

Dated: November, [•], 2026

**DUANE MORRIS LLP**
Morris S. Bauer
Drew S. McGehrin
Klara Bradbury (admitted *pro hac vice*)
200 Campus Drive, Suite 300
Florham Park, NJ 07932-1007
Telephone: (973) 424-2000
msbauer@duanemorris.com
dsmcgehrin@duanemorris.com
kbradbury@duanemorris.com

-and-

**DEBEVOISE & PLIMPTON LLP**
M. Natasha Labovitz (admitted *pro hac vice*)
Samuel A. Newman (admitted *pro hac vice*)
Michael C. Godbe (admitted *pro hac vice*)
Evan M. Raskin (admitted *pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909-6000
nlabovitz@debevoise.com
snewman@debevoise.com
mcgodbe@debevoise.com
emraskin@debevoise.com

*Co-Counsel to the Debtors and Debtors in Possession*